RON BENDER (State Bar No. 143364)
JOHN-PATRICK M. FRITZ (State Bar No. 245240)
LEVENE, NEALE, BENDER,
YOO & GOLUBCHIK L.L.P.
2818 La Cienega Avenue
Los Angeles, California 90034
Telephone: (310) 229-1234
Facsimile: (310) 229-1244
Email: RB@LNBYG.COM; JPF@LNBYG.COM

Attorneys for Chapter 11
Debtor and Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**LOS ANGELES DIVISION**

| | |
|---|---|
| In re: | ) Case No.: 2:20-bk-13849-BR |
| | ) |
| HOLOGENIX, LLC, | ) Chapter 11 Case |
| | ) |
|     Debtor and Debtor in Possession. | ) Subchapter V |
| | ) |
| | ) **DEBTOR'S BRIEF IN SUPPORT OF** |
| | ) **GRANTING MOTION TO ASSUME** |
| | ) **EXECUTORY EMPLOYMENT** |
| | ) **CONTRACT WITH SETH CASDEN** |
| | ) **AFTER REMAND FROM THE** |
| | ) **DISTRICT COURT** |
| | ) |
| | ) <u>Hearing</u>: |
| | ) Date: May 26, 2026 |
| | ) Time: 10:00 a.m. |
| | ) Place: Courtroom 1668 |
| | )     255 East Temple Street |
| | )     Los Angeles, CA 90012 |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |

# TABLE OF CONTENTS

I.      INTRODUCTION AND SUMMARY................................................................. 2

II.     DISTRICT COURT DECISION AND APPEAL ......................................... 2

III.    ASSUMPTION OF THE CONTRACT MEETS THE INHERENT FAIRNESS
        TEST ................................................................................................................. 3

        A.      The Inherent Fairness Test .................................................................. 3

        B.      The Record as of the Hearing on the Contract Motion and Plan
                Confirmation ...................................................................................... 4

        C.      The Assumption of the Executory Contract Meets the Inherent
                Fairness Test ....................................................................................... 5

IV.     FURTHER APPEAL ..................................................................................... 12

V.      CONCLUSION .............................................................................................. 12

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*In re Athos Steel and Aluminum, Inc.*,
   69 B.R. 515 ..........................................................................................................6, 11

*In re Biderman Indus. U.S.A., Inc.*,
   203 B.R. 547 (Bankr.S.D.N.Y.1997) ...........................................................................6

*In re Crouse Group, Inc.*,
   75 B.R. 553 ............................................................................................................6, 11

*In re Joshua Slocum, Ltd.*,
   103 B.R. 601 ...................................................................................................................9

*In re Marquam Inv., Corp.*,
   942 F.2d at 1465 .............................................................................................3, 4, 6, 8

*NLRB v. Bildisco & Bildisco*,
   465 U.S. 513 (1984).......................................................................................................5

Pepper v. Litton,
   308 U.S. 295, 60 S.Ct. 238 (1939)..............................................................3, 4, 5, 6

*In re Pyramid Operating Authority, Inc.*,
   144 B.R. 795 (Bankr.W.D.Tenn.1992) ........................................................................9

*Sharon Steel Corp. v. National Fuel Gas Distribution Corp. (In Re Sharon Steel
   Corp.)*,
   872 F.2d 36 (3rd Cir. 1989) .........................................................................................5

*Wheeling-Pittsburgh Steel Corp. v. West Penn Power Co. (In Re Wheeling-
   Pittsburgh Steel Corp.)*,
   72 B.R. 845 (Bankr.W.D.Pa.1987) .............................................................................5

**Federal Statutes**

11 U.S.C.
   § 365.............................................................................................................................12

**Other Authorities**

DISTRICT COURT DECISION AND APPEAL..................................................................2

Hologenix, LLC, a Delaware limited liability company (the "Debtor"), the debtor and debtor in possession in the above-captioned, chapter 11 bankruptcy case hereby respectfully submits its brief in support of this Court granting the Debtor's *Notice of Motion and Motion for Entry of an Order Authorizing Assumption of Executory Contract with Seth Casden* (the "Motion") [ECF 609] after the District Court's judgment (the "Judgment") [ECF 947] and decision (the "Decision") [ECF 946] remanding this Court's *Order Authorizing Assumption of Executory Contract with Seth Casden* (the "Order") [ECF 761], for further findings and conclusions. A general understanding of the Debtor's chapter 11 plan and issues related thereto is presumed based on the Court's previously entered findings of facts and conclusions of law ("FFCL") [ECF 762] after plan confirmation, which are incorporated here by reference for background.

## I.    INTRODUCTION AND SUMMARY

The Court should grant the Motion because assumption of the executory employment contract (the "Contract") between the Debtor and Seth Casden meets the inherent fairness standard set in the District Court's Decision.

The "inherent fairness" standard arises from the bankruptcy court's equitable powers, and the essence of the "inherent fairness" standard comes from applying rigorous scrutiny to determine whether the transaction carries the earmarks of an arms-length bargain. The record reflects that the Bankruptcy Court applied rigorous scrutiny to the Contract in multiple contested matters stretching from January 2022 to August 2022 to determine that the Contract and assumption of the Contract carries the earmarks of an arms-length bargain and, therefore, satisfies the "inherent fairness" standard.

## II.    DISTRICT COURT DECISION AND APPEAL

The District Court remanded the Order instructing the Bankruptcy Court to determine whether the assumption of the Contract met the inherent fairness standard:

> Although Marquam did not involve an executory contract, see 942 F.2d at 1465-66, it nevertheless reiterated the longstanding rule that where an insider's "contracts or engagements with the

corporation is challenged the burden is on the director or stockholder not only to prove the good faith of the transaction but also to show its inherent fairness from the viewpoint of the corporation and those interested therein. … The essence of the test is whether or not under all the circumstances the transaction carries the earmarks of an arm's length bargain." Pepper v. Litton, 308 U.S. 295, 306-07, 60 S.Ct. 238, 245 (1939). … Marquam applied those requirements to an insider's contract that was contested in a bankruptcy proceeding. See 942 F.2d at 1465-66. … Under the circumstances, the court is persuaded that the Bankruptcy Court erred by not evaluating the Contract Motion under the inherent fairness standard.

ECF 946 (Decision) 8:9-23.

Debtor appealed, and the Ninth Circuit ordered the parties to fully brief all issues, including appellate jurisdiction; after the Debtor and MET fully briefed the issues, the Ninth Circuit dismissed the appeal without passing on the merits of the District Court's Decision. ECF 1128 (order) 4 n.1.

## III.    ASSUMPTION OF THE CONTRACT MEETS THE INHERENT FAIRNESS TEST

### A. The Inherent Fairness Test

The "inherent fairness" test in *Pepper v. Litton* and *Marquam* arises from the bankruptcy court's equitable principles rather than any state law doctrine, as neither *Marquam* nor *Pepper v. Litton* mention California, Delaware, or any other state law as the basis of the "inherent fairness" test or in applying it.[1]   "[F]or many purposes courts of bankruptcy are essentially courts of equity, and their proceedings inherently proceedings in equity.[2]   "[A] bankruptcy court has full power to inquire into the validity of any claim asserted against the estate and to disallow it if it is ascertained to be without lawful existence."[3]   "[T]he court may look behind the judgment to determine the essential nature of the liability for purposes of proof and allowance. … And the

---

[1] *See generally*, *In Marquam Inv. Corp.*, 942 F2d 1462 (9th Cir.1991); *see generally*, *Pepper v. Litton*, 308 U.S. 295 (1939).

[2] *Pepper*, 308 U.S. at 304 (internal quotes and cites omitted).

[3] *Id.* at 305.

1  bankruptcy trustee may collaterally attack a judgment offered as a claim against the estate for the

2  purpose of showing that it was obtained by collusion of the parties or is founded upon no real

3  debt." [4]  "That *equitable power* also exists in passing on claims presented by an officer, director,

4  or stockholder in the bankruptcy proceedings of his corporation."[5]  "Its disallowance or

5  subordination may be necessitated by certain cardinal principles of *equity* jurisprudence." [6]

6          It is with this background of equity jurisdiction that the Supreme Court arrived at the

7  "inherent fairness" test for insider transactions, which the Ninth Court later cited, quoted, and

8  relied upon in stating: "Their [i.e., insiders'] dealings with the corporation are subjected to

9  rigorous scrutiny… to prove the good faith of the transaction [and] also show its inherent

10  fairness… ***The essence of the test is whether or not under all the circumstances the transaction***

11  ***carries the earmarks of an arm's length bargain***."[7]  The allowance or disallowance of insider

12  claims in bankruptcy is an "exercise of [the bankruptcy court's] equitable jurisdiction."[8]

13  Therefore, if the "inherent fairness" test applies, it is the test arising in the bankruptcy court's

14  equity jurisdiction, not from Delaware's "entire fairness" or California's "inherent fairness"

15  tests.

16          **B.  The Record as of the Hearing on the Contract Motion and Plan Confirmation**

17          Debtor's Motion stated that assumption of insider contracts is subject to heightened

18  scrutiny, particularly based on evidence of market rate compensation.[9]  MET's Contract

19  Opposition argued for, *inter alia*, "inherent fairness" and "rigorous scrutiny" based on *Marquam*

20  and *Pepper v. Litton*.[10]  Holgoenix replied that it met the test for "inherent fairness" and

21  "rigorous scrutiny" because Debtor had submitted an expert report on market-rate compensation,

22

23          [4] *Id.* at 305-06 (internal quotes and cites omitted).

          [5] *Id.* at 306  (emphasis added).

24          [6] *Id.* (emphasis added).

25          [7] *Id.* at 306-07 (1939); *In re Marquam Inv., Corp.*, 942 F.2d at 1465 (quoting and citing
      *Pepper v. Litton*) (emphasis added).

26          [8] *Pepper*, 308 U.S. at 307-08.

27          [9] ECF 609 (Motion) 10.

          [10] ECF 628 at 4.

28

the declaration of an professional executive recruiter on market rates, and declarations of independent board members (not Casden) showing the Contract had the earmarks of an arms-length transaction.[11]

### C. The Assumption of the Executory Contract Meets the Inherent Fairness Test

Although neither the Bankruptcy Court's FFCL nor the Order used the words "inherent fairness," the record reflects that the Bankruptcy Court had applied rigorous scrutiny in granting the Motion, and the record supports a finding that assumption of the Contract meets the inherent fairness test.

The Supreme Court in *Pepper v. Litton* emphasized that "courts of bankruptcy are essentially courts of equity, and their proceedings inherently proceedings in equity."[12] In applying those equitable powers, "technical considerations will not prevent substantial justice from being done."[13]   The record supports the conclusion that the Bankruptcy Court applied rigorous scrutiny, determined that the Contract was made in good faith, and that it carries the earmarks of an arm's length bargain, as reflected in the FFCL entered contemporaneously with the Order, even though the Order and FFCL did not use the precise words "inherent fairness."

Firstly, before addressing "inherent fairness," assumption of the Contract with Mr. Casden is supported at the very least by an exercise of reasonable business judgment because it benefits the estate.[14] Under Mr. Casden's leadership, Debtor grew its business, survived chapter 11, and maintained operations despite relentless litigation against it by competitor MET, which attempted to litigate Hologenix out of existence.[15]   The Bankruptcy Court had already approved the Contract's compensation at the base level of $300,000 per year after a highly contested

---

[11] ECF 630 at 8-12.

[12] *Id.* at 304 (internal cites and quotes omitted).

[13] *Id.* at 305.

[14] *See*, *Sharon Steel Corp. v. National Fuel Gas Distribution Corp. (In Re Sharon Steel Corp.)*, 872 F.2d 36, 40 (3rd Cir. 1989); *see also*, *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 523 (1984); *Wheeling-Pittsburgh Steel Corp. v. West Penn Power Co. (In Re Wheeling-Pittsburgh Steel Corp.)*, 72 B.R. 845 (Bankr.W.D.Pa.1987).

[15] ECF 609 (Casden Decl.) 16-17.

insider compensation hearing.[16]    The Contract is less expensive than other executive compensation packages, as Hologenix's COO had recently been hired away to another company for a higher salary, and because Hologenix realizes a 15% to 20% savings on payroll and tax costs because Casden is a member of the LLC.[17]    Additionally, under Mr. Casden's leadership the Debtor's employees grew from three to thirteen full-time employees, and revenue growth increased each year from 2016 to 2021.[18]

As to approving the assumption of the Contract under heightened scrutiny: "The essence of the [inherent fairness] test is whether or not under all the circumstances the transaction carries the earmarks of an arm's length bargain." [19]  Debtor's Motion stated that executory contracts for insiders are subject to a higher level of scrutiny,[20] and insider compensation is guided by market rates.[21]  Where there is no evidence of the market rate, the court may subjectively determine the appropriate compensation.[22] Logically, the market rate is the earmark of an arm's length bargain.

Mr. Casden's compensation under the employment contract is market rate, as supported by the expert witness report of Howard Grobstein on executive compensation.[23] Mr. Casden's base salary had already been approved by the Bankruptcy Court in March 2022 as part of the highly contested insider compensation hearings objected to by MET (and that order was never appealed).[24]  The Bankruptcy Court set forth its reasoning related to Casden's compensation

---

[16] ECF 609 (Casden Decl.) 16-18; ECF 762 (FFCL) 41, 50.

[17] ECF 609 (Casden Decl.) 16; ECF 762 (FFCL) 49.

[18] ECF 609 (Casden Decl.) 16-18.

[19] *Pepper*, 308 U.S. at 306-07; *In re Marquam Inv., Corp.*, 942 F.2d at 1465 (quoting and citing *Pepper v. Litton*).

[20] ECF 609 (Motion) 10; *In re Biderman Indus. U.S.A., Inc.,* 203 B.R. 547, 551 (Bankr.S.D.N.Y.1997).

[21] *In re Athos Steel and Aluminum, Inc.*, 69 B.R. 515, 521-22 (Bankr.E.D.Penn.1987) (setting officer compensation based on market rates during chapter 11 case) ("To its credit the debtor produced evidence of market value in the form of a survey of the salaries of steel company executives."); *In re Crouse Group, Inc.*, 75 B.R. 553, 559 (Bankr.E.D.Penn.1987) (chapter 11 case). ECF 609 (Motion) 10.

[22] *In re Crouse Group, Inc.*, 75 B.R. at 559; ECF 609 (Motion) 10.

[23] ECF 609 (Motion) 10; ECF 455 (Grobstein Decl.) 10, 18; ECF 762 (FFCL) 35, 51-52.

[24] ECF 609 (Casden Decl.) 16 (¶19);  ECF 618 (order) 1-3; ECF 762 (FFCL) 41, 50.

under the Contract in its FFCL signed concurrently with the Order, explained the highly contested hearing originally on June 7, 2022, which was continued so the Motion could be addressed concurrently with plan confirmation on August 9, 2022, and discussed in detail the two expert reports on market rate compensation related to the Contract, how both MET's expert's report and Hologenix's expert report converged to support the same compensation in the Contract, and based thereon concluded "Mr. Caden's executive compensation and executory employment contract is reasonable, supported by market data, expert testimony, and should be assumed and approved."[25]

The assumption of the Contract carries the earmarks of a better-than-an-arms-length bargain because instead of insisting on immediate or "prompt" cure as required by §365(b)(1)(A), Casden testified on cross-examination that he would defer payment of the cure cost of his Contract over time so that there would not be a Plan default and so that Class 3 could be paid in accordance with the confirmed Plan, which the Bankruptcy Court made part of its FFCL.[26]

Debtor's board members (none of whom are relatives of Casden) unanimously supported the assumption of the Contract, which also supports a finding that it has the earmarks of an arms-length transaction.[27]   The Contract was signed on Hologenix's behalf by board member Scott Carlin – not Casden.[28]   MET baldly objected that the board members were "rubberstamps" but never called them for cross-examination, took depositions, or submitted its own counterevidence.[29]   Debtor submitted reply declarations for board members Carlin and Margolin specifically countering this allegation that they were mere rubber stamps.[30]   MET filed a motion

---

[25] ECF 761 (Order) 1; ECF 762 (FFCL) 34-35, 51-52.
[26] ECF 762 (FFCL) 80-81; ECF 736 (Hrg Tr.) 129-130.
[27] ECF 610, 611, 625, 626, 627.
[28] ECF 609 (Casden Decl.) 32.
[29] ECF 628 (MET Opp.) 1-8.
[30] ECF 632 (Carlin Decl.) 1-5; ECF 631 (Margolin Decl.) 1-5.

to strike, alleging that this information should have been part of the original declarations.[31]   The Bankruptcy Court struck the reply declarations,[32] though Debtor objected that the reply declarations should stand because they directly addressed the allegation of being mere rubberstamps by providing more detail to support their background qualifications.[33]   But even the original declarations set forth sufficient basis that these board members were capable and competent fiduciaries – for example, Margolin's original declaration stated that she is the former President of Anthem Blue Cross, California."[34]   Perhaps this is the only place where the Bankruptcy Court erred – in favor of MET and against Debtor – that, despite impressive qualifications, the Bankruptcy Court would give very little weight to the board's declarations.[35] The support of the board (other than Casden) supports a finding of an arms-length bargain. Further support for the earmarks of an arms-length bargain is found in the declaration of professional executive placement recruiter, Ms. Sydney McArthur, regarding market rates of compensation, who testified that CEO salaries in Los Angeles for small companies with 10 to 25 employees are more than the Contract's $300,000 base plus $150,000 performance bonus.[36] Debtor's prior CEO (the former CEO of Converse, Inc., the shoe company) received even higher compensation than Casden, adding support that the Contract carries the earmarks of an arms-length bargain.[37]

In *Marquam*, the Ninth Circuit decided that an insider had not met the inherent fairness test or survived rigorous scrutiny on a claim objection where there was nothing to support the claim of $120,000 of insider legal billings.[38] But, here, Debtor submitted substantial evidence to

---

[31] ECF 637 (MET Opp.).

[32] ECF 761 (Order) 3.

[33] ECF 647 (6/7/2022 Hrg Tr.) 5-11.

[34] ECF 611 (Margolin Decl.) 1-3.

[35] ECF 647 (6/7/2022 Hrg Tr.) 22.

[36] ECF 613 (McArthur Decl.) 1-2.

[37] ECF 630 (Casden Decl.) 20-21; ECF 762 (FFCL) 52.

[38] *Marquam Inv. Corp.*, 942 F.2d at 1464-65.

meet the inherent fairness test, including a copy of the Contract (signed by board member Carlin, not Casden), a declaration by a third-party recruiter (Ms. McArthur) as to market rates, an expert report (Mr. Grobtsein) on CEO market rate compensation, and declarations from independent board members to support the fair price of the market rate and the fairness of the transaction at arm's length (as detailed with record cites above).

The burden of proof for assumption or rejection and cure of executory contracts is by a preponderance of evidence.[39]  The Debtor put on its case to grant the Motion by a preponderance of the evidence, and, in response, MET failed to put on competent evidence to refute the Debtor's case.[40]  The only evidence submitted by MET was an argumentative declaration of its local counsel to undermine the credibility of the executive recruiter declarant, Ms. McArthur,[41] and, later, in connection with plan confirmation, MET's expert report on executive compensation.[42]  Debtor's expert submitted an expert declaration in reply on the executive compensation Contract issue.[43]

At the hearing on the Plan and Contract, on August 9, 2022, MET cross-examined Mr. Casden, who testified about the history of his employment contract and the timing and Debtor's consideration of bankruptcy, the adjustments to compensation because of Covid-19 in 2020, and the insider compensation payment issues that the Bankruptcy Court had already ruled on previously though final orders that were never appealed.[44]  The Bankruptcy Court heard the live cross-examination testimony of Debtor's expert, Mr. Grobstein, and considered the market rate of Mr. Casden's contract and determined that assumption of the Contract was a good decision.[45]

---

[39] *In re Pyramid Operating Authority, Inc.*, 144 B.R. 795, 890 (Bankr.W.D.Tenn.1992) (citing *Grogan v. Garner*, 498 U.S. 279, 286 (1991)); *In re Joshua Slocum, Ltd.*, 103 B.R. 601, 606 (Bankr.E.D.Penn.1989).

[40] LBR 9013-1(c)(3), 9013-1(f)(2), 9013-1(h), and 9013-1(i)); ECF 762 (FFCL) 29.

[41] ECF 628 (MET Opp.) 8.

[42] ECF 701 (Pastore Decl.) 35.

[43] ECF 722 (Grobstein Decl.) 14-15.

[44] ECF 736 (Hrg Tr.) 133-149.

[45] ECF 762 (FFCL) 34-35, 51-52; ECF 735 (Hrg Tr.) 10, 53-55.

1   The Bankruptcy Court also found that the declaration testimony of MET's expert witness, Mr.

2   Pastore, showed Mr. Casden's executory Contract compensation was reasonable market rate,

3   with detailed citation to the record.[46]

4          When evaluating Mr. Grobstein's expert report and Mr. Pastore's expert declaration, the

5   Bankruptcy Court made findings that the figures on executive compensation for Mr. Casden as

6   the CEO converge to approximately the same compensation; that is, Mr. Grobstein's report used

7   a data set of larger companies and selected the smallest decile from the report, while Mr. Pastore'

8   declaration used a data set of smaller companies (of which the Debtor would be in highest end

9   with revenues at or above $5 million) and when selecting the largest decile for that report, the

10  two figures for executive compensation are essentially the same.[47]

11         The Bankruptcy Court found both Grobstein's testimony and Casden's testimony to be

12  "very credible," and that between the two competing experts, due to Grobstein's experience

13  "there's no comparison" between the two.[48]   The Bankruptcy Court found and concluded, with

14  support in the record, that the data Pastore relied on for his executive compensation critique was

15  not reliable because, although Pastore's declaration stated that the data set was for Los Angeles

16  companies, when questioned in deposition, Pastore testified that the data set in fact had no

17  regional breakdown at all but was national in scope without distinction to locale.[49]   The

18  Bankruptcy Court found and concluded that Pastore did not apply any methodology of premiums

19  or discounts to adjust for locale or make any other adjustments.[50]  The Bankruptcy Court found

20  and concluded that the Contract's compensation is appropriate market rate and necessary to

21  incentivize and fairly compensate for services, with detailed support in the record.[51]

22

23         [46] ECF 762 (FFCL) 51-52.

24         [47] ECF 762 (FFCL) 51; ECF 701 (Pastore Decl.) 35; 455 (Grobstein Decl.) 10, 18; ECF
       735 (Hrg Tr.) 54-56.

25         [48] ECF 735 (Hrg Tr.) 106-107; ECF 762 (FFCL) 73.

26         [49] ECF 701 (Pastore Decl.) 18-19; ECF 762 (FFCL) 73.

27         [50] ECF 762 (FFCL) 73.

       [51] ECF 762 (FFCL) 51-52.

28

1      In *Athos Steel*, the court analyzed the evidence in the market survey and made findings as

2  to the appropriate level of compensation for the insider, adjusting for the size of the debtor

3  compared to the size of the companies in the survey.[52]   The Bankruptcy Court specifically

4  considered Debtor's expert witness' report on market rate executive compensation and MET's

5  cross-examination of Casden and Grobstein.[53]   The Bankruptcy Court included in its FFCL a

6  detailed discussion of the appropriateness of Casden's compensation based on market data, citing

7  that a "higher level of scrutiny" was necessary for evaluating this insider transaction (with

8  citation to *Binderman*, *Athos Steel*, and *Crouse Group*), and – after two days of live cross-

9  examination testimony, including MET's cross-examination about the employment contract –

10  that both Grobstein and Casden were "very credible," and that in comparing Debtor's expert

11  report and MET's expert report on executive compensation, the data converged and supported

12  the amount of Mr. Casden's employment contract, and that the continued employment of Mr.

13  Casden was appropriate as he was qualified, competent, and experienced.[54]

14      Considering all of the foregoing, the Bankruptcy Court applied rigorous scrutiny to the

15  Contract, supporting a finding that assumption of the Contract meets the "inherent fairness" test

16  because, as demonstrated by the months-long, multi-hearing contested procedures surrounding

17  the Contract: (1) in January 2022 MET filed an opposition to Casden's compensation under the

18  Contract, and the Court held a contested hearing on the compensation in March 2022 to approve

19  in part and deny in part that compensation; (2) in March 2022, the Bankruptcy Court granted

20  MET derivative standing to sue Casden for estate causes of action, which could have included

21  avoidance of an insider employment agreement as a fraudulent transfer under

22  §548(a)(1)(B)(ii)(IV); (3) in June 2022 the Bankruptcy Court held the first contested hearing on

23  the Motion; (4) the Bankruptcy Court permitted  deposition and live cross-examination of

24  Hologenix's expert witness; (5) the Bankruptcy Court examined expert witness declarations from

25

26  [52] *In re Athos Steel and Aluminum, Inc.*, 69 B.R. 515, 521-22 (Bankr.E.D.Penn.1987).

27  [53] ECF 761 (Order) 2.
   [54] ECF 762 (FFCL) 34-35, 49-52.

28

both sides; (6) the Bankruptcy Court heard and observed MET's cross-examination of Casden and Grobstein; and (7) the Bankruptcy Court held a two-day trial.  The record reflects that the assumption of the Contract is inherently fair because it carries the earmarks of an arms-length bargain, primarily being market rate, as proven with contested expert testimony, executive recruiter declaration, declarations of independent board members, and subjected to MET's cross-examination in open court.  On this record, the Bankruptcy Court did not err in approving the assumption of the Contract, and the Bankruptcy Court should make findings and conclusions that the assumption of the Contract meets the inherent fairness test.

## IV.    FURTHER APPEAL

In the event that there is another appeal on an order granting or denying the assumption of the Contract in this case, at the appropriate time, the Debtor intends to appeal (or cross-appeal) the Decision of the District Cout as to whether "inherent fairness" applies to 11 U.S.C. § 365 summary proceedings.

## V.    CONCLUSION

**WHEREFORE,** the Debtor respectfully requests that this Court enter an order:

(1)    Granting the Motion;

(2)    Amending the FFCL to include augmented findings and conclusions that the assumption of the Contract meets the inherent fairness test; and

(3)    Granting such further and other relief as the Court deems just and proper.

Dated: March 10, 2026                    HOLOGENIX, LLC

                                By:  ___*/s/ John-Patrick M. Fritz*___ _____
                                    RON BENDER
                                    JOHN-PATRICK M. FRITZ
                                    LEVENE, NEALE, BENDER,
                                    YOO & GOLUBCHIK L.L.P.
                                    Attorneys for Chapter 11
                                    Debtor and Debtor in Possession

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 2818 La Cienega Avenue, Los Angeles, CA 90034

**A true and correct** copy of the foregoing document **Debtor's Brief In Support Of Granting Motion To Assume Executory Employment Contract With Seth Casden After Remand From The District Court** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On March 10, 2026, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On March 10, 2026 I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the `document is filed.
☐  Service information continued on attached page

**Honorable Barry Russell**
United States Bankruptcy Court
Central District of California
Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Suite 1660 / Courtroom 1668
Los Angeles, CA 90012

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on March 10, 2026  I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| March 10, 2026 | J. Klassi | /s/ J. Klassi |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

- **Todd M Arnold**    tma@lnbyg.com
- **Ron Bender**    rb@lnbyg.com
- **Thomas E Butler**    butlert@whiteandwilliams.com, sullivann@whiteandwilliams.com;millnamowm@whiteandwilliams.com;panchavatis@whiteandwilliams.com
- **Robert Carrasco**    rmc@lnbyg.com, rmc@lnbyg.com
- **Aaron E. De Leest**    adeleest@marshackhays.com, adeleest@marshackhays.com,alinares@ecf.courtdrive.com
- **Oscar Estrada**    oestrada@ttc.lacounty.gov
- **Theodore W Frank**    frank@psmlawyers.com, knarfdet@gmail.com;navarro@parkermillsllp.com
- **John-Patrick M Fritz**    jpf@lnbyg.com, JPF.LNBYB@ecf.inforuptcy.com
- **Michael S Greger**    mgreger@allenmatkins.com, kpreston@allenmatkins.com
- **Brian T Harvey**    bharvey@buchalter.com, docket@buchalter.com;dbodkin@buchalter.com
- **Gregory Kent Jones (TR)**    gjones@sycr.com, smjohnson@sycr.com;C191@ecfcbis.com;cpesis@stradlinglaw.com
- **Alphamorlai Lamine Kebeh**    MKebeh@allenmatkins.com, mdiaz@allenmatkins.com
- **Raffi Khatchadourian**    raffi@hemar-rousso.com
- **Tinho Mang**    tmang@marshackhays.com, tmang@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@ecf.courtdrive.com
- **Ron Maroko**    ron.maroko@usdoj.gov
- **Juliet Y. Oh**    jyo@lnbyg.com, jyo@lnbyb.com
- **Carmela Pagay**    ctp@lnbyg.com
- **Yvonne Ramirez-Browning**    yvonne@browninglawgroup.com, veronica@browninglawgroup.com
- **Kurt Ramlo**    RamloLegal@gmail.com, kr@ecf.courtdrive.com,ramlo@recap.email
- **James R Selth**    jselth@yahoo.com, jselth@yahoo.com,maraki@wztslaw.com,sfritz@wztslaw.com,admin@wztslaw.com
- **Zev Shechtman**    Zev.Shechtman@saul.com, zshechtman@ecf.inforuptcy.com;hannah.richmond@saul.com;LitigationDocketing@saul.com
- **Lindsey L Smith**    lls@lnbyb.com, lls@ecf.inforuptcy.com
- **Randye B Soref**    rsoref@polsinelli.com, ccripe@polsinelli.com;ladocketing@polsinelli.com
- **Heidi J Sorvino**    sorvinoh@whiteandwilliams.com, millnamowm@whiteandwilliams.com;sullivann@whiteandwilliams.com;panchavatis@whiteandwilliams.com;butlert@whiteandwilliams.com
- **Alan Stomel**    alan.stomel@gmail.com, astomel@yahoo.com
- **Annie Y Stoops**    annie.stoops@afslaw.com, yvonne.li@afslaw.com;mia.ferguson@afslaw.com
- **Nicole Sullivan**    sullivann@whiteandwilliams.com, vulpioa@whiteandwilliams.com,arthura@whiteandwilliams.com
- **Derrick Talerico**    dtalerico@wztslaw.com, maraki@wztslaw.com,sfritz@wztslaw.com,admin@wztslaw.com
- **John N Tedford**    JNT@LNBYG.com, jnt@ecf.courtdrive.com
- **United States Trustee (LA)**    ustpregion16.la.ecf@usdoj.gov
- **Larry D Webb**    Webblaw@gmail.com, larry@webblaw.onmicrosoft.com
- **David Wood**    dwood@marshackhays.com, dwood@ecf.courtdrive.com;lbuchananmh@ecf.courtdrive.com;spineda@ecf.courtdrive.com;alinares@ecf.courtdrive.com