RON BENDER (State Bar No. 143364)
JOHN-PATRICK M. FRITZ (State Bar No. 245240)
LEVENE, NEALE, BENDER,
YOO & GOLUBCHIK L.L.P.
2818 La Cienega Avenue
Los Angeles, California 90034
Telephone:  (310) 229-1234
Facsimile:  (310) 229-1244
Email: RB@LNBYG.COM; JPF@LNBYG.COM

Attorneys for Chapter 11
Debtor and Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**LOS ANGELES DIVISION**

| | |
|---|---|
| In re: | ) Case No.: 2:20-bk-13849-BR |
| | ) |
| HOLOGENIX, LLC, | ) Chapter 11 Case |
| | ) |
|     Debtor and Debtor in Possession. | ) Subchapter V |
| | ) |
| | ) **DEBTOR'S BRIEF IN SUPPORT OF** |
| | ) **CONFIRMING PLAN AFTER** |
| | ) **REMAND FROM THE DISTRICT** |
| | ) **COURT** |
| | ) |
| | ) <u>Hearing</u>: |
| | ) Date:  May 26, 2026 |
| | ) Time:  10:00 a.m. |
| | ) Place: Courtroom 1668 |
| | )      255 East Temple Street |
| | )      Los Angeles, CA 90012 |
| | ) |

1

1
2

## TABLE OF CONTENTS

I.      INTRODUCTION AND SUMMARY ........................................................................ 2

II.     DISTRICT COURT DECISION AND APPEAL ....................................................... 3

III.    FAIR AND EQUITABLE UNDER §1191(c)(2) ........................................................ 4

        A.      The Plan Is Fair and Equitable ................................................................... 4

        B.      "Includes" is Non-limiting, but "Fair and Equitable" Are Words of
                Art for the Uncodified Standards Set by 100 Years of Bankruptcy
                Jurisprudence ................................................................................................. 4

        C.      Historic Sources ............................................................................................ 5

                1.      "Fair and Equitable" Prior to 1978 Bankruptcy Code ................... 5

                2.      "Fair and Equitable" Under The Bankruptcy Code - 1978 to 2019 ........... 7

                3.      "Good Faith" Under Chapter 13 of the 1978 Bankruptcy Code ................. 8

                4.      "Fair and Equitable" Under Subchapter V ...................................... 9

        D.      Statutory Construction ............................................................................... 15

        E.      Conclusion ................................................................................................... 17

IV.     THE PLAN DOES NOT UNFAIRLY DISCRIMINATE ...................................... 19

V.      FURTHER APPEAL .............................................................................................. 22

VI.     CONCLUSION ....................................................................................................... 22

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*In re Acequia,*
    787 F.2d 1352 (9th Cir.1986) ...........................................................................19

*American United Mutual Insurance Co. v. City of Avon Park,*
    311 U.S. 138 (1940)...................................................................................10, 11

*Bank of America Nat. Trust and Sav. Ass'n v. 203 N. LaSalle Street P'ship,*
    526 U.S. 434 (1999) ...........................................................................................14

*In re Bonner Mall Partnership,*
    2 F.3 899, 912 (9th Cir.1993) ..............................................................4, 5, 11, 12

*In re Bonner Mall Partnership,*
    2 F.3d at 915 n.34 ........................................................................6, 8, 12, 17

*Case v. Los Angeles Lumber Products Co.,*
    308 U.S. 106 (1939)...............................................................................6, 11

*Matter of Central R. Co. of New Jersey,*
    579 F.2d 804 (3d Cir.1978)....................................................................21

*Consolidated Rock Products Co. v. Du Bois,*
    312 U.S. 510 (1941).................................................................................6, 8

*In re Curiel,*
    651 B.R. 548 (9th Cir.B.A.P.2023).......................................................9

*Czyzewski v. Jevic Holding Corp.,*
    580 U.S. 451 (2017)...............................................................13, 16, 17

*In re Flores,*
    735 F.3d 855 (9th Cir.2013) ..............................................................16

*In re Greer,*
    60 B.R. 547 (Bankr.C.D.Cal.1986)...............................................9, 12, 14, 16

*Hamilton v. Lanning,*
    560 U.S. 505 (2010)..............................................................................11, 15

*Lamar, Archer & Cofrin, LLP v. Appling,*
    584 U.S. 709 (2018)...............................................................................5

*Lorber v. Vista Irr. Dist.*,
 143 2d 282, 285 (9th Cir.1944)................................................................14, 19

*In re Metz*,
 620 F.2d 1495 (9th Cir.1987) ......................................................................9

*In re Metz*,
 820 F.2d at 1499 ........................................................................................11

*In re Monarch Beach Venture, Ltd.*,
 166 B.R. ...................................................................................................19

*Northern Pacific Ry. Co. v. Boyd*,
 228 U.S. 482 (1939)...................................................................................6, 7

*Norwest Bank Worthington v. Ahlers*,
 485 U.S. 197 (1988)..........................................................................7, 11, 12

*In re Orange County Bail Bonds*,
 638 B.R. 137 (9th Cir.B.A.P.2022)........................................................9, 13, 18

*In re PG&E Corp.*,
 46 F.4th 1047 (9th Cir.2022) ...........................................................5, 8, 11, 13

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank*,
 566 U.S. 639 (2012).................................................................................15, 21

*In re Sisk*,
 962 F.3d 1133 (9th Cir.2020) .....................................................................11, 21

*United States v. Miller*,
 145 S. Ct. 839 (2025).................................................................................16

*In re Welsh*,
 711 F.3d 1120 (9th Cir.2013) .................................................................9, 11, 16

*Zachary v. California Bank & Trust*,
 811 F.3d 1191 (9th Cir.2016) ...................................................................7, 12

**Federal Statutes**

11 U.S.C.
  § 102(3)....................................................................................................4
  § 1122)....................................................................................................20
  § 1123(a)(1) .............................................................................................20
  § 1126......................................................................................................20

A Guide to the Small Business Reorganization Act of 2019, 93 ...............................9, 10

Bankruptcy Act of 1938 Chapter X ............................................................5, 6, 14

**Other Authorities**

Am. Bankr. L.J. 133, 143 n. 80, 81 (1979) ...............................................................6

Am. Bankr. L.J. 571, 612-13 (Winter 2019) ..........................................................10

Ayers, Rethinking Absolute Priority After Ahlers, 87 Mich.L.Rev. 963, 977 (Apr.
    1989) ...............................................................................................7, 14, 20

7 COLLIER ¶ 1129 ...................................................................................6, 14

8 COLLIER ¶ 1200.01[2] .........................................................................10

Klee, "Cramdown I", 53 Am. Bankr. L.J. 81, 133, 143 (1979) .................................7

Klee, Cramdown II, 64 Am. Bankr. L.J. 229, 231-41 (1990) ...................................8

1       Hologenix, LLC, a Delaware limited liability company (the "Debtor"), the debtor and

2  debtor in possession in the above-captioned, chapter 11 bankruptcy case hereby respectfully

3  submits its brief in support of this Court confirming the *Debtor's Chapter 11, Subchapter V,*

4  *Plan Dated January 4, 2022, Modified June 21, 2022* (the "Plan") [ECF 657] after the District

5  Court's judgment (the "Judgment") [ECF 947] and decision (the "Decision") [ECF 946]

6  remanding this Court's *Order Confirming Debtor's Chapter 11, Subchapter V, Plan Dated*

7  *January 4, 2022, Modified June 21, 2022* (the "Plan Order") [ECF 763], as amended [ECF 870],

8  for further findings and conclusions.  A general understanding of the plan and plan issues is

9  presumed based on the Court's previously entered findings of facts and conclusions of law

10 ("FFCL") [ECF 762], which are incorporated here by reference for background.

## I.    INTRODUCTION AND SUMMARY

12      The Court should confirm the Plan and amend its FFCL to address confirmation of the

13 Plan under the standard set in the District Court's Decision on "fair and equitable" under

14 §1191(c).  In summary, the District Court's Decision decided a new interpretation of "fair and

15 equitable" under §1191(c) that is limited by neither disposable income nor a three-to-five-year

16 period.  On remand, the Court must determine whether the Plan is "fair and equitable" under the

17 District Court's interpretation of §1191(c) and whether the Plan does not discriminate unfairly in

18 light of the disposition of assets beyond disposable income and beyond the three-to-five-year

19 commitment period.

20      Here, the Court should decide that no payments to MET are required beyond the Plan's

21 Projected Disposable Income for the Commitment Period for the Plan to be "fair and equitable"

22 because none of the traditional uncodified "fair and equitable" standards apply to MET and Class

23 3 in this particular case and because nothing in the particular facts of this case merit the

24 departure from the long-established historical standard of limiting general unsecured creditor

25 treatment to the Commitment Period Disposable Income under composition law. Futhermore,

26 there are no special circumstances in this particular case that would warrant this Court to depart

27 from the three-to-five year Commitment Period limitation that evolved from Chapter 13 prior to

28

1   the enactment of Subchapter V, and on which Subchapter V is based, and demand that Debtor

2   devote additional income and property beyond the Commitment Period to pay Class 3 and MET

3   to meet the "fair and equitable" requirement.  Indeed, exceeding the Commitment Period would

4   be a return to the era of "substantial repayment" requirements from the early days of Chapter 13,

5   which was soundly discredited by the Ninth Circuit in *Goeb*.  Thus, even under the law of the

6   case where this Court may have the statutory authority to require more disposable income

7   beyond the Commitment Period and additional property, the facts of this Case do not present a

8   compelling reason to do so.  The dedication of the Plan's Commitment Period Disposable

9   Income is itself fair and equitable treatment for Class 3 and MET.  Moreover, the Plan fairly

10  discriminates by providing Class 3 all of the Commitment Period projected Disposable Income

11  because Subchapter V is composition law, and, having established what the "fair and equitable"

12  treatment of creditors is under this Plan, allocation all of that property to Class 3 is fair

13  discrimination with the insiders to address their debt-equity structure after the composition ends.

14  For the reasons set forth in greater detail below, the Court should confirm the Plan as being "fair

15  and equitable" and not discriminating unfairly with respect to MET and Class 3.

16          **II.    DISTRICT COURT DECISION AND APPEAL**

17          The District Court remanded the Plan Order stating that the Bankruptcy Court's

18  interpretation of §1191(c) "appears to reflect an incorrect application of the law."  ECF 946

19  (Decision) 4:18. Because the "fair and equitable" language of §1191(c) is written with the

20  prefaced word "includes," what a court may consider to be "fair and equitable" is not limited to

21  the terms set forth in §1191(c). ECF 946 (Decision) 4:22- 5:1.  The District Court further stated

22  that the three-to-five-year commitment period for projected disposable income in §1191(c)(2)(A)

23  refers to "all… projected disposable income" for that period, and because "all" means "100%,"

24  the five-year statutory cap of §1191(c)(2)(A) applies only to 100% of disposable income, leaving

25  courts at liberty to determine whether additional income after year five is "fair and equitable" as

26  long as it is some quantum less than 100%: "§1191(c)(2)(A) does not prohibit the provision of

27  some amount of disposable income that is less than 100% after five years; that is, a plan could

28

1  require 100% of debtor's disposable income in years one through five, 75% in years six through

2  eight, and so on." ECF 946 (Decision) 5:18-20.

3      "In sum, the Bankruptcy Court erred in finding that Met was entitled to only 'three-to-

4  five years' of projected Disposable Income… which led the Bankruptcy Court to overlook a

5  substantial part of the Plan, including the provisions entitling certain creditors to 100%

6  recovery." ECF 946 (Decision) 6:14-17. "Thus… the Bankruptcy Court [was] required to

7  consider whether Met's recovery was unfairly discriminatory in light of the disposition of assets

8  beyond disposable income." ECF 946 (Decision) 5:1-3.

9      Debtor appealed, and the Ninth Circuit ordered the parties to fully brief all issues,

10  including appellate jurisdiction; after the Debtor and MET fully briefed the issues, the Ninth

11  Circuit dismissed the appeals without passing on the merits of the District Court's Decision.

12  ECF 1128 (order) 4 n.1.

13      **III.    FAIR AND EQUITABLE UNDER §1191(c)(2)**

14      **A.  The Plan Is Fair and Equitable**

15      The District Court's interpretation of §1191(c) is that "fair and equitable" can include

16  (but is not required to include) more than what the text of §1191(c) provides.  Here, the Plan is

17  fair and equitable under the particular circumstances of this case in light of the historical and

18  statutory sources for interpreting "fair and equitable" for providing Class 3 and MET with no

19  more than three years of projected disposable income.

20      **B.  "Includes" is Non-limiting, but "Fair and Equitable" Are Words of Art for the**

21          **Uncodified Standards Set by 100 Years of Bankruptcy Jurisprudence**

22      "Includes" as used in §1191(c) is non-limiting. 11 U.S.C. § 102(3).  However, "fair and

23  equitable"  are "words of art" that "include" specific uncodified requirements developed over

24  decades of bankruptcy jurisprudence,[1] and the word "includes" should not be read to give courts

25

26  [1] *In re Bonner Mall Partnership*, 2 F.3 899, 912 (9th Cir.1993) ), *appeal dismissed*, 115 S.Ct.
    386 ((recognizing that "fair and equitable" of §1129(b)(2) "includes" the new value exception

27  because "[t]he Bankruptcy Code should not be read to abandon past bankruptcy practice
    absent a clear indication that Congress intended to do so."); *id.*at 913 n.33 (one aspect of

28  uncodified "fair and equitable" is the long-established rule that no senior class be paid more

"free-floating discretion" to add new concepts *ad hoc*.[2] "When administrative and judicial interpretations have settled the meaning of an existing statutory provision, repetition of the same language in a new statue indicates, a general matter, the intent to incorporate its administrative and judicial interpretations as well."[3] "Statutory analysis of the Bankruptcy Code is a 'holistic endeavor,'" which may often "require[] reference to various statutory and historic sources."[4] Therefore, understanding what "fair and equitable" includes for §1191(c) should be determined by an analysis of statutory and historical sources, as discussed immediately below.

## C. Historic Sources

### 1. "Fair and Equitable" Prior to 1978 Bankruptcy Code

"Fair and equitable" as "words of art" in the Bankruptcy Code,[5] have their origin in equity receivership reorganization and were first codified (without definition) in 1934 as part of §77B(f)(1) of the Bankruptcy Act, then repealed and replaced by Chapter X of the Bankruptcy Act of 1938.[6] "The Chandler Act [1938] revised the Bankruptcy Act of 1898… and, in chapters X, XI… [and] XIII…., provided for corporate reorganizations, arrangements, … [and] wage earners' plans," each chapter using the words of art "fair and equitable" but each with its own meaning on account of each's important differences.[7]

"Chapter X, devised as a substitute for the equity receivership, [was] specially adapted to the reorganization of large corporations whose securities [were] held by the public… while

---

than in full).

[2] *See*, *In re PG&E Corp.*, 46 F.4th 1047, 1064 (9th Cir.2022).

[3] *Lamar, Archer & Cofrin, LLP v. Appling*, 584 U.S. 709, 722 (2018).

[4] *In re PG&E Corp.*, 46 F.4th at 1053 (citing *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 365, 371 (1988)).

[5] *SEC v. U.S. Realty & Imp. Co.*, 310 U.S. 434, 452 (1940) (citing *Northern Pacific Ry. Co. v. Boyd*, 228 U.S. 482 (1939) and *Case v. Los Angeles Lumber Products Co.*, 308 U.S. 106 (1939)).

[6] *In re Bonner Mall Partnership*, 2 F.3 at 913 n.32.

[7] *SEC v. U.S. Realty & Imp. Co.*, 310 U.S. at 461 (1940) (J. Roberts, dissenting); *id.* at 467.

1   Chapter XI which is particularly adapted to the speedy composition of debts of small individual

2   and corporate businesses, omits the machinery for reorganization set up by Chapter X…"[8]

3         What is "fair and equitable" for a public corporation in a plan of reorganization in

4   Chapter X is the absolute priority rule set forth in *Case v. Los Angeles Lumber*.[9]    The

5   "traditional" absolute priority rule was a prominent requirement of "fair and equitable" for equity

6   receiverships,[10] requiring senior classes to be paid in full before junior classes received anything,

7   regardless of whether the junior class dissented. [11]

8         But that absolute priority rule was neither applicable to nor practical for Chapter XI,

9   which was an "arrangement only with respect to unsecured creditors without alteration of the

10  relations of any other class of security holders."[12]    "Congress deleted the 'fair and equitable'

11  requirement from Chapter XI in 1952."[13]    As of 1952, "Chapter X had an absolute priority rule;

12  Chapter XI did not."[14]    For "small individual or corporate businesses," "where subordinate

13  creditors or the stockholders are the managers of its business, the preservation of going-concern

14  value through their continued management of the business may compensate for reduction of the

---

[8] *Id.* at 447.

[9] *Id.* at 452-53; *see, Case*, 308 U.S. at 116-17 (the "fixed principle" of *Boyd*, of the "rule of full or absolute priority").

[10] *Consolidated Rock Products Co. v. Du Bois*, 312 U.S. 510, 520-21 (1941).  ("The full and absolute priority rule of *Northern Pacific Railway Co. v. Boyd*, 228 U.S. 482 (1913) and *Case*…, would preclude participation by the equity interests in any of those assets until the bondholders had been made whole.")

[11] *See*, Klee, *All You Ever Wanted to Know About Cram Down Under the New Bankruptcy Code*, 53 Am. Bankr. L.J. 133, 143 n.80, 81 (1979) (herein, "Cramdown I").

[12] *U.S. Realty & Imp. Co.*, 310 U.S. at 452-53.

[13] 7 Collier on Bankruptcy ¶1129.LH[6][b] at 1129-201, 1129-202 (Richard Levin & Henry J. Sommer eds. 16th ed.) (herein, "Collier"); *see*, 7 Collier ¶1129.03[4][a] at 1129-92 ("Chapter XI was not subject to the fair and equitable requirement"); *id.* at ¶1129.03[4][c][i][A] at 1129-111 n.181 ("Congress deleted the fair and equitable requirement from Chapter XI in 1952. …  As the accompanying House Report stated, 'the fair and equitable rule, as interpreted in [*Boyd* and *Case*] cannot be realistically applied in a Chapter XI… Were it so applied… no corporate debtor where the stock ownership is substantially identical with management could effectuate an arrangement except by payment of the claims of all creditors in full.'") (internal citations omitted).

[14] *In re Bonner Mall Partnership*, 2 F.3d at 915 n.34.

claims of the prior creditors without alternation of the management's interests, which would

otherwise be required by the *Boyd* case [228 U.S. 482 (1913) (i.e., absolute priority rule)]."[15]

> This was part and parcel of the theory of composition: if you had to pay the full going concern value of the enterprise to your creditors, even though they might agree to accept less, composition was never possible. This might have been acceptable public policy to an enterprise like a publicly-held corporation, where the equity ownership might come and go. It was less palatable in the case of the typical Chapter 11 debtor – a sole proprietorship or a closely-held 'family' corporation.[16]

Chapter XIII also involved "composition" plans.[17]

### 2. "Fair and Equitable" Under The Bankruptcy Code - 1978 to 2019

In 1978, Congress codified "fair and equitable" to "include" specific treatment of secured

claims, unsecured claims, and equity interests in §1129(b).[18]   The 1978 Bankruptcy Code's

treatment of secured creditors under §1129(b)(2)(A) was "completely novel."[19]   The absolute

priority rule was codified under §1129(b)(2)(B) and (C) with respect to general unsecured

creditors and equity holders in 1978.[20]    As contrasted with the "traditional" absolute priority

rule, in 1978 Congress enacted a "relaxed" version of the absolute priority rule in § 1129(b)(2)

where senior classes could give up something to junior classes so long as intervening junior

classes did not dissent.[21]   Because §1129(b)(2) uses the word "includes," it continues to embrace

uncodified aspects of "fair and equitable," but these are meant to be limited to the concepts in

these "words of art" developed over more than 100 years of pre-Bankruptcy Code case law, such

---

[15] *U.S. Realty & Imp. Co.*, 310 U.S. at 454 (citing *Case*, 308 U.S. at 121-22); Ayers, Rethinking Absolute Priority After Ahlers, 87 Mich.L.Rev. 963, 977 (Apr. 1989) ("This absolute priority rule had never been a principle of composition law").

[16] Ayers, Rethinking Absolute Priority After Ahlers, 87 Mich.L.Rev. at 977.

[17] 8 COLLIER, ¶1300.36[3] at 1300-81.

[18] *Zachary v. California Bank & Trust*, 811 F.3d 1191, 1194 (9th Cir.2016).

[19] Klee, "*Cramdown I*", 53 Am. Bankr. L.J. 133, 143 (1979).

[20] *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 202 (1988) (citations omitted).

[21] *See*, Klee, "*Cramdown I*", 53 Am. Bankr. L.J. at 143 n.80, n.81.

as:[22]

    (A)  No senior class may be compensated more than in full;[23]

    (B) A senior dissenting class must be compensated for its loss of priority relative to a junior class (sometimes referred to as "step-up");[24]

    (C) Potentially, a senior dissenting class is entitled to be compensated for rights to postpetition interest;[25]

    (D) Potentially, forcing a senior dissenting class to take inferior securities if a junior class receives superior securities or cash;

    (E) No issuing 'worthless securities';

    (F) No gratis issuance of reorganization securities to preserve continuity of management;

    (G) The new value exception.[26]

### 3.  "Good Faith" Under Chapter 13 of the 1978 Bankruptcy Code

Despite "fair and equitable" having been part of Chapter XIII, Chapter 13 never uses the phrase "fair and equitable."[27] Nonetheless, Congress enacted Chapter 13 in 1978 with an equally malleable phrase "good faith" as a plan confirmation requirement.[28]

Importantly, Congress also set a plan duration of not "longer than three years, unless the court, for cause, approves a longer period… not… longer than five years."[29]   The limited 3-to-5-year Commitment Period was a direct evolution from Chapter XIII and Congress' concern that

---

[22] *See*, Klee, *Cramdown II*, 64 Am. Bankr. L.J. 229, 231-41 (1990).

[23] *In re Bonner Mall Partnerships*, 2 F.3d at 913 n.33 ("well-established [uncodified] component of 'fair and equitable'" in §1129(b)(2)).

[24] *Du Bois*, 312 U.S. at 528-29.

[25] *Id.* at 527; (the "solvent debtor exception" requires payment of post-petition interest to creditors as one of the traditional uncodified aspects of the absolute priority rule); *In re PG&E Corp.*, 46 F.4th at 1054.

[26] *In re Bonner Mall Partnerships*, 2 F.3d at 901.

[27] *See generally*, §§1301-1330; *see also*, §§1201-1230 ("fair and equitable" not used in Chapter 12).

[28] Volume B COLLIER App. Pt. 4(a), 4-141 (§1325(a)(3) as enacted in 1978).

[29] *Id.* at 4-140 (§1322(c) as enacted in 1978).

1    creditor pressure resulted in plans of seven to ten years as a type of "involuntary servitude."[30]

2        By early 1980, many lower court decisions were denying chapter 13 plans as failing the

3    "good faith" requirement because – regardless of the length of the plan – they did not provide

4    "substantial repayment" to unsecured creditors.[31]   In 1982, the Ninth Circuit overruled these

5    lower courts and "decline[d] to impose a substantial-repayment requirement… under the guise of

6    interpreting 'good faith.'"[32]  Congress set a minimum repayment standard in §1325(a)(4), that

7    creditors must receive at least what they would have received in a hypothetical chapter 7

8    liquidation.[33]  "The presence of an explicit statutory standard… strongly suggests that Congress

9    did not intend to substitute a more rigorous standard when it impose a general good-faith

10    requirement."[34]   Prompted by the rash of decisions imposing a "substantial-repayment"

11    requirement, Congress enacted a new subsection 1325(b) specifying a mandatory minimum of

12    three years of "all of the debtor's projected disposable income" for Chapter 13 plans if a trustee

13    or unsecured creditor objected.[35]

14          **4.  "Fair and Equitable" Under Subchapter V**

15        In August 2019, Congress enacted the Small Business Reorganization Act, commonly

16    referred to as "Subchapter V."[36] Subchapter V codifies "fair and equitable" in §1191(b) to

17    "include" specific detailed provisions in §1191(c),[37]  with language almost identical to Chapter

---

[30] *In re Greer*, 60 B.R. 547, 555 (Bankr.C.D.Cal.1986) ("Under Chapter XIII of the Bankruptcy Act, plans frequently extended as long as seven to ten years.  Congress was concerned that this amounted to involuntary servitude… In consequence, in the Bankruptcy Code Congress limited the duration of a plan to three years, except upon a finding of 'cause.'") (internal citation omitted).

[31] *Id.* at 550-52 (recounting history).

[32] *In re Goeb*, 675 F.2d 1386, 1389 (9th Cir.1982).

[33] *Id.* at 1388.

[34]  *Id.*

[35] *In re Greer*, 60 B.R. at 552 and n.7; *In re Metz*, 620 F.2d 1495, 1499 (9th Cir.1987); *In re Welsh*, 711 F.3d 1120, 1128-29 (9th Cir.2013).

[36] *In re Orange County Bail Bonds*, 638 B.R. 137, 143 n.5 (9th Cir.B.A.P.2022).

[37] *In re Curiel*, 651 B.R. 548, 561 (9th Cir.B.A.P.2023).

11's §1129(b).[38] Subchapter V adopts specific cramdown treatment for secured claims directly from Chapter 11,[39] but Subchapter V has no specific cramdown treatment for unsecured creditors or equity interest holders and specifically rejects the traditional Chapter 11 cramdown treatment for those stakeholders.[40]

Instead, without mentioning unsecured creditors or equity, §1191(c)(2)(A) provides that "all projected disposable income of the debtor to be received in the 3-year period, or such longer period not to exceed 5 years, as the court may fix" must be applied to make plan payments.[41] The 3-to-5-year period of §1191(c)(2) clearly has its origins in Chapters 12 and 13.[42] Yet, neither Chapter 12 nor Chapter 13 have a "fair and equitable" plan requirement, and, thus, this Court should look to case law discussing "good faith" in Chapter 13 (a malleable phrase in the absence of the words of art "fair and equitable") for guidance on what "fair and equitable" in relation to the 3-to-5-year Commitment Period in Subchapter V means.

The Ninth Circuit noted that "good faith" is not defined, but then analyzed its history and meaning in bankruptcy law through the phraseology of "fair" and "equitable" in the *Goeb* decision.[43] "One case that we … find instructive is *American United Mutual Insurance Co. v. City of Avon Park*, 311 U.S. 138 (1940), under former Chapter IX, that 'the offer of the plan and its acceptance are in good faith,' … the [Supreme] Court… focused on '***equity*** and good conscience."[44]  "A bankruptcy court is a court of equity… and is guided by ***equitable***

---

[38] §1129(b)(2) & §1191(c) ("fair and equitable… includes the following…").

[39] §1191(c)(1) (incorporating §1129(b)(2)(A)).

[40] §1191(c); §1181(a) (making §1129(b) inapplicable in Subchapter V).

[41] §1191(c)(2)(A).

[42] *See*, Paul W. Bonapfel, A Guide to the Small Business Reorganization Act of 2019, 93 Am. Bankr. L.J. 571, 612-13 (Winter 2019) (comparing Chapters). 8 COLLIER ¶1200.01[2] at 1200-4 ("In modeling chapter 12 on chapter 13, which does not have the absolute priority rule, Congress allowed farmers to confirm reorganization plans without providing for payment in full to unsecured creditors."); *compare*, §1222(c) & §1322(d)(1)&(2).

[43] *In re Goeb*, 675 F.2d at 1390-91.

[44] *Id.* at 1390. (emphasis added). The decision, *City of Avon Park*, 311 U.S. 138, 140-41 (1940), involved a Chapter IX composition plan.

doctrines…"[45] "A bankruptcy court must inquire whether the debtor… ***unfairly*** manipulated the Bankruptcy Code, or otherwise proposed his Chapter 13 plan in an ***inequitable*** manner."[46]  The inquiry of whether something is "unfair" and "inequitable," is quite clearly the same inquiry as whether something is "fair and equitable."[47] Thus, case law addressing the chapter 13 "good faith" requirement for 3-to-5-year plans are informative to addressing the Subchapter V "fair and equitable" requirement for 3-to-5-year plans.

More recently, the Ninth Circuit cited *Goeb* (with its similar language of "unfairly" and "inequitable") and held that courts cannot use the rubric of "good faith" to alter what Congress has already determined for plans.[48]  Even "zero-payment" plans can be proposed in good faith so long as they pass the best-interest-of-creditors test in §1325(a)(4) and devote all projected disposable income to the plan as required by §1325(b)(1)(B).[49]

"The Bankruptcy Code should not be read to abandon past bankruptcy practice absent a clear indication that Congress intended to do so."[50]  While 'the Bankruptcy Code can of course override by implication,' any such implication must be unambiguous."[51] "[T]he normal rule of statutory construction [is] that if Congress intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific."[52] "This rule is followed with

---

[45] *Id.*

[46] *Id.*; *see also*, *In re Welsh*, 711 F.3d at 1128 (citing *Goeb* for same "acted equitably" and not "unfairly manipulated").

[47] *See*, *Case v. Los Angeles Lumber Products Co.*, 308 U.S. 106, 118 (1939) (relating "fair and equitable" to similar phrases of "equitable and fair" and "fairly and equitably treated" and "adequate and equitable" and "just, fair, and equitable and like phrases").

[48] *In re Sisk*, 962 F.3d 1133, 1150 (9th Cir.2020) ("The good faith inquiry is not a vehicle to promulgate bankruptcy requirements not already in the Code.  Courts cannot add to what Congress has enacted under the guise of interpreting good faith."); *Ahlers*, 485 U.S. at 206 ("whatever equitable powers remain in bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code.").

[49] *In re Metz*, 820 F.2d at 1499.

[50] *In re Bonner Mall Partnership*, 2 F.3d at 912; *In re PG&E Corp.*, 46 F.4th at 1057-58 (quoting *Cohen v. de la Cruz*, 523 U.S. 213, 221 (1998)); *see*, *Hamilton v. Lanning*, 560 U.S. 505, 517 (2010) (same, regarding chapter 13 projected disposable income).

[51] *In re PG&E Corp.*, 46 F.4th at 1058 (citing *BFP v. Resol. Tr. Corp.*, 511 U.S. 531, 546 (1994)).

[52] *In re Bonner Mall Partnership*, 2 F.3d at 912 (cleaned up, internal citation omitted).

particularity in construing the Bankruptcy Code."[53]  "Once it has been shown that Congress was aware of a pre-Code practice, the remaining inquiry… is whether it has made clear its intent to change that practice."[54]   As can be shown from the historical origins of the 3-to-5-year Commitment Period in Chapters 13, Congress was aware of an established practice of this limited period.

"Where, as here, Congress adopts a new law, it normally can be presumed to have had knowledge of the interpretation given to the old law."[55]   Congress presumably knew that there is no body of case law interpreting the 3-to-5-year Commitment Period of Chapter 13 as being limited to 100% of income for that Commitment period plus an additional quantum less than 100% for periods after year 5, and, therefore, there is no basis to interpret §1191(c)(2)(A) in such a way. "[T]his Court has been reluctant to interpret the Bankruptcy Code, however vague the particular language under consideration might be, to effect a major change in pre-Code practice that is not the subject of at least some discussion in the legislative history."[56] Debtor has found no legislative history in favor of reading §1191(c)(2)(A) beyond the 3-to-5-year Commitment Period,[57] and, moreover, legislative history on the Commitment Period in Chapter 13 suggests that Congress prohibited any such expansion beyond five years as "involuntary servitude."[58] "Where the text of the Code does not unambiguously abrogate pre-Code practice, courts should presume that Congress intended it to continue unless the legislative history dictates a contrary result."[59] Thus, in modeling Subchapter V on Chapter 13 with the 3-to-5-year limitation on plans, there is no basis to extend a Commitment Period beyond 5 years on the thin reed of an ambiguous *sub silentio* combination of "includes" and "all" in §1191(c)(2)(A) to permit at

---

[53] *Id.*

[54] *Id.*

[55] *Ahlers*, 485 U.S. at 211 (cleaned up, internal quotes and cites omitted).

[56] *Zachary v. California Bank & Trust*, 811 F.3d 1191, 1198 n.5 (9th Cir.2016) (quoting *Dewsnup v. Timm*, 502 U.S. 410, 419 (1992)).

[57] F Collier App.Pt. 41cc at App.Pt. 41-370 to App.Pt. 41ff at App.Pt. 41-411.

[58] *In re Greer*, 60 B.R. at 555.

[59] *In re Bonner Mall Partnerships*, 2 F.3d at 913 (citing *Dewsnup*, 502 U.S. at 419).

1    judicial roaming inquiry of any quantum of the Debtor's projected disposable income less than

2    100% for any number of years *ad infinitum*.    The Court should "expect more than simply

3    statutory silence if, and when Congress were to intend a major departure" from a longstanding

4    norm.[60]

5        Furthermore, interpreting "all" in §1191(c)(2)(A) as meaning "100%" in conjunction

6    with the non-limiting "includes" of the "fair and equitable" requirement of §1191(b) to provide

7    courts with *carte blanche* to rove beyond Congress' very specific 3-to-5-year Commitment

8    Period, simply invites the very problem that the Ninth Circuit warned of when interpreting the

9    Bankruptcy Code's equitable principles for the fair and equitable requirement: "We join our

10   sibling circuits… in emphasizing that the solvent-debtor exception, though equitable in nature

11   does not give bankruptcy judges free-floating discretion to redistribute rights in accordance with

12   their personal views of justice and fairness."[61]  There is no reason, here, to interpret §1191(c) in a

13   manner to disregard Congress' clear 3-to-5-year structure in favor of a judicial free-floating

14   exercise of redistributive rights based on each different judge's personal views of justice and

15   fairness.

16       "Congress enacted subchapter V as an expedited process for small business debtors to

17   reorganize quicky, inexpensively, and efficiently."[62]    From a practical perspective, an

18   interpretation of §1191(c)(2)(A) devoid of Congress' 3-to-5-year temporal limit increases

19   unpredictability and expense for cramdown confirmation leaving the debtor and creditors of each

20   case wondering where each particular bankruptcy judge will fall on the spectrum between 3-to-5

21   years, at the one end, and full repayment of debt, at the other.

22       Subchapter V does not have an absolute priority rule.[63]  This is reinforced by Congress'

23   formulation of a debtor's exclusive right to propose and modify a plan in Subchapter V.[64]  An

---

[60] *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 465 (2017) ("Congress… does not … hide
elephants in mouseholes.").

[61] *In re PG&E Corp.*, 46 F.4th at 1064 (internal quotes omitted).

[62] *In re Orange County Bail Bonds*, 638 B.R. 137, 146 (9th Cir.B.A.P.2022) (internal citations
and quotations omitted).

[63] §1181(a) (excluding §1129(b) from Subchapter V).

equity holder's exclusive right to propose a plan is a type of property right that violates the absolute priority rule in a cramdown plan in Chapter 11.[65]  However, Subchapter V provides the right to propose a plan exclusively to the debtor and no other.[66]  This harkens back to the origins of Chapter XI and composition law: "This was part and parcel of the theory of composition: if you had to pay the full going concern value of the enterprise to your creditors, even though they might agree to accept less, composition was never possible."[67]  Chapter XI was "an extension, adjustment, or accommodation of unsecured claims without disturbing either secured claims or stock interests."[68]  "Composition contemplates that the business proceeds with the eventual end of rehabilitation."[69]

Synthesizing the foregoing bankruptcy jurisprudence into Subchapter V, Congress rejected the absolute priority rule in favor of a modern composition law where equity interests keep their interests in the debtor, unsecured creditors are paid some quantum of their claims, and the rehabilitation eventually ends.   Moreover, Congress set a very specific 3-to-5-year Commitment Period, aware that composition plans of seven or ten years were akin to "involuntary servitude." [70] An interpretation of §1191(c)(2)(A) that permits courts to consider the debtor's disposable income beyond the 3-to-5-year Commitment Period begins a slippery slope towards looking for a "substantial repayment" and eventually leads to the judicial reenactment of the absolute priority rule where equity holders cannot keep their interests until the senior creditors are paid in full, resulting in involuntary servitude for small business owners who can

---

[64] §1189(a) and §1193.

[65] *Bank of America Nat. Trust and Sav. Ass'n v. 203 N. LaSalle Street P'ship*, 526 U.S. 434, 456 (1999); *see*, 7 COLLIER ¶1129.03[4][a] at 1129-91 & 1129-92 (as contrasted with Chapter X, because Chapter XI had no absolute priority rule, it was not a problem that the Chapter XI debtor remained a debtor-in-possession in control of the estate with exclusive right to propose the reorganization plan).

[66] §1189(a).

[67] Ayers, Rethinking Absolute Priority After Ahlers, 87 Mich.L.Rev. 963, 977 (Apr. 1989).

[68] *SEC v. U.S. Realty & Imp. Co.*, 310 U.S. 434, 464 (1940) (J. Roberts, dissenting).

[69] *Lorber v. Vista Irr. Dist.*, 143 2d 282, 285 (9th Cir.1944) (Chapter IX municipality case).

[70] *In re Greer*, 60 B.R. at 555.

1  keep their businesses only after completing plans much longer than 3-to-5 years, adjudged by

2  each court on a case-by-case basis.

3  **D.  Statutory Construction**

4  The Supreme Court applies the statutory canon of construction that the specific governs

5  the general when interpreting "fair and equitable" cramdown requirements.[71] "Congress has

6  enacted a comprehensive scheme and has deliberately targeted specific problems with specific

7  solutions," requiring that a specific cramdown condition apply to specific facts, notwithstanding

8  the generalized freedom that might be granted from a hyperliteral reading of the statute.[72] "[T]he

9  canon avoids… the superfluity of a specific provision that is swallowed by the general one." [73]

10  "[G]eneral language of a statutory provision, although broad enough to include, will not be held

11  to apply to a matter specifically dealt with in another part of the same enactment." [74]

12  In interpreting "fair and equitable" for Chapter 11, the Supreme Court opined that

13  interpreting "or" in §1129(b)(2)(A) to avoid what the statute specifically proscribes would be

14  "hyperliteral and contrary to common sense."[75]  Likewise, reading "includes" and "all" in

15  §1191(b) and §1191(c)(2)(A) to expand §1191(c)(2)(A)'s Commitment period beyond five years

16  in derogation of the explicit proscription "not to exceed 5 years" would be hyperliteral and

17  contrary to common sense and render the Congressional limit "not to exceed 5 years" practically

18  meaningless, as creditors and courts could add 99% of projected disposable income from year 6

19  onward until paid in full (i.e., the return of the absolute priority rule).

20  The ordinary meaning of "all" may be 100%, but the ordinary meaning of a word is not to

21  be extrapolated into similar but different contexts.[76] When Congress refers to percentages in the

---

[71] *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012).

[72] *Id.*

[73] *Id.*

[74] *Id.* at 646.

[75] *Id.* at 645.

[76] *Hamilton v. Lanning*, 560 U.S. 505, 515 (2010) (contrasting "multiplied" and "projected" for determining disposable income).

1   Bankruptcy Code, including "100%" and less than 100%, it does so specifically.[77]   If Congress

2   had meant §1191(c)(2)(A) to be expressed in percentages with "all" meaning "100 percent," for

3   3-to-5 years, plus other quanta less than 100% after year 5, Congress would have done so

4   expressly.

5       When Congress enacted a detailed statute regarding 3-to-5-years of "all projected

6   disposable income" in Chapter 13, the Ninth Circuit observed that the judicial inquiry under the

7   malleable phrase "good faith" is narrowed accordingly."[78]   Congress spoke directly on the 3-to-

8   5-year limit of Subchapter V plans in multiple places - §1191(c)(2)(A), §1191(c)(2)(B),

9   §1192(1), and §1193(c) – a "not to exceed five years," and, thus, the judicial "fair and equitable"

10  inquiry should be narrowed accordingly.

11      Strict textual arguments using malleable phrases cannot be used to give breadth to a

12  discrete statutory term without "flout[ing] a 'fundamental canon of statutory construction': that

13  'the words of a statute must be read in their context and with a view to their place in the overall

14  statutory scheme.'"[79]   Courts cannot alter the balance that Congress has struck among creditors

15  and debtors in the Bankruptcy Code's distribution scheme, even where the courts believe that the

16  creditors would be sincerely better off.[80] A capacious reading of "all" and "includes" to expand

17  beyond that five-year limit disregards Congress' distribution scheme and backslides towards the

18  absolute priority rule by judicial fiat, primarily on the basis that "they fear a windfall to the

19  debtor at the expense of [] unsecured creditors," which this Court admonished against in Chapter

20

---

21  [77] *See*, §727(a)(9)(A) ("100 percent"); §727(a)(9)(B)(i) ("70 percent"); §1182(1)(A) ("50
22  percent"); §101(2A) ("20 percent"); §101(18) ("50 percent"); §101(19A)(i) ("80 percent");
    §326(a) ("25 percent… 10 percent… 5 percent… 3 percent…"); §702(b) ("20 percent");
23  §707(b)(2)(A)(i)(I) ("25 percent"); §1325(b)(2)(A)(ii) ("15 percent"); §1326(b)(3)(B)(ii) ("5
    percent"); *see also*, *In re Greer*, 60 B.R. 547, 553 (Bankr.C.D.Cal.1986) ("Congress could
24  have required that a  chapter 13 plan provide that unsecured creditors to be paid in full [i.e.,
    100%] [or] … 70%, or 30%, or some other minimum amount of their claim.  However,
25  Congressed decided against this approach.").

    [78] *In re Welsh*, 711 F.3d 1120, 1129-1131 (9th Cir.2013).
26
    [79] *United States v. Miller*, 145 S. Ct. 839, 853 (2025) (quoting *Davids v. Michigan Dept. of
27  Treasury*, 489 U.S. 803, 809 (1989)); *In re Flores*, 735 F.3d 855, 859 (9th Cir.2013).

28  [80] *Czyzewski*, 580 U.S. at 471.

1   13 decades ago.[81]   "In interpreting statutory language we are not confined to the specific

2   provision at issue but may look to the structure of the law as a whole and to its object and

3   policy."[82]

4   **E.  Conclusion**

5       In light of the foregoing, despite the District Court's Decision that "fair and equitable"

6   may include disposable income beyond the three-to-five-year Commitment Period, here, in this

7   case, nothing in the record supports such a radical departure from the historical understanding of

8   that phrase and the limited Commitment Periods of composition law.   The Plan is "fair and

9   equitable" to Class 3 with the Plan's three-year Commitment Period of projected disposable

10  income.

11      Moreover, here, in Debtor's case, none of the uncodified standards of "fair and equitable"

12  apply to provide MET and Class 3, and, therefore, none of them are required to make the Plan

13  "fair and equitable":

14      (A) No class senior to MET is being compensated more than in full;

15      (B) There is no senior dissenting class losing its priority relative to a junior class with a

16          "step-up";

17      (C) No senior dissenting class is being paid post-petition interest;

18      (D) No senior dissenting class is being forced to take inferior securities while a junior

19          class receives superior securities or cash;

20      (E) Debtor is not issuing 'worthless securities' to MET or Class 3;

21      (F) Debtor is not issuing gratis securities to preserve continuity of management;

22      (G) The new value corollary does not apply in Subchapter V because the absolute priority

23          rule does not apply in Subchapter V.

24

25  [81]   *In re Goeb*, 675 F.2d 1386, 1388 (9th Cir.1982).

26  [82] *In re Bonner Mall Partnership*, 2 F.3d at 915; *Czyzewski v. Jevic Holding Corp.*, 580 U.S.
    451, 466-67 (2017) (internal cites and quotes omitted); *id.* ("the word 'cause' is too weak a
27  reed upon which to rest so weighty a power" as to disregard Congress' distribution scheme in
    the Bankruptcy Code).

28

Therefore, the Plan is "fair and equitable" with respect to Class 3 and MET.

Furthermore, the Plan is "fair and equitable" under §1191(c)(2)(B). Congress wrote §1191(c)(2)(A) and (B) in the alternative as parallel provisions, permitting debtors to pay (A) 3-to-5 years of projected disposable income over 3 to 5 years, or (B) the present value of that same period.[83]    Although §1191(c)(2)(A) refers to "***all of the*** projected disposable income… in the 3-year period… not to exceed 5 years," §1191(c)(2)(B) omits "all of," and instead refers only to "the value of property to be distributed under the plan in the 3-year period… not to exceed 5 years… is not less than [___][84] ***the*** projected disposable income of the debtor."[85]

Debtor's Plan includes an option for payment of the present "value of the property to be distributed under the plan in the 3-year period… not less than the projected disposable income of the debtor" under §1191(c)(2)(B).[86]    Thus, even under the District Court's interpretation of §1191(c)(2)(A) based on the word "all," the Bankruptcy Court can still confirm the Plan under §1191(b)(2)(B) where the qualifier "all" is not used.

"Fair and equitable" in §1191(c)(2)(A) and (B) are written in the alternative for three-to-five-years of projected disposable income or the present value of that period.[87]    The Plan meets the "fair and equitable" standard of §1191(c)(2)(B) because it provides the present value of the property from the Commitment Period.

As noted above, although Section 1191(c) "includes" many uncodified aspects of "fair and equitable" that developed over the course of more than 100 years of bankruptcy jurisprudence, none of those uncodified aspects are present here.    Therefore, the Plan is "fair and equitable" under §1191(c)(2)(B) by providing Class 3 with the present value of projected disposable income for the Commitment Period.    To the extent that Debtor's net present value

---

[83] *In re Orange County Bail Bonds*, 638 B.R. 137, 146 (9th Cir.B.A.P.2022).

[84] This [___] space is where §1191(c)(2)(B) omits reference to "all of" which appears in §1191(c)(2)(A).

[85] §1191(c)(2) (emphasis added).

[86] ECF 762 (FFCL) 74-75; ECF 657 (Plan) 20-21.

[87] Op.Br.40; *In re Orange County Bail Bonds*, 638 B.R. 137, 146 (9th Cir.B.A.P.2022); 1-ER-0089.

1    discount would result in Class 3 receiving less than those creditors would receive in a

2    hypothetical liquidation under §1129(a)(7), Debtor agrees to pay the hypothetical liquidation

3    amount to Class 3.

4    **IV.    THE PLAN DOES NOT UNFAIRLY DISCRIMINATE**

5        The unfair discrimination "requirement is separate and independent of the more-often

6    litigated 'fair and equitable' rule."[88]  The unfair discrimination "provision requires that a plan

7    '***allocate*** value to the class in a manner consistent with the treatment afforded to other classes

8    with similar legal claims.'"[89]

9        The District Court has decided, as the law of the case, that "fair and equitable" is not

10   statutorily limited to disposable income and not statutorily limited to the three-to-five-year

11   commitment period.  However, for all the reasons explained above, "fair and equitable" in this

12   Debtor's particular case is the three-year Commitment Period projected Disposable Income.

13   Moreover, the Plan's allocation of assets within and after the Commitment Period and

14   Disposable Income is fair discrimination for the reasons discussed below.

15       Understanding fair and unfair discrimination between insider and non-insider classes in

16   Subchapter V plans requires an understanding of Subchapter V as composition law.   As

17   discussed in Section III.C.4 above, Subchapter V is composition law addressing non-insider

18   unsecured debt within the Commitment Period (whether limited to three-to-five years or, as

19   decided by the District Court, for a longer period at less than 100% disposable income) and

20   leaving the insider debt-equity capital structure to be addressed afterward.  Composition law, is

21   "an extension, adjustment, or accommodation of unsecured claims without disturbing… stock

22   interests," and "[c]omposition contemplates that the business proceeds with the eventual end of

23   rehabilitation."[90]  The "fair and equitable" composition of unsecured debts in Subchapter V ends

24   _____

[88] 7 Collier ¶1129.03[3] at 1129-77, n.12; §1191(b).

25

[89] *In re Acequia*, 787 F.2d 1352, 1364 (9th Cir.1986) (quoting 5 Collier ¶1129.03)) (emphasis
26   added); *In re Monarch Beach Venture, Ltd.*, 166 B.R. at 437   (quoting Collier ¶1129.03)
     ("treatment which allocates value to the class…"); Op.Br.49.

27   [90] *SEC v. U.S. Realty & Imp. Co.*, 310 U.S. 434, 464 (1940) (J. Roberts, dissenting) and *Lorber
         v. Vista Irr. Dist.*, 143 2d 282, 285 (9th Cir.1944)).

28

1    after the Commitment Period set forth in §1191(c)(2) (the eventual end of rehabilitation), and the

2    business thereafter proceeds with the insiders addressing their own debt-and-equity capital

3    structure.[91]

4        The District Court reasoned "… if Chapter 11 plans were truly limited to disposable

5    income and capped at five years, the Plan's provisions for Class 2 and 4 creditors would

6    contravene both requirements."[92]   As composition law, ***Debtor's Plan is a three-year plan***

7    because it provides non-insider Class 3 with three years of projected Disposable Income.[93]

8    Insider Classes 2 and 4 will not be paid anything for five years.[94]   The contrasting treatment

9    shows Class 3 will receive all Debtor's projected Disposable Income for a three-year

10   Commitment Period, while Classes 2 and 4 receive none.[95]   The insider-debt-capital structure is

11   left to address among insiders after the composition rehabilitation ends.

12       The Debtor acknowledges that not all Subchapter V plans are limited to five years.   A

13   plan may have multiple classes of creditors, including secured creditor classes, unsecured

14   creditor classes, accepting classes, and rejecting classes.[96]   Debtor's Plan is one such example

15   with some classes accepting and others rejecting the Plan.[97]   Even where multiple classes accept

16   a plan (thus, enabling the Court to confirm as to those accepting classes without resort to

17   §1191(b)), if only one class rejects, then the plan must be confirmed by §1191(b) because of that

18   one rejecting class, but the 3-to-5-year temporal limit of §1191(c)(2) applies only for treatment

19   of those specific classes confirmed pursuant to §1191(c)(2) while no temporal limit applies to

---

[91] *U.S. Realty & Imp. Co.*, 310 U.S. at 454; Ayers, <u>Rethinking Absolute Priority After Ahlers</u>, 87 Mich.L.Rev. 963, 977 (Apr. 1989)).

[92] ECF 946 (Decision) at 5 (ln.6-10).

[93] ECF 762 (FFCL) 33; ECF 657 (Plan) 20-21.

[94] ECF 762 (FFCL) 33; ECF 657 (Plan) 17, 22.

[95] ECF 762 (FFCL) 33.

[96] 11 U.S.C. §§ 1122 & 1123(a)(1) (designation of classes); 11 U.S.C. § 1126 (accepting and rejecting classes).

[97] ECF 762 (FFCL) 26; ECF 657 (Plan) 15-23.

1    treatment of accepting classes.[98] Furthermore, there is no temporal limit for secured creditor

2    cramdown.[99]

3            Debtor's Plan is a three-year composition law plan.  The Court must determine at what

4    point the composition plan ends such that Debtor's insiders retain their debt-and-equity structure

5    to address among the insiders after the composition ends.  In this particular case, on these facts,

6    what is "fair and equitable" is to end the Commitment Period at three years of Disposable

7    Income, and there are no uncodified aspects of "fair and equitable" to add to the treatment of

8    Class 3.    Although the District Court's interpretation of § 1191(c) provides the Court with

9    discretion to do so, under the particular facts of this particular case, "fair and equitable"

10   treatment of Class 3 merits neither property beyond the Commitment Period nor property beyond

11   Disposable Income. The Debtor's Plan does not unfairly discriminate by ***allocating*** all of

12   Debtor's projected Disposable Income for the Commitment Period to non-insider Class 3 and

13   leaving the insiders' debt-and-equity structure in Classes 4, 5, and 6 to address after the

14   composition ends.

15           It bears noting that non-insider Class 3 is paid first and paid in cash within three years of

16   the Plan's effective date, while insider Class 2 holds convertible notes meant to be converted to

17   equity, and the Class 2 and 4 maturity dates are extended for 5 years.[100] There is no guaranty that

18   Classes 2 or 4 will ever be paid by the time their claims mature or convert to equity.  Cash is

19   superior to promissory notes because the former is certain and the latter is speculative.[101]   The

20   suggestion that insiders' claims are being paid in full is wrong; rather, the insider claims are

21   being denied any recovery during this composition Plan.

22

23   [98] *See*, §1191(a) (no temporal limit); *see*, *In re Sisk*, 962 F.3d 1133, 1146 (9th Cir.2020) (no
24         minimum duration for consensual plans in Chapter 13 because Bankruptcy Code sets no
            such minimum, and §1322(b)(11) permits any provision not inconsistent with the code);
25          *see*, §1123(b)(6) (permitting any provision in plan not inconsistent with the code).

     [99] *See*, §1191(c)(1); *see*, *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639,
26         645 (2012) (specified cramdown treatment applies).

27   [100] ECF 657 (Plan) 17-22.

     [101] *Matter of Central R. Co. of New Jersey*, 579 F.2d 804, 812 n.18 (3d Cir.1978).
28

                                                  21

1

## V.    FURTHER APPEAL

In the event that there is another appeal on a plan confirmation order in this case, at the appropriate time, the Debtor intends to appeal (or cross-appeal) the Decision of the District Cout as the law of the case on Section 1191(c).

## VI.    CONCLUSION

**WHEREFORE,** the Debtor respectfully requests that this Court enter an order:

(1)    Confirming the Plan;

(2)    Amending the FFCL to address the District Court's interpretation of Section 1191(c) on remand; and

(3)    Granting such further and other relief as the Court deems just and proper.

Dated: March 10, 2026                    HOLOGENIX, LLC

                                         By:  ___/s/ John-Patrick M. Fritz_____
                                         RON BENDER
                                         JOHN-PATRICK M. FRITZ
                                         LEVENE, NEALE, BENDER,
                                         YOO & GOLUBCHIK L.L.P.
                                         Attorneys for Chapter 11
                                         Debtor and Debtor in Possession

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 2818 La Cienega Avenue, Los Angeles, CA 90034

**A true and correct** copy of the foregoing document **Debtor's Brief In Support Of Confirming Plan After Remand From The District Court** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On March 10, 2026, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On March 10, 2026 I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the `document is filed.

☐  Service information continued on attached page

**Honorable Barry Russell**
United States Bankruptcy Court
Central District of California
Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Suite 1660 / Courtroom 1668
Los Angeles, CA 90012

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on March 10, 2026  I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| March 10, 2026 | J. Klassi | /s/ J. Klassi |
|---|---|---|
| _Date_ | _Printed Name_ | _Signature_ |

1

- Todd M Arnold    tma@lnbyg.com
- Ron Bender    rb@lnbyg.com
- Thomas E Butler    butlert@whiteandwilliams.com, sullivann@whiteandwilliams.com;millnamowm@whiteandwilliams.com;panchavatis@whiteandwilliams.com
- Robert Carrasco    rmc@lnbyg.com, rmc@lnbyg.com
- Aaron E. De Leest    adeleest@marshackhays.com, adeleest@marshackhays.com,alinares@ecf.courtdrive.com
- Oscar Estrada    oestrada@ttc.lacounty.gov
- Theodore W Frank    frank@psmlawyers.com, knarfdet@gmail.com;navarro@parkermillsllp.com
- John-Patrick M Fritz    jpf@lnbyg.com, JPF.LNBYB@ecf.inforuptcy.com
- Michael S Greger    mgreger@allenmatkins.com, kpreston@allenmatkins.com
- Brian T Harvey    bharvey@buchalter.com, docket@buchalter.com;dbodkin@buchalter.com
- Gregory Kent Jones (TR)    gjones@sycr.com, smjohnson@sycr.com;C191@ecfcbis.com;cpesis@stradlinglaw.com
- Alphamorlai Lamine Kebeh    MKebeh@allenmatkins.com, mdiaz@allenmatkins.com
- Raffi Khatchadourian    raffi@hemar-rousso.com
- Tinho Mang    tmang@marshackhays.com, tmang@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@ecf.courtdrive.com
- Ron Maroko    ron.maroko@usdoj.gov
- Juliet Y. Oh    jyo@lnbyg.com, jyo@lnbyb.com
- Carmela Pagay    ctp@lnbyg.com
- Yvonne Ramirez-Browning    yvonne@browninglawgroup.com, veronica@browninglawgroup.com
- Kurt Ramlo    RamloLegal@gmail.com, kr@ecf.courtdrive.com,ramlo@recap.email
- James R Selth    jselth@yahoo.com, jselth@yahoo.com,maraki@wztslaw.com,sfritz@wztslaw.com,admin@wztslaw.com
- Zev Shechtman    Zev.Shechtman@saul.com, zshechtman@ecf.inforuptcy.com;hannah.richmond@saul.com;LitigationDocketing@saul.com
- Lindsey L Smith    lls@lnbyb.com, lls@ecf.inforuptcy.com
- Randye B Soref    rsoref@polsinelli.com, ccripe@polsinelli.com;ladocketing@polsinelli.com
- Heidi J Sorvino    sorvinoh@whiteandwilliams.com, millnamowm@whiteandwilliams.com;sullivann@whiteandwilliams.com;panchavatis@whiteandwilliams.com;butlert@whiteandwilliams.com
- Alan Stomel    alan.stomel@gmail.com, astomel@yahoo.com
- Annie Y Stoops    annie.stoops@afslaw.com, yvonne.li@afslaw.com;mia.ferguson@afslaw.com
- Nicole Sullivan    sullivann@whiteandwilliams.com, vulpioa@whiteandwilliams.com,arthura@whiteandwilliams.com
- Derrick Talerico    dtalerico@wztslaw.com, maraki@wztslaw.com,sfritz@wztslaw.com,admin@wztslaw.com
- John N Tedford    JNT@LNBYG.com, jnt@ecf.courtdrive.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
- Larry D Webb    Webblaw@gmail.com, larry@webblaw.onmicrosoft.com
- David Wood    dwood@marshackhays.com, dwood@ecf.courtdrive.com;lbuchananmh@ecf.courtdrive.com;spineda@ecf.courtdrive.com;alinares@ecf.courtdrive.com