ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
ROYE ZUR, State Bar No. 273875
  *rzur@elkinskalt.com*
LAUREN N. GANS, State Bar No. 247542
  *lgans@elkinskalt.com*
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400
Facsimile: 310.746.4499

Nicole A. Sullivan (pro hac vice)
sullivann@whiteandwilliams.com
Thomas E. Butler (pro hac vice)
butlert@whiteandwilliams.com
WHITE AND WILLIAMS LLP
810 Seventh Avenue, Suite 500
New York, New York 10019
(212) 631-4420

Attorneys for Creditor Multiple Energy
Technologies, LLC

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>HOLOGENIX, LLC,<br><br>        Debtor and Debtor in<br>        Possession. | Case No. 2:20-bk-13849-BR<br><br>Chapter 11 (Subchapter V)<br><br>**MULTIPLE ENERGY TECHNOLOGIES, LLC'S RESPONSE TO DEBTOR'S BRIEF IN SUPPORT OF CONFIRMING PLAN AFTER REMAND FROM THE DISTRICT COURT**<br><br>[Relates to Docket No. 1136]<br><br>**<u>Hearing:</u>**<br>Date:     May 26, 2026<br>Time:    10:00 a.m.<br>Place:   Courtroom 1668<br>            255 E. Temple St.<br>            Los Angeles, CA 90012 |

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................................1

II.   ARGUMENT ......................................................................................................................2

    A.    The Mandate Doctrine Precludes Confirmation of the Reversed Plan,
    which the District Court Already Rejected on Appeal ...............................................2

    B.    The Court Should Disregard the Debtor's Arguments Attacking the
    Correctness of the District Court's Decision .............................................................4

    C.    The District Court's Order Demonstrates that the Reversed Plan Cannot
    Be Confirmed Because It Unfairly Discriminates Against Class 3 ............................5

    D.    The Court Cannot Re-Confirm the Plan on the Existing Record ...............................9

    E.    The District Court's Remand Requires Consideration of Conversion or
    Dismissal of this Case ..............................................................................................12

III.  CONCLUSION ................................................................................................................14

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

**TABLE OF AUTHORITIES**

**Page(s)**

CASES

*Acequia v. Clinton (In re Acequia, Inc.)*,
 787 F.2d 1352 (9th Cir. 1986)................................................................................. 10

*Colville Confederated Tribes v. Walton*,
 752 F.2d 397 (9th Cir. 1985)................................................................................. 4, 5

*Coffelt v. NVIDIA Corp.*,
 No. 16-00457, 2016 WL 7507763 (C.D. Cal. June 21, 2016), *aff'd*, 680 F.
 App'x 1010 (Fed. Cir. 2017)...................................................................................11

*Firth v. U.S.*,
 554 F.2d 990 (9th Cir. 1977)................................................................................. 3, 4

*In re Am. Cap. Equipment, Inc.*,
 405 B.R. 415 (Bankr. W.D. Penn. 2009) .................................................................13

*In re Ambanc La Mesa Ltd. P'ship*,
 115 F.3d 650 (9th Cir. 1997).................................................................................... 7

*In re Bashas' Inc.*,
 437 B.R. 874 (Bankr. D. Ariz. 2010) .......................................................................10

*In re Curiel*,
 651 B.R. 548 (9th Cir. BAP 2023)............................................................... 10, 13, 14

*In re Greer*,
 60 B.R. 547 (Bankr. C.D. Cal. 1986) ........................................................................ 7

*In re Las Vegas Monorail Co.*,
 462 B.R. 795 (Bankr. D. Nev. 2011).........................................................................11

*In re Pearl Resources LLC*,
 622 B.R. 236 (Bankr. S.D. Tex. 2020).......................................................................8

*In re Premiere Network Servs., Inc.*,
 No. 04-33402, 2005 WL 6443624 (Bankr. N.D. Tex. July 1, 2005) ...........................11

*In re Sanford Fork & Tool Co.*,
 160 U.S. 247 (1895) ................................................................................................ 3

*In re Trinity Family Prac. & Urgent Care PLLC*,
 661 B.R. 793 (Bankr. W.D. Tex. 2024) .....................................................................8

*In re Woodbrook Assocs.*,
 19 F.3d 312 (7th Cir. 1994).................................................................................. 7, 13

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

*Johnson v. First Nat'l Bank of Montevideo, Minn.*,
    719 F.2d 270 (8th Cir. 1983) .................................................................................... 8, 10

*Matter of Beverly Hills Bancorp*,
    752 F.2d 1334 (9th Cir. 1984) ........................................................................................ 3

*Matter of Moore*,
    81 B.R. 513 (Bankr. S.D. Iowa 1988) ........................................................................... 11

*Thornton v. Carter*,
    109 F.2d 316 (8th Cir. 1940) ......................................................................................... 3

*United States v. Thrasher*,
    483 F.3d 977 (9th Cir. 2007) ......................................................................................... 3

*Universal Elecs. Inc. v. Roku, Inc.*,
    No. 18-01580, 2019 WL 1877616 (C.D. Cal. Mar. 5, 2019) ....................................... 11

**STATUTES**

11 U.S.C. § 1129(a)(7)(A) ........................................................................................... 9, 11, 12

11 U.S.C. § 1129(a) ............................................................................................................. 10

11 U.S.C. § 1191 ...................................................................................................... *passim*

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

Creditor Multiple Energy Technologies, LLC ("MET") hereby submits this Response to the *Debtor's Brief In Support of Confirming Plan After Remand from the District Court* (the "Brief") [Docket No. 1136] as follows.

## I.    INTRODUCTION

This case returns to the Court on remand in a posture that makes no sense.  The Debtor asks this Court to re-confirm a plan in 2026 based on a record developed in 2022, using stale projections that already have been proven wrong.  Confirmation in such a context is not simply unusual, it is impossible.  Confirmation requires a present-tense showing based on current facts or financials. Yet the Debtor offers no updated evidence of its financial condition and instead asks the Court to rely on numbers that no longer reflect reality.  Worse, the existing record affirmatively demonstrates that the Debtor has materially underperformed its own projections.  Indeed, by the end of September 2025, the Debtor had only approximately $84,000 in cash on hand, far below its projected position under the plan, and that figure was reached only after the Debtor received $1.3 million in equity infusions from its insider, Seth Casden.  Even with those extraordinary infusions, the Debtor could not meet its own projections.  The Court cannot determine feasibility or satisfy the best-interests test by looking backward at numbers that have already been disproven. What the Debtor proposes – confirmation based on obsolete and inaccurate financial data – defies both the statutory requirements and basic logic.  It cannot be done.

Even if the Court were to evaluate the Reversed Plan based solely on the existing record, confirmation still fails.  The absence of any current evidence (and the fact that the Debtor's MORs paint a bleak picture) prevents the Court from making the findings required under sections 1129 and 1191, and the exiting record affirmatively demonstrates that the Debtor cannot satisfy those requirements.

Even putting aside these fatal defects, the plan cannot be confirmed under the governing legal standard.  The District Court rejected the framework on which the Debtor relies and held that the plan (the "Reversed Plan") must be evaluated based on its full duration and all of its provisions, not limited to three to five years of projected disposable income.  Under that standard, the Reversed Plan fails.  Rather than propose a new, confirmable plan that addresses the errors identified by the

District Court or admit it cannot propose such a plan, the Debtor asks this Court to re-confirm the very plan that was reversed on appeal, relying on the same flawed assumptions and the same discriminatory structure. That request is foreclosed by the mandate rule and, in any event, fails on the merits. When the Plan is evaluated as required, across its full term, it is clear that it unfairly discriminates by providing insiders a path to full recovery (plus interest) while capping Class 3 at a fraction of its claims.

The Debtor's post-2022 performance confirms that this is not a case where additional time or another iteration of the same plan will lead to a confirmable result. The Debtor already has demonstrated, with the benefit of years of actual operations, that it cannot meet its own projections even with substantial insider support. This case already has provided the real-world test of feasibility, and the Debtor failed it. That reality forecloses any reasonable prospect of a successful reorganization.

The District Court's remand did not stop at confirmation. It also vacated this Court's denial of MET's motion to dismiss or convert, restoring the Court's obligation to determine whether this case should remain in Chapter 11 at all. As explained below, because the Reversed Plan is unconfirmable and no viable path to reorganization exists, conversion is not only appropriate, it is required.

After six years of litigation and multiple failed attempts at confirmation, further delay would serve only to prejudice creditors while allowing the Debtor to continue in its endless pursuit to confirm a plan that impermissibly favors its insiders and unfairly discriminates against its unsecured creditors. The Court should deny re-confirmation of the Reversed Plan and grant MET's motion to dismiss or convert this case to Chapter 7 so that an independent trustee can administer the estate for the benefit of creditors.

## II.   ARGUMENT

### A.   The Mandate Doctrine Precludes Confirmation of the Reversed Plan, which the District Court Already Rejected on Appeal

The Court should reject the Debtor's invitation to re-confirm the Reversed Plan, as doing so clearly would violate the mandate rule. The mandate rule "is similar to, but broader than, the law

2

of the case doctrine." *United States v. Thrasher*, 483 F.3d 977, 982 (9th Cir. 2007) (internal quotations and citation omitted). That rule provides that, "[o]n remand, a trial court may not deviate from the mandate of an appellate court. . . . When a case has been decided by an appellate court and remanded, the court to which it is remanded must proceed in accordance with the mandate and such law of the case as was established by the appellate court." *Matter of Beverly Hills Bancorp*, 752 F.2d 1334, 1337 (9th Cir. 1984) (citations and quotation omitted). "The Supreme Court long ago emphasized that when acting under an appellate court's mandate, an inferior court 'cannot vary it, or examine it for any other purpose than execution; or give any other or further relief; or review it, even for apparent error, upon any matter decided upon appeal; or intermeddle with it, further than to settle so much as has been remanded.'" *Id.* (quoting *In re Sanford Fork & Tool Co.*, 160 U.S. 247, 255 (1895)). The mandate rule leaves the Court "without power to do anything which is contrary to either the letter or spirit of the mandate construed in the light of the opinion of [the] court deciding the case." *Firth v. U.S.*, 554 F.2d 990, 994 n.3 (9th Cir. 1977) (quoting *Thornton v. Carter*, 109 F.2d 316, 319-20 (8th Cir. 1940)).

The Debtor's invitation to re-confirm the Reversed Plan asks this Court to effectively ignore the District Court's ruling. The District Court did not remand this case for this Court to reconsider confirmation under the same analytical framework. It reversed because it concluded that this Court applied an incorrect legal standard – namely, one that improperly limited certain creditor recovery to projected disposable income over the three-to-five-year commitment period – and confined its confirmation analysis to that timeframe. The District Court held that section 1191(c) is non-exhaustive, explaining that "the use of the word 'includes' indicates that the list is not exhaustive," and that the Court was required to evaluate the Plan "during the entire duration of the Plan – not just the five years after confirmation." Order at 4:22-23, 5:4-5. It therefore concluded that the Court erred in finding that creditors were entitled to only "three-to-five years' of projected Disposable Income," which in turn led the Court to "overlook a substantial part of the Plan, including the provisions entitling certain creditors to 100% recovery." Order at 6:14-17.

Despite the District Court's clear conclusion that this Court "erred in finding that [MET] was entitled to only 'three-to-five years' of projected Disposable Income'" (Order at 6:14-15), the

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

Debtor asks this Court to repeat the error and re-confirm the Reversed Plan, which still provides that MET will be entitled to no more than "three-to-five years' of projected Disposable Income." Doc. 657 at []. The Debtor's argument disregards the District Court's holdings and instead reasserts the very limitation the District Court rejected.  The Debtor continues to contend that the Reversed Plan is "fair and equitable" because it provides all projected disposable income during the three-year commitment period and that no additional recovery is required. That is precisely the reasoning the District Court found erroneous.  The mandate rule specifically prohibits this.

The violation is particularly clear in the Debtor's attempt to confine the analysis to the commitment period and to disregard distributions occurring later in the plan. The District Court expressly held that the Court must evaluate the plan over its full duration.  By focusing exclusively on the first three years, and by arguing that payments beyond that period are irrelevant, the Debtor invites the Court to repeat the same error that required reversal.

In short, the District Court remanded for application of a different legal framework – one that requires consideration of all plan provisions and the full duration of the Reversed Plan. Debtor's arguments otherwise seek to confirmation on the very limitation the District Court rejected. The Bankruptcy Court should decline that invitation and apply the mandate as written.

**B.** **The Court Should Disregard the Debtor's Arguments Attacking the Correctness of the District Court's Decision**

The Debtor devotes the majority of its brief – 14 pages – to arguing that the District Court's decision was erroneous.  The Court should disregard the entirety of this argument because it is neither relevant nor proper.  The Court is "obligated to carry out the mandate [of the District Court] 'whether correct or in error.'" *Colville Confederated Tribes v. Walton*, 752 F.2d 397, 404 (9th Cir. 1985) (quoting *Firth*, 554 F.2d at 994).  Compliance with the District Court's ruling is before this Court, not its correctness.

The impropriety of Debtor's argument is amplified by the fact that it is largely a verbatim reproduction of the Debtor's appellate brief in the Ninth Circuit.[1]  Substantial portions of the

---

[1] *See* MET's concurrently-filed Request for Judicial Notice ("RJN"), Ex. 2, Appellant's Opening Brief filed in 9th Cir. Case No. 24-2881.

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

Debtor's discussion – including its extended historical analysis of "fair and equitable," its statutory construction arguments, and its policy critiques – are copied nearly word-for-word from that appellate brief.[2]  Although the Debtor has selectively omitted a handful of statements explicitly criticizing the District Court (*e.g.*, "[f]rom a practical perspective, the District Court's interpretation of §1191(c)(2)(A) is not workable"; and "[t]he District Court's interpretation renders the Congressional limit 'not to exceed 5 years' practically meaningless . . . ."), those omissions do not alter the substance of the argument.  The thrust of the Debtor's brief remains the same: to relitigate the statutory interpretation that the District Court already decided.

What the Debtor proposes is precisely what the mandate rule forbids.  On remand, the Court may not reconsider issues "expressly or impliedly disposed of on appeal," nor may a party evade the mandate by repackaging rejected arguments in slightly different form.  *Colville*, 752 F.2d at 404.  Yet that is exactly what Debtor attempts here - reasserting, at length, the same interpretive arguments the District Court rejected and inviting this Court to disregard that ruling on the grounds that it was incorrect in the first instance.

This Court should decline the Debtor's invitation.  The District Court already has determined the governing legal framework, including that section 1191(c) is non-exhaustive and that the plan must be evaluated over its entire duration, not limited to the three-to-five-year commitment period.  That framework is binding on remand regardless of whether the Court believes it is correct.  The Debtor's disagreement with it is should not and cannot be relitigated here.

**C.    The District Court's Order Demonstrates that the Reversed Plan Cannot Be Confirmed Because It Unfairly Discriminates Against Class 3**

The Court cannot re-confirm the Reversed Plan because the analysis adopted by the District Court's decision demonstrates that it unfairly discriminates against Class 3.  In its order reversing confirmation, the District Court resolved the governing legal standard, explaining that this Court applied an incorrect standard in evaluating whether the Reversed Plan is "fair and equitable," rejecting the Debtor's premise that creditor recovery is limited only to projected disposable income

---

[2] *Compare* Brief at 4-16 with RJN Ex. 2 at 19-38.

5

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

over 3-5 years, and instructing this Court to view the plan based on its entire duration and all of its provisions: "Thus . . . the Bankruptcy Court [is] required to consider whether M[ET]'s recovery was unfairly discriminatory in light of the disposition of assets <u>beyond disposable income</u>."[3] Order at 5:1-3 (emphasis added). In doing so, the District Court rejected the argument that compliance with the disposable income requirement alone is sufficient to satisfy section 1191(b). Indeed, the District Court expressly left open the issue of whether the Reversed Plan satisfies the additional and independent requirement that it "not discriminate unfairly."

Under the standard articulated by the District Court, which the Court is bound to follow, that inquiry must be conducted by examining the plan as a whole, and not merely through the artificially narrow lens of a three-to-five-year commitment period. The District Court made clear that creditors are not merely entitled to "no more than" that limited stream of disposable income, and that this Court erred by confining its analysis to that timeframe. Accordingly, any evaluation of unfair discrimination must take into account the full structure of the plan, including distributions that occur after the commitment period and the total treatment afforded to each class over the life of the plan.

Applying the standard mandated by the District Court demonstrates that the Reversed Plan cannot be confirmed because it is clearly unfairly discriminatory. Class 3 creditors are capped at a nominal recovery of only 12.5%, subject to further reduction through the Debtor's discounted "early payment" option. By contrast, insider classes (Classes 2 and 4) retain the right to be paid 100%, with interest, over time. That disparity – which the District Court characterized as "dramatic" (Order at 6:17-20) – is not hypothetical or speculative, but instead mandated by the terms of the plan. In other words, in exchange for waiting just two more years than non-insiders, insiders are promised 100% rather than a paltry 12.5%. That insider recoveries are deferred beyond the commitment period does not eliminate the disparity; it only postpones it. In sum, when the Reversed Plan is evaluated, as required by the District Court, across its full duration, it is clear that similarly-situated

---

[3] *See*, *e.g.*, Order at 4:11-18 ("[T]he [Bankruptcy] Court reasoned that the creditors' recovery was limited to disposable income. . . . [and] concluded that it could only consider provisions in the Plan for a five year period following confirmation. . . . This appears to reflect an incorrect application of the law."); *id.* at 5:1-5 ("Thus, not only was the Bankruptcy Court required to consider whether Met's recovery was unfairly discriminatory in light of the disposition of assets beyond disposable income, it was also required to consider how Met's recovery compared to the recovery of other creditors during the entire duration of the Plan – not just the five years after confirmation.").

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

6

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

unsecured creditors are treated fundamentally differently, with insiders receiving more than 100% while non-insiders receive a small fraction of their claims.

The Bankruptcy Code does not permit this result. *See In re Woodbrook Assocs.*, 19 F.3d 312, 317-20 (7th Cir. 1994) (finding unfair discrimination where unsecured creditors received 5% while insiders were paid in full); *In re Ambanc La Mesa Ltd. P'ship*, 115 F.3d 650, 656 (9th Cir. 1997). Even assuming the Reversed Plan satisfies section 1191(c)'s disposable-income requirement (which it does not), it independently fails section 1191(b) because it provides fundamentally different recoveries to similarly situated unsecured creditors without a legitimate basis.

Debtor's proffered justifications for the discrimination depend entirely on the very framework the District Court rejected, as well as on the unsupported premise that "Subchapter V is composition law," Brief at 19:15-16, and that "insider claims are being denied any recovery during this composition Plan." Brief at 2:20-21. The Debtor repeats the "composition law/plan" fallacy numerous times in the Brief, but fails to provide a single case cite in support of it. Instead, Debtor bases this manufactured argument on a handful of outdated and irrelevant cases decided under the former Bankruptcy Act. Those cases are inapposite. They arose under a materially different statutory scheme that predates the Bankruptcy Code and, more importantly, predates Congress's enactment of Subchapter V and section 1191(b)'s express requirement that a plan "not discriminate unfairly." Whatever relevance those decisions may have in describing earlier so-called "composition" plans, they cannot override the plain language of the current statute or supply a limitation that Congress did not adopt.[4]

---

[4] The Debtor's reliance on *In re Greer*, 60 B.R. 547 (Bankr. C.D. Cal. 1986), for the proposition that "Congress set a very specific 3-to-5-year Commitment Period [in Subchapter V], aware that composition plans of seven or ten years were akin to 'involuntary servitude,'" Brief at 14:13-15, is misplaced. *Greer* is a Chapter 13 case – an entirely different statutory regime applicable only to individual debtors. The concerns referenced in *Greer* regarding extended repayment plans and "involuntary servitude" arise in the context of compelling <u>individual wage earners</u> to devote future income over time. Those concerns have no application to a corporate debtor such as an LLC, which cannot be subjected to "involuntary servitude" in any meaningful sense. Nor does *Greer* support the Debtor's attempt to impose a temporal limitation on Chapter 11 plans. As the District Court recognized, while Chapter 13 contains an express three-to-five-year commitment period, Chapter 11 does not. Order at 5:26-27. That distinction is deliberate and dispositive. The absence of a comparable limitation in Chapter 11, and by extension Subchapter V, confirms that Congress did not intend to impose a hard temporal cap on plan payments. Debtor's effort to import such a limitation from Chapter 13 through inapposite authority is therefore unavailing. In short, *Greer* does not support the Debtor's argument; it underscores why that argument fails. The statutory scheme governing individual debt adjustment plans cannot be used to rewrite the requirements applicable to Chapter 11 plans, particularly where, as here, the District Court already has rejected the very

Congress's treatment of section 1191(b) confirms that no special "composition law" standard applies to unfair discrimination in Subchapter V. When enacting Subchapter V, Congress expressly modified the meaning of "fair and equitable" by defining that term in section 1191(c). It did not, however, alter or redefine the separate requirement that a plan "not discriminate unfairly." That omission is significant. Where Congress chooses to revise one component of a statutory standard but leaves another unchanged, courts must presume the unchanged language retains its established meaning. *Johnson v. First Nat'l Bank of Montevideo, Minn.*, 719 F.2d 270, 277 (8th Cir. 1983) (stating that Congress acts with knowledge of existing law, and that "absent a clear manifestation of contrary intent, a newly-enacted or revised statute is presumed to be harmonious with existing law and its judicial construction"). Thus, while section 1191(c) provides a definition of "fair and equitable" tailored for Subchapter V cases, the prohibition on unfair discrimination continues to be governed by the well-developed Chapter 11 framework. *In re Trinity Family Prac. & Urgent Care PLLC*, 661 B.R. 793, 812 (Bankr. W.D. Tex. 2024) ("[T]he standards for unfair discrimination under § 1191(b) are the same as under § 1129(b)(1) . . . ."); *In re Pearl Resources LLC*, 622 B.R. 236, 265 (Bankr. S.D. Tex. 2020) ("[S]ubchapter V does not affect any change in the unfair discrimination requirement [of section 1129(b)(1)]. . . ."). Debtor's attempt to invent a different, "composition"-based standard for unfair discrimination finds no support in the statute and would effectively rewrite section 1191(b) by narrowing a requirement Congress deliberately left intact.

Additionally, the Debtor's argument that its "Plan is a three-year composition law plan" (Brief at 21:3) is not only inconsistent with the terms of the Reversed Plan itself, but also has been rejected by the District Court. This is not a case in which equity holders simply retain an interest to be addressed later. The Reversed Plan expressly provides that insider creditors in Classes 2 and 4 will be paid **100% of their unsecured claims, with interest**, over time, while Class 3 is capped at approximately 12.5%. [Docket No. 657 at 15-16, 18-20.] It does not merely allow insiders to retain their equity interests in the Debtor or "subordinate" their unsecured claims. The Debtor cannot

---

limitation Debtor seeks to impose.

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

dismiss the Reversed Plan's mandate for full payment of insider claims by characterizing the treatment of those claims as being addressed sometime after the plan is concluded. The treatment of insider claims is part of the Reversed Plan itself.[5]

Indeed, the District Court already foreclosed the analytical game in which the Debtor appears to be engaged. The District Court held that the Reversed Plan must be evaluated based on its entire duration – which the District Court explicitly stated includes the period in which payments are made to Classes 2 and 4 – and not only the duration of the "Commitment Period." The Debtor's manufactured and unsupported "composition law" argument is nothing more than an attempt to repackage the same framework explicitly rejected by the District Court.

When the full Reversed Plan is considered, as required by the District Court and the law of the case, the disparity is stark: Class 3 is capped at a fractional recovery of at most 12.5% (and more likely less than 5%), while insiders in Classes 2 and 4 retain the right to be paid 100%. Deferring those payments does not eliminate the discrimination or make it "fair." Applying the mandatory standard, it is clear that the Reversed Plan discriminates unfairly against Class 3 and cannot be re-confirmed.

**D.    <u>The Court Cannot Re-Confirm the Plan on the Existing Record</u>**

Even if the Court were to evaluate the Plan based solely on the existing record, confirmation still fails. The Debtor bears the burden of establishing feasibility and compliance with section 1129(a)(7), and the absence of current evidence prevents the Court from making those findings. Moreover, the existing record affirmatively demonstrates that the Debtor's projections were materially inaccurate. Thus, whether viewed as a failure of proof or on the merits of the existing record, the Reversed Plan cannot be confirmed. Following remand, the Court cannot proceed with blinders and assess confirmation based on stale, four-year-old facts and evidence. The Bankruptcy Code requires a present-tense inquiry.

---

[5] The Reversed Plan does not, as the Debtor appears to suggest, treat insider claims as part of the Debtor's equity structure. Brief at 3:13, 19:20, 21:3-14. Instead, it preserves insider claims as debt and expressly provides that they will be paid 100% of their unsecured claims, with interest, over time. That is not equity treatment; it is full creditor recovery. The Debtor cannot invoke the language of "capital structure" to obscure the reality that insiders are being afforded preferential treatment as creditors, not residual treatment as equity holders. The Reversed Plan's structure therefore reinforces, rather than mitigates, the unfair discrimination against Class 3.

9

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

First, the Reversed Plan is not feasible on the current record. Feasibility is a "critical factor" for every plan. *In re Curiel*, 651 B.R. 548, 560 (9th Cir. BAP 2023). In fact, it is the most important element of section 1129(a). *Id.* (quoting *In re Bashas' Inc.*, 437 B.R. 874, 915 (Bankr. D. Ariz. 2010)). A plan proponent must demonstrate that the plan "has a reasonable probability of success." *Id.* (quoting *Acequia v. Clinton (In re Acequia, Inc.)*, 787 F.2d 1352, 1364 (9th Cir. 1986)). The Debtor bears the burden of presenting concrete evidence to establish that it can make plan payments. *Id.* at 562-63.

The Debtor cannot meet this burden. The Reversed Plan requires that Classes 2 and 4 be paid a total of approximately $4,000,000 by September 30, 2027, but there is no evidence that the Debtor could afford to make such payments. [Docket No. 657 at 15-16, 20.] The Reversed Plan's projections (Exhibit 2 thereto) extend only through September 2025, well short of the relevant period if the Reversed Plan were reconfirmed in 2026. There is no evidence whatsoever addressing the Debtor's ability to perform through the critical years that follow.

Worse, the Debtor's actual performance already has seriously undermined the reliability of its projections. The Debtor had projected to have cash on hand of $345,914.98 at the end of year three of the Reversed Plan (*i.e.*, September 2025), after paying nearly $600,000 in professional fees and $500,000 to Class 3 creditors. [Docket No. 657, Ex. 2, at 37 of 52.] In reality, as of that same period, the Debtor had only $84,579.74, before making any payments to unsecured creditors. [Docket No. 1113, at 2 of 41.] And even that figure is misleading, because absent Casden's $1.3 million of equity infusions in July, September, and October of 2023 as well as in April and July of 2025,[6] the Debtor would not have maintained even that level of liquidity. The facts confirm that the Debtor's projections are not merely outdated – they are provably unreliable. On this record, the Debtor cannot establish a reasonable probability that it can satisfy nearly $4 million of future obligations while also providing the required disposable income to Class 3 creditors. The Court cannot simply disregard this, as it possesses a "mandatory, independent duty to review plans and

---

[6] [Docket Nos. 900 (July 2023 MOR); 903 (September 2023 MOR); 917 (October 2023 MOR); 1068 (April 2025 MOR); and 1080 (July 2025 MOR).] Of the $1.3 million, Casden transferred $650,000 during his own bankruptcy case without court approval or disclosure.

ensure they comply with the requirements of section 1129" and that "independent duty will come into play often with respect to the feasibility requirement." *In re Las Vegas Monorail Co.*, 462 B.R. 795, 798 (Bankr. D. Nev. 2011) (quoting 7 Collier on Bankruptcy ¶ 1129.05[1][e]). A feasibility finding cannot rest on outdated projections that have already proven materially inaccurate.

Second, the Reversed Plan cannot be confirmed unless it meets the "best interests of creditors" test based on current evidence. Section 1129(a)(7) requires the Debtor to show that each impaired non-accepting creditor "will receive or retain under the plan on account of such claim or interest property of a value, **as of the effective date of the plan**, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title **on such date** . . . ." 11 U.S.C. § 1129(a)(7)(A) (emphasis added). By its plain terms, section 1129(a)(7) requires a **current** liquidation analysis as of the effective date of the plan, not one frozen in time nearly four years earlier. *See In re Premiere Network Servs., Inc.*, No. 04-33402, 2005 WL 6443624, at *3 (Bankr. N.D. Tex. July 1, 2005) (finding that best interests of creditors test cannot be met without introduction of sufficient current financial information); *Matter of Moore*, 81 B.R. 513, 516 (Bankr. S.D. Iowa 1988) ("The plan proponent must introduce sufficient current financial information about the debtor, the assets and liabilities and the prospects to establish that the standard has been satisfied.").

Proceeding based on the existing record does not satisfy the "best interests of creditors" test. The Reversed Plan was evaluated based on evidence from 2022, but confirmation now must be based on conditions as they exist at the time of the anticipated effective date in 2026. As such, the Debtor must provide updated evidence sufficient to demonstrate compliance with section 1129(a)(7) as of the anticipated effective date (sometime in 2026), including, at a minimum, analysis of material post-appeal developments, such as the value of the Debtor's newly-issued patent.[7] Without such evidence, the Court cannot determine whether creditors are receiving at least as much as they would

---

[7] *See* RJN, Ex. 1, U.S. Pat. No. 12,514,179 B2 (issued Jan. 6, 2026). Judicial notice of patent prosecution history files is regularly permitted. *See, e.g.*, *Coffelt v. NVIDIA Corp.*, No. 16-00457, 2016 WL 7507763, at *2 (C.D. Cal. June 21, 2016), aff'd, 680 F. App'x 1010 (Fed. Cir. 2017). Additionally, courts regularly take judicial notice of public documents from the United States Patent and Trademark Office. *See, e.g., Universal Elecs. Inc. v. Roku, Inc.*, No. 18-01580, 2019 WL 1877616, at *1 n.1 (C.D. Cal. Mar. 5, 2019).

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

11

in a present-day Chapter 7 liquidation, as the statute requires.

The Debtor's fallback assertion that it will "pay the hypothetical liquidation amount to Class 3" (Brief at 19:1-3) does not cure this defect. To the contrary, it underscores it. The Debtor's statement effectively concedes that the Reversed Plan, as written, does not satisfy section 1129(a)(7). And it is, in any event, meaningless absent a current liquidation analysis. The "hypothetical liquidation amount" is not a fixed figure – it must be determined as of the effective date based on current information. Without updated evidence establishing that amount, the Debtor's promise is illusory and cannot satisfy the "best interests of creditors" test.

In sum, the Court cannot re-confirm the Reversed Plan because the existing record is woefully lacking in current or reliable information. This Court is not an appellate court, and it is not confined to a particular record. To the contrary, the Court is being asked in 2026 to confirm a plan originally proposed in 2022 that is based on 2022 numbers. The Court has an independent duty to ensure that the applicable requirements of sections 1129 and 1191 are met. On this record, the Court cannot determine that the Reversed Plan is feasible or that it complies with section 1129(a)(7). As such, it cannot and should not re-confirm the Reversed Plan.

**E.    The District Court's Remand Requires Consideration of Conversion or Dismissal of this Case**

The District Court did not merely vacate confirmation of the Debtor's plan; it also vacated this Court's denial of MET's motion to dismiss or convert [Docket No. 457], returning that issue for further consideration on remand. Order at 6:25-7:1. The District Court specifically noted "Appellee does not contest that if the Plan were not confirmable, it would have been error to deny the motion to dismiss." *Id.* The District Court's ruling necessarily restores to this Court the affirmative obligation to determine whether this case should remain in Chapter 11 at all.

At the hearing held on February 17, 2026, MET squarely raised that issue and urged the Court to address conversion.[8] . Specifically, MET argued that "there are arguments for converting this case, just based on what's happened over the last four years," and proposed that the Court

---

[8] *See* RJN Ex. 4, Feb. 17, 2026 Hr'g Tr., at 21:16-21.

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

"simply set an OSC" so the parties could brief whether to convert, confirm, or require a new plan.[9]. The Court acknowledged that possibility, noting that such arguments "may be right," but deferred ruling and instead directed the parties to brief confirmation issues under the District Court's mandate.[10]

Critically, nothing in the District Court's remand requires this Court to reconsider confirmation in isolation. To the contrary, by vacating the denial of the motion to dismiss, the District Court necessarily required this Court to revisit whether this case should proceed in Chapter 11 at all. That inquiry cannot be divorced from the issues now before the Court. As the Court initially recognized at the hearing, the question whether "things have changed" and whether the Reversed Plan remains viable goes directly to whether the case can proceed on its current trajectory.[11]

As demonstrated in this brief, the answer is "no." The Debtor's plan is unconfirmable under the District Court's governing standard, and the Debtor's actual performance since 2022 (as evidenced by its MORs) confirms that reorganization is not feasible. *Curiel*, 651 B.R. at 564 ("MORs are recognized as 'the life blood' of chapter 11, enabling creditors to keep tabs on the debtor's post-petition operations. Courts regularly scrutinize the debtor's MORs to gauge the feasibility of a proposed plan.") (citations and quotation omitted). Reliance on continued equity infusions from Casden (as it received $1.3 million since 2023) does not make the Reversed Plan feasible. *Id.* at 565 ("Voluntary plan contributions from friends and relatives of the debtor typically are viewed with skepticism and are disfavored"). Where there is no reasonable prospect of confirming a plan, the Bankruptcy Code does not permit the case to remain in Chapter 11 indefinitely. *See In re Am. Cap. Equipment, Inc.*, 405 B.R. 415, 426-27 (Bankr. W.D. Penn. 2009) (denying confirmation and converting case to Chapter 7 after debtor had multiple opportunities to confirm plan over five to six years and failed), *aff'd*, 688 F.3d 145 (3d Cir. 2012); *see also Woodbrook Assocs.*, 19 F.3d at 322 (affirming dismissal of Chapter 11 case after debtor "had taken

---

[9] *Id.* at 22:3-9

[10] *Id.* at 20:9-10, 12-18; *id.* at 26-27.

[11] *Id.* at 20:12-18.

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

two bites at the apple and each time took a risk in formulating a plan that bordered on the fine line of unfair discrimination and feasible reorganization"). The District Court's remand of the dismissal motion requires this Court to confront that reality.

Accordingly, the Court should deny confirmation and convert this case to Chapter 7 so that an independent trustee can administer the estate for the benefit of creditors.

## III.    CONCLUSION

For all of the foregoing reasons, the Court should decline the Debtor's invitation to "re-confirm" the Reversed Plan and should instead convert this case to Chapter 7.

This case already has run its course in Chapter 11. The Debtor has been afforded multiple opportunities to propose a confirmable plan and has failed each time. The District Court reversed confirmation because the Reversed Plan is legally deficient. The Debtor now seeks to re-confirm that same plan based on stale evidence, incorrect legal assumptions, and projections that have already been disproven. There is no basis to believe that further proceedings will produce a different result.

Nor is there any credible evidence that the Debtor can successfully reorganize. The record demonstrates that the Debtor cannot sustain operations or meet its obligations without repeated support from its insider, Casden. The Debtor's liquidity shortfalls have already required substantial equity contributions totaling $1.3 million, without which it would not have maintained even minimal cash balances. As made clear by the BAP in *Curiel*, reorganization premised on such ad hoc insider funding is not feasible and does not reflect a viable going concern.

The District Court's remand makes clear that this Court must now confront not only whether the Reversed Plan can be confirmed, but also whether this case should proceed in Chapter 11. Because the Reversed Plan is unconfirmable under the governing legal standard and no viable alternative has been proposed, further delay would serve only to prejudice creditors while allowing insiders to continue to benefit from a process that has already been found legally deficient. The Court is not required to indulge repeated attempts to confirm an unconfirmable plan. Where reorganization is no longer reasonably possible, conversion is appropriate.

Accordingly, the Court should deny confirmation and convert this case to Chapter 7 so that

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

an independent trustee can administer the estate, investigate potential claims, and ensure that any remaining value is distributed in accordance with the priorities established by the Bankruptcy Code.

DATED: March 31, 2026                    WHITE AND WILLIAMS LLP


By: _____
    NICOLE A. SULLIVAN (pro hac vice)
    THOMAS E. BUTLER (pro hac vice)
    Attorneys for Creditor Multiple Energy
    Technologies, LLC


DATED: March 31, 2026                    ELKINS KALT WEINTRAUB REUBEN
                                         GARTSIDE LLP


By: _____
    ROYE ZUR
    LAUREN N. GANS
    Attorneys for Creditor Multiple Energy
    Technologies, LLC

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

15

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 10345 Olympic Boulevard, Los Angeles, California 90064.

A true and correct copy of the foregoing documents entitled (*specify*): **MULTIPLE ENERGY TECHNOLOGIES, LLC'S RESPONSE TO DEBTOR'S BRIEF IN SUPPORT OF CONFIRMING PLAN AFTER REMAND FROM THE DISTRICT COURT** will be served or were served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **March 31, 2026**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Todd M Arnold    tma@lnbyg.com**
- **Ron Bender    rb@lnbyg.com**
- **Thomas E Butler    butlert@whiteandwilliams.com, sullivann@whiteandwilliams.com;millnamowm@whiteandwilliams.com;panchavatis@whiteandwilliams.com**
- **Robert Carrasco    rmc@lnbyg.com, rmc@lnbyg.com**
- **Oscar Estrada    oestrada@ttc.lacounty.gov**
- **Theodore W Frank    frank@psmlawyers.com, knarfdet@gmail.com;navarro@parkermillsllp.com**
- **John-Patrick M Fritz    jpf@lnbyg.com, JPF.LNBYB@ecf.inforuptcy.com**
- **Michael S Greger    mgreger@allenmatkins.com, kpreston@allenmatkins.com**
- **Brian T Harvey    bharvey@buchalter.com, docket@buchalter.com;dbodkin@buchalter.com;pjolley@buchalter.com**
- **Gregory Kent Jones (TR)    gjones@sycr.com, smjohnson@sycr.com;C191@ecfcbis.com;cpesis@stradlinglaw.com**
- **Raffi Khatchadourian    raffi@hemar-rousso.com**
- **Tinho Mang    tmang@marshackhays.com, tmang@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@ecf.courtdrive.com;cmendoza@marshackhays.com**
- **Ron Maroko    ron.maroko@usdoj.gov**
- **Juliet Y. Oh    jyo@lnbyg.com, jyo@lnbyb.com**
- **Carmela Pagay    ctp@lnbyg.com**
- **Yvonne Ramirez-Browning    yvonne@browninglawgroup.com, veronica@browninglawgroup.com**
- **Kurt Ramlo    RamloLegal@gmail.com, kr@ecf.courtdrive.com,ramlo@recap.email**
- **Gregory M Salvato    gsalvato@salvatoboufadel.com, calendar@salvatolawoffices.com;jboufadel@salvatoboufadel.com;gsalvato@ecf.inforuptcy.com**
- **James R Selth    jselth@yahoo.com, jselth@yahoo.com,maraki@wztslaw.com,sfritz@wztslaw.com,admin@wztslaw.com**
- **Zev Shechtman    Zev.Shechtman@saul.com, zshechtman@ecf.inforuptcy.com;hannah.richmond@saul.com;LitigationDocketing@saul.com;Shelly.Guise@saul.com;Isaiah.Bribiesca@saul.com**
- **Lindsey L Smith    lls@lnbyb.com, lls@ecf.inforuptcy.com**
- **Randye B Soref    rsoref@polsinelli.com, ccripe@polsinelli.com;ladocketing@polsinelli.com**

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

- **Heidi J Sorvino     sorvinoh@whiteandwilliams.com,**
  **millnamowm@whiteandwilliams.com;sullivann@whiteandwilliams.com;panchavatis@whiteandw**
  **illiams.com;butlert@whiteandwilliams.com**
- **Alan Stomel     alan.stomel@gmail.com, astomel@yahoo.com**
- **Annie Y Stoops     annie.stoops@afslaw.com, yvonne.li@afslaw.com**
- **Nicole Sullivan     sullivann@whiteandwilliams.com,**
  **vulpioa@whiteandwilliams.com,arthura@whiteandwilliams.com**
- **Derrick Talerico     dtalerico@wztslaw.com,**
  **maraki@wztlfirm.com,sfritz@wztlfirm.com,admin@wztlfirm.com**
- **United States Trustee (LA)     ustpregion16.la.ecf@usdoj.gov**
- **Larry D Webb     Webblaw@gmail.com, larry@webblaw.onmicrosoft.com**
- **David Wood     dwood@marshackhays.com,**
  **dwood@ecf.courtdrive.com;lbuchananmh@ecf.courtdrive.com;spineda@ecf.courtdrive.com;alina**
  **res@ecf.courtdrive.com**
- **Roye Zur     rzur@elkinskalt.com,**
  **lwageman@elkinskalt.com;1648609420@filings.docketbird.com;rzur@ecf.courtdrive.com;lmasse**
  **@elkinskalt.com**

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) **March 31, 2026**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

The Honorable Barry Russell
United States Bankruptcy Court
255 E. Temple Street, Suite 1660 / Courtroom 1668
Los Angeles, CA 90012

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **March 31, 2026**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| March 31, 2026 | Lisa Masse | /s/ Lisa Masse |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                 **F 9013-3.1.PROOF.SERVICE**