ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
ROYE ZUR, State Bar No. 273875
  *rzur@elkinskalt.com*
LAUREN N. GANS, State Bar No. 247542
  *lgans@elkinskalt.com*
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400
Facsimile: 310.746.4499

Nicole A. Sullivan (pro hac vice)
sullivann@whiteandwilliams.com
Thomas E. Butler (pro hac vice)
butlert@whiteandwilliams.com
WHITE AND WILLIAMS LLP
810 Seventh Avenue, Suite 500
New York, New York 10019
(212) 631-4420

Attorneys for Creditor Multiple Energy
Technologies, LLC

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA,
## LOS ANGELES DIVISION

In re

HOLOGENIX, LLC,

        Debtor and Debtor in
Possession.

Case No. 2:20-bk-13849-BR

Chapter 11 (Subchapter V)

Hon. Barry Russell

**MULTIPLE ENERGY TECHNOLOGIES, LLC'S RESPONSE TO DEBTOR'S BRIEF IN SUPPORT OF GRANTING MOTION TO ASSUME EXECUTORY EMPLOYMENT CONTRACT WITH SETH CASDEN AFTER REMAND FROM THE DISTRICT COURT**

Hearing:
Date: May 26, 2026
Time: 10:00 a.m.
Place: Courtroom 1668
      255 East Temple Street
      Los Angeles, CA 90012

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

**TABLE OF CONTENTS**

|  |  | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | FACTUAL AND PROCEDURAL BACKGROUND | 1 |
| | A. Seth Casden's Employment Contract | 1 |
| | B. The Motion to Assume the Contract | 2 |
| | C. The Confirmation Hearing | 3 |
| | D. The Second Appellate Order Reversing the Court's Confirmation and Approval of the Motion to Assume Appellant's CEO's Employment Contract | 4 |
| III. | ARGUMENT | 4 |
| | A. Debtor's Reliance on Reversed Findings Contravenes the Appellate Mandate | 4 |
| | B. The Debtor Bears the Burden of Proving Both Good Faith and Inherent Fairness | 5 |
| | C. The Timing of the Employment Agreement Suggests Evasion, Not Good Faith | 7 |
| | D. The Debtor's Attempt to Re-Litigate the Applicable Legal Standard Violates the Law of the Case and the Appellate Mandate. | 8 |
| | E. The Debtor Fails to Meet the "Inherent Fairness" Standard | 10 |
| |    1. Debtor Fails to Prove the Compensation Is Fair to the Estate | 10 |
| |    2. The Lack of an Arm's-Length Process | 12 |
| |    3. The Proposed Cure Deferral is a Tactic, Not Evidence of an Arm's Length Transaction | 15 |
| IV. | CONCLUSION | 16 |

i

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Burt v. Irvine Co.*,
    237 Cal. App. 2d 828 (1st DCA 1964).................................................................................6

*Grogan v. Garner*,
    498 U.S. 279 (1991)...........................................................................................................6, 7

*Ien v. TransCare Corp. (In re TransCare Corp)*,
    638 B.R. 691 (Bankr. S.D.N.Y. 2022)..................................................................................6

*In re Adair*,
    965 F.2d 777 (9th Cir. 1992)..............................................................................................11

*In re Alcock*,
    50 F.3d 1456 (9th Cir. 1995)................................................................................................3

*In re Dunes Hotel Assocs.*,
    194 B.R. 994 (Bankr. D.S.C. 1995) .....................................................................................6

*In re Harford Sands Inc.*,
    372 F.3d 637 (4th Cir. 2004) ...............................................................................................6

*In re Marquam Inv. Corp.*,
    942 F.2d 1462 (9th Cir. 1991)...........................................................................................5, 6

*In re Pyramid Operating Authority, Inc.*,
    144 B.R. 795 (Bankr. W.D. Tenn. 1992) .............................................................................7

*Montana v. Talen Mont., LLC*,
    130 F.4th 675 (9th Cir. 2025)...............................................................................................8

*Pepper v. Litton*,
    308 U.S. 295 (1939) ..........................................................................................................5, 6

*Pereira v. Cogan*,
    267 B.R. 500 (S.D.N.Y. 2001) .............................................................................................6

*Solution Trust v. 2100 Grand LLC (In re AWTR Liquidation Inc.)*,
    548 B.R. 300 (Bankr. C.D. Cal. 2016).................................................................................6

**RULES**

11 U.S.C. § 365 .........................................................................................................................2

Fed. R. Evid. 702.....................................................................................................................15

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

Multiple Energy Technologies, LLC ("MET") respectfully submits its brief in response to Hologenix, LLC's ("Debtor") *Brief in Support of Granting Motion to Assume Executory Contract with Seth Casden After Remand From the District Court* (Doc. 1135) (the "Brief").

## I.    INTRODUCTION

The District Court's mandate was clear: the prior order authorizing the assumption of the Employment Agreement (defined below) is vacated, the business judgment rule is inapplicable, and the Debtor now bears the heavy burden of proving the "inherent fairness" of assuming Seth Casden's ("Casden") Employment Agreement.

Despite this clear instruction, the Debtor's Brief is a transparent attempt to evade the District Court's appellate mandate. Rather than presenting evidence of "inherent fairness" as required, the Debtor asks this Court to "adopt" findings that no longer exist from a reversed order violating the appellate mandate for a *de novo* review under the "inherent fairness" standard. Under the Ninth Circuit's "rigorous scrutiny" standard, Debtor has the affirmative burden to prove both good faith and objective fairness to creditors resulting from an arm's-length transaction. The Debtor has met neither. By failing to provide a historical baseline for compensation and ignoring the suspicious timing of the Employment Agreement executed after 17 years of having no such contract with Casden, the Debtor has failed to carry its burden. Because the Debtor offers only recycled arguments and no evidence of an arm's-length bargain, the Court must follow the District Court's mandate, apply *de novo* review, and deny the Motion.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Seth Casden's Employment Contract

Casden is the Debtor's Chief Executive Officer. Case No. 2:20-bk-13849-BR (the "Bankruptcy Docket") Doc. 609 at 14. According to Casden, he served as CEO to the Debtor "from 2004-2006, 2008-2017 and again since May 2019." *Id.* On May 1, 2019, the Debtor and Casden entered into the Employment Agreement, under which Debtor agreed to pay to Casden a base salary amount of $300,000 per year from May 1, 2019 to December 31, 2020. *Id.* at 15-16, 21-45. However, Casden has testified Hologenix was considering bankruptcy as early as March 2019. Bankruptcy Docket, Doc. 702 at 55-56 ("Q: So Hologenix was advised to file for bankruptcy in or around March

1

2019; is that correct? A: Multiple times. March, when the lawsuit was first filed …"). Additionally, beginning on June 1, 2021, and continuing every year thereafter, Casden's base salary increases under the Employment Agreement by 3% of the preceding year's base salary. Bankruptcy Docket, Doc. 609, at 15-16, 21. In addition to his base salary, the Employment Agreement provides a bonus structure whereby Casden is entitled to receive an annual bonus of up to 50% of his base salary if he meets certain benchmarks (defined as Personal Target, EBITDA Target, and Revenue Target). *Id.* at 33-34.

### B.    The Motion to Assume the Contract

On May 17, 2022 – more than five months after it proposed its Plan that assumed its CEO's contract and about one month before it modified its proposed Plan that still assumed its CEO's contract – Debtor, a corporate entity openly controlled by Casden, filed a motion (the "Assumption Motion") to assume the Employment Agreement under section 365 of the Bankruptcy Code. Bankruptcy Docket, Doc. 609. The Assumption Motion was accompanied by five (5) "rubber stamp" supporting declarations executed by multiple managers on the board of managers of the Debtor. Bankruptcy Docket, Docs. 610, 611, 625, 626, 627. Under the Assumption Motion, and accompanying declaration in support thereof, Casden asserts that the total cure amount required to be paid to Casden in order for the Debtor to assume the Employment Agreement is $459,346.50. Bankruptcy Docket, Doc. 609 at 8, 13, 18. Furthermore, the Debtor and Casden assert that $301,918 of this amount was already paid to Casden as of the date of the Assumption Motion (which funds Casden was ordered to return to the Debtor under the Compensation Order, Bankruptcy Docket, Doc. 714). *See id*. MET opposed the Assumption Motion. Bankruptcy Docket, Doc. 628.

On June 7, 2022, the Court held a hearing on the Assumption Motion (the "First Assumption Hearing"), which hearing was subsequently adjourned to August 9, 2022, to coincide with a hearing on confirmation of the Plan. Bankruptcy Docket, Doc. 647. On October 12, 2023, the same day the Confirmation Order was entered, the Court entered the Assumption Order allowing the Debtor to assume the Employment Agreement (that had already been assumed in the Plan that was confirmed). Bankruptcy Docket, Doc. 761.

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

2

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

### C.    The Confirmation Hearing

On August 9 and August 10, 2022, the Court held a hearing on confirmation of the Plan. Bankruptcy Docket, Docs. 735, 736. During the Confirmation Hearing, the Court heard MET's live witness cross-examination of Debtor's fact witness, Casden and financial expert, Howard Grobstein ("Grobstein"). Yet, although MET's expert witness, Thomas Pastore ("Pastore"), was present, he was neither cross-examined nor provided an opportunity to testify by the Court. *Id.* Despite not hearing Pastore testify, the Court stated: "[a]nd I really wanted to hear today and yesterday, my main concern was to hear the actual people that had not been -- … not only Casden, … [b]ut even more – well, equally important, from the experts." Bankruptcy Docket, Doc. 735 at 100:2-9. In fact, this Court noted "[a]nd I read of course the declarations of both the experts, but I – because the cross-examination, I got to hear actually in person, and quite thorough cross-examination of Mr. Grobstein." *Id.* at 100:18-21.

With respect to the Assumption Motion to assume Casden's Employment Agreement, the Court simply stated that assumption of the contract goes with the confirmation of the plan and "I plan on granting that motion, but my only question was, it seemed to me that was pretty much part of the plan. I don't want to be redundant, that's all." Bankruptcy Docket, Doc. 735 at 111:23-112:10

The Debtor lodged proposed findings of fact and conclusions of law ("FFCL") as well as an order confirming the Plan. Bankruptcy Docket, Docs. 740, 741. MET objected to both. Bankruptcy Docket, Docs. 752, 753. Thereafter, on October 12, 2022, the Court confirmed the Plan and largely adopted the Debtor's draft FFCL. Bankruptcy Docket, Doc. 762. A significant majority of the FFCL were never stated by the Court during the Confirmation Hearing but rather were taken verbatim from Debtor's 97-page proposed findings of fact and conclusions of law. *Compare* Bankruptcy Docket, Doc. 762 *with* Doc. 740; *See In re Alcock*, 50 F.3d 1456, 1459 n.2 (9th Cir. 1995) ("[f]indings of fact prepared by counsel and adopted by the trial court [like the FFCL] are subject to greater scrutiny than those authored by the trial judge"). As to the assumption of Casden's contract, the Court adopted Debtor's proposed findings and conclusions and "found both Mr. Grobstein's testimony and Casden's testimony to be 'very credible,' and that between the two competing experts due to Mr. Grobstein's experience 'there's no comparison' between the two."

3

Bankruptcy Docket, Doc. 762 at 35. As a result thereof, the Court found "Casden's executive compensation and executory employment contract is reasonable, supported by market data, expert testimony, and should be assumed and approved." *Id.* The Court then issued an Order Authorizing Assumption of Executory Contract with Seth Casden. Bankruptcy Docket, Doc. 761.

MET timely appealed the FFCL and the Assumption Order on October 13, 2022. Bankruptcy Docket, Doc. 766.

**D.** **The Second Appellate Order Reversing the Court's Confirmation and Approval of the Motion to Assume Appellant's CEO's Employment Contract**

The District Court stayed the Plan's confirmation pending Appellee's appeal. Case No. 2:22-cv-07510-FMO (the "District Court Docket"), Doc. 36. On March 29, 2024, the District Court entered its Order, which reversed and remanded the Plan's confirmation and the Court's granting of the Assumption Motion. Bankruptcy Docket, Doc. 946.

Specifically, the District Court held "there appears to be no principled distinction between the contract at issue and the sorts of contracts that are routinely subject to the heightened scrutiny of the inherent fairness standard. Under the circumstances, the court is persuaded that the Bankruptcy Court erred by not evaluating the Contract Motion under the inherent fairness standard." *Id.* at 8. The District Court then reversed and remanded the decision for further consideration by the Court. *Id.* at 10.

Debtor timely appealed and on February 2, 2026, the Ninth Circuit declined to hear the appeal because it lacked jurisdiction. *See* Case No. 24-2881, Doc. 65.1 (9th Cir. Feb. 2, 2026).

**III.** **ARGUMENT**

**A.** **Debtor's Reliance on Reversed Findings Contravenes the Appellate Mandate**

The District Court reversed and remanded with the specific instruction for this Court to evaluate the assumption of the Employment Agreement under the inherent fairness standard. Bankruptcy Docket, Doc. 946 at 8.  The Debtor acknowledges this reality. Brief at 2:24-3:8. Yet, Debtor argues that its Motion had already argued for "heightened scrutiny" and this Court already "applied rigorous scrutiny in granting the motion." *Id.* at 4:17-18, 5:6-7. The Debtor further argues that "[t]he record supports the conclusion that the Bankruptcy Court applied rigorous scrutiny,

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

determined that the Contract was made in good faith, and that it carries the earmarks of an arm's length bargain, . . . even though [it] did not use the precise words 'inherent fairness.'" *Id.* at 5:12-15, *see also id.* at 11:14-15. Debtor is essentially aruging that this Court already did what the District Court explicitly found it did not,[1] and it should wholesale adopt its prior findings without undertaking the rigorous re-examination the District Court's remand requires. This is wholly improper and must be rejected.

The District Court already held that the prior findings were predicated on the wrong legal standard – *i.e.*, the business judgment rule, a deferential standard where MET had the burden of proof – and which the District Court expressly held is inapplicable to this insider transaction. Order at 8. Indeed, the Court's prior findings do not reference good faith or fairness and do not mention or analyze Casden's contract negotiation and approval, presumably because there was no such evidence submitted. As such, there is no basis on which to adopt those same findings under the more rigorous standard. Because the District Court vacated the prior order, the previous findings no longer exist for this Court to "adopt." The mandate requires a *de novo* review of the facts under the proper standard and burden of proof. On remand, the Court must re-evaluate the evidence "anew," as if it had not previously decided the issue, specifically through the lens of the mandated inherent fairness test.

**B.      The Debtor Bears the Burden of Proving Both Good Faith and Inherent Fairness**

In the Ninth Circuit an insider's dealings with a bankrupt corporation must be "subjected to rigorous scrutiny." *In re Marquam Inv. Corp.*, 942 F.2d 1462, 1465 (9th Cir. 1991) (quoting *Pepper v. Litton*, 308 U.S. 295, 306 (1939)). Specifically, the Ninth Circuit held "[w]hen the validity of an insider's contract with a corporation is at issue, the burden is on the insider 'not only to prove the good faith of the transaction but also to show its inherent fairness from the viewpoint of the corporation and those interested therein.'" *Id.*; *see also In re Harford Sands Inc.*, 372 F.3d 637, 640

---

[1] The District Court noted, with citations to Debtor's own brief on appeal, that "Hologenix does not contest that the Bankruptcy Court applied the business judgment rule." Bankruptcy Docket, Doc. 946 at 7:14.

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

(4th Cir. 2004); *In re Dunes Hotel Assocs.*, 194 B.R. 994, 998 (Bankr. D.S.C. 1995).

Where, as here, a corporate fiduciary stands on both sides of a transaction such that the director's loyalty is called into question, the fiduciary bears the burden of establishing inherent fairness. *Brown v. Brewer*, CV-06-3731-GHK (SHx), 2010 U.S. Dist. LEXIS 60863, at *13 (C.D. Cal. Jun. 17, 2010); *see also Ien v. TransCare Corp. (In re TransCare Corp)*, 638 B.R. 691, 698 (Bankr. S.D.N.Y. 2022) (holding an insider "who stands on both sides of a transaction has the burden of establishing the transaction's entire fairness sufficiently to withstand careful court scrutiny, as opposed to the more lenient business judgment standard"). "Proponents of a self-dealing transaction are 'required to demonstrate their utmost good faith and the most scrupulous inherent fairness of the bargain.'" *Pereira v. Cogan*, 267 B.R. 500, 508 (S.D.N.Y. 2001) (citation omitted) (holding "the 'entire fairness' doctrine applies to self-dealing by a CEO concerning his own compensation and employment arrangements").

The burden is on the insider to "'. . . not only prove the <u>good faith</u> of the transaction but also to show its <u>inherent fairness</u> from the viewpoint of the corporation and those interested therein.'" *Solution Trust v. 2100 Grand LLC (In re AWTR Liquidation Inc.)*, 548 B.R. 300, 318 (Bankr. C.D. Cal. 2016) (quoting *Burt v. Irvine Co.*, 237 Cal. App. 2d 828, 850-51 (1st DCA 1964) (emphasis added in *In re AWTR*). "'The essence of the test is whether or not under all the circumstances the transaction carries the earmarks of an arm's length bargain.'" Order at 8 (quoting *Pepper v. Litton*, 308 U.S. 295, 306-07 (1939)). "If it does not, equity will set it aside." *AWTR Liquidation*, 548 B.R. at 318 (quoting *Burt*, 237 Cal. App. 2d at 850-51).

Accordingly, under binding Ninth Circuit authority, it is the Debtor's burden to show both (1) good faith and (2) inherent fairness both to the corporation and to those interested therein (*i.e.*, its creditors). Debtor argues that its burden is to show good faith and inherent fairness by a preponderance of the evidence, which it has done. Brief at 6-8. Notably, it does not clarify *what* must be proven "by a preponderance of the evidence" – beyond the market rate for similar employees. *Id.* at 11. In support of its argument, Appellant cites a case that relies on *Grogan v. Garner,* 498 U.S. 279, 286 (1991) (emphasis added), which states, "we presume that this [preponderance-of-the-evidence] standard is applicable in civil actions between private litigants *unless 'particularly*

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

6

*important individual interests or rights are at stake*.'" *See* Brief at 9, n.9 (citing *In re Pyramid Operating Authority, Inc.*, 144 B.R. 795, 890 (Bankr. W.D. Tenn. 1992)). This *Grogan* case actually supports the heightened scrutiny that the District Court held applies here because it clearly involves "particularly important interests", namely, the authorization of the Debtor's assumption of a contract with an insider who openly controls the company, and who has exercised clear influence over the rubber-stamping board. District Court Docket, No. 40-4 at 5-8.[2] The Debtor's argument is nothing more than another attempt to lessen the Debtor's burden and should not be countenanced.

Indeed, when the Court undertakes the proper rigorous analysis, for the reasons discussed *infra*, it will find that Debtor has failed to show either good faith or inherent fairness. The Brief asking this Court to assume Casden's Employment Agreement must be denied.

### C.     The Timing of the Employment Agreement Suggests Evasion, Not Good Faith

The Debtor fails to establish (or even address) the good faith of the insider Employment Agreement, as the May 2019 execution timing suggests a strategic move to lock in obligations shortly before potential insolvency.

Despite Casden's tenure with the Debtor since 2002—including two separate stints as CEO (2004–2006 and 2008–2017)—he operated without a formal written contract for nearly 17 years. The sudden execution of his Employment Agreement in May 2019, on the eve of a potential insolvency proceeding, raises several unaddressed and dispositive questions.

The Debtor provides no evidence regarding Casden's compensation in the years prior to 2019. Without this baseline, the Court cannot determine if the Employment Agreement granted Casden a windfall or a "large increase" in compensation. If such an increase occurred, the Debtor has failed to identify what business necessity or performance metric precipitated or justified it.

The Employment Agreement was entered into during a period where the prospect of MET obtaining a significant judgment against the Debtor that could force it into bankruptcy was a clearly ascertainable risk. The Debtor does not address whether the Employment Agreement was intended

---

[2] *See* MET's concurrently-filed Request for Judicial Notice ("RJN"), Exhibit 3, MET's and the Debtor's Joint Brief submitted to the District Court in Case No. 2:22-cv-07510-FMO filed at Doc. 40-4.

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400  •  Facsimile: 310.746.4499

to "lock in" large pre-petition and administrative obligations to an insider (Casden) in anticipation of a bankruptcy filing. As discussed *supra*, in the Ninth Circuit, transactions with insiders are subject to "rigorous scrutiny" to ensure they are inherently fair and reasonable.

The Debtor bears the burden of establishing the propriety and validity of insider claims. By failing to provide a historical comparison of compensation or evidence that the Employment Agreement was an arm's-length transaction, the Debtor has provided no baseline for the Court to evaluate the Employment Agreement's validity. The failure to provide this evidence – despite renewing the motion here – supports a finding that assuming the Employment Agreement is not inherently fair.

**D.    The Debtor's Attempt to Re-Litigate the Applicable Legal Standard Violates the Law of the Case and the Appellate Mandate.**

Debtor argues "before addressing 'inherent fairness,' assumption of the [Employment Agreement] is supported at the very least by an exercise of reasonable business judgment because it benefits the estate." Brief at 5:16-18. In support thereof, Debtor argues "[u]nder Mr. Casden's leadership, Debtor grew its business, survived chapter 11, and maintained operations despite relentless litigation against it by competitor, MET, which attempted to litigate Hologenix out of existence." *Id.* at 5:18-20. The District Court has already expressly held that because Casden is a corporate fiduciary standing on both sides of the transaction, the deferential business judgment standard is "inapplicable." Bankruptcy Docket, Doc. 946 at 8:15-16, 19-23. This holding is now the law of the case. Any argument by the Debtor relying on that standard is not just improper, it is a collateral attack on the District Court's Order.

Under the appellate mandate doctrine, this Court is not free to deviate from the District Court's conclusion that the "inherent fairness" standard applies. *See Montana v. Talen Mont., LLC*, 130 F.4th 675, 691 (9th Cir. 2025) (holding that "the lower court is 'bound by the decree [of the appellate court] as law of the case' and cannot 'vary [the decision], or examine it for any other purpose than execution'") (citation omitted). By arguing for a "reasonable business judgment" standard, the Debtor is essentially asking this Court to overrule the District Court—a request that is procedurally improper and must be rejected out of hand.

Even if the Debtor's "business judgment" arguments were relevant under the more rigorous standard—which they are not—the Debtor still fails to satisfy its burden. The claim that the Employment Agreement "benefits the estate" is a conclusory assertion that collapses under the weight of the actual financial record.

First, Debtor has not grown its business. As of January 31, 2026, Debtor has less than $400,000 in its DIP account. Since 2023, Casden infused $1.3 million into the Debtor's account. (Bankruptcy Docket, Doc. Nos. 900 (July 2023 MOR); 903 (September 2023 MOR); 917 (October 2023 MOR); 1068 (April 2025 MOR); and 1080 (July 2025 MOR)). In addition, Casden has had to forego his salary on more than one occasion due to Debtor's cashflow issues. Bankruptcy Docket, Doc. 609 at 8 n.3, 18 n.13. Without this seven-figure infusion and Casden foregoing his salary from time to time, Debtor would have had zero operating funds and no ability to pay its administrative fees, which would have warranted conversion. Moreover, while Debtor had $888,137.78 in its DIP account as of December 31, 2021, that amount continually decreased over the following years. Bankruptcy Docket, Doc. 462 at 30. Specifically, the DIP account had at year end $306,342.04 in 2022; $268,354.43 in 2023; $168,493.98 in 2024 and $404,220.58 in 2025. Bankruptcy Docket, Doc. 883 at 27; Doc. 937 at 25; Doc. 1056 at 29; Doc.1124 at 27. This is a substantial downward trajectory and only did not end up at less than zero because Casden infused significant cash in 2023 and 2025. The actual performance shows that Debtor has not been growing in bankruptcy and in fact, without Casden's cash infusions would have been administratively insolvent a long time ago.

In addition, and notably absent from the Assumption Motion is any discussion of how Casden helped the Debtor grow. This is not surprising because under Casden's leadership, Debtor has not grown. Rather, under Casden's leadership, Debtor has caused the estate to spend a substantial amount of money on motion practice to ensure that Casden himself is personally paid bonuses and increased compensation. Bankruptcy Docket, Doc. 1138 at 3 (reflecting over $928,000 spent by Debtor on professional fees since the filing of the bankruptcy). While Debtor attributes this to MET's "relentless" litigation and effort to "litigate the company out of existence," without identifying what it is referring to (Brief at 5:19-20), this is not supported by the record where a

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

significant part of the litigation was to correct Casden's self-dealing.[3]

Second, Debtor has not survived Chapter 11. Survival implies that there has been a successful exit from bankruptcy. After six years and three failed attempts at confirmation, the Debtor has not "survived" Chapter 11—it is languishing in it, with no end in sight. Moreover, it is clear that Debtor is not self-sustaining and is barely on life support requiring a significant bailout from Casden that totaled $1.3 million of cash.

Finally, even if examined under the mandated heightened inherent fairness standard, these facts demonstrate that assuming the Employment Agreement cannot pass muster. When an estate requires a seven-figure insider subsidy and the CEO must periodically "forego" a salary to keep the lights on, a high-priced Employment Agreement is—as a matter of law—not inherently fair to creditors. Debtor seeks to compel the estate to pay a premium for "leadership" that has produced only a downward financial trajectory and a six-year stalemate. Ultimately, the Debtor asks the Court to reward a "survival" that is entirely artificial, funded by the very insider who now seeks a court-sanctioned windfall at the expense of the estate's dwindling resources. This fails the test of inherent fairness and must be rejected.

### E.    The Debtor Fails to Meet the "Inherent Fairness" Standard

#### 1.    Debtor Fails to Prove the Compensation Is Fair to the Estate

The Debtor's request that this Court "simply adopt" its prior findings (Brief at 6:17-7:8) is a direct challenge to the District Court's appellate instructions. By asking the Court to ignore the mandate for "rigorous and heightened scrutiny," the Debtor is attempting to revert to a deferential standard that has already been ruled insufficient for this insider transaction. The District Court did not merely disagree with the prior findings; it rejected them because they were reached without the rigorous scrutiny required by the inherent fairness standard. Under this standard, the Debtor bears the heavy burden of proving that the transaction was entirely fair in both process (fair dealing) and price (fair price). Simply re-stating old, rejected findings does not satisfy this heightened legal

---

[3] Specifically, Casden increased his compensation and paid himself bonuses without the Court's approval and paid the board money without proper Court authorization. Bankruptcy Docket, Doc. 714. MET's efforts to correct this blatant unauthorized self-dealing is a product of Debtor and its insider CEO, Casden's choices, and not MET.

10

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

burden.

Debtor points to two references to establish the fairness of the compensation as at or below market rates for a CEO that fail to justify the Employment Agreement compensation. The Debtor alleges the officer compensation report submitted by Howard Grobstein in support of Debtor's 2022 plan supports this conclusion. *Id.* at 6:13-14. However, the Grobstein report seeks to justify the proposed salary for Casden by benchmarking his proposed compensation to that of CEOs of companies making "under $100 million." At the time Grobstein offered his declaration, the Debtor was making less than $7 million annually (and makes substantially less today - $4,014,226.02 in 2025). Bankruptcy Docket, Docs. 1057, 1058, 1061, 1068, 1072, 1078, 1080, 1094, 1113, 1117, 1123, 1124. A comparison to companies with 14 times the revenue of the Debtor is not a "benchmark" for market rates. Rather, it is a fabrication designed to justify an above-market windfall. This comparison is simply not instructive and clearly designed to overinflate Casden's compensation solely for the benefit of Casden. While Debtor focuses on this Court's finding that the two experts' opinions (Grobstein and Pastore) "converged," it again ignores that this finding was not made under the more rigorous standard. Brief at 7, 10-11. Nor does it account for the fact that Mr. Pastore found that CEO's median salary is $247,109 and cherry-picks what suits its argument. Bankruptcy Docket, Doc. 701 at 35. Moreover, the fact that Debtor emphasizes that the Court stated it found Grobstein's and Casden's "testimony to be 'very credible,'" whereas MET's expert was not highlights the fundamental unfairness and infringement of MET's due process rights. Brief at 10. The Court's credibility findings were based on the ability to hear Debtor's witnesses live while it was not afforded the same opportunity for MET's witness. Bankruptcy Docket, Doc. 735 at 100-101; *see also In re Adair,* 965 F.2d 777, 780 (9th Cir. 1992) (noting direct testimony by declaration is proper when the judge "had the opportunity to observe the declarants' demeanor and to gauge their credibility during oral cross-examination and redirect examination").

Indeed, the Court should have followed the lead of *In re Athos Steel & Aluminum, Inc.* (relied on by Debtor here (Brief at 11:1-3)), where the court after evaluating the salaries for CEOs at other steel companies with the same revenues as Athos Steel, decided it was best to reduce the CEO's compensation to the lower end of the salary ranges because of the downward trend of debtor's

business and its status as a Chapter 11 debtor. 69 B.R. 515, 521-22 (Bankr. E.D. Pa. 1987). The same is true here where Debtor's revenues were reduced from $10 million annually to $7 million annually in just the first year after it because a Chapter 11 debtor and are a paltry $4,014,226.02 in 2025. *See* Bankruptcy Docket, Docs. 1057, 1058, 1061, 1068, 1072, 1078, 1080, 1094, 1113, 1117, 1123.

Even if Casden's $300,000 salary (without accounting for the additional $150,000 bonus) were considered "market" (which the Grobstein report fails to prove), it would not make the assumption of the contract inherently fair. The fairness of a transaction is a holistic inquiry that includes the timing and initiation of the agreement. As argued *infra*, an agreement entered into for the first time in 17 years—specifically to shield an insider from a judgment—fails the test of "fair dealing" regardless of the final price point.

### 2.   The Lack of an Arm's-Length Process

Debtor's next argues that the Employment Agreement "has the earmarks of an arms-length transaction" because "Debtor's board members (none of whom are relatives of Casden) unanimously supported the assumption of the Contract." Brief at 7:15-17. This argument fails because the evidence suggests that the board merely "rubber-stamped" the terms requested by Casden.

While Debtor submitted duplicative declarations from its board of managers to imply the Employment Agreement was an arm's length transaction, this Court understood the declarations were perfunctory "rubber stamp" approval of the proposed assumption of the Employment Agreement at Casden's request. The declarations stated nothing more than the board members supported assuming the Employment Agreement "as being an exercise of reasonable business judgment and beneficial to the Debtor and in the best interest of the estate" without anything more. Bankruptcy Docket, Docs. 611, ¶6; 625, ¶6; 626, ¶6; 627, ¶6. The Court correctly acknowledged this during the First Assumption Hearing, "My opinion is you didn't spend a great deal of thought in preparing the declarations of the board members, did you? Because they were virtually, except for the name, the initial declarations, it was basically you had prepared right?" and went on to say "[w]ell, by signing the thing as they did it appears, at least, that they were [rubber stamps]. And

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

again, in all fairness, they're obviously close. And I'm not alluding to anything improper, but it's pretty obvious, since Mr. Casden does basically run the debtor . . . ." Bankruptcy Docket, Doc. 647 at 5:13-16, 9:6-10. Put simply, the decision to assume the Employment Agreement was <u>not</u> a decision made by the Debtor in reliance on its sound business judgment and with the goal of benefitting the Debtor's estate and all parties in interest. Rather, this self-interested decision was made by Casden to secure waning corporate resources for his own benefit, and rubber stamped by the Debtor's board of managers.

Debtor's reliance on the board's "impressive qualifications" (Brief at 8:8-9) is a red herring that ignores the actual conduct of the board members here. Professional credentials do not grant a board immunity from "rubber-stamping" an insider deal, especially where the evidence—and this Court's own observations—confirms a total lack of independent negotiation. Contrary to the Debtor's argument here (*Id.* at 8:2-4), its attempt to "correct" the board declarations' evidentiary failures through reply declarations was properly rejected by this Court. Because the Debtor failed to appeal that order, those declarations conclusively have been stricken and cannot be used now to manufacture a dispute of fact regarding the board's independence. Here, the perfunctory and identically phrased nature of the initial declarations speaks louder than any resume. As this Court rightly noted, "My opinion is you didn't spend a great deal of thought in preparing the declarations of the board members, did you? Because they were virtually, except for the name, the initial declarations, it was basically you had prepared right?" and went on to say "[w]ell, by signing the thing as they did it appears, at least, that they were [rubber stamps]. And again, in all fairness, they're obviously close. And I'm not alluding to anything improper, but it's pretty obvious, since Mr. Casden does basically run the debtor . . . ." Bankruptcy Docket, Doc. 647 at 5:13-16, 9:6-10. Because these documents were conclusory and lacked substance on their face, they failed to establish an arm's-length transaction. Moreover, none of the board members' declarations even offered an explanation for what value Casden brings warranting assuming his contract. Bankruptcy Docket, Docs. 611, 625, 626, 627. Nor do any of the board members support the supposed value that Debtor argues in the Brief it receives as a result of assumption of the Employment Agreement, *i.e.* it would be costly to hire a different CEO. *See* Brief at 5 (citing Bankruptcy Docket, Doc. 609 at pp. 16-17).

13

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

Rather, Debtor simply relies on Casden's own self-serving conclusions and then reiterates those cursory and unsupported statements as if it is fact that this Court can rely on Casden without more to find assuming the Employment Agreement is inherently fair to either the Debtor or its creditors. Significantly, neither Casden nor any board member details the negotiations or process that the Debtor underwent to enter into and assume the Employment Agreement, further evidencing that it is not an arm's-length transaction and cannot meet the inherent fairness standard.

The Debtor's attempt to shift the burden to MET for failing to cross-examine the board members (Brief at 7:19-20) is a legal non-starter. MET is not required to provide "counterevidence" or conduct depositions when the Debtor's own moving papers fail to meet the initial burden of proof of proving the transaction was at arm's length. The initial declarations were conclusory, identically phrased and deficient. The mere fact that the declarants may have "impressive qualifications," does not elevate the substance of the declarations or that they essentially rubber stamped Casden's wishes. It was improper for the Debtor to attempt to correct these deficiencies through improper reply declarations that contained facts that could and should have been in the original declarations. The Court's order striking the reply declarations was correct and, in any event, was not appealed by Debtor and cannot be reconsidered here. MET – who did not have the burden to show assuming the Employment Agreement was inherently fair – was entitled to rely on the facial insufficiency of that evidence rather than wasting resources cross-examining witnesses who had already failed to provide a credible account of a real negotiation.

Finally, the Debtor has notably abandoned its reliance on the declaration of Sydney McArthur to justify the market rate of Casden's compensation was accurate - likely conceding MET's argument that a mid-level accounting recruiter is unqualified to opine on CEO pay for a company in this position.[4] Instead, Debtor now attempts to use her declaration to support its argument that the agreement was an arm's-length transaction. Brief at 8:11-17. This pivot is both

___

[4] *See* Bankruptcy Docket, Doc. 613, *Declaration of Sydney McArthur in Support of Motion for Entry of an Order Authorizing Assumption of Executory Contract with Seth Casden*. Indeed, Ms. McArthur's declaration does not state that she has any experience with placing CEOs or negotiating CEO salaries. Bankruptcy Docket, Doc. 613. Ms. McArthur simply offers a conclusory opinion that CEOs' salaries exceed $300,000 plus $150,000 bonus (¶5) without any basis for that opinion. This does not suffice under Rule 702 and cannot be considered by this Court.

14

legally and factually meritless. Ms. McArthur's declaration concerning the compensation to Los Angeles CEOs have any relevance to whether the Employment Agreement was the product of an arm's-length transaction. *Id*. Ms. McArthur is an accounting recruiter, not a corporate governance expert. Bankruptcy Docket, Doc. 613. She has no expertise—and notably offered no opinion—on the internal bargaining process between the Debtor's board and Casden. The test for an arm's-length transaction is the integrity of the bargaining process, not an *ex post facto* comparison of price points. Ms. McArthur's opinions, even if reliable (they are not), cannot prove that the Employment Agreement was "arm's length" and was not the product of a negotiation that was a perfunctory rubber-stamping of an insider's demand to enter into an Employment Agreement in 2019 (for the first time since he joined Debtor in 2002) to protect Casden in the event that MET secured a significant judgment against the Debtor.[5] Nor does Casden's self-serving declaration that he would have "walked" without the Employment Agreement does not prove an arm's-length bargain; it merely confirms the board's total surrender to his demands without a shred of independent counter-negotiation.

### 3. The Proposed Cure Deferral is a Tactic, Not Evidence of an Arm's Length Transaction

The Debtor's claim that Casden's willingness to defer his cure payment makes this a "better-than-arm's-length" bargain is a legal fiction. Brief at 7:9-12. In reality, this is a self-serving tactic designed to bypass the mandatory "prompt cure" requirement of § 365(b)(1)(A) and protect a much larger, unfairly obtained windfall. If Casden were a true third-party service provider, he would demand immediate payment. By agreeing to a deferral, Casden is effectively "colluding" with the Debtor to keep the contract alive without the immediate cash drain that a true fair, arm's-length transaction would require.

---

[5] In or around the same time, Casden was speaking with bankruptcy counsel for Hologenix. Bankruptcy Docket, Doc. Bankruptcy Docket, Doc. 702 at 55-56 ("Q: So Hologenix was advised to file for bankruptcy in or around March 2019; is that correct? A: Multiple times. March, when the lawsuit was first filed …"). In addition, before filing for bankruptcy, Casden (and his family members) filed UCC-1 liens to protect themselves in the event Hologenix filed for bankruptcy as a result of the MET litigation. Bankruptcy Docket, Doc. 49 at 15. It is clear the Employment Agreement and these liens were part of a plan to protect Casden and his money in the event Hologenix filed for bankruptcy.

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

The Court explicitly noted that the Assumption Order was directly tied to, and affected by, the Confirmation Order and the fate of the Modified Plan, stating "I would grant the motion, but it seems to me its part of the plan, to assume his contract and all that goes with it.  That's fairly clear . . . ." Bankruptcy Docket, Doc. 735 at 112:1-3. The Modified Plan was reversed on appeal, including its assumption of Mr. Casden's employment contract. The original motion and this renewal of that motion are nothing more than an effort by Casden to ensure that he gets paid regardless of whether any future plan is confirmed. In fact, forcing the estate to accept a "loan" from an insider to fund his own assumption is the definition of self-dealing and prioritizing Casden's interests over the Debtor, its estate and its creditors. It is fundamentally unfair to creditors to allow an insider to lock in a priority administrative claim through assumption while kicking the can on the required cure payment. If the Debtor cannot afford to pay the cure now, it cannot afford to assume the contract.

Finally, there is no guarantee that Casden will abide by this off-the-cuff remark during his cross-examination. Since the Confirmation Hearing, a personal judgment has been entered against Casden for over $6 million arising out of his conduct as Debtor's CEO and for which he has sought indemnity for the judgment and defense costs from Debtor. *See* Case No. 2:21-cv-01149-ODW, Doc. 199. In addition, Casden has since filed his own personal bankruptcy, and the cure payment is property of that bankruptcy estate. Casden acting as a fiduciary as the debtor-in-possession for his own individual bankruptcy cannot unilaterally agree to defer over $459,346.50. Casden cannot act as a fiduciary in either this or his own personal bankruptcy because his interests are wholly conflicted.

As such, MET respectfully requests that this Court deny Debtor's renewed Assumption Motion to assume Casden's employment contract.

## IV.   CONCLUSION

The Debtor has failed to meet its burden of proving that the assumption of Casden's Employment Agreement is the product of an arm's-length negotiation and inherently fair. Instead, the record confirms a classic "rubber stamp" process where a dominated board merely ratified the self-interested demands of its CEO.

The Debtor's attempts to salvage this transaction through "impressive qualifications" and

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

"recycled" expert declarations are meritless distractions. Credentials do not equal independence, and an *ex post facto* salary comparison by purported experts cannot sanitize a bargaining process that never actually occurred. The suspicious timing of the 2019 Agreement—created for the first time in nearly two decades after Casden began his employment with Debtor and only after MET posed a significant judgment threat—further exposes this as a defensive maneuver to shield corporate resources for Casden's personal benefit.

Ultimately, Casden's tactical "deferral" of cure payments is not a sign of a "better-than-arm's-length" bargain; it is a calculated attempt to secure a windfall from a waning estate while circumventing the reversal of the Modified Plan. Because the Employment Agreement serves Casden's interests at the direct expense of the Debtor's estate and its creditors, it does not meet the inherent fairness standard. The Assumption Motion should be denied.

DATED:  March 31, 2026          WHITE AND WILLIAMS LLP


By: _____
NICOLE A. SULLIVAN (pro hac vice)
THOMAS E. BUTLER (pro hac vice)
Attorneys for Creditor Multiple Energy
Technologies, LLC


DATED:  March 31, 2026          ELKINS KALT WEINTRAUB REUBEN
GARTSIDE LLP


By: _____
ROYE ZUR
LAUREN GANS
Attorneys for Creditor Multiple Energy
Technologies, LLC

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

17

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
10345 Olympic Boulevard, Los Angeles, California 90064.

A true and correct copy of the foregoing documents entitled (*specify*): **MULTIPLE ENERGY TECHNOLOGIES, LLC'S RESPONSE TO DEBTOR'S BRIEF IN SUPPORT OF GRANTING MOTION TO ASSUME EXECUTORY EMPLOYMENT CONTRACT WITH SETH CASDEN AFTER REMAND FROM THE DISTRICT COURT** will be served or were served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **March 31, 2026**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Todd M Arnold    tma@lnbyg.com**
- **Ron Bender    rb@lnbyg.com**
- **Thomas E Butler    butlert@whiteandwilliams.com, sullivann@whiteandwilliams.com;millnamowm@whiteandwilliams.com;panchavatis@whiteandwilliams.com**
- **Robert Carrasco    rmc@lnbyg.com, rmc@lnbyg.com**
- **Oscar Estrada    oestrada@ttc.lacounty.gov**
- **Theodore W Frank    frank@psmlawyers.com, knarfdet@gmail.com;navarro@parkermillsllp.com**
- **John-Patrick M Fritz    jpf@lnbyg.com, JPF.LNBYB@ecf.inforuptcy.com**
- **Michael S Greger    mgreger@allenmatkins.com, kpreston@allenmatkins.com**
- **Brian T Harvey    bharvey@buchalter.com, docket@buchalter.com;dbodkin@buchalter.com;pjolley@buchalter.com**
- **Gregory Kent Jones (TR)    gjones@sycr.com, smjohnson@sycr.com;C191@ecfcbis.com;cpesis@stradlinglaw.com**
- **Raffi Khatchadourian    raffi@hemar-rousso.com**
- **Tinho Mang    tmang@marshackhays.com, tmang@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@ecf.courtdrive.com;cmendoza@marshackhays.com**
- **Ron Maroko    ron.maroko@usdoj.gov**
- **Juliet Y. Oh    jyo@lnbyg.com, jyo@lnbyb.com**
- **Carmela Pagay    ctp@lnbyg.com**
- **Yvonne Ramirez-Browning    yvonne@browninglawgroup.com, veronica@browninglawgroup.com**
- **Kurt Ramlo    RamloLegal@gmail.com, kr@ecf.courtdrive.com,ramlo@recap.email**
- **Gregory M Salvato    gsalvato@salvatoboufadel.com, calendar@salvatolawoffices.com;jboufadel@salvatoboufadel.com;gsalvato@ecf.inforuptcy.com**
- **James R Selth    jselth@yahoo.com, jselth@yahoo.com,maraki@wztslaw.com,sfritz@wztslaw.com,admin@wztslaw.com**
- **Zev Shechtman    Zev.Shechtman@saul.com, zshechtman@ecf.inforuptcy.com;hannah.richmond@saul.com;LitigationDocketing@saul.com;Shelly.Guise@saul.com;Isaiah.Bribiesca@saul.com**
- **Lindsey L Smith    lls@lnbyb.com, lls@ecf.inforuptcy.com**
- **Randye B Soref    rsoref@polsinelli.com, ccripe@polsinelli.com;ladocketing@polsinelli.com**

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

- **Heidi J Sorvino    sorvinoh@whiteandwilliams.com, millnamowm@whiteandwilliams.com;sullivann@whiteandwilliams.com;panchavatis@whiteandwilliams.com;butlert@whiteandwilliams.com**
- **Alan Stomel    alan.stomel@gmail.com, astomel@yahoo.com**
- **Annie Y Stoops    annie.stoops@afslaw.com, yvonne.li@afslaw.com**
- **Nicole Sullivan    sullivann@whiteandwilliams.com, vulpioa@whiteandwilliams.com,arthura@whiteandwilliams.com**
- **Derrick Talerico    dtalerico@wztslaw.com, maraki@wztlfirm.com,sfritz@wztlfirm.com,admin@wztlfirm.com**
- **United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov**
- **Larry D Webb    Webblaw@gmail.com, larry@webblaw.onmicrosoft.com**
- **David Wood    dwood@marshackhays.com, dwood@ecf.courtdrive.com;lbuchananmh@ecf.courtdrive.com;spineda@ecf.courtdrive.com;alinares@ecf.courtdrive.com**
- **Roye Zur    rzur@elkinskalt.com, lwageman@elkinskalt.com;1648609420@filings.docketbird.com;rzur@ecf.courtdrive.com;lmasse@elkinskalt.com**

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) **March 31, 2026**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

The Honorable Barry Russell
United States Bankruptcy Court
255 E. Temple Street, Suite 1660 / Courtroom 1668
Los Angeles, CA 90012

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **March 31, 2026**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| March 31, 2026 | Lisa Masse | /s/ Lisa Masse |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.