RON BENDER (State Bar No. 143364)
JOHN-PATRICK M. FRITZ (State Bar No. 245240)
LEVENE, NEALE, BENDER,
YOO & GOLUBCHIK L.L.P.
2818 La Cienega Avenue
Los Angeles, California 90034
Telephone:  (310) 229-1234
Facsimile:   (310) 229-1244
Email: RB@LNBYG.COM; JPF@LNBYG.COM


Attorneys for Chapter 11
Debtor and Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**LOS ANGELES DIVISION**

| | |
|---|---|
| In re: | ) Case No.: 2:20-bk-13849-BR |
| | ) |
| HOLOGENIX, LLC, | ) Chapter 11 Case |
| | ) |
| Debtor and Debtor in Possession. | ) Subchapter V |
| | ) |
| | ) **DEBTOR'S REPLY IN SUPPORT OF** |
| | ) **CONFIRMING PLAN AFTER** |
| | ) **REMAND FROM THE DISTRICT** |
| | ) **COURT** |
| | ) |
| | ) Hearing: |
| | ) Date:  May 26, 2026 |
| | ) Time:  10:00 a.m. |
| | ) Place:  Courtroom 1668 |
| | )         255 East Temple Street |
| | )         Los Angeles, CA 90012 |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |

1

## TABLE OF CONTENTS

I.    INTRODUCTION AND SUMMARY ................................................................ 2

II.   THIS COURT CAN CONIRM THE PLAN UNDER THE MANDATE ................... 3

    A.    The Mandate Doctrine Permits the Trial Court to Consider Many
Issues ................................................................................................. 3

    B.    The Debtor Is Not Violating the Mandate Doctrine ........................... 4

    C.    Confirming the Plan Does Not Violate the Mandate Doctrine ........... 5

    D.    Debtor Is Not Attacking the Correctness of the District Court
Decision ............................................................................................. 6

III.  THE PLAN IS FAIR AND EQUITABLE ...................................................... 7

    A.    Debtor Is Correct in Its Analysis of Subchapter V as Composition
Law .................................................................................................... 7

    B.    The Plan is Fair and Equitable Under §1191(c) ............................... 10

IV.   THE PLAN DOES NOT DISTRIMINATE UNFAIRLY .................................... 10

V.    THE PLAN CAN BE CONFIRMED ON THIS RECORD ................................. 13

    A.    MET Is Defying This Court's Instructions to Not Expand the
Record ............................................................................................. 13

    B.    None of MET's Cited Cases Require Expanding the Record on
Remand ........................................................................................... 15

    C.    MET's Attempt at Reverse "Equitable Mootness" Against Debtor ............. 15

    D.    The Court Should Not Convert the Case to Chapter 7 ..................... 17

VI.   CONCLUSION ..................................................................................... 18

# **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*In re Acequia*,
   787 F.2d 1352 (9th Cir.1986) ...................................................................................................11

*In re American Capital Equipment, Inc.*,
   405 B.R. 415 ...........................................................................................................................17

*In re Anderson*,
   21 F.3d 355 (9th Cir.1994) .....................................................................................................17

*In re Aztec Co.*,
   107 B.R. 585 (Bankr.M.D.Tenn.1989) ....................................................................................10

*In re Curiel*,
   651 B.R. 548 (9th Cir.B.A.P.2023).........................................................................................15

*Firth v. U.S.*,
   554 F.2d 990 (9th Cir.1977) ..................................................................................................4, 5

*In re Fraschilla*,
   235 B.R. 449 (9th Cir.B.A.P.1999)...........................................................................................4

*In re Greer*,
   60 B.R. 547 (Bankr.C.D.Cal.1986)...........................................................................................8

*In re Lahijani*,
   2008 WL 8444818 (9th Cir.B.A.P. June 11, 2008) ...............................................................4, 5

*In re Las Vegas Monorail Co.*,
   462 B.R. 795 (Bankr.D.Nev.2011) .........................................................................................15

*Lorber v. Vista Irr. Dist.*,
   143 2d 282, 285 (9th Cir.1944)...............................................................................................11

*In re Monarch Beach Venture, Ltd.*,
   166 B.R. ...................................................................................................................................11

*In re Moore*,
   81 B.R. 513 (Bankr.S.D. Iowa 1988)......................................................................................15

*In re Premier Network Servs., Inc.*,
   2005 WL 6443624 (Bankr.N.D.Tex. July 1, 2005) ...............................................................15

*In re Sanford Fork & Tool Co.*,
    160 U.S. 247 (1895)......................................................................................................................4

*SEC v. U.S. Realty & Imp. Co.*,
    310 U.S. 434 (1940) (J. Roberts, dissenting)...........................................................................11

*In re Sisk*,
    962 F.3d 1133 (2020)..................................................................................................................17

*Thornton v. Carter*,
    109 F.2d 316 (8th Cir.1940) .......................................................................................................4

*In re Transwest Resort Properties, Inc.*,
    801 F.3d 1161 (9th Cir.2015) ...................................................................................................15

*In re Trinity Family Prac. & Urgent Care PLLC*,
    622 B.R. 236 (Bankr.S.D.Tex.2020) .......................................................................................11

*U.S. v. Thrasher*,
    483 F.3d 977 (9th Cir.2007) .......................................................................................................4

**Federal Statutes**

11 U.S.C.
    § 1181(a) ................................................................................................................................9, 13

A Guide to the Small Business Reorganization Act of 2019, 93 ......................................................8

**Other Authorities**

Am. Bankr. L.J. 571, 612-13 (Winter 2019)....................................................................................8

Ayers, Rethinking Absolute Priority After Ahlers, 87 Mich.L.Rev. 963, 977 (Apr.
    1989) .....................................................................................................................................9, 11

8 COLLIER ON BANKRUPTCY ¶ 1200.1[2] ........................................................................................9

Hologenix, LLC, a Delaware limited liability company (the "<u>Debtor</u>"), the debtor and debtor in possession in the above-captioned, chapter 11 bankruptcy case hereby respectfully submits its reply (the "<u>Reply</u>") to the response (the "<u>Response</u>") [ECF 1141] of Multiple Energy Technologies, LLC ("<u>MET</u>") in relation to Debtor's brief (the "<u>Brief</u>") [ECF 1136] in support of this Court confirming the *Debtor's Chapter 11, Subchapter V, Plan Dated January 4, 2022, Modified June 21, 2022* (the "<u>Plan</u>") [ECF 657] after the District Court's judgment (the "<u>Judgment</u>") [ECF 947] and decision (the "<u>Decision</u>") [ECF 946] remanding this Court's *Order Confirming Debtor's Chapter 11, Subchapter V, Plan Dated January 4, 2022, Modified June 21, 2022* (the "<u>Plan Order</u>") [ECF 763], as amended [ECF 870], for further findings and conclusions. A general understanding of the plan and plan issues is presumed based on the Court's previously entered findings of facts and conclusions of law  ("<u>FFCL</u>") [ECF 762], which are incorporated here by reference for background.  Initial capitalized terms used in this Reply have the same meanings as ascribed to them in the Brief unless otherwise stated with specificity or implied by context.

## I.      INTRODUCTION AND SUMMARY

"The district court left open the possibility that ***the bankruptcy court could confirm the same plan*** or confirm a different plan."  ECF 1128 (Ninth Circuit Order) 3 (emphasis added).[1] This Court should confirm this same Plan and amend its FFCL to address confirmation of the Plan under the standard set in the District Court's Decision on "fair and equitable" under §1191(c).   MET would have this Court believe (wrongly), that the mandate doctrine requires denying plan confirmation, but the Ninth Circuit's own order [ECF 1128 p.3], as well as the flexibility of the mandate doctrine, permits this Court to confirm the Plan.  The District Court decided only what §1191(c) means as a matter of law, that it is not limited to disposable income, and it is not limited to a three-to-five-year period.  But the District Court's Decision left open what "fair and equitable" means in this particular case on these particular facts.  For all the

---

[1] Pagination cites to bankruptcy ECF documents are to the pages at the top of the page in the Court Clerk's ECF ribbon.

reasons explained in Debtor's Brief, the Plan is fair and equitable to MET and Class 3 based on applying the particular facts of this case to the District Court's interpretation of §1191(c). Moreover, the District Court specifically never reached the question of whether the Plan discriminates unfairly, only noting that the difference in class treatments is "dramatic," but in light of the Debtor's research and analysis on Subchapter V as moder composition law, the Debtor respectfully submits that the Plan does not discriminate unfairly because of its allocation of property under the Plan.

MET would also have this Court believe (wrongly) that plan confirmation on remand requires the submission of new evidence for feasibility and the best-interest-of-creditors' test. However, MET has not provided any case law to support its proposition that new evidence is required on remand. Moreover, MET's arguments and citation to new evidence and several monthly operating reports filed years after the plan confirmation hearing is a direct violation of this Court's specific instruction of no new evidence in relation to this Plan remand hearing. Furthermore, it would be unfair to Debtor because Debtor confirmed the Plan, and any "staleness" is on account of the stay that MET obtained for the purposes of hearing MET's appeal, so do equity to both sides, the appeal should finish and play out through remand on this hearing on the record that existed at the time of confirmation in 2022.

Finally, this Court should not dismiss or convert the Debtor's chapter 11 case. Debtor has always been diligent in proposing and confirming its plans, and the vast majority of this Debtor's bankruptcy case has been spent in appeals, not on the chapter 11 reorganization itself. If this Plan is not confirmed, then the Court should permit the Debtor another attempt to amend or modify its Plan and confirm again. Nonetheless, for all the reasons in the Brief and this Reply, this Court should confirm this Plan.

**II.    THIS COURT CAN CONIRM THE PLAN UNDER THE MANDATE**

**A. The Mandate Doctrine Permits the Trial Court to Consider Many Issues**

Contrary to MET's Response, the Debtor is not asking this Court to defy the mandate of the District Court on remand. MET presents the mandate doctrine in austere and restrictive

terms, that the trial court "cannot vary [the appellate mandate], or examine it for any other purpose than execution; or give any other or further relief; or review it, even for apparent error, upon any matter decided on appeal; or intermeddle with it, further than to settle so much as has been remanded." ECF 1141 (Response) 7:7-11 (quoting *In re Sanford Fork & Tool Co.*, 160 U.S. 247, 256 (1895)). But MET's incomplete presentation fails to acknowledge the flexibility in the mandate doctrine, which provides courts with discretion to "consider and decide any matters left open by the mandate of this court." *In re Sanford Fork & Tool Co.*, 160 U.S. 247, 256 (1895); *see also*, *U.S. v. Thrasher*, 483 F.3d 977, 981 (9th Cir.2007) (same, quoting *Sanford Fork*). "A mandate is completely controlling as to all matters within its compass, but on remand the trial court is free to pass upon any issue which was not expressly or impliedly disposed of on appeal." *Thornton v. Carter*, 109 F.2d 316, 320 (8th Cir.1940);[2] *see also, Firth v. U.S.*, 554 F.2d 990, 993-94 (9th Cir.1977) ("… a mandate is controlling as to all matters within its compass, while leaving any issue not expressly or impliedly disposed of on appeal available for consideration by the trial court on remand.").[3] "As the Supreme Court has held, on remand, a trial court 'may consider and decide any matters left open by the mandate of this court.'" *In re Lahijani*, 2008 WL 8444818 *1, *3 (9th Cir.B.A.P. June 11, 2008) (quoting *Quern v. Jordan*, 440 U.S. 332, 347 n.18 (1979)). "While a mandate is controlling as to matters within its compass, on the remand a lower court is free as to other issues." *Id.* (quoting *Quern*, 440 U.S. at 347 n.18). "When the remand is general, the lower court is free to decide anything not foreclosed by the mandate." *In re Fraschilla*, 235 B.R. 449, 461 (9th Cir.B.A.P.1999).

### B. The Debtor Is Not Violating the Mandate Doctrine

Here, the Debtor's Brief acknowledges the District Court's Decision on §1191(c) as the law of the case as how to interpret "fair and equitable" as a matter of law. The mandate permits and requires this Court to determine how the Plan is "fair and equitable" in light of the Decision, which Debtor's Brief addresses as a matter of applying the facts to the law. Indeed, the Ninth

---

[2] *Thornton* is a case relied on by MET. *See*, ECF 1141 (Response) 7:11-14.

[3] *Firth* is another case relied on by MET. *See*, ECF (Response) 7:11-14.

4

Circuit chastised the district court in *Firth* for simply going in the other direction on remand without actually analyzing and applying the facts to the law on remand: "Unlike the district court's first decision, its decision on remand did not itemize the lost wages award in any way. To justify such a drastic increase in this aspect of plaintiff's recovery, some explanation should be provided." *Id.* at 995.  Here, Debtor's Brief provided detailed legal authority and well-reasoned analysis to explain what "fair and equitable" means under the District Court's Decision interpreting §1191(c) and why the Plan is "fair and equitable," which is required for this Court's analysis on remand.  Without the Debtor's detailed analysis to support this Court's supplemental FFCL on remand, this Court would be at risk of the same problem that confronted the district court in *Firth*: "Because the district court's decision on remand lacks any information as the factors considered… a meaningful review of whether the $150,000 lost wages award is supportable is impossible..  therefore, although we do not relish this function, we feel compelled to remand to the district court for the limited purpose of its making more detailed findings and conclusions…" *Id.*  Debtor's detailed Brief on "fair and equitable" saves this Court from yet another remand for lack of detailed findings and conclusions on the issue of how to apply the "fair and equitable" test that the District Court decided.

### C.  Confirming the Plan Does Not Violate the Mandate Doctrine

MET is wrong in its assertation that "Debtor's argument disregards the District Court's holding and instead reasserts the very limitation the District Court rejected."  ECF 1141 (Response) 8:3-4.  MET is wrong because MET fails to understand that the District Court's decision is a limitation on the interpretation of the law, but it is not a limitation on the application of the law to these facts.  "As the Supreme Court has held, on remand, a trial court 'may consider and decide any matters left open by the mandate of this court.'" *In re Lahijani*, 2008 WL 8444818 *1, *3 (9th Cir.B.A.P. June 11, 2008) (quoting *Quern v. Jordan*, 440 U.S. 332, 347 n.18 (1979)).

In fact, the Ninth Circuit in this particular case clearly stated: "The district court left open the possibility that ***the bankruptcy court could confirm the same plan*** or confirm a different

5

plan." ECF 1128 (Order) 3 (emphasis added). Here, the District Court's Decision on the Plan concluded that "the Bankruptcy Court erred in finding that Met was ***entitled to only*** 'three-to-five years' of projected Disposable Income…" ECF 946 (Decision) 6:14-15 (emphasis added). Debtor emphasizes the words "entitled" and "only" because the District Court's holding is a ruling as a matter of law that the FFCL "reflect[s] an incorrect application of the law" on § 1191(c), which "first" is not limited to disposable income and, "second," is not limited to five years. ECF 946 (Decision) 4:16-18. The District Court did not reverse or remand as a matter of factual finding that MET is entitled to more than three-to-five years' of projected Disposable Income; rather, only that §1191(c), as a matter of law, permits the Bankruptcy Court to consider more in determining what is "fair and equitable."

The Debtor's Brief does not violate any mandate by explaining why the Plan is "fair and equitable" to Class 3 with three years of projected disposable income based on the facts of this particular case, even though §1191(c) would legally permit more (as a matter of law) if the right facts were present (which they are not in this particular case). Notably, MET has not made any argument as to what else in addition to three years of projected disposable income is required for this Plan to be "fair and equitable," such as the enumerated uncodified aspects of "fair and equitable" [*see*, ECF 1136 (Brief) 21:11-23] or otherwise. The Court should conclude, for all the reasons stated in Debtor's Brief, that the Plan is "fair and equitable" to MET and Class 3.

**D. Debtor Is Not Attacking the Correctness of the District Court Decision**

Contrary to MET's assertions, Debtor is not attacking the correctness of the District Court's Decision. ECF 1141 (Response) 8:17-18. Debtor readily acknowledges the District Court's interpretation of §1191(c) is the law of the case. ECF 1136 (Brief) 7:17- 8:16. Debtor's Brief then explained why the Plan is still "fair and equitable" under the District Court's interpretation, which "can include (but is not required to include) more than what the text of §1191(c) provides." ECF 1136 (Brief) 8:15-16.

True, Debtor included in its Brief a substantial amount of analysis on "fair and equitable" that Debtor presented in its Ninth Circuit opening brief. ECF 1141 (Response) 8:25-26. But,

contrary to MET's protestation, Debtor's analysis is neither improper nor should this Court disregard it in its entirety. ECF 1141 (Response) 8:20-25. Debtor's analysis is necessary and appropriate to understand what "fair and equitable" means in light of the complex 100-year case law and jurisprudence on the matter, which is necessarily helpful in deciding the issue as a matter of application of the law to the facts here.

Moreover, it should be noted that Debtor intentionally excluded many arguments from its Ninth Circuit brief when preparing its remand Brief for this Court, notably, entire discussions on overall statutory scheme, statutory construction comparing §1191(c)(2) with §1192(1) and §1193(c), and distinguishing the District Court's case law citations. ECF 1144 (RJN) 77-78, 80-85. Debtor specifically excluded these arguments because they are not compatible with the Decision's law of the case in interpreting §1191(c). However, by contrast, Debtor's discussion of the historical and legislative origins of "fair and equitable" are compatible with and helpful for applying the Decision's interpretation of §1191(c) to the facts of this case.

### III.    THE PLAN IS FAIR AND EQUITABLE

#### A. Debtor Is Correct in Its Analysis of Subchapter V as Composition Law

Debtor is correct in its analysis that Subchapter V is composition law, which is a helpful guide in determining what is "fair and equitable," and MET has never presented an intellectually sound response. Because MET submitted Debtor's Ninth Circuit brief as part of MET's request for judicial notice ("RJN") [ECF 1144], Debtor submits an RJN ("2ND RJN") in response that includes MET's Ninth Circuit answering brief and Debtor's Ninth Circuit reply brief. The Court will note that MET had no substantive response to Debtor's detailed analysis of what "fair and equitable" means, and, moreover, at every level of this dispute, MET's understanding of "fair and equitable" under §1191(c) has been the same as the Debtor's understanding and focused on the proper calculation of "disposable income" with a focus on plan projection expense line items. 2ND RJN Ex. 2 (9th Cir. ECF 49.1 at 7-9).[4]

---

[4] 2ND RJN pagination cites are to the pagination at the bottom of the page, not ECF ribbons at the top of the page.

Much like MET's brief to the Ninth Circuit, here, MET has no intellectual answer to Debtor's detailed "fair and equitable" analysis and synthesis of 100 years of composition law culminating in Subchapter V.  2ND RJN Ex.2 (9th Cir. ECF 49.1 at 5-7).  Instead, MET derides Debtor's analysis as a "fallacy" and chides Debtor for "fail[ing] to provide a single case cite in support of it," and "manufactured argument," "outdated and irrelevant cases decided under the former Bankruptcy Act." ECF 1141 (Response) 11:12-15. MET fails to acknowledge the obvious from reading Debtor's detailed historical analysis on this issue, that composition law for small businesses was dormant from 1978 (when chapter 11 of the modern Bankruptcy Code replaced and repealed Chapter XI of the Bankruptcy Act) until 2020 (when Subchapter V was enacted for small business reorganization).  There has been no opportunity for any case law on small business composition law for over 40 years, and a substantial part of the analysis must return to the pre-Code jurisprudence to understand it.  Moreover, in the six years since the enactment of Subchapter V, Debtor is unaware of any case decision that went to the extreme of this Decision stating: "§1191(c)(2)(A) does not prohibit the provision of some amount of disposable income that is less than 100% after five years; that is, a plan could require 100% of debtor's disposable income in years one through five, 75% in years six through eight, and so on." ECF 946 (Decision) 5:18-20.  Indeed, not even MET ever raised this interpretation of §1191(c), which is now the law of the case, but is undeniably an outlier and, thus, there are no Subchapter V decisions discussing this issue anywhere. The issue is novel, and Debtor's analysis is at the cutting edge, and it is right.  Moreover, MET's inability to mount an intellectually defensible response is a strong indication that Debtor is correct.

MET's only attempt to counter Debtor on composition law is relegated to MET's mere single footnote attempting to distinguish *In re Greer*, 60 B.R. 547 (Bankr.C.D.Cal.1986). Naturally, *Greer* is not on all fours because Chapter 13 involves individuals, but the parallels between Chapter 13 and Subchapter V with respect to the three-to-five-year periods are undeniable.  *See*, Paul W. Bonapfel, <u>A Guide to the Small Business Reorganization Act of 2019</u>, 93 Am. Bankr. L.J. 571, 612-13 (Winter 2019) (comparing Chapters).

MET impliedly seeks to undermine the parallels between Chapter 13 and Subchapter V with a hollow distinction of Chapter 13 as "individual wage earners" to be protected from "involuntary servitude."    ECF 1141 (Response) 11:23-24.    But MET fails to recognize the fundamental tenant of composition law, which caused Congress to eliminate the absolute priority rule for small businesses in Chapter XI:

> This was part and parcel of the theory of composition: if you had to pay the full going concern value of the enterprise to your creditors, even though they might agree to accept less, composition was never possible.  This might have been acceptable public policy to an enterprise like a publicly-held corporation, where the equity ownership might come and go.  It was less palatable in the case of the typical Chapter 11 debtor – a sole proprietorship or a closely-held 'family' corporation.

Ayers, Rethinking Absolute Priority After Ahlers, 87 Mich.L.Rev. 963, 977 (Apr. 1989).  *See also*, ECF 1144 (RJN) 59-61.  Without the three-to-five year protection, the sole proprietor or family members working in the closely-held family business are stuck in indentured servitude until creditors or paid in full or, alternatively, they give up the family business. Indeed, chapter 12 provides the same type of three-to-five-year protection to family farmers, which may not be individuals, and, hence, the debtor need not be an "individual" to need to be protected from the indentured servitude of perpetual labor until creditors are paid in full by application of the absolute priority rule. *See*, 8 COLLIER ON BANKRUPTCY ¶ 1200.1[2] (Richard Levin & Henry J. Sommer eds. 16th ed.).  Subchapter V eliminated the absolute priority rule.  11 U.S.C. § 1181(a). In its place, Congress has inserted a construct of a three-to-five-year commitment period for paying creditors.   11 U.S.C. § 1191(c).   Even under the District Court's interpretation of §1191(c) as non-limiting, the parallels between Subchapter V, on the one hand, and Chapters 12 and 13, on the other hand, are obvious and strongly suggestive of similar motives.

In light of the District Court's Decision as the law of the case that §1191(c)(2)(A) is not limited to five years, so long as the quantum of disposable income after year five is less than 100%, Debtor's Brief did not argue that a strict 5-year limit is imposed, but, rather, that in light of all of the history of the 3-to-5-year limitation from Chapter 12 and 13, that there should be

9

very compelling reasons for exceeding that 3-to-5-year commitment period, and on the facts of this particular case, there is no reason to exceed three years or disposable income.  ECF 1136 (Brief) 8:13- 21:10.

### B.  The Plan is Fair and Equitable Under §1191(c)

The District Court's Decision held ***as a matter of law*** that "fair and equitable" under §1191(c) can include (but is not required to include) more than what the text of §1191(c) provides, and is limited to neither the express provisions of §1191(c) nor five years' of projected disposable income.  Debtor accepted the District Court's decision as the law of the case, and Debtor's Brief did not argue to change that decision.

Nonetheless, the District Court's decision was extremely open-ended in how this Court as the trial court determines what is "fair and equitable" under §1191(c).  Thus, ***as a matter of application of the law to the facts of this particular case***, the Debtor's Brief explains the history and legislative context of what uncodified aspects of "fair and equitable" are, why those uncodified aspects do not apply to the facts of this particular case, and why more than three years' of projected disposable income (although legally permitted under the Decision) is not required under the facts of this particular case.  Notably, MET did not challenge these arguments: (1) MET did not argue that any of the uncodified "fair and equitable" rules apply here; and (2) MET did not argue that more than three years' worth of projected disposable income was required to be "fair and equitable" under the facts of this particular case.

### IV.    THE PLAN DOES NOT DISTRIMINATE UNFAIRLY

This Court should find that the Plan does not discriminate unfairly against MET or Class 3.  Notably, chapter 11 (including subchapter V) permits some amount discrimination as "fair," and it is only "unfair" discrimination that is prohibited.  *In re Aztec Co.*, 107 B.R. 585, 588-89 (Bankr.M.D.Tenn.1989) (collecting examples of fair and unfair discrimination).  The Plan clearly involves discrimination between Classes 2 and 4, on the one hand, and Class 3, on the other hand.  The question this Court must address is whether the Plan's discrimination is fair.

Contrary to MET's arguments, Debtor is not "invent[ing] a different 'composition'-based standard for unfair discrimination." ECF 1141 (Response) 12:16-17. "The standards for unfair discrimination under §1191(b) are the same as under §1129(b)(1)." *In re Trinity Family Prac. & Urgent Care PLLC*, 622 B.R. 236, 265 (Bankr.S.D.Tex.2020). At its core, the unfair discrimination "provision requires that a plan '***allocate*** value to the class in a manner consistent with the treatment afforded to other classes with similar legal claims.'" *In re Acequia*, 787 F.2d 1352, 1364 (9th Cir.1986) (quoting 5 Collier ¶1129.03)) (emphasis added); *In re Monarch Beach Venture, Ltd.*, 166 B.R. at 437 (quoting Collier ¶1129.03) ("treatment which allocates value to the class…"); *see also*, ECF 1144 (RJN) 88. MET's Response never addresses allocation – it never even mentions it once, and, thus, knowing that some amount of discrimination is permitted, MET never addresses the fundamental concept of when the Plan's allocation of property rises to the point of being "unfair" discrimination. *See generally*, ECF 1141 (Response).

Debtor's position is intelligent and defensible, that Subchapter V is composition law, and "[c]omposition contemplates that the business proceeds with the eventual end of rehabilitation." *SEC v. U.S. Realty & Imp. Co.*, 310 U.S. 434, 464 (1940) (J. Roberts, dissenting) and *Lorber v. Vista Irr. Dist.*, 143 2d 282, 285 (9th Cir.1944)). The "fair and equitable" composition of unsecured debts in Subchapter V ends after the Commitment Period set forth in §1191(c)(2) (the eventual end of rehabilitation – which, according to the District Court, could be longer than 5 years if the projected disposable income commitment after year-5 is less than 100%), and the business thereafter proceeds with the insiders addressing their own debt-and-equity capital structure. *See*, *U.S. Realty & Imp. Co.*, 310 U.S. at 454 (composition law); Ayers, Rethinking Absolute Priority After Ahlers, 87 Mich.L.Rev. 963, 977 (Apr. 1989)) (composition law).

Contrary to MET's assertions otherwise, the District Court did not reject Debtor's "composition law plan" theory. ECF 1141 (Response) 12:20-22, 13:9 ("***explicitly*** rejected by the District Court") (emphasis added). The District Court could not have rejected (much less "explicitly rejected") Debtor's composition-law theory because these issues were never raised to

11

the District Court, the District Court raised its interpretation of §1191(c) *sua sponte* without any briefing from the parties, and the Debtor explained the composition-law theory of the Plan for the first time in the briefing at the Ninth Circuit.    *See*, ECF 1144 (RJN) 53-54, 56-86. Moreover, the District Court noted that the difference in treatment between Class 3 and Classes 2 and 4 is "dramatic," but the District Court declined to reach a conclusion on that issue.  ECF 946 (Decision) 6:17-19.  The District Court remanded because of a misapplication of §1191(c) for "fair and equitable," but now on remand, after explaining why the Plan is "fair and equitable" to Class 3 under the District Court's interpretation of §1191(c), the Debtor respectfully submits that the ***allocation*** of property under the Plan is ***fair*** discrimination in light of the Debtor's insider equity-debt capital structure.  In summary, based on the analysis provided, the Debtor is asking this Court to look at the entire Plan (even beyond three-year treatment for Class 3) and determine that the Plan discriminates fairly by providing Class 3 with all of the Projected Disposable Income of the 3-year Commitment Period, and by leaving the residual property for the insider debt-equity capital structure after year-3 when the rehabilitation ends under the composition-law theory.

MET unfairly attacks Debtor's characterization of its insider debt-equity capital structure as being contrary to the terms of the Plan and an indication of unfair discrimination.  ECF 1141 (Response) 13:26-28.  The Debtor had no need to explain the treatment of insider debt and equity as an insider capital structure in the Plan or in the Plan briefing in 2022.  It was only after the District Court's *sua sponte* and novel reading of §1191(c) as limitless and free to expand even beyond the three-to-five-year limit of §1191(c)(2)(A) that Debtor was required to research and explain the history and uncodified aspects and limits of "fair and equitable," under Chapter 11 and its predecessor insolvency laws for over 100 years to explain composition law and the relevance of an insider-debt-equity capital structure.  And, after analyzing the history of composition law and explaining it in its briefs to the Ninth Circuit and here on remand to this Court, the Debor respectfully submits that it is correct, and the Plan should be confirmed.

The challenge for this Court under the District Court's Decision on §1191(c), is that without a statutory limit on the three-to-five-year commitment period of §1191(c)(2), each court must decide when the rehabilitation ends and equity holders move on.  Moreover, in each instance each court could decide not to added projected disposable income in any quanta between 0% and 99.99% from year 6 onward with a creditor recovery ranging from the absolute minimum of what is required under §1129(a)(7) up to creditor repayment in full, which would be the return of the absolute priority rule, seemingly in derogation of Congress' elimination of that rule under §1181(a).  In order to give effect to Congress' elimination of the absolute priority rule under §1181(a), and recognizing that the Court has latitude to decide what is "fair and equitable" under §1191(c), once the determination of "fair and equitable" is made in terms of the property under a plan, it is logical and fair discrimination to allocate all of that property to the non-insider creditor classes.  That is what Debtor has done here and why the Plan does not discriminate unfairly.

As an illustration of why the Plan's allocation of property under the Plan is fair discrimination, the Debtor respectfully invites the Court's attention to several examples of a different treatments of Classes 2, 3 and 4, proposed by MET in its Ninth Circuit brief and Debtor's reply thereto. *See*, 2ND RJN Ex.2 (9th Cir. ECF 49.1 at 23-27); *see also*, 2ND RJN Ex.1 (9th Cir. ECF 40.1 at 36-41).  In every example where MET has proposed some different Plan treatment with respect to Classes 2, 3, and 4 – sometimes to equalize insider and non-insider treatment, but more often to make insider treatment much worse – in none of those scenarios did MET's re-allocation of non-insider Class 3 creditors improve. *See*, 2ND RJN Ex.2 (9th Cir. ECF 49.1 at 23-27): *see also*, 2ND RJN Ex.2 (9th Cir. ECF 40.1 at 36-41).

## V.      THE PLAN CAN BE CONFIRMED ON THIS RECORD

### A.  MET Is Defying This Court's Instructions to Not Expand the Record

The Court specifically instructed the parties that it would not consider new evidence in relation to the plan confirmation remand hearing.  ECF 1144 (RJN) 183 (transcript page 26).  Nonetheless, MET defies this Court, improperly cites several monthly operating reports filed

13

years after the Plan confirmation hearing to argue that the Plan cannot be confirmed [*see*, ECF 1141 (Response) 14:19-24 and n.6], and seeks to justify its transgression by selectively citing certain pages from the hearing transcript on February 17, 2026, purporting to show that the Court permitted the consideration of such additional evidence. ECF 1141 (Response) 16:24- 17:4 and fn.8-11; *see also*, ECF 1144 (RJN) 177-180 (transcript pages 20-23).

MET's defiance of this Court and selective and misleading citations are egregious because right after these pages cited by MET in the transcript, the Court decided that it would not consider any new evidence:

> "THE COURT: … you know, more I think about it, I think you're right… I'd have to look at the plan at ***that*** time and whether – I think – I know I just changed my mind on the new evidence…And the question is, at ***that*** time, that's what we're talking about."[5]

> "THE COURT: … I don't think at this point I need anything new."[6]

> "THE COURT: … ***I'm not going to allow any new evidence***."[7]

> "THE COURT: … it may be as a practical matter things have changed, but that – but that is not the issue before me. The issue before me, should I have confirmed ***that*** plan given the issues you've said."[8]

> "THE COURT: …So there will be no – there will be no – you can argue it, but I don't want any new declarations as far as any – any new evidence…. ***I should really look at it as of four years ago***…"[9]

MET knew it was not supposed to cite new evidence and make these arguments, but MET did it anyway, selectively citing to the transcript pages before the Court made its decision against new evidence.

---

[5] ECF 1144 (RJN)182:18-24 (transcript page 25) (emphasis added).

[6] ECF 1144 (RJN)183:1-2 (transcript page 26).

[7] ECF 1144 (RJN)183:8 (transcript page 26) (emphasis added).

[8] ECF 1144 (RJN)183:11-14 (transcript page 26) (emphasis added).

[9] ECF 1144 (RJN)18316-20: (transcript page 26) (emphasis added).

### B.  None of MET's Cited Cases Require Expanding the Record on Remand

MET has cited several cases for the proposition that on remand the court must consider new and current evidence on feasibility and the liquidation analysis to confirm a plan, but none of MET's cases are on point, and the Court should reject MET's argument.

Debtor agrees it is black letter law that "feasibility… is a critical factor for every proposed chapter 11 plan." *In re Curiel*, 651 B.R. 548, 560 (9th Cir.B.A.P.2023); ECF 1141 (Response) 14:1-2.  But *Curiel* does not stand for MET's proposition that on remand the trial court must re-evaluate feasibility anew on a new record, for *Curiel* involved simply whether a plan met the standards of feasibility at the original plan confirmation.  *Id.* at 563.  Likewise, MET's cited case of *In re Las Vegas Monorail Co.*, 462 B.R. 795, 798 (Bankr.D.Nev.2011), is a trial-level decision where the bankruptcy court evaluates the feasibility of a plan at the original plan confirmation hearing – there is no appeal at all, much less any discussion of whether to re-address feasibility after remand.  *Id.*; ECF 1141 (Response) 15:1-4.

Similarly, MET's cited cases of *In re Premier Network Servs., Inc.*, 2005 WL 6443624 *1, *3 (Bankr.N.D.Tex. July 1, 2005), and *In re Moore*, 81 B.R. 513, 516 (Bankr.S.D. Iowa 1988), are nothing more than trial-level decision where the bankruptcy courts evaluate the best-interest-of-creditors test of plans at the original plan confirmation hearings (and in neither case did those debtors provide "current" financial information at their original plan hearings) – there were no appeals, much less any discussion of whether to re-address §1129(a)(7) anew on remand.  *Id.*; ECF 1141 (Response) 15:13.

### C.  MET's Attempt at Reverse "Equitable Mootness" Against Debtor

MET's "feasibility" and "best interest of creditors test" arguments are a truly unfair twist on the equitable mootness doctrine, which this Court should reject. "Equitable mootness is a prudential doctrine by which a court elects not to reach the merits of a bankruptcy appeal." *In re Transwest Resort Properties, Inc.*, 801 F.3d 1161, 1167-68 (9th Cir.2015). The doctrine arises in appeals of unstayed plan confirmation orders where the reorganization has been substantially consummated, and one important consideration is whether the plan was stayed.  *Id.* at 1168; 7

15

Collier ¶1129.09[2][a], ¶1129.09[2][e], ¶1129.09[4][i].

MET obtained a stay of this Court's Plan Order (over Debtor's objection) from the District Court, arguing it was necessary to prevent equitable mootness. *See*, ECF 858 (MET Mtn) 37:10-11. Now MET argues the stay that MET itself obtained has caused equitable mootness: "… the Court cannot… assess confirmation based on stale, four-year-old facts and evidence." ECF 1141 (Response) 13:22-23.  That is not fair to Debtor, and this Court should reject MET's unfair argument, particularly at this stage when the District Court remanded with respect to only one novel interpretation of law and did not rule on any of the issues that MET actually raised on appeal.

Moreover, this argument of "stale" data to make Debtor go back and update projections or liquidation analysis (or both) has been MET's litigation tactic to cause delay since the beginning, even when there is as little as four-month gap between filing and plan hearing.  *See*, ECF 236 (original plan hearing transcript on 10/8/20200) 60:14-21. ("[MET's Counsel]:…they [Debtor] still rely on a plan that was filed back in June [2020]? To me, there should be amendments to this plan… as it sits today, it is nonconfirmable.").  Debtor got ahead of MET's litigation tactic in 2022 but nonetheless had to update and amend its financial data again due to MET delaying plan confirmation from February 2022 to August 2022.  ECF 647 (status conference hearing transcript on 6/7/2022) 13:10- 14:7 ("[Debtor's Counsel]: The debtor has prepared  updated projections…").  But MET still criticized Debtor's data at the Plan hearing on August 10, 2022, as not being updated.  ECF 735 (transcript hearing on 8/10/2022) 12:20- 13:4; and  61:11- 62:11.  MET again raised the "stale" data argument to the Ninth Circuit in October 2025.  2ND RJN Ex.2 (9th Cir. ECF 40.01 at p.35. MET wants delay as a litigation tactic because MET cites it as grounds for conversion or dismissal. ECF 1141 (Response) 6:18-23.

Furthermore, this Court should reject MET's argument because "equitable mootness is a judge-created doctrine that reflects an *unwillingness* to provide relief." *Id.* at 1167 (emphasis in original). "The… most important, consideration in the equitable mootness test is whether the bankruptcy court could fashion equitable relief without completely undoing the plan." *Id.* at

1171.  Under §1191(c)(2), the Plan payments are based on "projected disposable income," and a true up to "actual disposable income" is unnecessary. *In re Sisk*, 962 F.3d 1133, 1149 (2020); *In re Anderson*, 21 F.3d 355, 358 (9th Cir.1994).  If the Plan's projected dollar amount to Class 3 is paid, the Plan can be implemented, and there is no equitable mootness. ECF 657 (Plan) 20-21, 39.  Even if Debtor cannot implement the Plan, Debtor may modify under §1193(c).

### D.  The Court Should Not Convert the Case to Chapter 7

Debtor's case should not be converted to chapter 7.  MET's cited case of *In re American Capital Equipment, Inc.*, 405 B.R. 415, 427 (Bankr.W.D.Penn.2009), is far off point.  That case involved five plans that were never confirmed, no appeals, and – most importantly – a finding by the trial court that "the Debtor… will not be able to effectuate a confirmable plan going forward, regardless of how much more time the Court might afford… because… such parties have already expressed to the Court, at several hearings, ***their unwillingness to rectify certain of the flaws that the Court has identified***…" *Id.* (emphasis added).

Here, Debtor confirmed both of the two plans that it proposed, and although those plans were remanded twice, the second time was not on any issue raised by the parties but on a novel issue raised *sua sponte* by the District Court. Moreover, here, Hologenix has never been recalcitrant in a refusal to rectify any flaws the Court might identify (indeed, this Court has twice confirmed Debtor's plans).  The Debtor has always diligently proposed its plans within a short period of time: (1) within 45 days of the Petition Date [*see*, ECF 83]; (2) within 49 days of the first status conference on remand on November 16, 2021 [*see*, ECF 422, 452]; and (3) within just 14 days of the status conference hearing on June 7, 2022, when the Court set the plan confirmation briefing schedule [*see*, ECF 647, 657].  There were less than six months between the Petition Date and the first plan confirmation hearing in October 2020 [ECF 1, 248], and only nine months[10] between the remand status conference in November 2021 and the second plan confirmation hearing in August 2022 [ECF 422, 735].  Thus, Debtor's active chapter 11 period

---

[10] Of those nine months, six months of delay was on account of MET's extensive and litigious plan discovery.  *See*, ECF 762 (FFCL) 23 (¶¶106, 107), 25 (¶114).

17

has been only 15 months (6 months for the first confirmation, and 9 months for the second confirmation), with the rest of the past six-year period involving appeals. This Plan should be confirmed, but, if the Court does not confirm this Plan, then Debtor should be afforded an opportunity to amend or modify because of Debtor's proven track record of diligently preparing plans (confirmed by this Court) and willingness to rectify any issues that this Court or the District Court has raised.

### VI.    CONCLUSION

**WHEREFORE,** the Debtor respectfully requests that this Court enter an order:

(1)    Confirming the Plan;

(2)    Amending the FFCL to address the District Court's interpretation of Section 1191(c) on remand; and

(3)    Granting such further and other relief as the Court deems just and proper.

Dated: April 21, 2026                         HOLOGENIX, LLC

By:    _/s/ John-Patrick M. Fritz_____
RON BENDER
JOHN-PATRICK M. FRITZ
LEVENE, NEALE, BENDER,
YOO & GOLUBCHIK L.L.P.
Attorneys for Chapter 11
Debtor and Debtor in Possession

18

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 2818 La Cienega Avenue, Los Angeles, CA 90034

**A true and correct** copy of the foregoing document **Debtor's Reply In Support Of Confirming Plan After Remand From The District Court** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

**1**. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On April 21, 2026, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒  Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On April 21, 2026 I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the `document is filed.
☐  Service information continued on attached page

**Honorable Barry Russell**
United States Bankruptcy Court
Central District of California
Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Suite 1660 / Courtroom 1668
Los Angeles, CA 90012

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on April 21, 2026  I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| April 21, 2026 | J. Klassi | /s/ J. Klassi |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

1

- **Todd M Arnold    tma@lnbyg.com**
- **Ron Bender    rb@lnbyg.com**
- **Thomas E Butler    butlert@whiteandwilliams.com, sullivann@whiteandwilliams.com;millnamowm@whiteandwilliams.com;panchavatis@whiteandwilliams.com**
- **Robert Carrasco    rmc@lnbyg.com, rmc@lnbyg.com**
- **Aaron E. De Leest    adeleest@marshackhays.com, adeleest@marshackhays.com,alinares@ecf.courtdrive.com**
- **Oscar Estrada    oestrada@ttc.lacounty.gov**
- **Theodore W Frank    frank@psmlawyers.com, knarfdet@gmail.com;navarro@parkermillsllp.com**
- **John-Patrick M Fritz    jpf@lnbyg.com, JPF.LNBYB@ecf.inforuptcy.com**
- **Michael S Greger    mgreger@allenmatkins.com, kpreston@allenmatkins.com**
- **Brian T Harvey    bharvey@buchalter.com, docket@buchalter.com;dbodkin@buchalter.com**
- **Gregory Kent Jones (TR)    gjones@sycr.com, smjohnson@sycr.com;C191@ecfcbis.com;cpesis@stradlinglaw.com**
- **Alphamorlai Lamine Kebeh    MKebeh@allenmatkins.com, mdiaz@allenmatkins.com**
- **Raffi Khatchadourian    raffi@hemar-rousso.com**
- **Tinho Mang    tmang@marshackhays.com, tmang@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@ecf.courtdrive.com**
- **Ron Maroko    ron.maroko@usdoj.gov**
- **Juliet Y. Oh    jyo@lnbyg.com, jyo@lnbyb.com**
- **Carmela Pagay    ctp@lnbyg.com**
- **Yvonne Ramirez-Browning    yvonne@browninglawgroup.com, veronica@browninglawgroup.com**
- **Kurt Ramlo    RamloLegal@gmail.com, kr@ecf.courtdrive.com,ramlo@recap.email**
- **James R Selth    jselth@yahoo.com, jselth@yahoo.com,maraki@wztslaw.com,sfritz@wztslaw.com,admin@wztslaw.com**
- **Zev Shechtman    Zev.Shechtman@saul.com, zshechtman@ecf.inforuptcy.com;hannah.richmond@saul.com;LitigationDocketing@saul.com**
- **Lindsey L Smith    lls@lnbyb.com, lls@ecf.inforuptcy.com**
- **Randye B Soref    rsoref@polsinelli.com, ccripe@polsinelli.com;ladocketing@polsinelli.com**
- **Heidi J Sorvino    sorvinoh@whiteandwilliams.com, millnamowm@whiteandwilliams.com;sullivann@whiteandwilliams.com;panchavatis@whiteandwilliams.com;butlert@whiteandwilliams.com**
- **Alan Stomel    alan.stomel@gmail.com, astomel@yahoo.com**
- **Annie Y Stoops    annie.stoops@afslaw.com, yvonne.li@afslaw.com;mia.ferguson@afslaw.com**
- **Nicole Sullivan    sullivann@whiteandwilliams.com, vulpioa@whiteandwilliams.com,arthura@whiteandwilliams.com**
- **Derrick Talerico    dtalerico@wztslaw.com, maraki@wztslaw.com,sfritz@wztslaw.com,admin@wztslaw.com**
- **John N Tedford    JNT@LNBYG.com, jnt@ecf.courtdrive.com**
- **United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov**
- **Larry D Webb    Webblaw@gmail.com, larry@webblaw.onmicrosoft.com**
- **David Wood    dwood@marshackhays.com, dwood@ecf.courtdrive.com;lbuchananmh@ecf.courtdrive.com;spineda@ecf.courtdrive.com;alinares@ecf.courtdrive.com**

2