RON BENDER (State Bar No. 143364)
JOHN-PATRICK M. FRITZ (State Bar No. 245240)
LEVENE, NEALE, BENDER,
YOO & GOLUBCHIK L.L.P.
2818 La Cienega Avenue
Los Angeles, California 90034
Telephone:  (310) 229-1234
Facsimile:  (310) 229-1244
Email: RB@LNBYG.COM; JPF@LNBYG.COM


Attorneys for Chapter 11
Debtor and Debtor in Possession

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## LOS ANGELES DIVISION

| | |
|---|---|
| In re: | ) Case No.: 2:20-bk-13849-BR |
| | ) |
| HOLOGENIX, LLC, | ) Chapter 11 Case |
| | ) |
| Debtor and Debtor in Possession. | ) Subchapter V |
| | ) |
| | ) **DEBTOR'S REQUEST FOR JUDICIAL** |
| | ) **NOTICE IN SUPPORT OF DBETOR'S** |
| | ) **REPLY  BRIEFS  AFTER  REMAND** |
| | ) **FILED ON APRIL 21, 2026** |
| | ) |
| | ) Hearing: |
| | ) Date:  May 26, 2026 |
| | ) Time:  10:00 a.m. |
| | ) Place:  Courtroom 1668 |
| | )           255 East Temple Street |
| | )           Los Angeles, CA 90012 |
| | ) |
| | ) |

Hologenix, LLC, a Delaware limited liability company (the "Debtor"), the debtor and debtor in possession in the above-captioned, chapter 11 bankruptcy case hereby respectfully submits its request for judicial notice ("RJN") of the documents described below and attached hereto pursuant to Rule 201 of the Federal Rules of Evidence.  This RJN is made in support of Debtor's replies (the "Replies") to the responses (the "Responses") [ECF 1141, 1143] of

1

Multiple Energy Technologies, LLC ("MET") in relation to Debtor's briefs (the "Briefs") [ECF 1135, 1136] in support of this Court confirming the *Debtor's Chapter 11, Subchapter V, Plan Dated January 4, 2022, Modified June 21, 2022* (the "Plan") [ECF 657] and assumption of the executory employment contract (the "Contract") between the Debtor and Seth Casden, after the District Court's judgment (the "Judgment") [ECF 947] and decision (the "Decision") [ECF 946] remanding this Court's *Order Authorizing Assumption of Executory Contract with Seth Casden* (the "Order") [ECF 761], and this Court's *Order Confirming Debtor's Chapter 11, Subchapter V, Plan Dated January 4, 2022, Modified June 21, 2022* (the "Plan Order") [ECF 763], as amended [ECF 870], for further findings and conclusions.

## REQUEST FOR JUDICIAL NOTICE

As a general rule, the Court may take judicial notice of any fact that is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial ocurt, (2) capable of accurate and ready determination by resort to resources whose accuracy cannot reasonably be questioned." FED.R.EVID. 201(b).  A court "may take judicial notice of undisputed matters of public record, including documents on file in federal or state courts." *Harris c. County of Orange*, 682 F.3d 1126, 1132 (9th Cir.2012).  In accordance with this rule, Debtor requests that the court consider the following documents, true and correct copies of which are attached hereto:

Exhibit 1 – MET's answering brief in the Ninth Circuit Case 24-2881 (Doc. No. 40.1);

Exhibit 2 – Debtor's reply brief in the Ninth Circuit Case 24-2881 (Doc. No. 49.1).

Dated: April 21, 2026                     HOLOGENIX, LLC

By:    /s/ John-Patrick M. Fritz
RON BENDER
JOHN-PATRICK M. FRITZ
LEVENE, NEALE, BENDER,
YOO & GOLUBCHIK L.L.P.
Attorneys for Chapter 11
Debtor and Debtor in Possession

2

# EXHIBIT "1"

No. 24-2881

# United States Court of Appeals for the Ninth Circuit

———— • ————

IN RE: HOLOGENIX, LLC, DEBTOR

———————————

MULTIPLE ENERGY TECHNOLOGIES, LLC,

*Appellee,*

— v. —

HOLOGENIX, LLC,

*Appellant.*

———————————

APPEAL FROM A DECISION OF THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
NO. 2:22-CV-07510-FMO · HONORABLE FERNANDO M. OLGUIN

## BRIEF FOR APPELLEE

NICOLE SULLIVAN
WHITE & WILLIAMS, LLP
810 Seventh Avenue, Suite 500
New York, New York 10019
(212) 631-4420
sullivann@whiteandwilliams.com

ROYE ZUR
ELKINS KALT WEINTRAUB
  REUBEN GARTSIDE, LLP
10345 West Olympic Boulevard
Los Angeles, California 90064
(310) 746-4400
rzur@elkinskalt.com

*Attorneys for Appellee*

CP COUNSEL PRESS    (800) 4-APPEAL · (715225)

## DISCLOSURE STATEMENT

Appellee Multiple Energy Technologies, LLC hereby discloses that it is a

nongovernmental corporate party, and that no parent corporation or publicly held

corporation owns 10% or more of its stock.

Dated: October 10, 2025                    WHITE AND WILLIAMS LLP

/s/ Nicole A. Sullivan

Nicole A. Sullivan
Thomas E. Butler

*Attorneys for Appellee Multiple Energy
Technologies, LLC*

-and-

ELKINS KALT WEINTRAUB REUBEN
GARTSIDE LLP

/s/ Roye Zur

Roye Zur
Lauren N. Gans

*Attorneys for Appellee Multiple Energy
Technologies, LLC*

## TABLE OF CONTENTS

Page(s)

INTRODUCTION ...............................................................................................1

JURISDICTIONAL STATEMENT .....................................................................2

ISSUES PRESENTED.........................................................................................7

STANDARD OF REVIEW ..................................................................................9

STATEMENT OF THE CASE...........................................................................11

      A.     The Appellant's Bankruptcy Case ................................................11

      B.     The Old Plan..................................................................................11

      C.     The First Appellate Order .............................................................12

      D.     The Unauthorized Payments to Insiders ......................................14

      E.     The January 2022 Plan ..................................................................15

      F.     The Plan..........................................................................................15

      G.     The Confirmation Hearing ............................................................18

      H.     The Second Appellate Order Reversing Confirmation .......................19

SUMMARY OF THE ARGUMENT ..................................................................22

ARGUMENT .....................................................................................................24

I.     THE DISTRICT COURT CORRECTLY REVERSED THE
     CONFIRMATION ORDER.......................................................................24

      A.     The Bankruptcy Court Abused its Discretion By Failing to
           Consider the Treatment of Insiders .............................................24

      B.     References to §§1191(c)(2)(A) and 1332(c) Do Not Alter the
           Analysis ........................................................................................26

      C.     The District Court Cases Are Instructive .....................................28

      D.     Appellee Raised This Argument to the District Court.....................29

      E.     The Plan Is Not Fair or Equitable.................................................30

      F.     The Plan Is Not Feasible ...............................................................35

II.    REVERSAL OF CONFIRMATION IS WARRANTED ...........................35

      A.     The Plan Unfairly Discriminates Against Non-Insiders ...............35

      B.     The Bankruptcy Court Erred in Determining that Appellant, as
           Plan Proponent, Complied with the Code..........................46

C.  The Bankruptcy Court Erred in Determining that the Plan Meets the "Good Faith" Test ........................................................51

D.  The Bankruptcy Court Erred in Determining that the Plan Satisfied §1129(a)(5) ...............................................................53

E.  The Plan Does Not Satisfy the "Best Interest of Creditors" Test .......56

F.  The Bankruptcy Court Denied Appellee Due Process During the Confirmation Hearing ...............................................................62

STATEMENT OF RELATED CASES ................................................................67

CERTIFICATE OF COMPLIANCE ...................................................................68

CERTIFICATE OF SERVICE ............................................................................69

ADDENDUM .......................................................**Error! Bookmark not defined.**

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Aetna Realty Investors v. Monarch Beach Venture (In re Monarch Beach Venture),*
166 B.R. 426 (C.D. Cal. 1993) ....................................................................36

*Branch Banking & Tr. Co. v. R & S St. Rose, LLC (In re R & S St. Rose, LLC),*
621 F. Appx 497 (9th Cir. 2015) ..................................................................3

*Brinkley v. Chase Manhattan Mortg. & Realty Tr. (Matter of LeBlanc),*
622 F.2d 872 (5th Cir. 1980) ...........................................................39, 44, 45

*Bullard v. Blue Hills Bank,*
575 U.S. 496 (2015) .....................................................................................2

*First St. Holdings NV, LLC v. MS Mission Holdings, LLC (In re First St. Holdings NV, LLC),*
2012 Bankr. LEXIS 5636 (9th Cir. B.A.P. Dec. 5, 2012) ..........................64

*In re Acequia, Inc.,*
782 F.2d 1352 (9th Cir. 1986) ....................................................................36

*In re Acequia, Inc.,*
787 F.2d 1352 (9th Cir. 1986) .........................................................9, 52, 57, 66

*In re ACI Sunbow, LLC,*
206 B.R. 213 (Bankr. S.D. Cal. 1997) ........................................................51

*In re Adair,*
965 F.2d 777 (9th Cir. 1992) ......................................................................64

*In re Alcock,*
50 F.3d 1456 (9th Cir. 1995) ......................................................................32

*In re Art & Architecture Books of the 21st Century,*
2016 Bankr. LEXIS 859 (Bankr. C.D. Cal. Mar. 18, 2016) ............35, 57, 66

*In re Aztec Co.*,
   107 B.R. 585 (Bankr. M.D. Tenn. 1989)......................................................45

*In re Burg*,
   103 B.R. 222 (B.A.P. 9th Cir. 1989) ..........................................................65

*In re Dunlap Oil Co.*,
   2014 Bankr. LEXIS 4931 (9th Cir. B.A.P. Dec. 5, 2014)...................................48

*In re Eitemiller*,
   149 B.R. 626 (Bankr. D. Idaho 1993)...............................................37, 39, 40

*In re Ellingsworth Residential Community Assn.*,
   2020 Bankr. LEXIS 2897 (Bankr. M.D. Fla. Oct. 16, 2020) ...........................31

*In re Farwest Pump Co.*,
   2020 Bankr. LEXIS 2457 (B.A.P 9th Cir Sep. 18, 2020) ......................9, 54, 57

*In re Gugliuzza*,
   852 F.3d 884 (9th Cir. 2017) .................................................................2, 3

*In re Juarez*,
   836 F. App'x 557 (9th Cir. 2020) ..............................................................9

*In re Marshall*,
   721 F.3d 1032 (9th Cir. 2013) ..................................................................9

*In re Moore & Moore Trucking, LLC*,
   Op. Br. 55; 2022 Bankr. LEXIS 84 (Bankr. E.D. La. Jan. 12, 2022)...........48, 49

*In re Point Ctr. Fin., Inc.*,
   957 F.3d 990 (9th Cir. 2020) ...................................................................9

*In re Rexford Props. LLC*,
   558 B.R. 352 (Bankr. C.D. Cal. 2016) ......................................................37

*In re Sanitec Indus.*,
   2009 Bankr. LEXIS 4532 (B.A.P. 9th Cir Dec. 21, 2009).................................9

*In re Sisk*,
   962 F.3d 1133 (9th Cir. 2020) .................................................................35

*In re Sylmar Plaza, L.P.,*
    314 F.3d 1070 (9th Cir. 2002) ........................................................51

*In re Windmill Durango Off., LLC,*
    481 B.R. 51 (B.A.P. 9th Cir. 2012) .................................................9

*In re Woodbrook Assocs.,*
    19 F.3d 312 (7th Cir. 1994) ..........................................................45

*Kosmala v. Halvorson (In re Halvorson),*
    840 F. App'x 161 (9th Cir. 2021) ...................................................5

*Liberty Nat'l Enters. v. Ambanc La Mesa Ltd. Pshp. (In re Ambanc La*
    *Mesa Ltd. Pshp.),*
    115 F.3d 650 (9th Cir. 1996) ........................................36, 37, 38, 40

*Matthews v. Eldridge,*
    424 U.S. 319 (1976).....................................................................64

*Mullane v. Cent. Hanover Bank & Trust Co.,*
    339 U.S. 306 (1950).....................................................................64

*Stead Motors of Walnut Cr. v. Auto Machinists Lodge No. 1172 Int'l*
    *Assoc.,*
    886 F.2d 1200 (9th Cir. 1989) ......................................................32

*Tremaine v. Miller (In re Miller),*
    124 F. App'x 490 (9th Cir. 2005) .................................................10

*United States v. Hinkson,*
    585 F.3d 1247 (9th Cir. 2009) (en banc) .........................................9

**STATUTES AND COURT RULES**

11 U.S.C. §547.............................................................................17

11 U.S.C. §549.............................................................................17

11 U.S.C. §1129..................................................................... *passim*

11 U.S.C. §1191..................................................................... *passim*

28 U.S.C. §158(d) ..........................................................................2

**OTHER AUTHORITIES**

Klee, <u>Bankruptcy and the Supreme Court</u> ...........................................................42

## INTRODUCTION[1]

This Appeal arises from the second reversal of the Bankruptcy Court's orders confirming reorganization plans proffered by Appellant, Hologenix, LLC, that were simply unconfirmable. The District Court vacated the confirmation of Appellant's original plan submitted on June 2, 2020, because it had serious concerns about self-dealing and "obvious conflicts" of interest. Thereafter, Appellant was given a second chance to propose a confirmable plan. Appellant submitted a reorganization plan on January 4, 2022, which it then modified on June 21, 2022. The Plan simply swapped the bogus liens that doomed the Old Plan for an alternative – but equally self-dealing – mechanism to preserve the insiders' ability to receive payment in full post-bankruptcy while paying non-insiders pennies on the dollar. And, once again, the Bankruptcy Court turned a blind eye to Appellant's blatant self-dealing and confirmed the Plan over Appellee's and the Subchapter V Trustee's well-founded objections. The Bankruptcy Court abused its discretion by rubber-stamping a Plan (and Appellant drafted FFCL) that clearly did not meet the requirements of 11 U.S.C. §1129, as modified by 11 U.S.C. §1191. The District Court correctly reversed that confirmation and remanded the case for further proceedings.

---

[1] Capitalized terms used in this Introduction are defined *infra*.

## JURISDICTIONAL STATEMENT

As this Court correctly realized, the District Court's decision to reverse confirmation and remand the case for further proceedings (the "Order") is not a reviewable "final order" under 28 U.S.C. §158(d).

Pursuant to 28 U.S.C. §158(d)(1), "[t]he court of appeals shall have jurisdiction of appeals from all final decisions, judgments, orders, decrees entered under subsections (a) and (b) of this section."[2] "'[O]rders in bankruptcy cases may be appealed immediately if they finally dispose of discrete disputes within the larger case[.]'"[3] When an appeal is taken from a district court ruling that remands the case, the appellate court applies a four-factor test to determine if it can hear the appeal under §158(d): "(1) the need to avoid piecemeal litigation; (2) judicial efficiency; (3) the systemic interest in preserving the bankruptcy court's role as the finder of fact; and (4) whether delaying review would cause either party irreparable harm."[4]

Here, both judicial efficiency and the need to avoid piecemeal litigation favor not hearing this appeal. The Order remanded the Confirmation Decision to the Bankruptcy Court with the instruction that it had misapplied the "fair and equitable"

---

[2] 28 U.S.C. §158(d)(1).
[3] *In re Gugliuzza*, 852 F.3d 884, 892 (9th Cir. 2017) (quoting *Bullard v. Blue Hills Bank*, 575 U.S. 496 (2015)).
[4] *Id.* at 887.

-2-

requirement of §1191(c) when it "treated this Section as creating two additional limitations on the scope of the Plan."[5] The District Court pointed out logical fallacies in the Plan's interpretation of §1191(c), namely that "if Chapter 11 plans were truly limited to disposable income and capped at five years, the Plan's provisions for Class 2 and 4 creditors would contravene both requirements."[6] The Order did not end the "discrete proceeding before it." It merely sent the matter of whether the Plan is confirmable back to Bankruptcy Court to give appropriate weight to the evidence before it in accordance with the statutory requirements. "Rather than resolving the issue, the District Court remanded the case to the Bankruptcy Court for fact-finding on a central issue," and thus, "it ain't over till it's over."[7]

Moreover, Appellant's argument that there is no efficiency in remanding because the District Court twice failed to provide any guidance about what constitutes a confirmable plan falls under the weight of the record.[8] In its first order reversing confirmation of Appellant's first plan, the District Court specifically

---

[5] 1-ER-0006.

[6] 1-ER-0007.

[7] 852 F.3d at 898; *see Branch Banking & Tr. Co. v. R & S St. Rose, LLC (In re R & S St. Rose, LLC)*, 621 F. Appx 497 (9th Cir. 2015) (finding if a district court's order opens the door to further fact-finding and litigation, the courts interest in avoiding piecemeal litigation, promoting judicial efficiency, and preserving the bankruptcy courts role as factfinder weigh against a finding of jurisdiction).

[8] Op. Br. 5-6.

noted "[a]s the Plan proponent, [Appellant] and Casden were obligated to address the conflict caused by their own actions but there is no indication in the record that they made any effort to do so. In short, the potential for self-dealing and conflict arising from these circumstances are relevant to the §129(a)(3)'s good faith inquiry and must be addressed by the finder of fact."[9]

Notwithstanding these specific warnings and concerns, Appellant's Plan was again self-serving and treated insiders and non-insiders significantly differently. And, although the District Court certainly provided guidance in its Order that it strongly suspected that the Plan unfairly discriminated in violation of §1191(b), it stopped short of so finding.[10]

Third, contrary to Appellant's argument that there is no instruction for further fact-finding,[11] the District Court's decision remanded the case to the Bankruptcy Court because it explicitly found that "the Bankruptcy Court [] overlook[ed] a substantial part of the Plan, including the provisions entitling certain creditors to 100% recovery."[12] The additional factual findings are needed because "not only was the Bankruptcy Court required" – but failed – "to consider whether Met's recovery was unfairly discriminatory in light of the disposition of

---

[9] 7-ER-1633.
[10] 1-ER-0008 (noting "the disparity between 12.5% (Class 3) recovery for some creditors and 100% (Class 2 and 4) recovery for others is dramatic").
[11] Op. Br. 5.
[12] 1-ER-0008.

-4-

assets beyond disposable income, it was also required" – but failed – "to consider how Met's recovery compared to the recovery of other creditors during the entire duration of the Plan – not just the five years after confirmation."[13] This remand clearly directed the Bankruptcy Court to review and analyze portions of the Plan that it failed to do in the first instance, *i.e.* to make factual findings, which this Court should not interfere with by taking this Appeal.[14] The mere fact that Appellant is frustrated that the District Court has twice reversed confirmations, does not render the Order final.[15]

Finally, the fact that Appellant will incur "additional delay and substantial attorneys' fees" does not rise to irreparable harm.[16] If that was the standard, every appellant could show irreparable harm. Moreover, if there is delay or additional costs here, it is a product of Appellant's own choice to offer self-dealing plans that disparately treat insider and non-insider creditors to which even the Subchapter V Trustee objected because they are unfairly discriminatory. Appellant cannot and

---

[13] 1-ER-0007.

[14] *Kosmala v. Halvorson (In re Halvorson),* 840 F. App'x 161, 165 (9th Cir. 2021) (dismissing appeal because the district court did not issue a final order and the appellate court would essentially be interfering with factfinding, which is the function of the bankruptcy court).

[15] Almost immediately after this Court's *sua sponte* order wherein it stated that it believed the Order does not contain a final decision and requested the parties brief the issue (2-ER-0123), Appellant filed a motion for certification to the District Court, which was denied because it was already divested of jurisdiction by the pending appeal. 2-ER-0121.

[16] Op. Br. 6.

should not be rewarded for its own failure to heed the District Court's warnings by continuing to offer a plan that is not confirmable. Notably, Appellant argues that it incurred more than $1 million in fees to prepare the Plan[17] but ignores that a significant amount of those fees was incurred for reasons other than the Plan including litigating the propriety of unauthorized insider transfers that were eventually clawed back after Appellee's motion.[18] Nor is there any basis to grant Appellant's alternative request to allow it to seek certification from the District Court,[19] which of course would cause the parties to incur unnecessary attorneys' fees and additional delay!

Significantly, even if this Court was inclined to hear the Appeal, given that the Plan is almost 3.5 years old, it is very stale and the likelihood that it represents the Appellant's Disposable Income or that it is even feasible today if the Appeal is heard and decided in Appellant's favor is highly questionable. As such, in either event, Appellant will be forced to proffer a new plan or concede that creditors fare better with liquidation.

---

[17] Op. Br. 7.
[18] 4-SER-0739.
[19] Op. Br. 7.

## ISSUES PRESENTED

First Issue: Whether the District Court correctly reversed and remanded for further proceedings the Bankruptcy Court's Order confirming the Plan because it "overlook[ed] a substantial part of the Plan, including the provisions entitling certain creditors to 100% recovery."

Second Issue: Whether the Bankruptcy Court erred in finding that the Plan is fair and equitable as required under §1191(c).

Third Issue: Whether the Bankruptcy Court erred in finding that the Plan did not unfairly discriminate between classes of creditors in violation of §1191(b), when insider creditors maintain their claims and receive 100% after 5 years, while non-insider creditors receive 5.99-12% of their claims within 3 years.

Fourth Issue: Whether the Bankruptcy Court erred in determining that Appellant complied with §1129(a)(2).

Fifth Issue: Whether the Bankruptcy Court erred in determining that the Plan met the "good faith" test under §1129(a)(3).

Sixth Issue: Whether the Bankruptcy Court erred in determining that the Plan satisfied § 1129(a)(5).

Seventh Issue: Whether the Bankruptcy Court erred in determining that the Plan met the "best interests of creditors" test under §1129(a)(7).

Eighth Issue: Whether Appellee was denied due process when its expert was not permitted to testify live and the Bankruptcy Court made findings based on credibility determinations reached because it heard Appellant's live witnesses.

## STANDARD OF REVIEW

First Issue: The Court reviews the District Court's decision to reverse and remand the Confirmation Order *de novo* and gives no deference to the District Court, and reviews the bankruptcy court's decision independently.[20] The bankruptcy court's decision to confirm a plan is reviewed for abuse of discretion.[21] A bankruptcy court abuses its discretion if it applies an incorrect legal standard, or its findings of fact are illogical, implausible, or not supported by the record.[22]

Second-Third Issues: Whether a plan unfairly discriminates or is fair and equitable is a factual determination reviewed for clear error.[23] "Clear error exists only when the reviewing court is left with a definite and firm conviction that a mistake has been committed."[24]

Fourth-Seventh Issues: Factual findings addressing whether a plan meets the requirements of 11 U.S.C. §1129 are reviewed for clear error.[25]

---

[20] *In re Point Ctr. Fin., Inc.*, 957 F.3d 990, 995 (9th Cir. 2020).

[21] *In re Marshall*, 721 F.3d 1032, 1045 (9th Cir. 2013).

[22] *United States v. Hinkson*, 585 F.3d 1247, 1262-63 & n.21 (9th Cir. 2009) (en banc).

[23] *In re Acequia, Inc.*, 787 F.2d 1352, 1358 (9th Cir. 1986).

[24] *In re Marshall*, 721 F.3d at 1039.

[25] *In re Juarez*, 836 F. App'x 557, 559-60 (9th Cir. 2020); *In re Farwest Pump Co.*, 2020 Bankr. LEXIS 2457, at *13 (B.A.P 9th Cir Sep. 18, 2020); *In re Windmill Durango Off., LLC*, 481 B.R. 51, 64 (B.A.P. 9th Cir. 2012); *In re Sanitec Indus.*, 2009 Bankr. LEXIS 4532, *29 (B.A.P. 9th Cir Dec. 21, 2009).

Eighth Issue: "Whether the bankruptcy court proceedings comported with

the requirements of due process is a question of law we review de novo."[26]

---

[26] *Tremaine v. Miller (In re Miller)*, 124 F. App'x 490, 492 (9th Cir. 2005).

## STATEMENT OF THE CASE

### A. The Appellant's Bankruptcy Case

Appellee brought litigation against Appellant for falsely advertising its product as having FDA approval when it did not.[27] The parties settled that litigation in March 2020 for $2.5 million.[28] On April 22, 2020 (the "Petition Date") – one day before Appellant was due to make the $1.4 million payment – it filed a voluntary petition for relief under Chapter 11, Subchapter V of the United States Bankruptcy Code.[29] Unbeknownst to Appellee, on February 24, 2020 – just two weeks before agreeing to settle – Seth Casden, Appellant's Chief Executive Officer ("Casden"), his brother, his step-father and other statutory and non-statutory insiders of Appellant filed UCC-1s purporting to perfect liens on all of Appellant's assets.[30]

### B. The Old Plan

Appellant filed its original *Chapter 11, Subchapter V Plan* (the "Old Plan") on June 2, 2020.[31] Appellee objected to the Old Plan's confirmation, arguing, *inter alia*, that it did not satisfy the so-called "best interest of creditors test" under §1129(a)(7) because, in a Chapter 7 liquidation, the liens purportedly securing the

---

[27] 6-SER-1063; 6-SER-1081-1082.
[28] 7-SER-1429-1430.
[29] 8-ER-1808-09.
[30] 8-ER-1741-44.
[31] 8-ER-1819 (Doc. 83).

-11-

claims of certain insiders would be subject to avoidance under §547 of the Code, resulting in greater recoveries for non-insider creditors than the Old Plan provided.[32] Appellee further argued that the continued involvement of Casden and other insiders was inconsistent with the interest of creditors and that the compensation afforded to officers under the Old Plan was grossly excessive, contrary to the requirements of §1129(a)(5).[33] In addition, Appellee argued that the Old Plan did not satisfy the good faith requirement of §1129(a)(3) because it sought to preserve the claims of Casden and other insiders at non-insider creditors' expense.[34] The Bankruptcy Court confirmed the Old Plan.[35] On December 22, 2020, the District Court stayed the confirmation pending appeal.[36]

## C.    The First Appellate Order

On September 27, 2021, the District Court vacated confirmation of the Old Plan.[37] Among other things, the District Court found that the Bankruptcy Court erroneously excluded evidence presented by Appellee, which likely "adversely affected the outcome of the [Old] Plan."[38]

---

[32] 7-SER-1396-1398.

[33] 7-SER-1400-1402.

[34] 7-SER-1404-1406.

[35] 8-ER-1839 (Doc. 236); 8-ER-1841 (Doc. 247, 248).

[36] 8-ER-1854 (Doc. 352).

[37] 7-ER-1640.

[38] 7-ER-1639, n. 30.

-12-

The District Court further found that the Appellant had not offered the Old Plan in good faith due to Casden's obvious conflicts of interest, given that he holds the largest secured claims potentially subject to challenge by a hypothetical Chapter 7 trustee, and his declaration served as Appellant's primary evidentiary basis to assert that any action to avoid the insiders' liens as preferences would not be in the best interest of creditors.[39] Specifically, the District Court stated:

> That Casden and his relatives controlled most of the liens that were the subject of [Appellant's] Class 1 and 2 liens … raised obvious conflicts with respect to [Appellant's] ability to execute its fiduciary duties as well as to whether [Appellant] proposed the Plan in good faith. … As the Plan proponent, [Appellant] and Casden were obligated to address the conflict caused by their own actions but there is no indication in the record that they made any effort to do so. In short, the potential for self-dealing and conflict arising from these circumstances are relevant to the § 1129(a)(3)'s good faith inquiry and must be addressed by the finder of fact.[40]

This District Court also found that Appellant failed to submit competent evidence or a proper liquidation analysis in support of its solvency.[41]

Thereafter, the case was remanded to the Bankruptcy Court and Appellant agreed to proffer a new plan.[42] On December 9, 2021, the Bankruptcy Court

---

[39] 7-ER-1632.
[40] 7-ER-1632 (emphasis added) (internal citations omitted).
[41] 7-ER-1629-30.
[42] 7-SER-1380-1387.

-13-

ordered Appellant to correct its delinquent conduct and to file its missing monthly operating reports no later than January 4, 2022.[43]

### D.     The Unauthorized Payments to Insiders

Meanwhile, after the Petition Date and without notice or authorization, Appellant paid Casden $251,018 on account of 2020 salary and bonus compensation, much of which Appellant previously represented had been voluntarily waived.[44] This included $92,724 as a cure amount for his employment contract when the original confirmation order was stayed![45] At the same time, and again without notice or authorization, Appellant paid its directors a total of $140,000 for their service.[46] Only once these unauthorized post-petition transfers were brought to light by Appellee – *i.e.*, only when Appellant got caught red-handed – did Casden and the directors agree to repay the unauthorized transfers.[47]

On July 25, 2022, the Bankruptcy Court ordered Casden to repay the $251,018.[48] On August 8, 2022, Casden repaid $251,018.[49]

---

[43] 7-SER-1377-1379.

[44] 5-SER-0986-0987. In the Old Plan, Casden touted that he had taken a voluntary salary reduction in light of the pandemic. Notices of Setting/Increasing Insider Compensation similarly reference Casden's salary "waiver." *Id.*; 4-SER-0745 (error using waiver of salary reduction).

[45] 4-SER-0753; 4-SER-0841.

[46] 5-SER-0876; 5-SER-0882; 5-SER-0888; 5-SER-0894; 5-SER-0900-0901; 5-SER-0924; 5-SER-0929; 5-SER-0934; 5-SER-0939-0940; 5-SER-0946.

[47] 6-SER-1244-1269; 4-SER-0829-0857.

[48] 1-ER-0039 (citing Doc. 714).

[49] 1-ER-0039 (citing Doc. 729).

### E.    The January 2022 Plan

On January 4, 2022, Appellant filed its first version of the Plan (the "Jan. 2022 Plan") with a declaration of Mr. Casden, and the expert report of Howard B. Grobstein, C.P.A. (the "Grobstein Report").[50]

### F.    The Plan

On June 21, 2022, Appellant filed a modified version of its Jan. 2022 Plant accompanied by its CEO's Declaration and the Grobstein Report (the "Plan").[51] Appellant also submitted an updated liquidation analysis to replace the one from its Jan. 2022 plan.[52] On July 13, 2022, Appellant supplemented the Grobstein Report, including a revised solvency analysis.

The Plan classifies claims into the following classes:[53]

- **Class 2A** consists of Casden's personal insider unsecured claims ($1,666,333.00) and as collateral agent for Alvaro Pascotto Revocable Trust ($100,000) and Julien Born ($150,000). The total amount of the Class 2A Claims is $1,916,333.00.[54] On September 30, 2027, each Class 2A claimant will receive a balloon payment in the full amount of his claim, unless he has exercised his right to convert to equity.[55]

---

[50] 7-ER-1525-66; 7-ER-1568-1617; 6-SER-1312-1348.

[51] 7-ER-1525-66.

[52] 3-ER-0510; 6-ER-1394.

[53] **Class 1** of the Plan is a vacant class kept as a placeholder. *See* 6-ER-1374.

[54] 6-ER-1376.

[55] 6-ER-1376.

- **Class 2B** consists of the $230,989.64 secured claim of Murali Sundar. On September 30, 2027, Sundar will receive $230,989.64, plus interest accruing from April 1, 2022 at a rate of 8% per annum.[56]

- **Class 3** consists of General Unsecured Claims totaling $3,988,217.61. Appellee controls Class 3 by virtue of its allowed $2.4 million claim.[57] Class 3 will receive a total of $500,000, ostensibly representing Appellant's Net Disposable Income. However, in lieu of paying $500,000, the Plan permits a payment of just $239,133.00 within 90 days of the Effective Date, supposedly representing the net present value ("NPV") of the $500,000 based on a discounted cash flow analysis. The Plan contemplates that, "[i]f a pending settlement [ECF 465] is approved, Class 3 shall receive an additional $47,406," which Appellant has represented is not subject to the NPV discount.[58] Accordingly, even including the settlement proceeds, holders of Class 3 claims will receive a projected recovery of, at most, 13.72% and as little as 7.18% if Appellant makes the NPV election.

- **Class 4** consists of various Insider General Unsecured Claims that are not otherwise classified, including (a) the claims of The Northern Trust Company of Delaware as Trustee of the Seth Casden Resulting Trust and the

---

[56] 6-ER-1377.

[57] 6-ECF-1379-80.

[58] The settlement was subsequently approved. 1-SER-0125-0126.

-16-

Graham Casden Resulting Trust in the amount of $1,000,000; (b) claims of Seth and Graham Casden for unsecured loans made to Appellant, which total $605,000; (c) §502(h) claims of Board Members Leslie Margolin ($17,500), Kevin Blaney ($17,500), Scott Carlin ($17,500), Julien Born ($15,000), and Michael Haynes ($20,000) for unauthorized post-petition payments that they were required to disgorge pursuant to 11 U.S.C. §549; (d) a scheduled claim of Michael Haynes in the amount of $27,500; and (e) a §502(h) claim for $47,406, representing funds Casden repaid in a preference settlement. The total amount of the Class 4 Claims is $1,767,406.00.[59]

Appellee objected to the Plan, arguing that it clearly does not meet the requirements of 11 U.S.C. §1129, as modified by 11 U.S.C. §1191.[60] Among other objections, Appellee asserted that the Plan completely ignored the District Court's well-founded concerns about Casden's self-dealing and obvious conflicts of interest, and instead proposed an unfairly discriminatory Plan allowing all insider claims to be paid in full, while non-insider general unsecured creditors received only a nominal recovery.[61] Whereas the Subchapter V Trustee – an impartial party

---

[59] 6-ER-1381.
[60] 6-ER-1216-1251.
[61] 6-ER-1229-1232.

– supported the Old Plan, he objected to the Plan, echoing Appellee's concerns that the Plan unfairly discriminates against Class 3 creditors in violation of §1191(b).[62]

## G.    The Confirmation Hearing

On August 9 and August 10, 2022, the Bankruptcy Court held a Confirmation Hearing.[63] During the Confirmation Hearing, the Bankruptcy Court heard Appellee's live witness cross-examination of Appellant's fact witness (Casden) and financial expert (Grobstein). Yet, although Appellee's expert witness, Thomas Pastore ("Pastore"), was present, he was neither cross-examined nor provided an opportunity to testify.[64] Despite not hearing Pastore testify, the Bankruptcy Court stated "[a]nd I really wanted to hear today and yesterday, my main concern was to hear the actual people that had not been -- … not only Mr. Casden, … [b]ut even more – well, equally important, from the experts."[65] It further noted "[a]nd I read of course the declarations of both the experts, but I – because the cross-examination, I got to hear actually in person, and quite thorough cross-examination of Mr. Grobstein."[66]

---

[62] 4-SER-0820-0821.

[63] 3-ER-0378, 2-ER- 214.

[64] 3-ER-0378, 2-ER- 214.

[65] 3-ER-0481.

[66] 3-ER-0481.

Appellant lodged proposed findings of fact and conclusions of law ("FFCL") as well as an order confirming the Plan.[67] Appellee objected to both.[68] On October 12, 2022, the Bankruptcy Court confirmed the Plan and largely adopted the Appellant's FFCL.[69] A significant majority of the FFCL were never stated by the Bankruptcy Court during the Confirmation Hearing but rather were taken verbatim from Appellant's 97-page proposed findings of fact and conclusions of law.[70] As to the "fair and equitable" requirement of §1191(b), the Bankruptcy Court adopted Appellant's proposed findings and conclusions and found that "[w]ith the 'fair and equitable' treatment statutorily capped at three-to-five years of Disposable Income, creditors cannot demand anything more."[71] Appellee timely appealed the FFCL and the Confirmation Order on October 13, 2022.[72] On December 20, 2022, the Bankruptcy Court amended its order confirming the Plan.[73] The Amended Order is the operative order.

## H.    The Second Appellate Order Reversing Confirmation

The District Court stayed the Plan's confirmation pending Appellee's

---

[67] 3-SE-R0479-0501; 3-SER-0502-0604.
[68] 2-SER-0128-0419; 3-SER-0421-0478.
[69] 1-ER-0016-100.
[70] *Compare* 1-ER-0016-100 and 3-SER-0502-0604.
[71] 1-ER-0083.
[72] 1-SER-0004-0124.
[73] 1-ER-0102-118.

appeal.[74] On March 29, 2024, the District Court entered its Order, which reversed and remanded the Plan's confirmation.[75]

Specifically, the District Court found that the Bankruptcy Court's interpretation of §1191(c) "appears to reflect an incorrect application of the law."[76]

The District Court explained:

> [T]he Bankruptcy Court appears to have treated this Section [1191(c)] as creating two additional limitations on the scope of the Plan. First, the [Bankruptcy] Court reasoned that the creditors' recovery was limited to disposable income. Second, the [Bankruptcy] Court concluded that it could only consider provisions in the Plan for a five-year period following confirmation.[77]

The District Court further noted:

> not only was the Bankruptcy Court required to consider whether [Appellee]'s recovery was unfairly discriminatory in light of the disposition of assets beyond disposable income, it was also required to consider how [Appellee]'s recovery compared to the recovery of other creditors during the entire duration of the Plan – not just the five years after confirmation.[78]

The District Court concluded:

> In sum, the Bankruptcy Court erred in finding that [Appellee] was entitled to only 'three-to-five years' of projected Disposable Income[,]' … which led the Bankruptcy Court to overlook a substantial part of the Plan, including the provisions entitling certain creditors to 100% recovery. Although the court makes no conclusion regarding whether the Plan unfairly discriminates against Class 3

---

[74] 8-ER-1789.

[75] 8-ER-1793.

[76] 1-ER-0006.

[77] 1-ER-0006.

[78] 1-ER-0007.

creditors as compared to Class 2 and 4 creditors, it does note that the disparity between 12.5% (Class 3) recovery for some creditors and 100% (Class 2 and 4) recover for others is dramatic.[79]

On April 30, 2024, Appellant filed its notice of appeal to this Court.[80] On May 31, 2024, this Court issued its Order on whether it had jurisdiction to hear the Appeal.[81]

_____

[79] 1-ER-0008. Because the District Court found reversible error under §1191(c), it did not consider Appellee's other challenges to the Plan. 1-ER-0008, n.2.
[80] 8-ER-1794 (Doc. 99).
[81] 1-ER-00123.

-21-

## SUMMARY OF THE ARGUMENT

The Bankruptcy Court made several errors in its analysis and the Plan should not have been confirmed. Contrary to Appellant's repeated arguments, the mere fact that the Bankruptcy Court adopted almost entirely as drafted by Appellant, the FFCL, does not evidence that it did not make clearly erroneous findings here when it found that a plan that clearly favored insiders over non-insiders was fair and equitable, in the best interests of creditors, and offered in good faith. When an independent party – the Subchapter V Trustee – submits his own objection to the Plan because it so blatantly discriminates unfairly against non-insider creditors, the Bankruptcy Court should have taken pause rather than minimizing it and wholesale adopting Appellant's fanciful arguments. By failing to do so, the Bankruptcy Court abused its discretion.

The District Court correctly recognized that the Bankruptcy Court overlooked that the insider creditors would receive more than Appellant's disposable income after the 5-year statutory commitment period expired in contravention to the Bankruptcy Code. While Appellant has a novel argument that the District Court *sua sponte* raised an issue with the Plan that exceeded any court's authority under Subchapter V, this is nothing more than a red herring. The District Court correctly found that the Plan did not limit itself to a standard five-

year term, as insiders were permitted to receive payments in full beyond the five-year period.

The Bankruptcy Court abused its discretion, warranting reversal.

## ARGUMENT

A Subchapter V plan may be non-consensually confirmed[82] only if it: (i) satisfies all applicable requirements of §1129(a), other than paragraphs (8), (10), and (15); (ii) does not discriminate unfairly; and (iii) is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.[83] The Plan fails under each requirement.

## I.    THE DISTRICT COURT CORRECTLY REVERSED THE CONFIRMATION ORDER

### A.    The Bankruptcy Court Abused its Discretion By Failing to Consider the Treatment of Insiders

Section 1191(c) (emphasis added) states:

the condition that a plan be fair and equitable with respect to **each class of claims** or interests includes the following requirements:
…
(2) As of the effective date of the plan—

> (A) the plan provides that all of the projected disposable income of the debtor to be received in the 3-year period, or such longer period not to exceed 5 years as the court may fix, beginning on the date that the first payment is due under the plan will be applied to make payments under the plan . . . .

The District Court correctly held the Bankruptcy Court erred because it failed to consider two key issues: (1) "whether [Appellee]'s recovery was unfairly

---

[82] It is undisputed that the Plan did not satisfy the criteria for consensual confirmation under §1191(a) of the Code.
[83] 11 U.S.C. §1191(b).

-24-

discriminatory in light of the disposition of assets beyond disposable income" and (2) "how [Appellee]'s recovery compared to the recovery of other creditors during the entire duration of the Plan – not just the five years after confirmation."[84] In so holding, the District Court correctly recognized that it was Appellant which extended the commitment period when it permitted the insider claims to receive more than its disposable income beyond five years.[85] Specifically, the District Court recognized that "not only was the Bankruptcy Court required to consider whether [Appellee]'s recovery was unfairly discriminatory in light of the disposition of assets beyond disposable income, it was also required to consider how [Appellee]'s recovery compared to the recovery of other creditors during the entire duration of the Plan – not just the five years after confirmation."[86] The District Court correctly highlighted a primary issue with the Confirmation Order: that the Plan by its own terms exceeded five years because insider creditors received their payment after five years. Indeed, the District Court correctly noted that "the interpretation proposed by [Appellant] would make little sense in light of the overall structure of the Plan, which provides Class 2 and 4 creditors with a recovery that exceeds 'three years (and at most five years) of projected Disposable Income.'"[87] The District Court

---

[84] 1-ER-0007.

[85] 1-ER-0006-7.

[86] 1-ER-0007 (emphasis added).

[87] 1-ER-0007-8.

-25-

further explained "[i]n other words, if Chapter 11 plans were truly limited to disposable income and capped at five years, the Plan's provisions for Class 2 and 4 creditors would contravene both requirements."[88]

The District Court's finding that the Bankruptcy Court erred by overlooking the fact that insiders received 100% recovery under the Plan after 5 years while non-insiders received substantially less in 3 years under the Plan should be affirmed.[89] The Bankruptcy Court absolutely abused its discretion by confirming a Plan that allowed insider creditors to receive "assets beyond disposable income" after the statutory time period expired in contravention of the Code.

**B.    References to §§1191(c)(2)(A) and 1332(c) Do Not Alter the Analysis**

Appellant argues in straw man fashion that the rules of statutory construction do not permit the District Court to use the "fair and equitable" requirement under §1191(c)(2) to extend the commitment period and payments to Appellee (and other non-insider creditors) beyond five years.[90] Appellant either mistakenly or intentionally has misread the District Court's opinion discussed *supra*.

---

[88] 1-ER-0007.
[89] 1-ER-0007-8.
[90] Op. Br. 17.

The District Court noted that Appellant's interpretation made "little sense in light of the overall structure of the Plan, which provides Class 2 and 4 creditors with a recovery that exceeds 'three years (and at most five years) of projected Disposable Income.'"[91] It specifically noted, "if Chapter 11 plans were truly limited to disposable income and capped at five years, the Plan's provisions for Class 2 and Class 4 creditors would contravene both requirements."[92] The District Court then discussed how both §§1191(c)(2)(A) and 1332(c) "reinforce this interpretation."[93]

Appellant mistakenly reads this statutory comparison as the District Court mandating that a plan under Subchapter V can go beyond five years and provide less than all its disposable income after five years to creditors like Appellee. This is simply not true. The District Court found reversible error because the Bankruptcy Court did not consider non-insider's recovery in comparison to insiders' recovery who were set to receive <u>more than</u> Appellant's disposable income <u>after</u> the five-year commitment period.

Indeed, by referencing §§1191(c)(2) and 1332(c), the District Court was highlighting the absurdity of the Plan and Appellant's interpretation that it was permitted to give insider creditors more than its disposable income beyond five years. Essentially, the District Court noted that either (1) a plan under Subchapter V

---

[91] 1-ER-0007 (citing FFCL at 62).
[92] 1-ER-0008.
[93] 1-ER-0007-8.

voluntarily exceeds the five-year commitment plan and its failure to do so for both insider and non-insider creditors is impermissible; or (2) if the statute prohibits a plan to exceed the five-year commitment (as Appellant argues vehemently here) then Appellant's Plan fails as a matter of law because it allows for insider creditors to be paid in full after 5 years.

Instead of addressing this dichotomy, Appellant spends 36 painstaking pages addressing the rules of statutory construction and how neither §1191(c)(2)(A) nor §1332(c) can provide a basis for a Subchapter V plan to exceed five years. Of course, Appellant's argument supports the District Court's ultimate holding that the it was reversible error to not consider that one set of creditors was being paid after the five-year commitment period in an amount that exceeded Appellant's disposable income in contravention of the Code.

## C.    The District Court Cases Are Instructive

Appellant argues that the *Perez* and *Jacobs* cases relied on by the District Court are inapposite.[94] Quite to the contrary, the *Perez*[95] decision is instructive here. In *Perez*, the court found that the plan paid a class of creditors 100% of their debt over 67 months – more than 5 years – was "fatally defective and the bankruptcy court erred in approving the plan under these circumstances."[96] In addition, the

---

[94] Op. Br. 44-46; 1-ER-0008.
[95] 30 F.3d 1200, 1216 (9th Cir. 1994).
[96] 30 F.3d at 1216.

-28-

District Court relied on *Jacobs*[97] to support the proposition that either Appellant can propose a plan where all creditors must be paid within the 3-to-5 year period or all creditors can be paid beyond the 5-year maximum.[98] The District Court properly relied on both of these cases to support the proposition that if insider creditors' are entitled to be paid after 5 years then "the Bankruptcy Court erred in finding that [Appellee] was entitled to only 'three-to-five-years' of projected Disposable Income[.]'"[99]

### D.    Appellee Raised This Argument to the District Court

Appellant argues repeatedly that "[Appellee] never objected that the 2022 Plan Commitment Period should be more than 3 years to meet the 'fair and equitable' requirement," and thus, it was improper for the District Court to reverse on an issue it *sua sponte* raised.[100] This argument is belied by the record.

First and foremost, the District Court did not reverse the Confirmation Order on the basis that the Plan failed to pay non-insider creditors for the full 5 years allowed under the Code.

Second, Appellee specifically argued that it was contrary to the Bankruptcy Code (*i.e.* not fair or equitable and unfair discrimination) to treat similarly situated

---

[97] 644 B.R. 883.
[98] 1-ER-0008 (noting "'[C]hapter 11 does not contain chapter 13's safeguards, including a maximum repayment period of five years'").
[99] 1-ER-0008.
[100] Op. Br. 46-47.

-29-

creditors differently and to pay insider creditors after 5 years while only paying non-insider creditors in 3 years.[101] Appellee further objected on the grounds that the Plan unilaterally reduced the 3-year minimum period by allowing Appellant to make one lump payment within 90 days of Plan Confirmation at a net present value discount of 40%.[102] Even the Subchapter V Trustee objected to the Plan as unfairly discriminatory because insider creditors preserved their claims and received payment in full after five years whereas non-insider creditors received pennies on the dollars.[103] As such, the issue was raised.

Finally, while the District Court did not opine on whether this disparate treatment amounted to unfair discrimination, it noted that the disparity between 12.5% (Class 3) recovery for some creditors and 100% (Class 2 and 4) recovery for others is dramatic."[104]

### E.    The Plan Is Not Fair or Equitable

The Bankruptcy Court abused its discretion in finding the Plan "fair and equitable." In Subchapter V cases, "fair and equitable" refers to the requirement that the debtor contribute three to five years of projected disposable income to plan payments and demonstrate a reasonable likelihood that it will be capable of so

---

[101] 6-ER-1229-37.
[102] 6-ER-1235-36.
[103] 4-SER-0820-0821.
[104] 1-ER-0008.

doing.[105] "Disposable income" means "the income received by the debtor not reasonably necessary to be expended 'for the payment of expenditures necessary for the continuation, preservation or operation' of debtor's business."[106]

Here, the Plan is not fair and equitable because it unfairly discriminates by giving significantly more than its disposable income to insiders while short-changing non-insiders as discussed more fully *infra*. It is also not fair and equitable because the Plan does not require Appellant to contribute 100% of its disposable income to plan payments. Appellant used both inflated operating disbursements (including excessive officer compensation) and an inappropriate "NPV" discount to artificially depress its projected disposable income. As confirmed, non-insiders would receive $500,000 over the life of the Plan or at Appellant's sole discretion, $239,133 in a one-time lump sum payment within 90-days of the Plan's confirmation with a 40% Net Present Value discount.[107] In contrast, insiders were not subjected to any NPV discount and were permitted to receive 100% of their claims after September 2027.[108] As a result, instead of paying all creditors at least 3 years of projected disposable income, the Plan allows Appellant to pay non-insiders

_____

[105] 11 U.S.C. §1191(c).

[106] *In re Ellingsworth Residential Community Assn.*, 2020 Bankr. LEXIS 2897, at *4-5 (Bankr. M.D. Fla. Oct. 16, 2020) (quoting § 1191(d)(2)).

[107] 6-ER-1379-80.

[108] 6-ER-1376, 1381.

just 60% of the minimum required amount while insiders receive 100% sometime after the life of the Plan. This does not comply with §1191(c).

Appellant's only argument otherwise is that "[t]he Bankruptcy Court's FFCL provided detailed pinpoint cites to the record to support its finding that the Plan projections were appropriate" and the Bankruptcy Court received expert testimony concerning the 40% NPV discount rate.[109] First, contrary to Appellant's suggestion, "[f]indings of fact prepared by counsel and adopted by the trial court [like the FFCL] are subject to greater scrutiny than those authored by the trial judge."[110] This is necessary because it has long been recognized that the prevailing party may overreach in its proposed findings of fact – just as Appellant has done here.[111] Second, Appellant's argument does not address whether the Plan itself is "fair and equitable," and its reference to the expert testimony is disingenuous, particularly when the Bankruptcy Court relied on the credibility of Appellant's expert who it heard testify live whereas Appellee's expert was not permitted to testify live.[112]

_____

[109] Op. Br. 47-48.

[110] *In re Alcock*, 50 F.3d 1456, 1459 n.2 (9th Cir. 1995).

[111] *Stead Motors of Walnut Cr. v. Auto Machinists Lodge No. 1172 Int'l Assoc.*, 886 F.2d 1200, 1204, n.5 (9th Cir. 1989) ("While we have acknowledged that the practice in which a prevailing party prepares a district judge's findings and order has some value in a limited class of cases, this court and the Supreme Court have consistently advised that the all too commonplace practice generally makes appellate review more difficult and invites distortion and overstatement by the prevailing party").

[112] 1-ER-0050.

This raises serious due process violations, discussed *infra*, that further taints the Bankruptcy Court's finding that the Plan was fair and equitable.

Nor does the fact that the Bankruptcy Court barely changed the FFCL that included Appellant's citations to the record render the Plan "fair and equitable."[113] Indeed, the Bankruptcy Court did nothing more than rubber stamp an inappropriate and artificially inflated 40% NPV discount, purportedly based on the Appellant's stage of development rather than on the (relatively low) amount of interest that non-insiders could earn if they received distributions within 90 days of the Effective Date rather than distributions on its first, second and third anniversaries.[114] The FFCL defended the concept of net present value generally[115] but offered no meaningful justification for selecting an artificially high discount rate based on Appellant's self-serving and subjective portrayal of its stage of development rather than on an easily verified and objective measure, such as prevailing market interest rates as of the Effective Date. Appellant failed to meet its burden here.

Appellant's CEO's own assertion that it "is not a start-up, but a 20-year-old company with a track record of hiring seasoned executives,"[116] in direct contravention of Appellant's expert's opinion that "coming out of restructuring, [Appellant] is in

---

[113] Op. Br. 47.
[114] 3-ER-0521-22; 6-ER-1195-96.
[115] 1-ER-90.
[116] 6-ER-1287.

essence a start-up enterprise."[117] In fact, Appellant's CEO's testimony was more aligned with [Appellee]'s expert, who opined that Appellant's stage of development was not an appropriate basis for a NPV discount and that, even if it were, Appellant's development stage would justify a much lower discount than what the Plan proposed.[118] But – without giving [Appellee]'s expert an opportunity to testify live or to address any questions or misgivings about his opinions – the Bankruptcy Court discounted [Appellee]'s position as not "credible or supportable."[119] Effectively, the Bankruptcy Court considered only Appellee's experts most aggressive position that "net present value has no place in plan projections,"[120] and – without any supporting findings – ignored Appellee's alternative arguments that NPV should be based upon market interest rates or, even if appropriately based on Appellant's stage of development, should be much lower than 40% given Appellant's 20-year track record and post-pandemic rebound.[121] The Bankruptcy Court erred in adopting Appellant's expert's opinion wholesale (without letting Appellee have the opportunity to provide further evidence from its expert) and approving the arbitrary and outrageous NPV discount that would unilaterally allow a debtor to substantially reduce the amount of

---

[117] 7-ER-1532.

[118] 6-ER-1193-95.

[119] 1-ER-90.

[120] *Id.*

[121] 6-ER-1195-96. Notably, the Bankruptcy Court did not cite to a single authority for discounting plan payments based on a debtor's stage of development.

-34-

disposable income to an amount that is far less than the creditors would receive under a liquidation. The Bankruptcy Court further erred by failing to exercise its mandatory, independent duty to ensure the Plan's compliance with §1191(c).[122]

## F.     The Plan Is Not Feasible

Finally and most significantly, the Plan is infeasible. Even if this Court found the Plan was fair and equitable in 2022 (it was not), it is not fair and equitable today. The Plan's projections are stale because they are over 3 years old and do not reflect an accurate depiction of Appellant's disposable income today. At the very least, the issue of feasibility and fairness in light of Appellant's current financial status would have to be addressed by the Bankruptcy Court, further demonstrating the need to reverse and remand.[123]

## II.    REVERSAL OF CONFIRMATION IS WARRANTED

The Bankruptcy Court erred in finding that the Plan met all other requirements of the Bankruptcy Code.[124]

## A.     The Plan Unfairly Discriminates Against Non-Insiders

The Plan may only be confirmed if it "does not discriminate unfairly, and is fair and equitable." 11 U.S.C. §1191(b). In its Confirmation Order, the Bankruptcy

---

[122] *In re Sisk*, 962 F.3d 1133, 1151 (9th Cir. 2020) (noting "even when no party objects, courts have an independent duty to determine whether a debtor's plan complies with the Code").

[123] 11 U.S.C. §1129(a)(11).

[124] *In re Art & Architecture Books of the 21st Century*, 2016 Bankr. LEXIS 859, *22 (Bankr. C.D. Cal. Mar. 18, 2016).

Court erroneously conflated §1191(c)'s definition of fair and equitable with § 1191(b)'s prohibition against unfair discrimination, buying into Appellant's flawed and self-serving argument that – as long as a Subchapter V plan devotes three years of projected disposable income to plan payments – it cannot constitute unfair discrimination.[125] The prohibition against unfair discrimination applies *independently* of the fair and equitable requirement.[126] The Bankruptcy Court erred in finding that express promises to insiders under the Plan are irrelevant to an unfair discrimination analysis under §1191(b) just because they will be fulfilled after §1191(c)'s three-year income-commitment period.[127]

As with any other confirmation requirement, a debtor bears the burden to show that its plan does not discriminate unfairly.[128] The prohibition against unfair discrimination "means that creditors who are similarly situated regarding legal rights and priority cannot be given unequal treatment under a plan of reorganization."[129] In *In re Ambanc La Mesa Ltd. Pshp.*, this Court instructed that:

> Discrimination between classes must satisfy four criteria to be
> considered fair under 11 U.S.C. §1129(b): (1) the discrimination must
> be supported by a reasonable basis; (2) the debtor could not confirm or
> consummate the Plan without the discrimination; (3) the
> discrimination is proposed in good faith; and (4) the degree of the

---

[125] 1-ER-0082-84.

[126] *In re Acequia, Inc.*, 782 F.2d 1352, 1363-64 (9th Cir. 1986).

[127] 1-ER-0084.

[128] *Aetna Realty Investors v. Monarch Beach Venture (In re Monarch Beach Venture)*, 166 B.R. 426, 432 (C.D. Cal. 1993).

[129] *Id.* at 436-37.

discrimination is directly related to the basis or rationale for the discrimination.[130]

The Bankruptcy Court clearly erred in finding the Plan passed muster under the *Ambanc* test.

As to the first element, the Bankruptcy Court found a reasonable basis for the discrimination solely because "the Debtor wanted to provide MET and the non-insider general unsecured creditors with as much of the Disposable Income as possible."[131] This wholly inadequate finding strains credulity. The Plan discriminates unfairly because insiders (including Casden and his brother) retain the right to be paid ***in full*** after five (5) years, whereas non-insiders receive 12.5% over 3 years (subject to a further 40% NPV if paid within 90 days or 5.99%).[132] Paying non-insiders sooner than insiders does not change the undeniable fact that 100% exceeds 5.99% to 12.5%.[133] Given a choice, no rational creditor would pick the latter. Indeed, even the impartial Subchapter V Trustee objected to the Plan on

---

[130] *Liberty Nat'l Enters. v. Ambanc La Mesa Ltd. Pshp. (In re Ambanc La Mesa Ltd. Pshp.)*, 115 F.3d 650, 656 (9th Cir. 1996); *In re Rexford Props. LLC*, 558 B.R. 352, 363 (Bankr. C.D. Cal. 2016) (a legitimate business or economic justification must exist to separately classify substantially similar claims for the purpose of affording one class preferential treatment). Moreover, a plan may not discriminate unfairly even if unsecured creditors would receive nothing in a Chapter 7 liquidation. *See In re Eitemiller*, 149 B.R. 626, 629 (Bankr. D. Idaho 1993) (cautioning that conflating the prohibition against unfair discrimination with other confirmation requirements would render the prohibition a nullity).

[131] 1-ER-0080.

[132] 6-ER-1376, 1381.

[133] 6-ER-1227.

this exact basis. Any pretense of altruism is offensive to the intelligence of non-insiders and this Court, especially given the long and contentious history between Appellant and Appellee and Appellant's blatant self-dealing that led the District Court to vacate confirmation of the Old Plan.[134] Indeed, if Appellant wanted to provide non-insiders with as much disposable income as possible, it would – for starters – have proposed a 5-year plan instead of a 3-year plan and it would not have included the bogus NPV discount. The Bankruptcy Court abused its discretion in finding a reasonable basis for this unfair discrimination.

Similarly, with respect to the second *Ambanc* factor, the Bankruptcy Court found that the Plan could not be confirmed without discrimination because the District Court already admonished against insider dealing, thus, it was necessary to separately classify insiders and non-insiders to allow non-insiders to receive all "Disposable Income in order to eliminate controversy of insiders diluting [Class 3's] recovery."[135] Had Appellant wished to eliminate a controversy, the Plan could have provided all of the Disposable Income to non-insiders *without* preserving the insiders' ability to be paid in full, simply by limiting insiders' recoveries to the same paltry 5.99% - 12.5% apportioned to non-insiders or had them forego

---

[134] 7-ER-1621-40.
[135] 1-ER-0080.

-38-

recovery all together. Instead, the Plan controversially preserves the insiders' right to be paid in full.

In an effort to find some authority for its obtuse holding, the Bankruptcy Court states "[s]eparately classifying insider and non-insider unsecured creditors is supported by case law as being fair discrimination where the insiders do not receive payment."[136] Unlike the insiders in *LeBlanc* (the authority relied upon by Appellant and the Bankruptcy Court), Appellant's insiders *will* receive payment. The Plan expressly requires that insiders will be paid in full on 9/30/2027, except that Class 2A insiders may elect to convert to equity.[137] Nonetheless, in an exercise of cognitive dissonance, the Bankruptcy Court chose to entirely disregard the favorable treatment promised to these insiders, pretending the payments that they will receive do not exist just because they will be paid after five years.[138] Contrary to the Bankruptcy Court's suggestion, the Plan does not state that insiders "may or may not" be paid "depending on how well the Debtor does."[139] Instead, the Plan promises to pay them on the maturity date of 9/30/2027.[140] Just because the

---

[136] 1-ER-0078 (citing *Brinkley v. Chase Manhattan Mortg. & Realty Tr. (Matter of LeBlanc)*, 622 F.2d 872, 879 (5th Cir. 1980)).

[137] 6-ER-1376, 1381.

[138] 2-ER-0490 ("the fact that the other creditors may or may not, depending on how well the Debtor does, will … potentially in five years from now, may very well get it all or maybe not. But I don't think that's relevant to the determination of what will the creditors get in this plan?").

[139] 6-ER-1376, 1381.

[140] *Id.*

discrimination does not immediately bear fruit for the insiders does not make it any less unfair to non-insiders.

The Bankruptcy Court's finding that the discrimination was proposed in good faith in accordance with the third *Ambanc* factor because it "favors Class 3 by providing Class 3 all of the Disposable Income,"[141] is wrong. The FFCL obtusely mischaracterizes Appellee's position:

> [Appellee] has misunderstood §1191 and incorrectly believes that it can reject the Plan, forcing confirmation by way of §1191(b), which specifically caps the Class 3 recovery at the Disposable Income at three years (5 years at most) and then somehow force a result contrary to Congress' mandate where [Appellee] then gets to keep its claim beyond that Disposable Income treatment.[142]

Appellee simply seeks to enforce §1191(b)'s prohibition against unfair discrimination such that, if non-insider claims are discharged after the payment of a mere 5.99% -12.5% recovery, insider claims should be too. It is the Bankruptcy Court and Appellant who have misunderstood §1191 with a Plan that ostensibly devotes three years of disposable income to creditors as required by §1191(c),[143] yet still unfairly discriminates contrary to §1191(b).

As to the fourth *Ambanc* factor, the Bankruptcy Court again relies on the District Court's prior admonishment to justify the Plan's blatant self-dealing,

---

[141] 1-ER-0081.

[142] *Id.*

[143] As discussed *supra*, the Plan does not satisfy §1191(c) either.

-40-

finding the degree of discrimination was necessary "in light of the District Court's appellate order, the Appellant's decision to provide all of the Disposable Income to Appellee and the other Class 3 creditors without dilution to sharing with insiders in Classes 2 and 4, was rationale [sic] and measured by degree to counterbalance any allegation of self-dealing."[144] That the Bankruptcy Court used the District Court's prior admonishment as justification for the Plan's repackaged self-dealing is an affront to this Court.[145] Such an argument turns the "insider" concept completely on its head, arguing that the Plan properly favors insiders over non-insiders and it "fairly discriminated by paying all 100% of the Disposable Income to the non-insider[s] [] and paying nothing to insider[s] []."[146] The Bankruptcy Court clearly erred when it adopted wholesale Appellant's flawed argument based on Klee that "[i]nsiders are different from non-insiders [sic] for several reasons, including that they have the 'chance to share in the unlimited dividends that might be earned and paid on the common stock to have a part in the 'lush years.'"[147] However, to the

---

[144] 1-ER-0081-82. The FFCL also misstates the applicable law, stating that "Congress has mandated that §§1191(b), (c), and (d) provide creditors with *only* three years of Disposable Income and no more." ER-0081-82 (emphasis added). In fact, three years is the bare minimum allowed. §1191(c)(requiring "the plan provides that all of the projected disposable income of the debtor to be received in the 3-year period, *or such longer period not to exceed 5 years as the court may fix* ….") (emphasis added).

[145] 1-ER-0080.

[146] 1-ER-0078; Op. Br. 50.

[147] 1-ER-0078; Op. Br. 50-51 (both quoting Kenneth N. Klee, Bankruptcy and the Supreme Court at 386 (2008)).

-41-

extent relevant, Klee stands for the proposition that Appellant's insiders should willingly forgo their unsecured claims – not just for five years, but permanently – to remedy the Plan's unfair discrimination problem because, if the reorganization succeeds, they will realize "unlimited dividends" and "lush years" as equity owners in the business.[148] Indeed, Klee suggests that insiders might sometimes need to subordinate their claims to achieve a feasible plan, explaining "the interdependence of the feasibility requirement of the fair and equitable test may dictate a deleveraged capital structure in which debt is converted to equity or senior debt is subordinated."[149] Klee says nothing about allowing insiders to recover more on their unsecured claims than non-insiders.

---

[148]Regarding unfair discrimination, Klee states:

> Both the Bankruptcy Act and the Bankruptcy Code … preclude plans from being unfairly discriminatory in treatment of claims or ownership interests. The statutory prohibition against unfair discrimination stems from the principle that creditors with equal or similar legal rights are entitled to be treated similarly. The Court has interpreted the prohibition against unfair discrimination to apply in evaluating fairness of the plan … in which there is no appropriate allocation of asset values among creditors of affiliated debtors in a joint plan.

Klee, Bankruptcy and the Supreme Court at 384-85. Thus, Klee offers no support for Appellant's argument that unfair discrimination is permissible because unsecured claims of insiders and non-insiders are not similarly situated. Appellant takes Klee's "lush years" reference out of context; it relates to the absolute priority rule, which does not apply in Subchapter V.

[149] Klee, Bankruptcy and the Supreme Court at 385.

-42-

Relying entirely on authorities that significantly predate Subchapter V's enactment, Appellant further asserts that "[t]he distinction between insider and non-insider is particularly important in Subchapter V," insofar as insider claims do not count towards §1182(1)(A)'s debt limit and §1181(a) eliminates the absolute priority rule (among other Code provisions not aimed at insiders).[150] While Subchapter V explicitly abrogates the absolute priority rule to let insiders retain their equity post-confirmation without contributing new value, it does not – as Appellant ludicrously implies – give Appellant license to invent additional insider perks that have no statutory basis. Nor does it justify treating insiders' claims more favorably than non-insiders' claims contrary to the basic bankruptcy tenet that insider transactions – including those contemplated by a debtor's proposed plan of reorganization – warrant heightened scrutiny to guard against self-dealing.

Finally, that the FFCL blindly adopts Appellant's argument that "Class 2 and 4 claims are subordinated to the Class 3 claims under the Plan,"[151] and Appellant's melodrama "that the Plan's subordination of Class 4 is the quintessential application of fair discrimination under the history and spirit of American insolvency jurisprudence on fair discrimination, rooted in subordination"[152] does not alter this analysis. In fact, the Plan turns the concept of subordination on its

---

[150] Op. Br. 51-52.
[151] 1-ER-0079.
[152] *Id.*

-43-

head. Though not defined in the Code, "subordination" normally implies that a claim will not be paid until another claim has been paid in full.[153] The FFCL further notes that, like in *LeBlanc*, "[f]air discrimination against the insider Class 4 is supported by the fact that insiders making loans to the debtor company were in position to know the debtor's financial condition and risks involved with those loans, while the Class 3 non-insiders were not."[154] This logic supports treating the insiders *worse* than non-insiders – not *better*. As additional support for this result, the FFCL explicitly finds that:

> '…once the Debtor has completed its plan and creditors have received fair distribution on their claims … the Debtor can then pay Mr. Casden whatever increased salary might then be agreeable.' The Court finds and concludes that the same logic applies to the insider claims in Classes 2 and 4 against the non-insider claims in Class 3. Congress enacted a structure where creditors like MET and Class 3 are entitled to nothing more than three-to-five years' of projected Disposable Income. After that …, the Debtor and its insiders can pay whatever they find agreeable. And in the meantime, the voluntary subordination of the Class 2 and 4 claims so as not to dilute Class 3 recovery only benefits Class 3. Therefore, the Court finds and concludes that the plan has no unfair discrimination.[155]

In its haste to endorse Appellant's proposed FFCL, the Bankruptcy Court overlooked the basic, Bankruptcy 101 distinction between the dischargeable *pre-*

---

[153] *See, e.g.*, 4 Collier on Bankruptcy ¶ 510.01 (16th 2022)("Subordination of a claim alters the otherwise applicable priority of that claim so that the subordinated claimant receives a distribution only after the claims of other identified creditors have been *satisfied*.")(emphasis added).
[154] 1-ER-0078.
[155] 1-ER-0083-84.

-44-

*petition* claims of insiders that are subject to the Plan and Casden's non-dischargeable *post-petition, post-confirmation* claims for services rendered in the future. If non-insider unsecured "creditors like Appellee and Class 3 are entitled to nothing more than three-to-five years' of projected Disposable Income," then neither are the insider unsecured creditors in Classes 2 and 4. Simply put, by voluntarily agreeing to pay some unsecured creditors (especially insiders) – but not others (especially non-insiders) – outside of the confines of the Plan, the Plan unfairly discriminates.[156]

Courts have upheld the separate classification of insiders where they have been afforded worse treatment, due to imputed superior knowledge of insiders and their presumed interest in the debtor's successful reorganization.[157] However, giving insiders better treatment, as here, is the epitome of bad faith and constitutes unfair discrimination. It was clear error for the Bankruptcy Court to find otherwise.

---

[156] *See* 7 Collier on bankruptcy ¶ 1129.03(16th ed. rev. 2022); *In re Woodbrook Assocs.*, 19 F.3d 312, 321 (7th Cir. 1994) ("The meager 5 percent distribution, if any, on [the non-insider claims], given the full payment of [the insider claims], clearly suggests … that this plan was the 'three dollar bill'"); *In re Aztec Co.*, 107 B.R. 585, 589 (Bankr. M.D. Tenn. 1989) (unfair discrimination to pay insider unsecured claims in full while paying nonrecourse deficiency claim 3%).
[157] *See In re LeBlanc*, 622 F.2d at 879.

-45-

## B.     The Bankruptcy Court Erred in Determining that Appellant, as Plan Proponent, Complied with the Code

Pursuant to §1129(a)(2), a plan proponent must have complied with all applicable provisions of the Code for its plan to be confirmable. In finding that Appellant met this requirement, the Bankruptcy Court ignored evidence that Appellant repeatedly violated its duties as a debtor-in-possession. Most troublingly, especially given the District Court's prior admonishments against Casden's "obvious conflicts" and self-dealing,[158] Appellant made numerous unauthorized and undisclosed transfers to Casden and other insiders that were only rectified when Appellee caught it red-handed and Appellant then took steps to retroactively obtain approval.[159]

After the Petition Date, Appellant paid Casden $251,018 on account of 2020 salary and bonus compensation, much of which Debtor previously represented had been voluntarily waived.[160] Appellant hid its recalcitrant conduct by not filing monthly operating reports as required by the Code. In addition, Casden testified falsely under oath that he received these payments before the stay was issued by the District Court of the first confirmation order, implying it was a permitted

---

[158] 7-ER-1632-33.
[159] 4-SER-0829-0857; 6-SER-1244-1269.
[160] 4-SER-0830-0831; 5-SER-0985-0986.

-46-

payment under the Old Plan.[161] Once Appellant filed its monthly operating reports, it was disclosed that at least some of these payments were made after the stay.[162]

Similarly, *after* the District Court issued its stay and *before* serving the requisite notice, Appellant paid its directors a total of $140,000 for their service on the Board.[163] Additional transfers were hidden by Appellant's failure to timely file monthly operating reports. Only once Appellee brought to light these unauthorized post-petition transfers – *i.e.*, only when the Appellant got caught – did Casden and the directors agreed to repay the unauthorized transfers.[164]

The FFCL mischaracterizes Appellee's position as advocating a "draconian minefield approach" to §1129(a)(2), whereunder any inadvertent misstep by a debtor might preclude confirmation.[165] It is hardly "draconian" to expect a debtor-in-possession – especially one represented by experienced counsel who is a stickler for rules that serve his own client's interest – to know and comply with its obligations under the Code. Moreover, record evidence demonstrates that Appellant's transgressions were not inadvertent oversights, but rather a deliberate modus operandi of asking forgiveness instead of permission. The FFCL not only downplays these serious omissions but minimizes them simply because Appellant

---

[161] 4-ER-0814.
[162] 7-SER-1361-1362.
[163] 5-SER-1035; 5-SER-1040; 5-SER-1045; 5-SER-1050-1051; 5-SER-1057
[164] 4-SER-0829-0857; 5-SER-0985-1059; 6-SER-1244-1269.
[165] 1-ER-0055.

-47-

ultimately rectified the transgressions after Appellee brought them to light.[166] The FFCL does not address the underlying issue of whether corrective action taken by a debtor caught red-handed magically eliminates the violations for purposes of § 1129(a)(2) as argued by Appellant here.[167]

Appellant cites (as did the FFCL) to *In re Dunlap Oil Co.*[168] and *In re Moore & Moore Trucking, LLC.*[169] But neither *Dunlap* nor *Moore* involves omissions of a self-dealing nature like those here. In *Dunlap*, debtor made an unauthorized intercompany loan to a non-debtor affiliate for tenant improvements at a shopping center leased from debtor.[170] In upholding the bankruptcy court's ruling that the violations were not sufficiently serious to warrant denial of plan confirmation under §1129(a)(2), the court noted that the intercompany transfers were "neither condoned nor minimized" and emphasized testimony "that not a dime of the … loan went to the principals of [debtors]."[171] Likewise, in *Moore*, debtor initially opened its DIP account at a bank that placed a 14-day hold on all deposited funds.[172] Appellant's principal "resorted to using his personal bank account at a

---

[166] 1-ER-0055 ("all of the infractions alleged by [Appellee] against the [Appellant] have been explained by the [Appellant], were minor, or already rectified").
[167] Op. Br. 56.
[168] 2014 Bankr. LEXIS 4931 (9th Cir. B.A.P. Dec. 5, 2014).
[169] Op. Br. 55; 2022 Bankr. LEXIS 84 (Bankr. E.D. La. Jan. 12, 2022).
[170] *Dunlap*, 2014 Bankr. LEXIS 4931 at *33.
[171] *Dunlap*, 2014 Bankr. LEXIS 4931 at *34.
[172] *Moore*, 2022 Bankr LEXIS 84, at *9.

-48-

bank that placed only a 24-hour hold on deposits to be able to operate [d]ebtor's business," until he was able to move the DIP account to a bank with no hold.[173] Amended monthly operating reports provided an accurate reconciliation, and the court "attribute[d] no improper or deceptive motive to Moore in using his personal bank account to operate the [d]ebtor for that period of time."[174]

These cases are in stark contrast to the facts here, where instead of subjecting Appellant's insider transactions to heightened scrutiny, the Bankruptcy Court inexplicably chose to look the other way, initially excusing Appellant's failure to file monthly operating reports ("I don't fault the debtor because I have assumed you just didn't even think about that. You were more worried about the appeal and all"[175]), before vacillating at the confirmation hearing between minimizing ("a little bit of confusion") and hollow finger-wagging ("I was not happy, quite frankly, that the [Appellant]… went ahead and made the payments").[176] Appellant has the gall to suggest that the Bankruptcy Court properly overlooked its and the Plan's admitted non-compliance with the Bankruptcy Code (and lack of good faith) because "[i]n

---

[173] *Id.*

[174] *Id.* at *10. To the extent Moore suggests that §1129(a)(2) "is essentially inapplicable in a subchapter V case, as a separate disclosure statement is not required, unless the Court so orders," *id.* at *16, Appellee submits it is simply wrong. If Congress had intended that §1129(a)(2) not apply, it would be listed in §1181's list of inapplicable sections.

[175] 5-ER-1137.

[176] 3-ER-0488.

-49-

subchapter V, only the debtor can ever file a plan, even if removed from possession for fraud or gross mismanagement."[177] Contrary to Appellant's shocking implication here, Subchapter V does not condone fraud and mismanagement, nor does it require confirmation of a self-dealing, unfairly discriminatory Subchapter V plan – regardless of its compliance with the Bankruptcy Code and contrary to the best interest of creditors – just because no other party can propose a competing plan.

Nor does Appellant's argument that the fact that Congress did not explicitly include in either the legislative history or the text of Subchapter V that any infraction warrants denial of plan confirmation evidence that the Plan comported with §1129(a)(2).[178] If the Court accepted this argument, it would create an incentive for debtors to engage in dishonest and manipulative behavior, so long as it falls outside the Code's express, and necessarily limited, list of disqualifying acts. Such an outcome is antithetical to the purpose of bankruptcy law, which is to provide a fresh start for the "honest but unfortunate debtor." It was clear error to confirm the Plan here while ignoring the evidence of significant and unauthorized self-dealing at the expense of creditors. The remedy for a Subchapter V debtor's

---

[177] Op. Br. 55-56.
[178] Op. Br. 56.

-50-

bad behavior is not confirmation of its plan – it is conversion of its case to Chapter 7.

### C. The Bankruptcy Court Erred in Determining that the Plan Meets the "Good Faith" Test

Although the Code does not define "good faith" in the context of §1129(a)(3), it is well-established that "[a] plan is proposed in good faith where it achieves a result consistent with the objectives and purposes of the Code."[179] Furthermore, Appellant (not Appellee) has the burden to prove good faith given that Appellant seeks relief from its debts.[180]

As a result of the unfair discrimination described above, the Plan does not comport with the objectives and purposes of the Code but contravenes them. The Bankruptcy Court clearly erred in embracing Appellant's twisted attempt to use the District Court's prior admonishments against self-dealing to justify preserving insiders' claims while limiting non-insider creditors' recoveries.

As discussed above in relation to §1129(a)(2) and below in relation to §1129(a)(5), Appellant repeatedly flouted its obligations as a debtor-in-possession by making unauthorized transfers to Casden and other insiders, despite the concerns around self-dealing and conflicts of interest articulated by the District Court.

---

[179] *In re Sylmar Plaza, L.P.*, 314 F.3d 1070, 1075 (9th Cir. 2002).
[180] *In re ACI Sunbow, LLC*, 206 B.R. 213, 217 (Bankr. S.D. Cal. 1997).

Appellant argues that "[Appellee] improperly attempted to use the good faith test of §1129(a)(3) to duplicative other plan confirmation requirements (specifically, §1129(a)(2), §1129(a)(5), and §1191(b), all of which are addressed elsewhere in this appellate brief) in a practice admonished by this Court."[181] Yet, the only authority Appellant cites for this proposition, merely notes a "disinclination to find redundancy in the Code."[182] It does not preclude Appellee's argument that the same operative facts – namely, self-dealing and unauthorized transfers to insiders – justify denial of confirmation under multiple Code sections. Indeed, the only impermissible redundancy is Appellant's flawed argument that the Plan cannot discriminate unfairly under §1191(b) if it is "fair and equitable" within the meaning of §1191(c).

Here, Appellee submitted substantial evidence that the Plan was not proposed in good faith because, among other things, it sought to preserve claims of Casden and other insiders at the expense of non-insider creditors[183] and otherwise contained substantial misleading information, including but not limited to claims about the liquidation analysis, amount owed to Casden under his employment

---

[181] Op. Br. 56-57.

[182] Op. Br. 57 (citing *In re Acequia*, 787 F.2d at 1364).

[183] As noted above, although the Plan contemplates the avoidance of the insider liens to address this Court's concerns around self-dealing, this is a hollow gesture given that the Plan simply creates an alternative – but equally self-dealing – mechanism to preserve the insiders' ability to receive payment in full.

-52-

contract and the treatment of administrative expenses.[184] Again, the mere fact that the Bankruptcy Court largely endorsed the FFCL drafted by Appellant that cites to the record does not mean that the Bankruptcy Court did not commit clear error when it ignored the plethora of evidence showing Appellant's and insiders' bad faith from before the beginning of the bankruptcy through the eve of confirmation. Had it been acknowledged; it would have defeated confirmation of the Plan. It was an abuse of discretion to find otherwise.

**D.    The Bankruptcy Court Erred in Determining that the Plan Satisfied §1129(a)(5)**

Due to his relentless pre- and post-petition self-dealing, Casden cannot be trusted to manage Appellant going forward. Ignoring this reality, the Bankruptcy Court determined that the Plan "complies with §1129(a)(5) of the Bankruptcy Code because Section III.B.3 of the Plan discloses the identity and affiliation of the individuals proposed to serve after confirmation of the Plan as directors, officers, and managers of the Reorganized Debtor."[185] However, §1129(a)(5) *also* requires that "the appointment to, or continuance in, such office of such individual, is consistent with the interests of creditors and equity security holders and with

---

[184] 6-ER-1216-51.
[185] 1-ER-0064.

-53-

public policy."[186] "A chapter 11 plan may not be confirmed if the continuation in management of the persons proposed to serve" does not meet this requirement.[187]

In finding that "[t]here has been nothing in the representations of the business pre-petition by the Debtor, nor actions during the Case that indicated to the Court that Debtor's management is not competent to lead the Reorganized Debtor pose-petition [sic],"[188] the Bankruptcy Court completely ignored ample record evidence that Casden engaged in repeated acts of self-dealing and other wrongdoing – both before and during the bankruptcy case – such that his continued involvement was not in the best interest of creditors or consistent with public policy. As discussed above in relation to §1129(a)(2), the record is replete with evidence that under Casden's management, Appellant made numerous, unauthorized post-petition transfers to insiders, some in express violation of the District Court's stay order. Casden then lied under oath about the timing of certain payments to himself to make it appear that they were made prior to the stay. The Bankruptcy Court clearly erred by failing to address this evidence in its FFCL related to §1129(a)(5).

Moreover, despite having vehemently insisted upon its solvency and the validity of the insider liens in order to secure confirmation of its Old Plan,

---

[186] §1129(a)(5)(A)(ii).
[187] *Farwest Pump*, 2020 Bankr. LEXIS 2457, at *10.
[188] 1-ER-0064.

-54-

Appellant abandons that position as indefensible in the Plan.[189] Casden acknowledged Appellant's "original position that we were solvent prior to COVID was based without having an independent expert," but once the Grobstein Report came out, "it didn't appear that position was defensible."[190] Grobstein admits that he privately told Appellant "that they were insolvent," yet signed his name to the Grobstein Report, opining Debtor was solvent at a time when Grobstein knew it was not.[191] Grobstein invented the pretext that a $983,052.19 debt to Polsinelli LLP should be disregarded as a "one-time occurrence and not an on-going expense."[192] Under cross-examination, Grobstein admitted that no authority supported the exclusion of the legal fees from his solvency analysis.[193] That he, nonetheless, twice willingly portrayed Appellant as solvent calls into question the credibility of Grobstein's opinions. As such, the Bankruptcy Court erred in determining that §1129(a)(5) was satisfied.

Appellant only argues that the Bankruptcy Court found Casden "very credible" and noted that Appellee failed to put forth competent evidence to support its arguments.[194] This belied by the record. Appellee put forth ample evidence of

_____

[189] 4-ER-760.
[190] 4-ER-760.
[191] 4-ER-933; 6-SER-1276.
[192] 6-ER-1531.
[193] 4-ER-0940-41.
[194] Op. Br. 57-58.

-55-

Casden's self-dealing discussed *supra*, but the Bankruptcy Court illogically and implausibly chose to ignore it. On July 12, 2022, Casden testified that he received both cure payments after the plan was confirmed and before the stay was granted on December 21, 2020.[195] Appellant was also dishonest when it stated on February 25, 2021 that "[Appellant] stopped all Plan payments as of December 21, 2020."[196] Both statements were blatant lies because Casden received a second cure payment in the amount of $46,362 just three weeks earlier – on February 1, 2021.[197] This was intentionally hidden from creditors because Appellant ceased filing monthly operating reports in contravention of its obligations.[198]

It was clear error for the Bankruptcy Court to find that (1) Casden was "very credible" given that Appellant's own documents impeached his testimony and (2) it was in the best interests of creditors or public policy for Casden to run the Estate and Appellant. Accordingly, the Bankruptcy Court erred when it determined that the Plan satisfies §1129(a)(5).

### E.    The Plan Does Not Satisfy the "Best Interest of Creditors" Test

The Bankruptcy Court clearly erred when it found the Plan's treatment of non-insiders was in the best interests of creditors under §1129(a)(7), which

---

[195] 4-ER-0814.
[196] 7-SER-1388.
[197] 7-SER-1361.
[198] 7-SER-1377-1379.

"requires that a plan proponent demonstrate, and the court find, that dissenting impaired creditors would receive under the plan property of a value not less than they would receive under a hypothetical chapter 7 liquidation."[199] Appellant, as plan proponent, has the burden of proof and, "[e]ven in the absence of an objection, the court has an independent duty to make sure that the Debtor has offered sufficient evidence to sustain a finding."[200]

Appellant failed to meet its burden to show that the Plan treats creditors better than Chapter 7 liquidation. Appellant's purported evidence showed only that unsecured creditors *might* be better off under the Plan than in a Chapter 7 liquidation, not that they definitively would be. In a Chapter 7 liquidation, Appellant would have no reason to assume Casden's employment contract, which requires Appellant to pay Casden a cure amount of $434,536.50 -- *i.e.*, a sum equal to nearly three years of Appellant's disposable income. Notwithstanding Grobstein's "long and extensive" experience involving "thousands of bankruptcy cases,"[201] Grobstein conceded he did not consider the $251,018 Casden was ordered to return to Appellant in formulating his liquidation analysis.[202] The

---

[199] *Farwest Pump*, 2020 Bankr. LEXIS 2457, at *25.
[200] *Real Wilson*, 2013 Bankr. LEXIS 3997, at *7-*9; *see also In re Acequia, Inc.*, 787 F.2d at 1358; *In re Art & Architecture Books of the 21st Century*, 2016 Bankr. LEXIS 859 at *22.
[201] 1-ER-0069.
[202] 5-ER-0976.

Bankruptcy Court did not let this glaring oversight affect its high opinion of Grobstein.[203]

Indeed, the FFCL make excuses for the oversight, explaining that Grobstein's report was submitted before the money was ordered returned,[204] but ignores that Grobstein had three weeks between the repayment order and the Confirmation Hearing, yet made no effort to update Grobstein's liquidation analysis to address the impact of assuming Casden's employment contract so that Appellee or other creditors could assess same. Although the FFCL initially states that "[t]his one change could result in an increased dividend from Class 3 from 4.4% to 7.6%, though still less than the Plan's 12.5% payment,"[205] it continues"

> The recovery could fall below 7.4% to the extent that [Casden] could have had a rejection claim in chapter 7 for his executory contract, which might be $251,018, or might be up to $434,536.50, and portions of which might be entitled to administrative priority under §§ 365(d)(3) and 503(b), diluting the unsecured creditor recovery by varying degrees. However, in all instances, the Plan pays Class 3 a 12.5% recovery, which is greater than any of these adjusted results, and, therefore, the Plan passes the best interest of creditors test of § 1129(a)(7).[206]

---

[203] 1-ER-0068-69 ("The Court finds and concludes that there was nothing in the testimony or cross-examination that would cause the Court to disagree with Mr. Grobstein's expert report").

[204] 1-ER-0071.

[205] 1-ER-0072.

[206] 1-ER-0073.

-58-

This garbled passage on a key finding strongly suggests that Appellant never quantified the impact of assuming Casden's employment contract with the precision necessary to support the FFCL. Nor did the Bankruptcy Court do anything more than accept Appellant's flawed premise that non-insiders will receive 12.5% ($500,000) under the Plan. Indeed, if Appellant elects to take advantage of the grossly excessive NPV discount, discussed *supra*, non-insiders will receive only 7.5% ($239,100) under the Plan.

Indeed, Appellant's liquidation analysis has been a moving target, with Class 3 creditors initially projected to receive 12.5% under the Plan compared to 4.4% in a liquidation.[207] Six weeks later, Appellant "updated its liquidation analysis to include $251,018" – unauthorized post-petition compensation that Casden was ordered to return to the estate – "as an asset with 0% discount to reflect the Court's order that Mr. Casden repay that sum by August 8, 2022."[208] By Appellant's own calculations, "this one change alone would result in an increased dividend to Class 3 from 4.4% to 7.6%."[209] Critically, Appellant failed to quantify the impact of a third variable: $434,536 payable in full under the Plan to assume and cure Casden's employment contract. In Chapter 7, although Casden would

---

[207] 1-ER-0002-0003.

[208] 4-SER-0805.

[209] *Id.* at n.10 (although "the [7.6%] dividend would be diluted to 7.4%" by Casden's resulting rejection damage claim).

-59-

have a $434,536 rejection damage claim, only a portion of it would be entitled to wage or other priority; for the remainder, he would be forced to share pro rata with other unsecured creditors. While there was no line item for a cure payment to Casden in Appellant's hypothetical liquidation, this is precisely the error because there is no line item for a cure payment to Casden in the "Chapter 11" column of Appellant's liquidation analysis either, despite that the cure payment will be a major cost for the reorganized Appellant, nearly the equivalent of the $500,000 in disposable income Appellant projects for the first 3 years post-confirmation.

Moreover, the FFCL adopted Appellant's updated liquidation analysis and acknowledges that "if [Class 2B]'s claim were moved from secured to unsecured on account of lien avoidance," it "could result in an increased dividend for Class 3 from 4.4.% to 10.4%." However, the FFCL still concludes that the best interest test is met because "that would still be less than the plan's 12.5% payment."[210] If the "one change" – elimination of the Casden cure payment – would result in a 3.2% increase (from 4.4% to 7.6%) and the other change – avoidance of Class 2-B's lien – would result in a 6% increase (from 4.4% to 10.4%), then the two changes together would have a combined impact of 9.2%, enough to increase the recovery in Chapter 7 from 4.4% to 13.6%, *more* than the 12.5% that Class 3 would receive under the Plan. Yet, the FFCL only addresses the impact of each change in

_____

[210] 1-ER-0073.

-60-

isolation and does not address their potential combined impact.[211] It was clear error for the Bankruptcy Court not to consider these variables when evaluating whether the Plan was in the best interests of the creditors, particularly because it is abundantly clear that non-insider creditors would be far *worse* off under the Plan than in a Chapter 7 liquidation whereas only insiders – particularly Casden himself – fare better under the Plan than in liquidation.

Finally, the Bankruptcy Court's §1129(a)(7) findings are premised on its determination that Appellant's expert was more credible than Appellee's expert.[212] As explained *supra* and *infra*, Grobstein not only made mistakes of his own, but also initially opined that Appellant was solvent using a pretense that he later admitted had no supportable basis, calling into question Grobstein's credibility. Yet, while the Bankruptcy Court bent over backwards to excuse Grobstein's mistakes, it hyper-focused on Pastore's without giving him the same opportunity as Grobstein to correct them, thereby denying Appellee due process in connection with Pastore's testimony. This also amounted to clear error.

---

[211] A fourth factor – right-sizing the excessive liquidation discounts applied by Grobstein – further tips the scales in favor of liquidation.

[212] 1-ECF-0072 ("Grobstein's liquidation analysis is credible and supportable and more credible than [Appellee]'s opposition or [Pastore]'s declaration."); 1-ER-0073 (finding Pastore "not credible on the best interest of creditors' [sic] test because [Pastore] made an elementary mistake in his analysis that calls into question the quality and reliability of his work on a bankruptcy matter").

**F.    The Bankruptcy Court Denied Appellee Due Process During the Confirmation Hearing**

Appellant argues that there was no due process violation because Appellee agreed to the process and it is acceptable to conduct direct testimony via affidavits.[213] Appellant mischaracterizes Appellee's due process argument. Appellee does not assert inherent unfairness in requiring direct testimony by declaration while reserving live testimony for cross-examination. Rather, the Bankruptcy Court implemented the practice in a fundamentally unfair manner by allowing Grobstein to rehabilitate the many deficiencies and inconsistencies in his expert reports – including his 180-degree reversal on the issue of solvency – while depriving Pastore of an equivalent opportunity. This is even more egregious since the District Court vacated confirmation of the Old Plan, in part because Bankruptcy Court wrongly excluded Appellee's evidence at confirmation.[214] Yet again, the Bankruptcy Court continued its pattern of due process violations against Appellee at the Confirmation Hearing.

At the end of the Confirmation Hearing, the Bankruptcy Court emphasized that its credibility determinations about Appellant's witnesses were greatly influenced by its ability to hear both witnesses – Casden and Grobstein – answer questions in the court's presence during the hearing.[215] The Bankruptcy Court specifically stated "I

---

[213] Op. Br. 59-60.
[214] 7-ER-1639.
[215] 3-ER-0481-82.

-62-

find between the two [experts] that clearly, especially having to basically hear on the cross-examination and testimony Mr. Grobstein's conclusions, that he was straightforward, very knowledgeable, and I saw no equivocation, and it[] really made sense to me."[216] The court then stated "[t]he Court finds and concludes that there was nothing in the live testimony or cross-examination that would cause the Court to disagree with Mr. Grobstein's expert report."[217] The Bankruptcy Court was surprisingly untroubled by Grobstein's admission that, despite knowing that Appellant was insolvent at the time the insider liens were recorded in November 2019, Grobstein nonetheless signed his name to the Grobstein Report attesting to Appellant's solvency, inventing the pretext that a $983,052.19 debt to Polsinelli LLP should be disregarded as a "one-time occurrence."[218]

Similarly, the FFCL states that Appellant's expert (Grobstein) was more credible than Appellee's (Pastore) on numerous material disputed confirmation issues, including the NPV discount, the projections supporting the Plan, compensation, and the best interest of creditors test.[219] The Bankruptcy Court gave Grobstein an opportunity to answer its questions and to address various mistakes in his prior testimony and opinions; Pastore was given no equivalent opportunity.[220] It is hardly

_____

[216] 3-ER-0482.

[217] 1-ER-0068-69.

[218] 7-ER-1531.

[219] 1-ER-069.

[220] 3-ER-0392, 3-ER-0415, 3-ER-0419, 3-ER-0431.

-63-

surprising under the circumstances that the Bankruptcy Court found Grobstein more credible than Pastore.

Not surprising, Appellant does not address the obvious due process violation that arises when a court finds one witness more credible than another only after hearing live testimony from that witness but not from the latter. "Due process requires reasonable notice and a meaningful opportunity to be heard."[221]

While it is the Bankruptcy Court's standard procedure to require direct testimony to be presented by written declaration,[222] the Bankruptcy Court implemented this procedure in a fundamentally unequal and unfair manner. Indeed, despite placing a high value on hearing witnesses testify live, the Bankruptcy Court never afforded Appellee's expert the opportunity to testify in court. After Appellant's witnesses testified live in the courtroom and answered numerous questions posed by the Bankruptcy Court, Appellant – apparently satisfied with its witnesses' extensive live testimony – strategically chose not to cross-examine Appellee's expert. Although the Bankruptcy Court evidently harbored concerns about Pastore's qualifications,

---

[221] *First St. Holdings NV, LLC v. MS Mission Holdings, LLC (In re First St. Holdings NV, LLC)*, 2012 Bankr. LEXIS 5636 (9th Cir. B.A.P. Dec. 5, 2012) (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)); *see also Matthews v. Eldridge*, 424 U.S. 319, 333 (1976).

[222] *In re Adair*, 965 F.2d 777, 780 (9th Cir. 1992) (noting direct testimony by declaration is proper when the judge "had the opportunity to observe the declarants' demeanor and to gauge their credibility during oral cross-examination and redirect examination").

methodology, and the conclusions reached in his report, it kept them to itself rather than giving Pastore the opportunity to address them during the Confirmation Hearing. Thus, Pastore never testified live.

That the Bankruptcy Court issued substantial findings wherein it found that Appellee's expert testimony was entirely not credible without having had the benefit of hearing his live testimony raises significant due process concerns given that the Bankruptcy Court could not view his demeanor to gauge his credibility as it did with the other witnesses.[223] Where, as here, only one party's witnesses have the opportunity to present live testimony, this amounts to a due process violation.

Appellant's only defense to this clear due process violation is that Appellee "put[] on a deficient case in chief" and "[took] a risky strategy to withhold evidence from [its] case in chief."[224] Yet, Appellant – not Appellee, bore the ultimate burden of proof on all confirmation requirements, and the Bankruptcy Court had a mandatory, independent duty to ensure that the Plan (and its proponent) met all confirmation requirements regardless of whether Appellee produced sufficient evidence to shift the burden back to Appellant as Plan proponent (which it did, despite Appellant's

_____

[223] See In re Burg, 103 B.R. 222, 225 (B.A.P. 9th Cir. 1989) ("[B]asic notions of procedural due process compel this Panel to conclude that essential rights of the parties may be jeopardized by a procedure whether the oral presentation of evidence is not allowed, where the bankruptcy court's ability to gauge the credibility of a witness or evidence is questionable and where rulings on objections to the admissibility of all direct evidence, may be unclear.").
[224] Op. Br. 61.

protestations to the contrary).[225] The Bankruptcy Court failed to discharge this duty and instead erroneously confirmed the Plan.

## CONCLUSION

For all these reasons, the Bankruptcy Court's Order should be reversed and the case remanded.

Dated:  October 10, 2025

Respectfully submitted,

WHITE AND WILLIAMS LLP

/s/ Nicole A. Sullivan

Nicole A. Sullivan
Thomas E. Butler

*Attorneys for Appellee Multiple Energy Technologies, LLC*

-and-

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP

/s/ Roye Zur

Roye Zur
Lauren N. Gans

*Attorneys for Appellee Multiple Energy Technologies, LLC*

---

[225] *Acequia*, 787 F.2d at 1358; *In re Art & Architecture Books of the 21st Century*, 2016 Bankr. LEXIS 859, at *22.

## STATEMENT OF RELATED CASES

Pursuant to Ninth Circuit Rule 28-2.6, the undersigned certifies that there are related cases pending in this Court. The related cases are indicated below:

Case No. 24-2883, relating to the Bankruptcy Court's order authorizing Appellant to "assume" an employment agreement with its Chief Executive Officer pursuant to section to section 365 of the Bankruptcy Code.

Case No. 24-2884, relating to the Bankruptcy Court's order granting summary judgment to Appellant on its preference action against Appellee.

Dated:  October 10, 2025          Respectfully submitted,

WHITE AND WILLIAMS LLP


/s/ Nicole A. Sullivan

Nicole A. Sullivan
Thomas E. Butler

*Attorneys for Appellee Multiple Energy Technologies, LLC*


                    -and-

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP

/s/ Roye Zur

Roye Zur
Lauren N. Gans

*Attorneys for Appellee Multiple Energy Technologies, LLC*

-67-

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C), I certify that:

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because this brief contains 13,759 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point font.

Dated:  October 10, 2025          WHITE AND WILLIAMS LLP

                                  /s/ Nicole A. Sullivan

                                  Nicole A. Sullivan
                                  Thomas E. Butler

                                  *Attorneys for Appellee Multiple Energy Technologies, LLC*

                                           -and-

                                  ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP

                                  /s/ Roye Zur

                                  Roye Zur
                                  Lauren N. Gans

                                  *Attorneys for Appellee Multiple Energy Technologies, LLC*

-68-

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the
Court for the United States Court of Appeals for the Ninth Circuit by using the
appellate CM/ECF system on October 10, 2025. I certify that all participants in the
case are registered CM/ECF users and that service will be accomplished by the
appellate CM/ECF system.

Dated:  October 10, 2025

WHITE AND WILLIAMS LLP

/s/ Nicole A. Sullivan

Nicole A. Sullivan
Thomas E. Butler

*Attorneys for Appellee Multiple Energy
Technologies, LLC*

-and-

ELKINS KALT WEINTRAUB REUBEN
GARTSIDE LLP

/s/ Roye Zur

Roye Zur
Lauren N. Gans

*Attorneys for Appellee Multiple Energy
Technologies, LLC*

-69-

# ADDENDUM

# ADDENDUM

## TABLE OF CONTENTS

11 U.S.C. §547 ................................................................................................ A-1

11 U.S.C. §549 ................................................................................................ A-6

11 U.S.C. §1129 .............................................................................................. A-8

11 U.S.C. §1191 .............................................................................................. A-14

28 U.S.C. §158(d) ........................................................................................... A-16

## 11 U.S.C. §547

(a) In this section--

(1) "inventory" means personal property leased or furnished, held for sale or lease, or to be furnished under a contract for service, raw materials, work in process, or materials used or consumed in a business, including farm products such as crops or livestock, held for sale or lease;

(2) "new value" means money or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, including proceeds of such property, but does not include an obligation substituted for an existing obligation;

(3) "receivable" means right to payment, whether or not such right has been earned by performance; and

(4) a debt for a tax is incurred on the day when such tax is last payable without penalty, including any extension.

(b) Except as provided in subsections (c) and (i) of this section, the trustee may, based on reasonable due diligence in the circumstances of the case and taking into account a party's known or reasonably knowable affirmative defenses under subsection (c), avoid any transfer of an interest of the debtor in property--

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made--

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if--

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

(c) The trustee may not avoid under this section a transfer--

(1) to the extent that such transfer was--

(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and

(B) in fact a substantially contemporaneous exchange;

(2) to the extent that such transfer was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee, and such transfer was--

(A) made in the ordinary course of business or financial affairs of the debtor and the transferee; or

(B) made according to ordinary business terms;

(3) that creates a security interest in property acquired by the debtor--

(A) to the extent such security interest secures new value that was--

.(i) given at or after the signing of a security agreement that contains a description of such property as collateral;

(ii) given by or on behalf of the secured party under such agreement;

A-2

(iii) given to enable the debtor to acquire such property; and

(iv) in fact used by the debtor to acquire such property; and

(B) that is perfected on or before 30 days after the debtor receives possession of such property;

(4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor--

(A) not secured by an otherwise unavoidable security interest; and

(B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor;

(5) that creates a perfected security interest in inventory or a receivable or the proceeds of either, except to the extent that the aggregate of all such transfers to the transferee caused a reduction, as of the date of the filing of the petition and to the prejudice of other creditors holding unsecured claims, of any amount by which the debt secured by such security interest exceeded the value of all security interests for such debt on the later of--

(A)(i) with respect to a transfer to which subsection (b)(4)(A) of this section applies, 90 days before the date of the filing of the petition; or

(ii) with respect to a transfer to which subsection (b)(4)(B) of this section applies, one year before the date of the filing of the petition; or

(B) the date on which new value was first given under the security agreement creating such security interest;

(6) that is the fixing of a statutory lien that is not avoidable under section 545 of this title;

A-3

(7) to the extent such transfer was a bona fide payment of a debt for a domestic support obligation;

(8) if, in a case filed by an individual debtor whose debts are primarily consumer debts, the aggregate value of all property that constitutes or is affected by such transfer is less than $600; or

(9) if, in a case filed by a debtor whose debts are not primarily consumer debts, the aggregate value of all property that constitutes or is affected by such transfer is less than $7,575 [originally "$5,000", adjusted effective April 1, 2022] 1.

(d) The trustee may avoid a transfer of an interest in property of the debtor transferred to or for the benefit of a surety to secure reimbursement of such a surety that furnished a bond or other obligation to dissolve a judicial lien that would have been avoidable by the trustee under subsection (b) of this section. The liability of such surety under such bond or obligation shall be discharged to the extent of the value of such property recovered by the trustee or the amount paid to the trustee.

(e)(1) For the purposes of this section--

. (A) a transfer of real property other than fixtures, but including the interest of a seller or purchaser under a contract for the sale of real property, is perfected when a bona fide purchaser of such property from the debtor against whom applicable law permits such transfer to be perfected cannot acquire an interest that is superior to the interest of the transferee; and

(B) a transfer of a fixture or property other than real property is perfected when a creditor on a simple contract cannot acquire a judicial lien that is superior to the interest of the transferee.

(2) For the purposes of this section, except as provided in paragraph (3) of this subsection, a transfer is made--

(A) at the time such transfer takes effect between the transferor and the transferee, if such transfer is perfected at, or within 30 days after, such time, except as provided in subsection (c)(3)(B);

A-4

(B) at the time such transfer is perfected, if such transfer is perfected after such 30 days; or

(C) immediately before the date of the filing of the petition, if such transfer is not perfected at the later of--

(i) the commencement of the case; or

(ii) 30 days after such transfer takes effect between the transferor and the transferee.

(3) For the purposes of this section, a transfer is not made until the debtor has acquired rights in the property transferred.

(f) For the purposes of this section, the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition.

(g) For the purposes of this section, the trustee has the burden of proving the avoidability of a transfer under subsection (b) of this section, and the creditor or party in interest against whom recovery or avoidance is sought has the burden of proving the nonavoidability of a transfer under subsection (c) of this section.

(h) The trustee may not avoid a transfer if such transfer was made as a part of an alternative repayment schedule between the debtor and any creditor of the debtor created by an approved nonprofit budget and credit counseling agency.

(i) If the trustee avoids under subsection (b) a transfer made between 90 days and 1 year before the date of the filing of the petition, by the debtor to an entity that is not an insider for the benefit of a creditor that is an insider, such transfer shall be considered to be avoided under this section only with respect to the creditor that is an insider.

(j) Repealed.Pub.L. 116-260, Div. FF, Title X, § 1001(g)(2)(A)(ii), Dec. 27, 2020, 134 Stat. 3220.

A-5

## 11 U.S.C. §549

(a) Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate--

  (1) that occurs after the commencement of the case; and

  (2)(A) that is authorized only under section 303(f) or 542(c) of this title; or

    (B) that is not authorized under this title or by the court.

(b) In an involuntary case, the trustee may not avoid under subsection (a) of this section a transfer made after the commencement of such case but before the order for relief to the extent any value, including services, but not including satisfaction or securing of a debt that arose before the commencement of the case, is given after the commencement of the case in exchange for such transfer, notwithstanding any notice or knowledge of the case that the transferee has.

(c) The trustee may not avoid under subsection (a) of this section a transfer of an interest in real property to a good faith purchaser without knowledge of the commencement of the case and for present fair equivalent value unless a copy or notice of the petition was filed, where a transfer of an interest in such real property may be recorded to perfect such transfer, before such transfer is so perfected that a bona fide purchaser of such real property, against whom applicable law permits such transfer to be perfected, could not acquire an interest that is superior to such interest of such good faith purchaser. A good faith purchaser without knowledge of the commencement of the case and for less than present fair equivalent value has a lien on the property transferred to the extent of any present value given, unless a copy or notice of the petition was so filed before such transfer was so perfected.

(d) An action or proceeding under this section may not be commenced after the earlier of--

  (1) two years after the date of the transfer sought to be avoided; or

A-6

(2) the time the case is closed or dismissed.

A-7

## 11 U.S.C. §1129

(a) The court shall confirm a plan only if all of the following requirements are met:

(1) The plan complies with the applicable provisions of this title.

(2) The proponent of the plan complies with the applicable provisions of this title.

(3) The plan has been proposed in good faith and not by any means forbidden by law.

(4) Any payment made or to be made by the proponent, by the debtor, or by a person issuing securities or acquiring property under the plan, for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of, the court as reasonable.

(5)(A)(i) The proponent of the plan has disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the plan, as a director, officer, or voting trustee of the debtor, an affiliate of the debtor participating in a joint plan with the debtor, or a successor to the debtor under the plan; and

(ii) the appointment to, or continuance in, such office of such individual, is consistent with the interests of creditors and equity security holders and with public policy; and

(B) the proponent of the plan has disclosed the identity of any insider that will be employed or retained by the reorganized debtor, and the nature of any compensation for such insider.

(6) Any governmental regulatory commission with jurisdiction, after confirmation of the plan, over the rates of the debtor has approved any rate change provided for in the plan, or such rate change is expressly conditioned on such approval.

(7) With respect to each impaired class of claims or interests--

(A) each holder of a claim or interest of such class--

A-8

(i) has accepted the plan; or

(ii) will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date; or

(B) if section 1111(b)(2) of this title applies to the claims of such class, each holder of a claim of such class will receive or retain under the plan on account of such claim property of a value, as of the effective date of the plan, that is not less than the value of such holder's interest in the estate's interest in the property that secures such claims.

(8) With respect to each class of claims or interests--

(A) such class has accepted the plan; or

(B) such class is not impaired under the plan.

(9) Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the plan provides that--

(A) with respect to a claim of a kind specified in section 507(a)(2) or 507(a)(3) of this title, on the effective date of the plan, the holder of such claim will receive on account of such claim cash equal to the allowed amount of such claim;

(B) with respect to a class of claims of a kind specified in section 507(a)(1), 507(a)(4), 507(a)(5), 507(a)(6), or 507(a)(7) of this title, each holder of a claim of such class will receive--

(i) if such class has accepted the plan, deferred cash payments of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or

(ii) if such class has not accepted the plan, cash on the effective date of the plan equal to the allowed amount of such claim;

A-9

(C) with respect to a claim of a kind specified in section 507(a)(8) of this title, the holder of such claim will receive on account of such claim regular installment payments in cash--

(i) of a total value, as of the effective date of the plan, equal to the allowed amount of such claim;

(ii) over a period ending not later than 5 years after the date of the order for relief under section 301, 302, or 303; and

(iii) in a manner not less favorable than the most favored nonpriority unsecured claim provided for by the plan (other than cash payments made to a class of creditors under section 1122(b)); and

(D) with respect to a secured claim which would otherwise meet the description of an unsecured claim of a governmental unit under section 507(a)(8), but for the secured status of that claim, the holder of that claim will receive on account of that claim, cash payments, in the same manner and over the same period, as prescribed in subparagraph (C).

(10) If a class of claims is impaired under the plan, at least one class of claims that is impaired under the plan has accepted the plan, determined without including any acceptance of the plan by any insider.

(11) Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan.

(12) All fees payable under section 1930 of title 28, as determined by the court at the hearing on confirmation of the plan, have been paid or the plan provides for the payment of all such fees on the effective date of the plan.

(13) The plan provides for the continuation after its effective date of payment of all retiree benefits, as that term is defined in section 1114 of this title, at the level established pursuant to subsection (e)(1)(B) or (g) of section 1114 of this title, at any time prior to confirmation of the plan, for the duration of the period the debtor has obligated itself to provide such benefits.

(14) If the debtor is required by a judicial or administrative order, or by statute, to pay a domestic support obligation, the debtor has paid all amounts payable under such order or such statute for such obligation that first become payable after the date of the filing of the petition.

(15) In a case in which the debtor is an individual and in which the holder of an allowed unsecured claim objects to the confirmation of the plan--

(A) the value, as of the effective date of the plan, of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

(B) the value of the property to be distributed under the plan is not less than the projected disposable income of the debtor (as defined in section 1325(b)(2)) to be received during the 5-year period beginning on the date that the first payment is due under the plan, or during the period for which the plan provides payments, whichever is longer.

(16) All transfers of property under the plan shall be made in accordance with any applicable provisions of nonbankruptcy law that govern the transfer of property by a corporation or trust that is not a moneyed, business, or commercial corporation or trust.

(b)(1) Notwithstanding section 510(a) of this title, if all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met with respect to a plan, the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

A-11

(2) For the purpose of this subsection, the condition that a plan be fair and equitable with respect to a class includes the following requirements:

(A) With respect to a class of secured claims, the plan provides--

(i)(I) that the holders of such claims retain the liens securing such claims, whether the property subject to such liens is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims; and

...... (II) that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property;

(ii) for the sale, subject to section 363(k) of this title, of any property that is subject to the liens securing such claims, free and clear of such liens, with such liens to attach to the proceeds of such sale, and the treatment of such liens on proceeds under clause (i) or (iii) of this subparagraph; or

(iii) for the realization by such holders of the indubitable equivalent of such claims.

(B) With respect to a class of unsecured claims--

(i) the plan provides that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or

(ii) the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property, except that in a case in which the debtor is an individual, the debtor may retain property included in the estate under section 1115, subject to the requirements of subsection (a)(14) of this section.

(C) With respect to a class of interests--

A-12

(i) the plan provides that each holder of an interest of such class receive or retain on account of such interest property of a value, as of the effective date of the plan, equal to the greatest of the allowed amount of any fixed liquidation preference to which such holder is entitled, any fixed redemption price to which such holder is entitled, or the value of such interest; or

(ii) the holder of any interest that is junior to the interests of such class will not receive or retain under the plan on account of such junior interest any property.

(c) Notwithstanding subsections (a) and (b) of this section and except as provided in section 1127(b) of this title, the court may confirm only one plan, unless the order of confirmation in the case has been revoked under section 1144 of this title. If the requirements of subsections (a) and (b) of this section are met with respect to more than one plan, the court shall consider the preferences of creditors and equity security holders in determining which plan to confirm.

(d) Notwithstanding any other provision of this section, on request of a party in interest that is a governmental unit, the court may not confirm a plan if the principal purpose of the plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933. In any hearing under this subsection, the governmental unit has the burden of proof on the issue of avoidance.

(e) In a small business case, the court shall confirm a plan that complies with the applicable provisions of this title and that is filed in accordance with section 1121(e) not later than 45 days after the plan is filed unless the time for confirmation is extended in accordance with section 1121(e)(3).

A-13

## 11 U.S.C. §1191

(a) Terms.--The court shall confirm a plan under this subchapter only if all of the requirements of section 1129(a), other than paragraph (15) of that section, of this title1 are met.

(b) Exception.--Notwithstanding section 510(a) of this title, if all of the applicable requirements of section 1129(a) of this title, other than paragraphs (8), (10), and (15) of that section, are met with respect to a plan, the court, on request of the debtor, shall confirm the plan notwithstanding the requirements of such paragraphs if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

(c) Rule of construction.--For purposes of this section, the condition that a plan be fair and equitable with respect to each class of claims or interests includes the following requirements:

(1) With respect to a class of secured claims, the plan meets the requirements of section 1129(b)(2)(A) of this title.

(2) As of the effective date of the plan--

(A) the plan provides that all of the projected disposable income of the debtor to be received in the 3-year period, or such longer period not to exceed 5 years as the court may fix, beginning on the date that the first payment is due under the plan will be applied to make payments under the plan; or

(B) the value of the property to be distributed under the plan in the 3-year period, or such longer period not to exceed 5 years as the court may fix, beginning on the date on which the first distribution is due under the plan is not less than the projected disposable income of the debtor.

(3)(A) The debtor will be able to make all payments under the plan; or

(B)(i) there is a reasonable likelihood that the debtor will be able to make all payments under the plan; and

A-14

(ii) the plan provides appropriate remedies, which may include the liquidation of nonexempt assets, to protect the holders of claims or interests in the event that the payments are not made.

(d) Disposable income.--For purposes of this section, the term "disposable income" means the income that is received by the debtor and that is not reasonably necessary to be expended--

(1) for--

(A) the maintenance or support of the debtor or a dependent of the debtor; or

(B) a domestic support obligation that first becomes payable after the date of the filing of the petition; or

(2) for the payment of expenditures necessary for the continuation, preservation, or operation of the business of the debtor.

(e) Special rule.--Notwithstanding section 1129(a)(9)(A) of this title, a plan that provides for the payment through the plan of a claim of a kind specified in paragraph (2) or (3) of section 507(a) of this title may be confirmed under subsection (b) of this section.

## 28 U.S.C. § 158(d)

(d)(1) The courts of appeals shall have jurisdiction of appeals from all final decisions, judgments, orders, and decrees entered under subsections (a) and (b) of this section.

(2)(A) The appropriate court of appeals shall have jurisdiction of appeals described in the first sentence of subsection (a) if the bankruptcy court, the district court, or the bankruptcy appellate panel involved, acting on its own motion or on the request of a party to the judgment, order, or decree described in such first sentence, or all the appellants and appellees (if any) acting jointly, certify that--

(i) the judgment, order, or decree involves a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States, or involves a matter of public importance;

(ii) the judgment, order, or decree involves a question of law requiring resolution of conflicting decisions; or

(iii) an immediate appeal from the judgment, order, or decree may materially advance the progress of the case or proceeding in which the appeal is taken;

and if the court of appeals authorizes the direct appeal of the judgment, order, or decree.

(B) If the bankruptcy court, the district court, or the bankruptcy appellate panel--

(i) on its own motion or on the request of a party, determines that a circumstance specified in clause (i), (ii), or (iii) of subparagraph (A) exists; or

(ii) receives a request made by a majority of the appellants and a majority of appellees (if any) to make the certification described in subparagraph (A);

A-16

then the bankruptcy court, the district court, or the bankruptcy appellate panel shall make the certification described in subparagraph (A).

(C) The parties may supplement the certification with a short statement of the basis for the certification.

(D) An appeal under this paragraph does not stay any proceeding of the bankruptcy court, the district court, or the bankruptcy appellate panel from which the appeal is taken, unless the respective bankruptcy court, district court, or bankruptcy appellate panel, or the court of appeals in which the appeal is pending, issues a stay of such proceeding pending the appeal.

(E) Any request under subparagraph (B) for certification shall be made not later than 60 days after the entry of the judgment, order, or decree.

A-17

# EXHIBIT "2"

**No. 24-2881**

---

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

---

In re: HOLOGENIX, LLC, Debtor.

Hologenix, LLC
*Appellant*

v.

Multiple Energy Technologies, LLC
*Appellee*

---

On appeal from the District Court for the Central District of California
*Multiple Energy Technologies, LLC. v. Hologenix, LLC*
District Court Case No. 2:22-cv-0751-FMO

reversing and remanding the U.S. Bankruptcy Court, Central District of California
*In re Hologenix, LLC*
Bankruptcy Case No. 2:20-bk-13849-BR

---

## APPELLANT'S REPLY BRIEF

---

JOHN-PATRICK M. FRITZ
LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
2818 La Cienega Avenue
Los Angeles, California 90034
Telephone:   (310) 229-1234
Facsimile:   (310) 229-1244
*JPF@LNBYG.COM*

# DISCLOSURE STATEMENT

## F.R.A.P. 26.1

Appellant Hologenix, LLC is the debtor and debtor in possession in the above-captioned appeal. Hologenix, LLC hereby discloses that it is a nongovernmental corporate party, and that no parent corporation or publicly held corporation owns 10% or more of its stock.

Dated: December 1, 2025          LEVENE, NEALE, BENDER,
                                 YOO & GOLUBCHIK L.L.P.


                                 By:    _/s/ John-Patrick M. Fritz_
                                        JOHN-PATRICK M. FRITZ
                                        Attorneys for Appellant Hologenix, LLC

**Page**

## TABLE OF CONTENTS

I. INTRODUCTION ..........................................................................................1

II. JURISDICTION TO HEAR THIS APPEAL NOW ............................................1

III. THE PRIMARY ISSUE: INTERPRETING §1191(c)(2)..........................4

    A.    MET Avoids the Primary Issue ........................................................4

    B.    The Record Reflects Agreement on Interpreting §1191(c)(2).........7

    C.    MET Never Argued for a Commitment Period Greater than Three Years........................................................................................8

IV. COMPOSITION LAW AND DEBTOR'S THREE-YEAR-PLAN.............9

V. THE FFCL ARE NOT "RUBBERSTAMPED" ............................................12

VI. FAIR AND EQUITABLE........................................................................15

    A.    The Plan Is "Fair and Equitable"....................................................15

    B.    "Feasibility" and "Equitable Mootness"........................................18

VII. NO UNFAIR DISCRIMINATION............................................................19

    A.    MET Conflates "Unfair Discrimination" with "Fair and Equitable" .......................................................................................19

    B.    Insider and Non-Insiders Are Not Similarly Situated ....................20

    C.    MET Has No Counterargument on "Allocation" ...........................21

    D.    *Ambanc* and Allocation .................................................................23

        1.    "The discrimination must be supported by a reasonable basis"....................................................................23

        2.    "The debtor could not confirm or consummate the Plan without the discrimination" ..........................................25

        3.    "The discrimination is proposed in good faith"...................26

        4.    "The degree of the discrimination is directly related to the basis or rationale for the discrimination,".................26

VIII. §1129(a)(2)......................................................................................27

i

## TABLE OF CONTENTS
### (Continued)

|  | **Page** |
|---|---|
| **IX. §1129(a)(3)** | **31** |
| **X. §1129(a)(5)** | **31** |
| **XI. §1129(a)(7)** | **34** |
| **XII. DUE PROCESS** | **37** |
| **XIII. CONCLUSION** | **40** |

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*In re Acequia*,
    787 F.2d 1352 (9th Cir.1986) ....................................................................21, 31

*In re Adair*,
    965 F.2d 777 (9th Cir.1992) ...................................................................38, 39, 40

*In re Affiliated Foods, Inc.*,
    249 B.R. 770 (Bankr.W.D.Mo.2000) ................................................................34

*In re Ambanc La Mesa LP*,
    115 F.3d 650 (9th Cir.1996), An.Br.36-41 ......................................................23

*In re Anderson*,
    21 F.3d 355 (9th Cir.1994) ..............................................................................19

*In re Aztec Co.*,
    107 B.R. 585 ..................................................................................................27

*Branch Banking & Tr. Co. v. R&S St. Rose, LLC (In re R&S St. Rose, LLC)*,
    621 F.Appx 497 (9th Cir.2015) ..........................................................................2

*In re Burg*,
    103, B.R. 222, 225 (9th Cir.B.A.P.1989) .........................................................38

*In re Emerge Energy Services LP*,
    2019 WL 7634308 (Bankr.D.Del. Dec.5, 2019) ................................................35

*In re First St. Holdings, NV, LLC*,
    2012 WL 6050459 (9th Cir.B.A.P. Dec.5, 2012)...............................................38

*In re Gugliuzza*,
    852 F.3d 884 (9th Cir.2017) ...............................................................................3

*Hagans v. Andrus*,
    651 F.2d 622 (9th Cir.) cert. denied, 454 U.S. 859 (1981)...............................13

iii

## TABLE OF AUTHORITIES
### (Continued)

**Page**

*Kosmala v. Halvroson (In re Halvorson)*,
 840 F.App'x 161 (9th Cir.2021) ..........................................................................2

*Matter of LeBlanc*,
 622 F.2d 872 (5th Cir.1980) ...............................................................................27

*Lee-Benner v. Gergely (In re Gergely)*,
 110 F.3d 1448 (9th Cir.1997) .............................................................................40

*In re Monarch Beach Venture*,
 166 B.R. 426 (C.D.Cal.1993) .............................................................................21

*In re Orange County Bail Bonds*,
 638 B.R. 137 (9th Cir.B.A.P.2022) ....................................................................16

*In re Pearl Resources LLC*,
 622 B.R. 236 (Bankr.S.D.Tex.2020) ...............................................................6, 11

*In re Perez*,
 30 F.3d 1209 (9th Cir.1994) .................................................................................6

*Photo Electronics Corp. v. England*,
 581 F.2d 772 (9th Cir.1978) ...............................................................................13

*SEC v. U.S. Realty & Imp. Co.*,
 310 U.S. 434 (1940) (J. Roberts, dissenting).....................................................10

*In re Sierra-Cal*,
 210 B.R. 168 (Bankr.E.D.Cal.1997)...................................................................34

*In re Sisk*,
 962 F.3d 1133 (2020).....................................................................................19, 31

*Stead Motors of Walnut Cr. v. Auto Machinists*,
 886 F.2d 1200 (9th Cir.1989) .............................................................................15

*In re Transwest Resort Properties, Inc.*,
 801 F.3d 1161 (9th Cir.2015) ........................................................................18, 19

# TABLE OF AUTHORITIES
## (Continued)

**Page**

*United States v. Hinkson*,
858 F.3d 1247 (9th Cir.2009) ...........................................................................23

*In re Woodbrook Assocs.*,
19 F.3d 312 (7th Cir.1994) ...............................................................................27

**Federal Statutes**

11 U.S.C.
11 U.S.C. § 101.....................................................................................28, 33

11 U.S.C. § 365..........................................................................................36

11 U.S.C. § 510..........................................................................................27

11 U.S.C. § 1129....................................................... 3, 6, 11, 18, 27, 31-35, 37

11 U.S.C. § 1191................................................ 1, 3-5, 7-11, 16, 19-20, 25, 31

11 U.S.C. § 1322...........................................................................................7

**Other Authorities**

Ayers, <u>Rethinking Absolute Priority After Ahlers</u>, 87 Mich.L.Rev.
963 (Apr. 1989)...........................................................................................10

https://www.justice.gov/ust/list-chapter-11-subchapter-v-case-case-
trustees (last visited Oct.24, 2025) ...................................................................24

Fed.R.Civ.P. 43(a)...............................................................................................39

## I.

## INTRODUCTION

For all the reasons in this reply ("**Reply**")[1] and Debtor's Opening Brief, this Court should reverse the District Court and affirm the Bankruptcy Court's Order confirming Debtors' Plan.

## II.

## JURISDICTION TO HEAR THIS APPEAL NOW

This Court has jurisdiction to hear this appeal now.  Contrary to MET's framing,[2] the District Court did not "merely sen[d] the matter… back to Bankruptcy Court to give appropriate weight to the evidence before it in accordance with statutory requirements."[3]  The District Court *sua sponte* announced a novel statutory interpretation of §1191(c)[4] with profound effects on the factual analysis of whether this Plan is "fair and equitable" and "discriminates unfairly," for Debtor and all small business debtors in the Ninth Circuit because the District Court's interpretation provides near unlimited discretion for each trial court to "include" additional "fair

---

[1] Defined terms used herein have the same meanings attributed to them in the Opening Brief. All chapter and section references are to 11 U.S.C. §§101-1532 ("**Bankruptcy Code**").

[2] An.Br.4.

[3] An.Br.3

[4] The relevant text of §1191 is in the Opening Brief's statutory addenda.

and equitable" terms on a case-by-case basis rather than Congress' limited three-to-five-year formulation.[5] The importance of this issue is exemplified by the District Court's own example: "a plan could require 100% of debtor's disposable income in years one through five, 75% in years six through eight, and so on."[6]

MET derides Debtor's analysis as "straw man" arguments, alleging Debtor "mistakenly or intentionally [] misread the District Court's opinion"[7] as "mandating that a plan… can go beyond five years…"[8]   The District Court did not "mandate" anything, but if not reversed, the District Court's interpretation is a slippery slope from Congress's three-to-five-year Commitment Period to the reimposition of the absolute priority rule on a case-by-case basis.[9]

MET's cases against jurisdiction are inapposite.  *Branch Banking* is a two-paragraph unpublished decision.[10]  *Halvroson* does not involve a novel interpretation of law.[11]

---

[5] Op.Br.31-34.

[6] 1-ER-0007.

[7] An.Br. 26.

[8] An.Br. 27.

[9] Op.Br. 31-34, 37-38.

[10] *Branch Banking & Tr. Co. v. R&S St. Rose, LLC (In re R&S St. Rose, LLC)*, 621 F.Appx 497 (9th Cir.2015).

[11] *Kosmala v. Halvroson (In re Halvorson)*, 840 F.App'x 161, 165 (9th Cir.2021).

2

After two rounds of appeals since 2020, two plans confirmed and reversed, and little guidance,[12] this Court should hear this appeal now based on *Gugliuzza*,[13] and the need for flexibility in bankruptcy appeals, to end these inefficiencies, particularly for the novel issue of law on §1191(c)(2)(A).[14]

Attempting to discredit Debtor, MET overstates Debtor's position as blaming the District Court for "fail[ing] to provide **any** guidance."[15]  That is not Debtor's position, as Debtor applied the District Court's guidance on §1129(a)(7), §1129(a)(3), and allegations concerning insider lien self-dealing from the 2020 appeal.[16] But the District Court declined to rule on the "fair and equitable" §1191(c)(2) issue raised in the 2020 appeal, then ruled only on the §1191(c)(2) issue in the 2022 appeal, while giving no guidance on the other seven issues, which is highly inefficient.[17]

---

[12] Op.Br.3-4.

[13] *In re Gugliuzza*, 852 F.3d 884, 894 (9th Cir.2017)).

[14] Op.Br.3-7.

[15] An.Br.3 (emphasis added).

[16] 7-ER-1625-1634 (2020 Decision); 3-ER-0556-0557 (no liens or payments for insider classes); 6-ER-1264-1268 (expert hired for §1129(a)(7)).

[17] Op.Br.4-5.

# III.

## THE PRIMARY ISSUE: INTERPRETING §1191(c)(2)

### A. MET Avoids the Primary Issue

Debtor disagrees with MET's framing of the primary issue in this appeal, that "the District Court… reversed and remanded for further proceedings… because [the Bankruptcy Court] 'overlooked a substantial part of the Plan, including the provision entitling certain creditors to 100% recovery.'"[18]

MET's framing is incorrect because it ignores the District Court decision of law that the Bankruptcy Court's interpretation of §1191(c) "appears to reflect an incorrect application of the law."[19] Amidst the Decision's discussion of statutory interpretation, [20] MET selects quotes to reframe it as mere remand for factual findings on something "overlooked,"[21] but the primary issue is statutory interpretation of §1191(c)(2)(A). The Decision concludes: "In sum, the Bankruptcy Court erred in finding that MET was entitled to only 'three-to-five years' of projected Disposable Income."[22]  After ruling what §1191(c) means on "fair and

---

[18] An.Br.7 (quoting Decision); *see*, An.Br.3-5.

[19] 1-ER-0006.

[20] 1-ER-0006-0008.

[21] An.Br.7.

[22] 1-ER-0008(ln.14-15).

equitable" as a rule of law, the District Court remanded to re-evaluate "whether the Plan unfairly discriminates" under §1191(b).

Debtor provided extensive analysis on the primary issue as to why "fair and equitable," as words of art, is limited to Commitment Period Disposable Income for general unsecured creditors under §1191(c)(2)(A).[23]   MET ignores the issue and derides Debtor's arguments as "fanciful,"[24] a "red herring,"[25] an "absurdity,"[26] "36 painstaking pages addressing the rules of statutory construction,"[27] and treating the Decision as a conclusion needing no justification before summarily declaring that the Plan is an "absurd[]" "dichotomy" for treating non-insiders within the Commitment Period and insiders outside the Commitment Period.[28]   There is no "absurdity" because "fair and equitable" under §1191(c)(2) is limited to Commitment Period Disposable Income for all the reasons explained regarding Subchapter V as composition law.[29]

---

[23] Op.Br.17-46.

[24] An.Br.22.

[25] An.Br.22.

[26] An.Br.27.

[27] An.Br.28.

[28] An.Br. 27-28.

[29] Reply §IV; Op.Br.33-34.

Without addressing Debtor's analysis of the primary issue, MET makes a failing attempt to defend the Decision by defending two cases cited therein.[30] Contrary to MET's arguments, the Ninth Circuit did not reverse and remand in *Perez* because a plan paid a class "100% of their debt… more than 5 years,"[31] but because the plan failed to pay 100% of the claim plus interest as required by the absolute priority rule.[32]   The absolute priority rule of §1129(b)(2)(B) is inapplicable in Subchapter V.[33] MET's attempt to frame *Perez* as instructive on the length of Subchapter V plans is misleading because *Perez* involves traditional chapter 11 (with no maximum plan duration limit) and predates Subchapter V by 25 years.[34]

MET's defense of *Jacobs*[35] is unavailing in light of Debtor's analysis.[36] MET quotes: "Chapter 11 does not contain chapter 13's safeguards, including a maximum repayment period of five years,"[37] but MET ignores that *Jacobs* is a non-subchapter-

---

[30] An.Br. 28-29.

[31] An.Br. 28.

[32] *In re Perez*, 30 F.3d 1209, 1215-16 (9th Cir.1994).

[33] §1181(a).

[34] *Perez*, 30 F.3d 1209; *see*, *In re Pearl Resources LLC*, 622 B.R. 236, 268 & n.154-155 (Bankr.S.D.Tex.2020) (survey of lengths of plans in Subchapter V and Chapters 11, 12, and 13); *see*, §1129(a)(15) (applies only to **individual** debtors by its own terms); *see*, §1181(a) (§1129(a)(15) does not apply in Subchapter V).

[35] 644 B.R. 883 (Bankr.D.N.M.2022).

[36] An.Br.29; Op.Br.46.

[37] An.Br.29 n.98 (quoting *Jacobs* as cited in 1-ER-0008).

6

V decision, and acknowledges that Subchapter V has five-year limits on certain plan payments.[38]

The Decision cites §1191(c)(2)(A) and §1332(c) attempting to explain why §1191(c)(2) is limited to neither Disposable Income nor five years,[39] which Debtor contradicted,[40] but MET fails to answer substantively, only deriding Debtor as "absurd[]."[41] MET's conclusion that "[Debtor's] argument supports the District Court's ultimate holding"[42] is unfounded.

## B. **The Record Reflects Agreement on Interpreting §1191(c)(2)**

MET's Plan objection reflects common ground with Debtor on §1191(c)(2)'s meaning: "Under Subchapter V, the phrase 'fair and equitable' does not bear its plain meaning, but rather refers to the requirement that the debtor contribute three to five years of disposable income to plan payments and demonstrate a reasonable

---

[38] Op.Br.46; *Jacobs*, 644 B.R. at 896 n.64.

[39] 1-ER-0007(ln.2-4, 11) ("Bankruptcy Court was required to consider… the disposition of assets beyond disposable income [and] … not just the five years…. Two other provisions in the Bankruptcy code reinforce this interpretation," then discussing §1191(c)(2)(A) and §1322(c)).

[40] Op.Br.26-44 (regarding §1191(c)(2)(A)); Op.Br.44-46 (regarding §1322(c) and cases related thereto).

[41] An.Br.27.

[42] An.Br.28.

likelihood that I will be capable of so doing. *See* [] §1191(c)."[43]  MET repeats this

premise on appeal.[44]

MET objected that Debtor "artificially depresses its disposable income"[45] and

expanded on those arguments for several pages.[46] MET raises this again on appeal.[47]

This highlights the shared understanding on §1191(c)(2)'s meaning and explains

why MET did not substantively respond to Debtor's statutory interpretation points

on §1191(c)(2).

## C. **MET Never Argued for a Commitment Period Greater than Three Years**

If this Court decides "fair and equitable" under §1191(c)(2) is limited to

Commitment Period Disposable Income, this Court might ask what that

Commitment Period should be between three and five years.  MET protests that it

raised this issue and assails Debtor's argument to the contrary as "belied by the

record,"[48] but no record cite supports MET's claim.  MET cites nine pages covering

its objections on "unfair discrimination" and "fair and equitable,"[49] but therein MET

---

[43] 6-ER-1232 (MET's "fair and equitable" objection").

[44] An.Br.30-31, n.105.

[45] 6-ER-1232(ln.18-19).

[46] 6-ER-1232-1237 (MET's "fair and equitable" objection).

[47] An.Br.31 ("[Debtor]… artificially depress[ed] its projected disposable income.")

[48] An.Br.29.

[49] An.Br.30 n.101; (6-ER-1229-37).

never objected that the Plan's Commitment Period should be increased to five years under §1191(c)(2).[50] MET made that specific objection *in 2020*,[51] but the 2020 plan was withdrawn,[52] and MET never made this specific objection again.

Debtor knows "the District Court did not reverse the Confirmation Order … [because] the Plan failed to pay … [MET] for the full 5 years."[53] Debtor's point is that MET waived arguments on adjusting the three-to-five-year Commitment Period.

## IV.

## COMPOSITION LAW AND DEBTOR'S THREE-YEAR-PLAN

MET and the District Court misconstrue the Plan as being more than 5 years because insider Classes 2 and 4 have maturity dates five years after the Plan's projected effective date.[54] The District Court reasoned "… if Chapter 11 plans were truly limited to disposable income and capped at five years, the Plan's provisions for Class 2 and 4 creditors would contravene both requirements."[55] MET argues Debtor "extended the commitment period when [Debtor] permitted the insider claims to

---

[50] Op.Br.47, n.185; *see*, 6-ER-1229-37.

[51] 7-SER-1404(ln.16-18).

[52] 7-SER-1378, 7-SER-1382.

[53] An.Br.29.

[54] An.Br.22-23; 1-ER-0007-0008.

[55] 1-ER-0007(ln.6-10).

9

receive more than [Debtor's] disposable income beyond five years,"[56] and "[t]he Bankruptcy Court… abused its discretion by confirming a Plan that allowed insider creditors to receive 'assets beyond disposable income' after the statutory time period expired…"[57]

MET is wrong because Subchapter V is composition law addressing non-insider unsecured debt within the Commitment Period and leaving the insider debt-equity capital structure to be addressed afterward.[58]  Subchapter V, a composition law, is "an extension, adjustment, or accommodation of unsecured claims without disturbing… stock interests," and "[c]omposition contemplates that the business proceeds with the eventual end of rehabilitation."[59]  The "fair and equitable" composition of unsecured debts in Subchapter V ends after the Commitment Period set forth in §1191(c)(2) (the eventual end of rehabilitation), and the business thereafter proceeds with the insiders addressing their own debt-and-equity capital structure.[60]

---

[56] An.Br.25-26 (citing 1-ER-0006-0007).

[57] An.Br.26.

[58] Op.Br.33-34, 53-54.

[59] Op.Br.33-34 (quoting *SEC v. U.S. Realty & Imp. Co.*, 310 U.S. 434, 464 (1940) (J. Roberts, dissenting) and *Lorber v. Vista Irr. Dist.*, 143 2d 282, 285 (9th Cir.1944)).

[60] Op.Br.33-34, 53-54; Op.Br. 21-22 (*U.S. Realty & Imp. Co.*, 310 U.S. at 454; Ayers, <u>Rethinking Absolute Priority After Ahlers</u>, 87 Mich.L.Rev. 963, 977 (Apr. 1989)).

MET's argument that the Commitment Period applies to *all* classes of creditors is incorrect[61] because the Commitment Period is a creature of, and limited to, cramdown confirmation under §1191(b) and §1191(c)(2),[62] which applies only to the dissenting class.[63]

As composition law, ***Debtor's Plan is a three-year plan*** because it provides non-insider Class 3 with three years of projected Disposable Income.[64]  Insider Classes 2 and 4 will not be paid anything for five years.[65]  The contrasting treatment shows Class 3 will receive all Debtor's projected Disposable Income for a three-year Commitment Period, while Classes 2 and 4 receive none.[66]  The insider-debt-capital structure is left to address among insiders after the composition rehabilitation ends.[67]

---

[61] Op.Br.42-43, 46 n.182 (certain aspects of Subchapter V are limited to 3-to-5 years, while other aspects are not, such as accepting classes, secured creditor classes, and curing of mortgage arrears).

[62] §1191(b), §1191(c).

[63] 7 Collier ¶1129.03 at 1129-76 (discussing §1129(b)) ("as to the dissenting class"); *In re Pearl Resources, LLC*, 622 B.R. 236, 265 (Bankr.S.D.Tex..2020) (application of §1191(b) "with respect to each impaired class that has not accepted" the plan).

[64] 1-ER-0048; 6-ER-1379- 6-ER-1380.

[65] 1-ER-0048; 6-ER-1376, 6-ER-1381.

[66] 1-ER-0048.

[67] Op.Br.33-34, 53-54.

MET mischaracterizes the Plan: "insiders **received** 100% recovery under the Plan after 5 years,"[68] and "*will* receive payment,"[69] and "***promises*** to pay them [insider classes] on the maturity date of 9/30/2027,"[70] but MET is incorrect because the Plan merely sets the maturity date and bars payment prior thereto.[71] Only the non-insiders "Class 3 ***shall*** receive the Net Disposable Income… Payment to Class 3 ***shall*** be made… on an annual basis…"[72]  Immediate cash payment (Class 3) is better than speculative hopes of distant future payments (Classes 2 and 4).[73]

## V.

## THE FFCL ARE NOT "RUBBERSTAMPED"

MET's allegation that the Bankruptcy Court rubberstamped[74] the FFLC is unfounded.

> Although we have been critical of the wholesale adoption
> by a district court of the prevailing party's submitted
> findings…, this practice does not by itself constitute

---

[68] An.Br.26 (emphasis added).

[69] An.Br.39 (emphasis supplied).

[70] An.Br.39 (emphasis added).

[71] 6-ER-1376, 6-ER-1379.

[72] 6-ER-1379.

[73] Op.Br.54, nn.222-223.

[74] An.Br.1, 32-33.

12

reversible error. … We must, however, engage in a more careful analysis of adopted findings than we would have had they been authored by the district judge.  Nonetheless, the standard of review for all findings of fact is the clearly erroneous standard.[75]

In *Hagans*, the district court adopted proposed findings, but they were "an exhaustive review and resolution of the highly technical documentary and testimonial evidence, entered after lengthy reflection."[76]  The FFCL are an exhaustive review and resolution of highly complex issues in a specialized area of law, and at the two-day hearing, the Bankruptcy Court stated: "… this case has been a lot of twists and turns, and…. to say I've spent a lot of time would be an understatement…"[77]  The Bankruptcy Court closely followed the case for several months, ruled on several highly contested matters, and observed Casden testify live under MET's cross-examination.[78]

---

[75] *Hagans v. Andrus*, 651 F.2d 622, 626 (9th Cir.) cert. denied, 454 U.S. 859 (1981).

[76] *Photo Electronics Corp. v. England*, 581 F.2d 772, 776 (9th Cir.1978) (discussing *Hagans*); *id.* at 777 ("careful scrutiny" but still "clearly erroneous" standard).

[77] 2-ER-0222; 1-ER-0025.

[78] 1-ER-0023(ln.7-11), 1-ER-0024(ln.25-28), 1-ER-0025(ln.1-5).

After trial, Debtor filed proposed FFCL, MET filed an objection and alternative form of FFCL,[79] and Debtor filed a reply.[80]   MET denigrates the Bankruptcy Court as a "rubberstamp" "adopting" Debtor's FFCL and alleging Debtor "overreach[ed]."[81] Debtor did not overreach but provided citation for all the law and facts,[82] and the Bankruptcy Court agreed with Debtor's analysis and arguments[83] and instructed the drafting of detailed written FFCL because the District Court admonished the need for detailed findings.[84]   MET undermined its credibility by drafting FFCL that included assertions the Bankruptcy Court knew to be untrue, for example asserting the Bankruptcy Court summarily denied MET's 2022 MTD without reading those pleadings,[85] which MET knew to be untrue as shown from the transcript.[86] Debtor's reply on the competing proposed FFCL detailed MET's subterfuge.[87]   The Bankruptcy Court was not a rubberstamp, as its FFCL process

---

[79] 3-SER-0502; 2-SER-0128.

[80] 3-FER-0352.

[81] An.Br.1, 32.

[82] 3-SER-0502-0604.

[83] 3-ER-0499 ("I generally agree with your analysis of the case."); 3-ER-0500 ("I generally agree with your arguments.").

[84] 3-ER-0499-0501; 7-ER-1631(ln.7-8); 7-ER1632(ln.4-5); 7-ER-1626(ln.9).

[85] 3-FER-0489-0495; 3-FER-0362-0363.

[86]  3-ER-0383-84, 3-ER-0504; 3-FER-0367(ln.19-23).

[87] 3-FER-0358-0378.

14

took two months from end of trial to signing, and the court revised the FFCL over two weeks and cut twelve pages from Debtor's draft.[88]

MET's *Auto Machinists* is inapposite, involving a "two-page order prepared by… counsel… [that] does not contain any analysis, [and] no discussion of the legal standards."[89] The FFCL are 85 pages of detailed factual findings and legal analysis on a multitude of issues.[90]

## VI.

## FAIR AND EQUITABLE

### A. The Plan Is "Fair and Equitable"

MET protests that Debtor's "only argument" that the Plan is fair and equitable is Debtor's reliance on the FFCL,[91] but the FFCL are detailed, well-reasoned, and provide ample support.

MET alleges Debtor artificially depressed its disposable income projections with "inflated operating expenses" and "excessive officer compensation," but MET

---

[88] *Compare¸* 1-ER-0016-0100; 3-SER-0502-0604.

[89] *Stead Motors of Walnut Cr. v. Auto Machinists*, 886 F.2d 1200, 1204 n.5 (9th Cir.1989).

[90] 1-ER-0016-0100.

[91] An.Br.32.

15

does not expand on those objections, instead focusing on the net present value ("**NPV**") discount applied to Disposable Income.[92]

"Fair and equitable" in §1191(c)(2)(A) and (B) are written in the alternative for three-to-five-years of projected disposable income or the present value of that period.[93]   NPV discounts have a long-accepted history in bankruptcy.[94] Despite MET's invectives of "rubberstamping," "self-serving," "arbitrary," and "outrageous" to describe this dispute,[95] the FFCL provided detailed analysis and factual support for the 40% NPV discount.[96]

After a half-day of cross-examination, the Bankruptcy Court determined Debtor's expert (Grobstein) was highly credible.[97]  Grobstein's testimony on cross-examination regarding the 40% NPV discount was extensive.[98]   MET's expert (Pastore) undermined his credibility by taking an extreme position that no NPV

---

[92] An.Br.31-35.

[93] Op.Br.40; *In re Orange County Bail Bonds*, 638 B.R. 137, 146 (9th Cir.B.A.P.2022); 1-ER-0089.

[94] 1-ER-0089-0091 (future stream of payments discounted by appropriate rate to present value at an earlier date).

[95] An.Br.33.

[96] 1-ER-0089-0091.

[97]  1-ER-0068(ln.22-28);  1-ER-0091(ln.5-27);  3-ER-0482(ln.9-25)-  3-ER-0483(ln.1-11).

[98] 3-ER-0419-0424.

16

discount should be used[99] and was unfamiliar with applying NPV discounts to bankruptcy plan payments.[100] Grobstein explained why Pastore's was wrong.[101]

MET's argument that Grobstein used a "start-up" NPV discount rate is contradicted by the record because MET's one-line quote from Caden's declaration that Debtor "is not a start-up, but a 20-year-old company,"[102] concerned officer compensation, not NPV discounts.[103] MET's one-line quote from Grobstein's report that "coming out of restructuring, [Debtor] is in essence a start-up enterprise,"[104] is misleading because the next page of Grobstein's report explains Debtor is not a start-up but "between…expansion and bridge/IPO categories," and the 40% NPV discount is in the middle of the 30% to 50% range for that category, while start-ups NPV discount ranges are 50% to 70%,[105] which Grobstein reaffirmed on cross-examination.[106]

---

[99] 6-ER-1194; 6-ER-1235(ln.24).

[100] 5-FER-1020-1023; 1-ER-0090 (ln.16-22).

[101] 3-ER-0518-0519; 3-ER-0574-0576; 3-ER-0419-0424.

[102] An.Br.33.

[103] 6-ER-1286-1289(¶¶78-92).

[104] An.Br.33-34 (7-ER-1532).

[105] 7-ER-1533.

[106] 3-ER-0420.

## B. **"Feasibility" and "Equitable Mootness"**

Plan "feasibility" refers to §1129(a)(11)'s requirement that a plan is not likely to need further financial reorganization,[107] which MET did not raise on appeal.[108] MET's "feasibility" argument is a twist on equitable mootness: "The Plan's projections are stale because they are over 3 years old… [Debtor's] current financial status would have to be addressed… demonstrating the need to reverse and remand."[109]

"Equitable mootness is a prudential doctrine by which a court elects not to reach the merits of a bankruptcy appeal."[110]  The doctrine arises in appeals of unstayed plan confirmation orders where the reorganization has been substantially consummated, and one important consideration is whether the plan was stayed.[111]

MET obtained a stay of the Order (over Debtor's objection), arguing it was necessary to prevent equitable mootness.[112]  Now MET argues the stay has caused equitable mootness – that is not fair.

---

[107] 1-ER-0093-0094 (explaining §1129(a)(11)).

[108] 2-ER-0143.

[109] An.Br.35.

[110] *In re Transwest Resort Properties, Inc.*, 801 F.3d 1161, 1167-68 (9th Cir.2015).

[111] *Id.* at 1168; 7 Collier ¶1129.09[2][a], ¶1129.09[2][e], ¶1129.09[4][i].

[112] 2-FER-0083-0085 (MET: "absent a stay pending appeal, the appeal will be rendered moot… the quintessential form of prejudice justifying a stay"); 1-FER-0016 ; 1-FER-0003-4; 1-FER-0006; 1-FER-0008-9; 1-FER-0014.

18

This Court should reject MET's argument because "equitable mootness is a judge-created doctrine that reflects an *unwillingness* to provide relief."[113]  "The… most important, consideration in the equitable mootness test is whether the bankruptcy court could fashion equitable relief without completely undoing the plan."[114]  Under §1191(c)(2), the Plan payments are based on "projected disposable income," and a true up to "actual disposable income" is unnecessary.[115]  If the Plan's projected dollar amount to Class 3 is paid, the Plan can be implemented, and there is no equitable mootness.[116]  If Debtor cannot implement the Plan, Debtor may modify under §1193(c).

## VII.

## NO UNFAIR DISCRIMINATION

### A. MET Conflates "Unfair Discrimination" with "Fair and Equitable"

The unfair discrimination "requirement is separate and independent of the more-often litigated 'fair and equitable' rule."[117]  MET alleges "the Bankruptcy Court erroneously conflated §1191(c)'s definition of fair and equitable with

---

[113] *Id.* at 1167 (emphasis in original).

[114] *Id.* at 1171.

[115] *In re Sisk*, 962 F.3d 1133, 1149 (2020); *In re Anderson*, 21 F.3d 355, 358 (9th Cir.1994).

[116] 6-ER-1379-1380; 6-ER-1398.

[117] 7 Collier ¶1129.03[3] at 1129-77, n.12; §1191(b).

§1191(b)'s prohibition against unfair discrimination,"[118] but it is MET that conflates them: "the Plan is not fair and equitable *because* it unfairly discriminates."[119] Consequently, MET never directly addresses either one.

## B. Insider and Non-Insiders Are Not Similarly Situated

MET and Debtor agree that the question of "unfair discrimination" applies as between *"similarly situated"* creditors.[120] MET never challenges Debtor's position that "insider and non-insider creditors are *not* similarly situated."[121]

MET derides Debtor's reliance on pre-SBRA authorities to explain the differences related to insiders and non-insiders for Subchapter V,[122] but MET cites no post-SBRA cases either, and Debtor's analysis is correct, as MET does not challenge the merits. MET acknowledges the dissimilarity between insiders and non-insiders in Subchapter V, and MET's only protest is that this "does not … give [Debtor] license to invent additional insider perks."[123] Debtor is not inventing insider perks; rather, the Plan's voluntary subordination of insider debt is a logical application of composition law, allowing non-insiders to receive all Commitment

---

[118] An.Br.35-36.

[119] An.Br.31 (emphasis added).

[120] An.Br.36 (quoting *In re Monarch Beach Venture*, 166 B.R. 426, 432 (C.D.Cal.1993)) (emphasis added).

[121] Op.Br.50 (emphasis added).

[122] An.Br.43.

[123] An.Br.43.

20

Period Disposable Income with the insider debt-and-equity capital structure addressed among the insiders after the composition ends.[124] Even MET's brief supports this result, recognizing a "deleveraged capital structure in which debt is converted to equity or senior debt is subordinated,"[125] – that is Debtor's Plan, an insider-subordinated capital structure.

## C. MET Has No Counterargument on "Allocation"

MET relies on *Acequia* and *Monarch Beach* in its "unfair discrimination" argument[126] but fails to address allocation: "this [unfair discrimination] provision requires that a plan '***allocate*** value to the class in a manner consistent with the treatment afforded to other classes with similar legal claims.'"[127]

Because Commitment Period Disposable Income is fair and equitable treatment for general unsecured creditors like MET, the question of "fair" or "unfair discrimination" among creditors is a question of ***allocation*** of that amount,[128] and

---

[124] Op.Br.53-54; Reply §IV.

[125] An.Br.42 (quoting Klee, Bankruptcy and the Supreme Court, at 385).

[126] An.Br.36.

[127] *In re Acequia*, 787 F.2d 1352, 1364 (9th Cir.1986) (quoting 5 Collier ¶1129.03)) (emphasis added); *In re Monarch Beach Venture, Ltd.*, 166 B.R. at 437 (quoting Collier ¶1129.03) ("treatment which allocates value to the class…"); Op.Br.49.

[128] 1-ER-0082-83; Op.Br.48-50.

21

understanding composition is central to the allocation concept in Subchapter V between insiders and non-insiders.[129]

The closest MET comes to addressing allocation is a passing footnote[130] and an attack on the FFCL where MET omits half the quote because the Bankruptcy Court used MET's own argument against MET: "***The Court also notes as additional support for this result, the very argument that <u>MET</u> advanced in the similar context of executive compensation, where <u>MET</u> advocates***: 'once the Debtor has completed its plan and creditors have received fair distribution on their claims… the Debtor can then pay Mr. Casden whatever increased salary might then be agreeable.' ***ECF 700 (Opp.) at 27***."[131] Contrary to MET's argument, the Bankruptcy Court did not "overlook[] the basic, Bankruptcy 101 distinction" on prepetition and post-petition debt,[132] but made the point that after paying non-insider Class 3 all Commitment Period Disposable Income, it no longer mattered what Debtor might pay its insiders, be it prepetition claims or post-confirmation insider executive compensation, using MET's own argument against MET.[133]

---

[129] Op.Br.22, 33-34, 53-54.

[130] An.Br.42 n.148 ("… allocation of asset values…).

[131] An.Br.44 (quoting 1-ER-0083-84); *but see*, 1-ER-0083-84 (emphasis added to show MET's omission). "ECF 700 (Opp.) 27," is MET's brief; 6-ER-1242(ln.11-6).

[132] An.Br.44-45.

[133] 1-ER-0083-0084.

22

## D. *Ambanc* and Allocation

Most of MET's arguments on "unfair discrimination" are made in the context of the four-element test of *In re Ambanc La Mesa LP*, 115 F.3d 650, 656 (9th Cir.1996).[134]  MET can prevail only if the Bankruptcy Court's decision is illogical, implausible, or without support in the record.[135]   MET employs conclusory statements heavy on vitriolic language to portray the Bankruptcy Court's decision as unfounded,[136] but the extensive, detailed record supports the Bankruptcy Court's decision.[137] Furthermore, MET's arguments repeatedly propose Plan alterations that never improve Debtor's proposal to ***allocate*** 100% Commitment Period Disposable Income to Class 3, further supporting the rationale behind the Plan's fair discrimination.

### 1.    "The discrimination must be supported by a reasonable basis"

MET argues "no rationale creditor would pick" the Class 3 treatment over the Class 4 treatment,[138] but six out of seven Class 3 creditors accepted the Plan.[139]  MET

---

[134] An.Br.36-41.

[135] *United States v. Hinkson*, 858 F.3d 1247, 1259-61 (9th Cir.2009).

[136] An.Br.37-45.

[137] 1-ER-0015-0100.

[138] An.Br.37.

[139] 7-FER-1204.

23

cites the Subchapter V Trustee's disagreement on the issue,[140] but the Bankruptcy

Court noted composition law is familiar to the Court because of Chapter 13

experience but unfamiliar to the Trustee and Chapter 11 practitioners, and the

Trustee agreed.[141] Debtor's counsel, Mr. Fritz, is also a subchapter V trustee,[142] and

Fritz and Jones discussed this "novel" issue through many "productive conferences"

leading up to the hearing,[143] and the Bankruptcy Court concluded "Mr. Fritz was

absolutely right in writing what Chapter Sub V is all about."[144]

MET mocks Debtor's "pretense of altruism" as "offensive to the intelligence

of… this Court… and… blatant self-dealing."[145] But Debtor's Plan has no self-

dealing because it preserved no liens for insiders,[146] made no payments on insider

---

[140] An.Br.30; 4-SER-0820-21.

[141] 3-ER-0479 (Trustee: "Yeah."); *see*, 3-ER-0488-90; Op.Br.22, 33-34, 53-54 (composition law); *see*, Reply §VI.

[142] https://www.justice.gov/ust/list-chapter-11-subchapter-v-case-case-trustees (last visited Oct.24, 2025).

[143] 4-SER-0821; 3-ER-0480.

[144] 3-ER-0490.

[145] An.Br.38.

[146] 1-ER-0041-42 (lien settlement integral to plan); 1-ER-0043 (subordination of insider claims).

24

claims for five years while devoting **all** Commitment Period Disposable Income to non-insiders,[147] and is based on an intelligent, inoffensive analysis of §1191(c)(2).[148]

MET argues "if [Debtor] wanted to provide non-insiders with as much disposable income as possible, it would… have proposed a 5-year plan instead of a 3-year plan and it would not have included the bogus NPV discount."[149]   But this proves Debtor's point because the result would still be 100% Commitment Period Disposable Income for Class 3, the only difference being the length of the Commitment Period under §1191(c)(2)(A) and how much discount to apply under §1191(c)(2)(B).

2.    **"The debtor could not confirm or consummate the Plan without the discrimination"**

MET argues: "Had [Debtor] wished to eliminate the [discrimination] controversy, the Plan could have provided all of the Disposable Income to non-insiders *without* preserving the insiders' ability to be paid in full, simply by limiting insiders' recoveries to the same paltry 5.99%- 12.5% apportioned to non-insiders or have them forgo recovery all together."[150]   The Plan **did** provide non-insiders with

---

[147] 1-ER-0078 (class division of Plan payments)

[148] Op.Br.17-48.

[149] An.Br.38.

[150] An.Br.38-39 (emphasis supplied).

25

all of the Disposable Income,[151] and MET's proposal to eliminate or reduce any recovery to insiders would not increase the non-insider recovery.

### 3.    **"The discrimination is proposed in good faith"**

MET argues "if non-insider claims are discharged after the payment of a mere 5.99%- 12.5% recovery, insider claims should be too."[152] Discharging insider claims does not change the non-insider recovery.

### 4.    **"The degree of the discrimination is directly related to the basis or rationale for the discrimination,"**

MET argues the Plan is "merely repackaged self-dealing" and "an affront to this Court" and that "[t]he Bankruptcy Court clearly erred when it adopted wholesale [Debtor's] flawed argument."[153] As a remedy, MET argues: "Klee stands for the proposition that [Debtor's] insiders should willingly forgo their unsecured claims – not just for five years, but permanently – to remedy the Plan's unfair discrimination problem."[154] Foregoing insider claims would not change the non-insider recovery, already at 100% Commitment Period Disposable Income.

---

[151] 6-ER-1379; 1-ER-0078(ln.17).

[152] An.Br.40.

[153] An.Br.41.

[154] An.Br.42.

MET argues: "If non-insider unsecured 'creditors… and Class 3 are entitled to nothing more than three-to-five years' of projected Disposable Income,' then neither are the insider unsecured creditors in Classes 2 and 4."[155] MET's proposal of insiders and non-insiders sharing the Commitment Period Disposable Income would dilute the non-insider recovery.[156] Even if insider claims were equitably subordinated under §510(c), the result would be non-insiders receiving all Commitment Period Disposable Income, which is exactly Debtor's Plan.

Debtor invites this Court's attention to the FFCL distinguishing the cases upon which MET relies for "unfair discrimination" rather than repeat them here.[157]

## VIII.

## §1129(a)(2)

MET's objections on §1129(a)(2) illustrate why courts reject MET's minefield approach.[158] MET has no case law to the contrary.[159] MET attempts (but

---

[155] An.Br.45.

[156] Op.Br.50, n.201.

[157] An.Br.45, nn.156-157; 1-ER-0082 (distinguishing *In re Woodbrook Assocs.*, 19 F.3d 312, 321 (7th Cir.1994) and *In re Aztec Co.*, 107 B.R. 585, 588 (Bankr.M.D.Tenn.1989, neither case is on point because the "absolute priority rule" and §1111(b) election are not present in Debtor's case); *see*, 1-ER-0078 (discussing *Matter of LeBlanc*, 622 F.2d 872, 879 (5th Cir.1980), finding fair discrimination when insiders are not paid, which is on point for Debtor's case because insiders receive no payment in the three-year Plan).

[158] Op.Br.55-56.

[159] An.Br.46-50.

27

fails) to distinguish Debtor's cases of *Dunlop Oil* and *Moore Trucking* by characterizing them as not involving insider transfers like Debtor's case.[160] MET is incorrect because *Dunlap* involved transfers to an affiliate, which is an insider by definition.[161] In *Moore*, the insider made personal financial accommodations to help the debtor;[162] here, Casden made personal financial accommodations to help Debtor by deferring his own compensation[163] and repaying all sums to Debtor as ordered by the court.[164]

Applying the minefield approach, MET revives the parties' heavily contested insider compensation disputes, truncating the seven-month, multi-brief dispute into five pages of one-sided arguments,[165] which cannot substitute for the breadth of those issues already decided and never appealed. As detailed in the FFCL,[166] some transfers on insider compensation occurred in the 10-month period after the 2020 plan was confirmed and before the District Court issued its 2021 appellate decision.[167] The FFCL details: (1) the 2020 plan confirmation, effective date, and

---

[160] An.Br.48-49.

[161] §101(31)(E) ("insider" includes "affiliates"); An.Br.48.

[162] An.Br.49.

[163] 1-ER-0095(ln.26-28)- 1-ER-0096(ln.1-2).

[164] 1-ER-0039, 1-ER-0056.

[165] An.Br.46-51.

[166] Op.Br.56, n.232; 1-ER-0035-0037, 1-ER-0056.

[167] 1-ER-0035-0037, 1-ER-0056.

stay pending appeal *39 days later*;[168] (2) the filing of the post-confirmation quarterly reports;[169] (3) Debtor raising the question of the scope of a stay *39 days after* the plan went into effect, but the Bankruptcy Court and District Court declined to rule on that issue;[170] (4) the filing of monthly operating reports ("MORs");[171] (5) Debtor's self-identification and self-correction of the insider compensation issues in four steps *before* MET raised objections;[172] and (6) the insider compensation issues heavily litigated as separate contested matters to final orders with Debtor's insiders returning all the funds.[173]   MET could not have "caught [Debtor] red-handed"[174] nor did Debtor "hid[e] its recalcitrant conduct,"[175] nor did MET "[bring] them to light,"[176] as MET's objections came *after* Debtor filed and noticed Debtor's pleadings to self-correct the issues.[177]

---

[168] 1-ER-0035(ln.6-24).

[169] 1-ER-0035(ln.24-28)- 1-ER-0036(ln.1-7), 1-ER-0037(ln.11-13).

[170] 1-ER-0036(ln.10-28)- 1-ER-0037(ln.1-5).

[171] 1-ER-0037(ln.27-28)- 1-ER-0038(ln.1-4).

[172] 1-ER-0038(ln.5-20).

[173] 1-ER-0056(ln.6-24).

[174] An.Br.46.

[175] An.Br.46, nn.158-159.

[176] An.Br.48.

[177] 7-FER-1372-1374 (MET served objection to insider compensation on January 27, 2022, after Debtor served its insider compensation notices and filed its proposed settlements to repatriate funds from insiders); 7-FER-1320; 7-FER-1379; 7-FER-1400; 8-FER-1439; 6-SER-1244-1269.

29

MET alleges Casden "testified falsely under oath,"[178] citing Casden's plan-confirmation deposition on July 12, 2022, but MET's allegation is unfounded because Casden responded he was uncertain about those events from 18 months prior: "I'd have to check. I know it wasn't paid in one sum. I think it was paid in two payments, perhaps. After the plan was confirmed and before the appellate court had stayed or vacated the plan."[179] Casden answered truthfully because the first half of the payment ($46,362) was made on December 1, 2020, after the 2020 plan had gone effective and before the District Court issued the stay,[180] and the second payment ($46,362) was made on February 1, 2021, after the stay but before the District Court vacated the plan order.[181]   MET cannot cite anything in the record at plan confirmation where MET "impeached" Casden's credibility[182] because MET never did.

---

[178] An.Br.46-47; An.Br.56 "dishonest," "blatant lies, "intentionally hidden," and "[Debtor's] own documents impeached [Casden's] testimony."

[179] 4-ER-0814.

[180] 8-FER-1577.

[181] 7-SER-1361.

[182] An.Br.46-56.

## IX.

## §1129(a)(3)

The FFCL provided extensive analysis of the good faith issue, which MET does not challenge.[183] Instead, MET improperly uses §1129(a)(3) to reargue an aggregation of §1129(a)(2), §1129(a)(5), §1129(a)(7), and §1191(b)[184] objections even though Debtor prevails on each issue separately.[185] The Court should reject MET's approach because one subsection of §1129 should not duplicate the requirements of the other subsections,[186] and Debtor does not lack good faith for doing what the Bankruptcy Code permits it to do.[187]

## X.

## §1129(a)(5)

MET incorporates its discussion from §1129(a)(2), and Debtor does the same. MET repeatedly objects about a $251,018 overpayment from Debtor to Casden and argues the Bankruptcy Court "completely ignored ample record evidence … of self-dealing" and "clearly erred by failing to address this evidence in its FFCL related to

---

[183] 1-ER-0057-0063.

[184] An.Br.51-53; Op.Br.47-58.

[185] An.Br.51-53.

[186] *In re Acequia*, 787 F.2d 1352, 1364 (9th Cir.1986); 1-ER-0057-0058.

[187] *In re Sisk*, 962 F.3d 1133, 1150 (9th Cir.2020) ("debtors are not acting in bad faith merely for doing what the Code permits them to do.") (internal citation and quotation omitted).

31

§1129(a)(5)."[188] The Bankruptcy Court addressed these issues in the cumulative record of contested matters that were never appealed.[189]

The Bankruptcy Court heard cross-examination about the insider compensation payments, Casden's testimony about repayment of funds, and waiver of all insider liens.[190] The Bankruptcy Court advised MET's counsel that these issues had already been satisfactorily addressed through contested matters.[191] As detailed in numerous contested matter pleadings, Casden's overpayment resulted from multiple incremental payments spanning more than a year based on a misunderstanding of the stayed 2020 plan order.[192] The Bankruptcy Court acknowledged understandable confusion and the importance of Casden repatriating funds as ordered: "I'm glad that the payments were made, because had it not been made, we might be having a seriously different discussion

---

[188] An.Br.54.

[189] 1-ER-0023-0025 ("cumulative record" and "Court has closely observed this Case… including numerous contested matters…"); 1-ER-0035-37 (period between 2020 plan confirmation and that order being vacated); 1-ER-0041-42 (incorporation of insider lien avoidance settlements); 1-ER-0043 (voluntary insider claim subordination); 1-ER-0056(ln.6-24) (monthly operating report and insider compensation disputes).

[190] 2-ER-0225 (insider lien settlement); 2-ER-0303-0306 (insider claim treatment); 2-ER-0350-0354 (insider compensation); 2-ER-0359-0362 (monthly operating reports and insider compensation payments); 2-ER-0370 (ln.23-25)- 2-ER-0371(ln.1-12) (summary of all insider repayment to Debtor and waiver of all insider liens); 3-ER-0482 (Debtor's witnesses credible).

[191] 2-ER-0350-0351.

[192] See, Reply §VII; see, 7-FER-1265-1267; 7-FER-1387-1389; 7-FER-1283; 7-FER-1311-1313.

32

today."[193]  After a half-day of cross-examination by MET, the Bankruptcy Court found Casden intimately familiar with Debtor's business, Debtor's books had no red flags, Casden was very credible,[194] and Casden's continuance as CEO was "consistent with the best interest of creditors and equity holders and with public policy."[195]

The FFCL overruled MET's objections regarding alleged bad faith in connection with the Plan's liquidation analysis.[196]   Debtor's 2020 plan §1129(a)(7) analysis (prepared without an expert) hypothesized Debtor had been solvent (without using the balance-sheet test) when prepetition liens were perfected.[197]  The District Court ruled that the balance-sheet test of §101(32) for insolvency must be applied,[198] so Debtor hired expert Grobstein to prepare the 2022 Plan §1129(a)(7) analysis, and Grobstein used the balance-sheet insolvency test to conclude: "the Debtor was insolvent on the Lien Dates,"[199] and the insider liens were nullified under the Plan.[200]  MET invents the allegation that Grobstein "admits that he privately told Debtor 'they were insolvent,'"

---

[193] 3-ER-0488; 7-FER-1255-1256; 7-FER-0508-0511.

[194]  1-ER-0017-18;  1-ER-0050(ln.4);  1-ER-0055(ln.16-19);  1-ER-0066(ln.17-18); 1-ER-0071(ln.10-14); 1-ER-0094(ln.7-8); 1-ER-0098(ln.6-10); 3-ER-0482; 2-ER-0280.

[195] 1-ER-0065.

[196] 1-ER-0057(ln.15-23); An.Br.55.

[197] 8-FER-1608-1611.

[198] 7-ER-1630.

[199] 7-ER-1529.

[200] 6-ER-1268, n.10; 4-ER-0948(ln.24) ("the company was insolvent").

but MET's record cite reveals no such admission but confirms Grobstein's unwavering position that Debtor was insolvent on a balance sheet basis.[201] MET confuses Grobstein's conclusion on Debtor's "liquidity," (ability to pay debts as they came due if excluding a one-time large legal fee to Polsinelli LLP) with Grobstein's conclusion that Debtor was insolvent on the lien dates.[202]

## XI.

### §1129(a)(7)

MET attacks the FFCL as a "garbled passage" and pretends to not understand the hypothetical liquidation analysis when Casden repays the estate $251,018 and other simple adjustments.[203]

"The valuation of a hypothetical Chapter 7 for purposes of §1129(a)(7)(ii) is not an exact science,"[204] and "entails a considerable degree of speculation."[205] The court may reasonably disagree with a plan objector's assumptions,[206] particularly where they merely criticize debtor's estimates and assumptions without convincing evidence in

---

[201] An.Br.55, n.191 (citing 4-ER-933; 6-SER-1276).

[202] 4-ER-0933-0948; 6-ER-1268, n.10; 7-ER-1529-1532.

[203] An.Br.59.

[204] *In re Affiliated Foods, Inc.*, 249 B.R. 770, 788 (Bankr.W.D.Mo.2000).

[205] *In re Sierra-Cal*, 210 B.R. 168, 172 (Bankr.E.D.Cal.1997).

[206] *In re Affiliated Foods, Inc.*, 249 B.R. at 787-88.

support.[207]  Whatever adjustments are made, the Plan must pay creditors at least as much as they would receive in the hypothetical liquidation.[208]

Debtor's liquidation analysis showed a recovery to creditors of 4.4%, far worse than the 12.5% ($500,000) the Plan would pay Class 3.[209]  MET alleges Debtor made no effort to update the liquidation analysis,[210] but Debtor updated it and showed Casden's court-ordered $251,018 repayment to Debtor increased the liquidation recovery *by 3.2%* to 7.6%.[211]  *In addition,* if Sundar's lien for $230,989.64 were voided,[212] the funds available for distribution would increase, but the unsecured creditor pool would also increase by the same amount, improving the liquidation recovery by *another 2.8%* to 10.4%.[213]  Grobstein affirmed this analysis on cross-examination.[214] The results always satisfy §1129(a)(7) because the Plan pays Class 3 a 12.5% recovery.[215]

---

[207] *In re Emerge Energy Services LP*, 2019 WL 7634308 *12 (Bankr.D.Del. Dec.5, 2019); 1-ER-0069-0070.

[208] 7 Collier ¶1129.02[7].

[209] 6-ER-1268.

[210] An.Br.57-58.

[211]  3-ER-0533(ln.17-22);  3-ER-0584(ln.26-28)- 3-ER-0585(ln.1-17);  7-FER-1255-1256.

[212] 1-ER-0072.

[213] 3-ER-0585; 6-ER-1268; 1-ER-0071-0072.

[214] 3-ER-0418-0419.

[215] 1-ER-0071-0072; 3-ER-0585.

MET argues the FFCL fails to account for the combined effect of hypothetically eliminating Casden's cure and avoiding Sundar's lien, which MET miscalculates at 13.6%.[216] MET is wrong because MET double-counts the 3.2% increase discussed above; the 10.4% recovery already includes the combined effect of the $251,018 repayment (the 3.2% increase) plus voiding Sundar's lien (another 2.8% increase).[217]

MET argues "[i]n a chapter 7 liquidation, [Debtor] would have no reason to assume Casden's employment contract,"[218] but MET's argument is pointless because Debtor's liquidation analysis already presumes the contract would be rejected and has no "cure" line for it.[219]

MET's argument that "Debtor failed to quantify the impact of… $434,536 payable in full under the Plan to assume and cure Casden's employment contract"[220] is wrong because Casden will defer cure payments to ensure Class 3 payments are made, maintaining the non-insider 12.5% recovery.[221]

---

[216] An.Br.60.

[217] 3-ER-0585(ln.4-7) (Casden repatriates $251,018, and recovery increases from $333,998.69 to $575,016.19) and then (ln.14-16) (Sundar's lien for $230,989.64 avoided, and recovery increases from $575,016.19 to $806,005.73).

[218] An.Br.57.

[219] 3-ER-0585(ln.21-23); §365(a)(rejection); §365(b)(cure required only if contract assumed).

[220] An.Br.59.

[221] 1-ER-0095(ln.26-28)- 1-ER-0096(ln.1-2).

36

With no more support than "discussed *supra*," MET baldly states the Plan fails §1129(a)(7) if the NPV discount reduces the Class 3 payment from $500,000 to $239,100.[222] This issue was addressed at trial with expert testimony: the NPV discount does not result in a 6% reduction in Class 3 recovery, and MET's argument is misleading because it ignores the difference in time for being paid immediately with the NPV instead of one, two, and three years later, and that the time value of money is reflected in the discount rate ($500,000 over time is the same as $239,100 today, if the discount rate is correct).[223] To have an apples-to-apples comparison, the Plan's $500,000 payment must be used for §1129(a)(7) analysis.

## XII.

## DUE PROCESS

This Court should reject MET's meritless position that would permit sophisticated commercial litigants to agree and follow evidentiary procedures at trial without objection but nonetheless seek reversal by springing a due process argument for the first time on appeal.[224]

---

[222] An.Br.59.

[223] 1-ER-0074(ln.17-27); 3-ER-0428(ln.24-25)- 1-ER-0429(ln.1-10).

[224] An.Br.62-66; Op.Br.58-62.

37

MET's *In re First St. Holdings NV, LLC*[225] is unavailing because in that case all of one party's evidence was excluded when it did not have particular notice of a scheduling deadline.[226]  MET had notice of all deadline and procedures, and its expert report was admitted into evidence and considered.[227]

MET's proposition that direct testimony by declaration is unfair, from *In re Burg*, 103, B.R. 222, 225 (9th Cir.B.A.P.1989),[228] is not good law: "We disagree with the *Burg* panel that the bankruptcy court's procedure raises significant due process concerns."[229]

Grobstein did not make a "180-degree reversal on the issue of insolvency."[230]

Grobstein's superior credibility was not because he testified live while Pastore did not,[231] but because Grobstein has extensive bankruptcy experience,[232] while

---

[225] An.Br.64 n.221.

[226] *In re First St. Holdings, NV, LLC*, 2012 WL 6050459 *1, *9 (9th Cir.B.A.P. Dec.5, 2012) (not for publication).

[227] 3-ER-0441; 1-ER-0019(ln.14-17).

[228] An.Br.65, n.223.

[229] *In re Adair*, 965 F.2d 777, 780 (9th Cir.1992).

[230] An.Br.62; Reply §IX.

[231] An.Br.63.

[232] 1-ER-0068(ln.24-25); 1-ER-0069(ln.5-13); 7-ER-1546-1560; 6-ER-1265; 3-ER-0512-0513; 3-ER-0413.

Pastore does not,[233] and Pastore was even unfamiliar with "present value" discounts in chapter 11 plans.[234]

The Bankruptcy Court did not "[*give*] Grobstein an opportunity to answer its questions and to address various mistakes..."[235]   MET *chose* to cross-examine Grobstein, which revealed no "mistakes" and provided the court a few short questions.[236]

MET complains, "Pastore was given no equivalent opportunity" to testify.[237] MET is wrong, and its reliance on *Adair* is misplaced: "The primary purposes of Rule 43(a) are to ensure that the accuracy of witness statements may be tested *by cross-examination* and to allow the trier of fact to observe the appearance and demeanor of the witnesses."[238]   "Witness credibility initially was established through… the declarations."[239]  Pastore's declaration was so deficient as to establish no credibility, so Debtor decided not to cross-examine.[240]  MET made a strategic

---

[233] 1-ER-0088(ln.16-18) (35-year career, 2% work in Chapter 7, 2% in Chapter 11, one-hundred recent engagements, none involving bankruptcy).

[234] 1-ER-0090(ln.16-28).

[235] An.Br.63 (emphasis added) (citing 3-ER-0392, -0415, -0419, -0431)

[236] An.Br.63 (citing 3-ER-0392, -0415, -0419, -0431)

[237] An.Br.63.

[238] *In re Adair*, 965 F.2d 777, 780 (9th Cir.1992) (emphasis added).

[239] *Id.*

[240] Op.Br.60.

39

error in its case in chief,[241] and none of MET's authorities require the opponent to cross-examine.

## XIII.

## CONCLUSION

This Court should reverse the District Court and affirm the Bankruptcy Court.

Dated:  December 1, 2025          LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.


By:          */s/ John-Patrick M. Fritz*
             John-Patrick M. Fritz
             Attorneys for Appellant Hologenix, LLC

---

[241] *Lee-Benner v. Gergely (In re Gergely)*, 110 F.3d 1448, 1452 (9th Cir.1997); *Adair*, 965 F.2d at 780.

## <u>CERTIFICATION REQUIRED BY F.R.A.P. 32(a)(7)</u>

I certify that the foregoing brief is proportionately spaced, has a typeface of 14 points or more, and contains 6,870 words (excluding the title page, tables of contents and authorities, and signature block), as determined by the Word Count feature of Microsoft Word, the word-processing system used to prepare the brief.

Dated:  December 1, 2025       LEVENE, NEALE, BENDER, YOO &
GOLUBCHIK L.L.P.


By:       */s/ John-Patrick M. Fritz*
        John-Patrick M. Fritz
        Attorneys for Appellant Hologenix, LLC

## STATEMENT OF RELATED CASES

## (CIRCUIT RULE 28-2.6)

To the best of Appellant Hologenix, LLC's knowledge, no case currently pending before the Court arises out of Hologenix, LLC's bankruptcy case and involves the same transactions or events, except for the following appeals:

- 24-2881 (*Multiple Energy Technologies, LLC. v. Hologenix, LLC*) relating to confirmation of Hologenix's chapter 11 plan;

- 24-2883 (*Multiple Energy Technologies, LLC. v. Hologenix, LLC*) relating to the assumption of executory contract between Hologenix and its CEO, Seth Casden;

- 24-2884 (*Multiple Energy Technologies, LLC. v. Hologenix, LLC*) relating to the avoidance and recovery of a preferential transfer from Hologenix to Multiple Energy Technologies, LLC .

Dated:  December 1, 2025          LEVENE, NEALE, BENDER, YOO &
                                  GOLUBCHIK L.L.P.


                        By:        */s/ John-Patrick M. Fritz*
                                  John-Patrick M. Fritz
                                  Attorneys for Appellant Hologenix, LLC

42

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on December 1, 2025.

All participants in the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

Executed on December 1, 2025, at Los Angeles, California.

*/s/ John -Patrick M. Fritz*
JOHN-PATRICK M. FRITZ

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 2818 La Cienega Avenue, Los Angeles, CA 90034

**A true and correct** copy of the foregoing document **Debtor's Request For Judicial Notice In Support Of Dbetor's Reply Briefs After Remand Filed On April 21, 2026** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

**1**.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On April 21, 2026, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On April 21, 2026 I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the `document is filed.
☐  Service information continued on attached page

**Honorable Barry Russell**
United States Bankruptcy Court
Central District of California
Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Suite 1660 / Courtroom 1668
Los Angeles, CA 90012

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL**
(state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on April 21, 2026  I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| April 21, 2026 | J. Klassi | /s/ J. Klassi |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

1

- **Todd M Arnold    tma@lnbyg.com**
- **Ron Bender    rb@lnbyg.com**
- **Thomas E Butler    butlert@whiteandwilliams.com, sullivann@whiteandwilliams.com;millnamowm@whiteandwilliams.com;panchavatis@whiteandwilliams.com**
- **Robert Carrasco    rmc@lnbyg.com, rmc@lnbyg.com**
- **Aaron E. De Leest    adeleest@marshackhays.com, adeleest@marshackhays.com,alinares@ecf.courtdrive.com**
- **Oscar Estrada    oestrada@ttc.lacounty.gov**
- **Theodore W Frank    frank@psmlawyers.com, knarfdet@gmail.com;navarro@parkermillsllp.com**
- **John-Patrick M Fritz    jpf@lnbyg.com, JPF.LNBYB@ecf.inforuptcy.com**
- **Michael S Greger    mgreger@allenmatkins.com, kpreston@allenmatkins.com**
- **Brian T Harvey    bharvey@buchalter.com, docket@buchalter.com;dbodkin@buchalter.com**
- **Gregory Kent Jones (TR)    gjones@sycr.com, smjohnson@sycr.com;C191@ecfcbis.com;cpesis@stradlinglaw.com**
- **Alphamorlai Lamine Kebeh    MKebeh@allenmatkins.com, mdiaz@allenmatkins.com**
- **Raffi Khatchadourian    raffi@hemar-rousso.com**
- **Tinho Mang    tmang@marshackhays.com, tmang@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@ecf.courtdrive.com**
- **Ron Maroko    ron.maroko@usdoj.gov**
- **Juliet Y. Oh    jyo@lnbyg.com, jyo@lnbyb.com**
- **Carmela Pagay    ctp@lnbyg.com**
- **Yvonne Ramirez-Browning    yvonne@browninglawgroup.com, veronica@browninglawgroup.com**
- **Kurt Ramlo    RamloLegal@gmail.com, kr@ecf.courtdrive.com,ramlo@recap.email**
- **James R Selth    jselth@yahoo.com, jselth@yahoo.com,maraki@wztslaw.com,sfritz@wztslaw.com,admin@wztslaw.com**
- **Zev Shechtman    Zev.Shechtman@saul.com, zshechtman@ecf.inforuptcy.com;hannah.richmond@saul.com;LitigationDocketing@saul.com**
- **Lindsey L Smith    lls@lnbyb.com, lls@ecf.inforuptcy.com**
- **Randye B Soref    rsoref@polsinelli.com, ccripe@polsinelli.com;ladocketing@polsinelli.com**
- **Heidi J Sorvino    sorvinoh@whiteandwilliams.com, millnamowm@whiteandwilliams.com;sullivann@whiteandwilliams.com;panchavatis@whiteandwilliams.com;butlert@whiteandwilliams.com**
- **Alan Stomel    alan.stomel@gmail.com, astomel@yahoo.com**
- **Annie Y Stoops    annie.stoops@afslaw.com, yvonne.li@afslaw.com;mia.ferguson@afslaw.com**
- **Nicole Sullivan    sullivann@whiteandwilliams.com, vulpioa@whiteandwilliams.com,arthura@whiteandwilliams.com**
- **Derrick Talerico    dtalerico@wztslaw.com, maraki@wztslaw.com,sfritz@wztslaw.com,admin@wztslaw.com**
- **John N Tedford    JNT@LNBYG.com, jnt@ecf.courtdrive.com**
- **United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov**
- **Larry D Webb    Webblaw@gmail.com, larry@webblaw.onmicrosoft.com**
- **David Wood    dwood@marshackhays.com, dwood@ecf.courtdrive.com;lbuchananmh@ecf.courtdrive.com;spineda@ecf.courtdrive.com;alinares@ecf.courtdrive.com**

2