RON BENDER (State Bar No. 143364)
JOHN-PATRICK M. FRITZ (State Bar No. 245240)
LEVENE, NEALE, BENDER,
YOO & GOLUBCHIK L.L.P.
2818 La Cienega Avenue
Los Angeles, California 90034
Telephone:  (310) 229-1234
Facsimile:   (310) 229-1244
Email: RB@LNBYG.COM; JPF@LNBYG.COM

Attorneys for Chapter 11
Debtor and Debtor in Possession

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
### LOS ANGELES DIVISION

| | |
|---|---|
| In re: | ) Case No.: 2:20-bk-13849-BR |
| | ) |
| HOLOGENIX, LLC, | ) Chapter 11 Case |
| | ) Subchapter V |
| Debtor and Debtor in Possession. | ) |
| | ) **NOTICE OF FILING OF TRANSCRIPT** |
| | ) **FOR HEARING ON MAY 26, 2026** |
| | ) |
| | ) Hearing: |
| | ) Date:   May 26, 2026 |
| | ) Time:   10:00 a.m. |
| | ) Place:  Courtroom 1668 |
| | )          255 East Temple Street |
| | )          Los Angeles, CA 90012 |
| | ) |

1

**PLEASE TAKE NOTICE**  that Hologenix, LLC, a Delaware limited liability company, the debtor and debtor in possession in the above-captioned chapter 11 bankruptcy case (the "Case"), hereby respectfully files the transcript of the hearing held on May 26, 2026, at 10:00 a.m., in the Case, a true and correct copy of which is annexed hereto.

Dated: June 23, 2026

HOLOGENIX, LLC

By: ___*/s/ John-Patrick M. Fritz*_____
RON BENDER
JOHN-PATRICK M. FRITZ

LEVENE, NEALE, BENDER,
YOO & GOLUBCHIK L.L.P.

Attorneys for Chapter 11
Debtor and Debtor in Possession

2

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

--oOo--

| | |
|---|---|
| In Re: ) | Case No. 2:23-bk-16904-BR |
| ) | |
| SETH HALDANE CASDEN, ) | Chapter 11 |
| ) | |
| Debtor. ) | Los Angeles, California |
| _____) | Tuesday, May 26, 2026 |
| ) | 10:00 a.m. |
| In Re: ) | |
| ) | |
| HOLOGENIX, LLC, ) | Case No. 2:20-bk-13849-BR |
| ) | |
| Debtor. ) | Chapter 11 |
| _____) | |
| ) | |
| MULTIPLE ENERGY TECHNOLOGIES, ) | Adv. No. 2:24-ap-01022-BR |
| LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| CASDEN, ) | |
| ) | |
| Defendant. ) | |
| _____) | |
| ) | |
| MULTIPLE ENERGY TECHNOLOGIES, ) | Adv. No. 2:25-ap-01067-BR |
| LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| DISCOVER BANK d/b/a ) | |
| DISCOVER CARD, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

*Briggs Reporting Company, Inc.*

ii

MULTIPLE ENERGY TECHNOLOGIES, )   Adv. No. 2:25-ap-01068-BR
LLC,                          )
                              )
          Plaintiff,          )
                              )
     vs.                      )
                              )
DEVOTO,                       )
                              )
          Defendant.          )
_____)
                              )
MULTIPLE ENERGY TECHNOLOGIES, )   Adv. No. 2:25-ap-01069-BR
LLC,                          )
                              )
          Plaintiff,          )
                              )
     vs.                      )
                              )
ARIA RESORT & CASINO,         )
                              )
          Defendant.          )
_____)
                              )
HOLOGENIX, LLC,               )   Adv. No. 2:22-ap-01098-BR
                              )
          Plaintiff,          )
                              )
     vs.                      )
                              )
MULTIPLE ENERGY TECHNOLOGIES, )
LLC,                          )
                              )
          Defendant.          )
_____)
                              )
MULTIPLE ENERGY TECHNOLOGIES, )   Adv. No. 2:22-ap-01101-BR
LLC, et al.,                  )
                              )
          Plaintiffs,         )
                              )
     vs.                      )
                              )
NORTHERN TRUST COMPANY OF     )
DELAWARE,                     )
                              )
          Defendant.          )
_____)

iii

CONT'D STATUS CONFERENCE RE CHAPTER 11 CASE

CONT'D HRG. RE DEBTOR'S MOTION FOR ORDER (1) APPROVING DISCLOSURE STATEMENT, (2) ESTABLISHING VOTING, PLAN CONFIRMATION AND OTHER PROCEDURES, (3) SCHEDULING PLAN CONFIRMATION HEARING AND SETTING OTHER RELATED DATES AND DEADLINES, AND (4) PROVIDING OTHER ANCILLARY AND RELATED RELIEF

CONT'D HRG. RE MOTION FOR PROTECTIVE ORDER REGARDING 2004 EXAMINATION OF AND DOCUMENT PRODUCTION OF THE NORTHERN TRUST COMPANY OF DELAWARE

CONT'D STATUS CONFERENCE RE COMPLAINT FOR DETERMINATION OF NONDISCHARGEABILITY OF DEBT

CONT'D STATUS CONFERENCE RE COMPLAINT TO: 1) AVOIDANCE AND RECOVER PREFERENTIAL TRANSFERS PURSUANT TO 11 USC SECTIONS 544, 548, 550 AND 551; AND 2) DISALLOW CLAIMS OF DEFENDANT PURSUANT TO 11 USC SECTION 502(d)

CONT'D STATUS CONFERENCE RE COMPLAINT TO: 1) AVOID AND RECOVER PREFERENTIAL AND FRAUDULENT TRANSFERS PURSUANT TO 11 USC SECTIONS 3439.04, 3439.05, ET SEQ., AND 2) DISALLOW CLAIMS OF DEFENDANT PURSUANT TO 11 USC SECTION 502(d)

iv

CONT'D STATUS CONFERENCE RE COMPLAINT TO: 1) AVOID AND RECOVER PREFERENTIAL AND FRAUDULENT TRANSFERS PURSUANT TO 11 USC SECTIONS 544, 547, 548, 550 AND 551, CAL CIV CODE SECTIONS 3439.04, 3459.05, ET SEQ; AND 2) DISALLOW CLAIMS OF DEFENDANT PURSUANT TO 11 USC SECTION 502(d)

BRIEFING HRG. RE AMENDED ORDER OF CONFIRMATION OF THE PLAN THE BRIEF IS IN SUPPORT OF CONFIRMING PLAN AFTER REMAND FROM THE DISTRICT COURT

BRIEF HRG RE MOTION FOR ENTRY OF AN ORDER AUTHORIZING ASSUMPTION OF EXECUTORY CONTRACT WITH SETH CASDEN

BRIEF HRG. RE SUMMARY JUDGMENT AFTER REMAND FROM DISTRICT COURT

CONT'D STATUS CONFERENCE RE COMPLAINT TO: 1) AVOID LIENS PURSUANT TO 11 USC SECTIONS 544, 547, 549 AND 550; 2) AVOID AND RECOVER PREFERENTIAL TRANSFERS PURSUANT TO 11 USC SECTIONS 547 AND 550; 3) RECOVER CERTAIN UNAUTHORIZED PURSUANT TO 11 USC SECTIONS 549 AND 550; AND 4) DISALLOW CLAIMS OF DEFENDANTS

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE BARRY RUSSELL
UNITED STATES BANKRUPTCY JUDGE

v

APPEARANCES:

For Debtor Casden:                  GREGORY M. SALVATO, ESQ.
                                    Salvato Boufadel, LLP
                                    355 South Grand Avenue
                                    Suite 2450
                                    Los Angeles, California 90071
                                    (213) 484-8400


For Multiple Energy                 ROYE ZUR, ESQ.
   Technologies:                    Elkins, Kalt, Weintraub,
                                      Reuben & Bartside, LLP
                                    10345 West Olympic Boulevard
                                    Los Angeles, California 90064
                                    (310) 746-4400

                                    NICOLE A. SULLIVAN, ESQ.
                                    White & Williams, LLP
                                    7 Times Square, Suite 2900
                                    New York, New York 10036
                                    (213) 631-4420


Courtroom Recorder:                 Nancy Vandensteen
                                    United States Bankruptcy Court
                                    Edward R. Roybal Federal
                                      Building
                                    255 East Temple Street
                                    Los Angeles, California 90012


Transcriber:                        Briggs Reporting Company, Inc.
                                    9711 Cactus Street
                                    Suite B
                                    Lakeside, California 92040
                                    (310) 410-4151

1

LOS ANGELES, CALIFORNIA  TUESDAY, MAY 26, 2026  10:00 AM

--oOo--

(Call to order of the Court.)

THE COURT:  All right.

THE CLERK:  Number 34, Seth Casden, and then we're going through our --

THE COURT:  Why don't we hear Seth Casden first, and then the rest of the Hologenix.  So just the Casden matter.  Of course, same -- the same parties are here for that.

MR. SALVATO:  Good morning.  Gregory Salvato for the Debtor, Seth Casden, who is present.

THE COURT:  All right.  Okay.

MS. SULLIVAN:  Good morning, your Honor.  Nicole Sullivan from White and Williams for Multiple Energy Technologies.

MR. ZUR:  Good morning, your Honor.  Roye Zur of Elkins Kalt, also here on behalf of Multiple Energy Technologies.

THE COURT:  Okay.  Let's see.  Which number in the calendar is it here?

THE CLERK:  It's starting at 34.

THE COURT:  Yes, 34.  Okay.  So, all right.  Okay. Yeah, well, generally speaking -- why don't you come to the podium.  Generally speaking -- and I may have missed

2

something in my -- I was questioning myself with my clerk here.  Usually, we just -- Mr. Casden is -- the Chapter 11 is really dependent on what happens in the Hologenix, so we've just sort of been trailing off.  However, there's one thing I think I just realized preparing for this.  But there is something that's not dependent on that, namely is your -- the 523 complaint.  But my question is, I sort of -- I was thinking, wait a minute, whatever happened to that?  There's no reason to delay that.

So let me hear from the Debtor's counsel.  That is not dependent on -- that's a separate judgment that was gotten against Mr. Casden and the district court has assured it's related, but not really as far as the facts.  I have no opinion, by the way, on the merits of it either way.  So we've been continuing that, but there's no reason not to continue that, is there?

MR. SALVATO:  Well, the underlying matter has been on appeal.

THE COURT:  Wait, hold on.  Not really.  The underlying matter is his judgment that's toward -- separate. Now, I was thinking about that just the other night.  I said, wait a minute.  He had the multi-million dollar judgment against him in the district court separate.  That was -- he was the only defendant, right?  I mean, I know the answer.  He was a defendant.

3

MR. SALVATO: That's correct, your Honor. But we understand that the non-dischargeability action is based on that underlying judgment.

THE COURT: Well, maybe yes and maybe no. I want to hear from the other side because it occurs to me -- I don't mind just putting it over, but it occurred to me, and maybe I'm missing something, that I'm not looking for putting any more work on you guys or on myself. But is it -- it was a separate trial, was it? Sure, it all related to Hologenix.

MR. SALVATO: But if the judgment is reversed --

THE COURT: Which judgment?

MR. SALVATO: -- that changes dramatically what 523 --

THE COURT: Which judgment?

MR. SALVATO: If the district court judgment --

THE COURT: Okay. Maybe I am missing something. It's separate. However, and I'm talking about two separate appeals, it's on appeal?

MR. SALVATO: Yes.

THE COURT: Okay. That's what I missed.

MR. SALVATO: Yes. And that's the reason why -- now, this happened before my time.

THE COURT: Okay. It's not because of the Hologenix appeal. It's because the judgment from the

4

district court, that's on appeal.

MR. SALVATO:  Yes.

THE COURT:  Okay.  That answered my question.
Okay.

MR. SALVATO:  Very well.

THE COURT:  I somehow missed that in my thinking.
All right.  So that will just trail.  Okay.  Okay.

MR. SALVATO:  There's really not a lot to report,
basically.

THE COURT:  Well, no, I wouldn't think so.

MR. SALVATO:  The status conference -- we're
waiting on what's happening in the Hologenix case.

THE COURT:  Okay.  So now we have the Hologenix.
And that's not -- there are two of these.  I'm not going to
take much time at all.  First of all, let me call the
summary judgment.  I'm amazed.  I imagine it costs both
sides more in attorney's fees than the $100,000 that's
involved.  Hey, I'm here anyway.  I get paid the same, but
I'm always astounded by what's going on in that.  And I'll
tell you that I don't need any more argument in that.  I'm
amazed at the creativity, by the way, of the defendant in
that litigation.  I want to hear from you.

MR. SALVATO:  Hologenix?  Are you talking about
Hologenix?

THE COURT:  Yes.  I want to hear from you as far

5

as later on, but not as far as his summary judgment on the preference.  You didn't really comment on that, did you, in your status report?

MR. FRITZ:  No, your Honor.  If the Court was going to call the Hologenix matters, I just wanted to make my appearance as I did not make my appearance on the Casden matter.

THE COURT:  Yes.  No, no.  And I appreciate your insight, because it's always good to get a neutral party in there.  But on the -- yes, go on.

MR. FRITZ:  Thank you, your Honor.  J.P. Fritz of Levene, Neale, Bender, Yoo and Golubchik for Hologenix, LLC, the Debtor and Debtor-in-possession in these matters.  And I do believe that Mr. Jones is on video, the Subchapter V Trustee.

THE COURT:  Again, I don't know if it's -- And do you have any thoughts on this?

MR. JONES:  Good morning, your Honor.  Greg Jones, Subchapter V Trustee.  I filed a pleading.  Actually, I filed a pleading relating to confirmation as to the other ones.  I really -- I didn't really take (indiscernible).

THE COURT:  That's what I'm referring to.  But let me go through these.  One, the only one I'm going to really have any argument on is on the plan.  As far as the summary judgment, I was surprised, but I -- that's okay.  I'm not

6

arguing with the district court because I didn't allow Ms. Sullivan's declarations on exhibits.  As I understand it, that's the basis, right?  Was it -- correct?  That's why it was remanded, right?  And that's my understanding.  I read the opinion.

MR. FRITZ:  Yes, your Honor.  For the record, J.P. Fritz for Hologenix.

THE COURT:  Yeah.

MR. FRITZ:  The district court remanded --

THE COURT:  Because I did not exclude it.

MR. FRITZ:  Yes.

THE COURT:  And that's fine.  Yeah.  The difference on opinion on rules, I have no problem with that. However, as creative as, Ms. Sullivan, you are, the -- your evidence and declaration offers nothing to add to what is. This is so clear -- this is a slam dunk preference.  The idea -- and again, I'm not going to have any argument.  I know what the facts are.  The idea that somehow, you missed a conduit is just not -- is totally without a merit.  The actual agreement was done and entered into after this.

But even so, this is clear -- this was handed down to the counsel -- to counsel for the opposing side, namely the MET, and even if not, it's still for the benefit.  So this isn't clear.  You can -- the sad thing about this, from my understanding -- again, the very creative part in your,

7

Ms. Sullivan, but it was sought in the first case, I did not consider the evidence -- that evidence.  But I'm considering it now.  It doesn't add whatsoever to the to the actual facts.  There's no material facts genuinely in dispute of what happened.  And the unfortunate reality of this is the matter -- so I am going to grant the summary judgment.

However the reality is, okay, I know what's going to happen.  It's going to be appealed.  It's going to go to the same judge.  And let's say the judge -- look, you know, I have no problem, you know, of it being reversed or not.  It doesn't matter.  Nobody likes it.  But still, I don't take it personally.  And so what's going to happen is that's what I'm going to do.  And I'd like you to prepare -- and again, it is somewhat -- I don't know if it's insulting or not, but at least I always ask for parties of either side who prevails to find the fact and conclusions of law.  It's not a rubber stamp.  I know in the context of the assumption motion or rubber stamp, but that's a different question.  But I always do that.  Most judges do that.  And then, you'll then -- in this particular case, you'll do it and find fact conclusions of the law, and there will be -- if there are any objections to it, I will consider them.  And that's what I do.  And so I never just -- if they're accurate, then fine.  I totally agree with the arguments made by the Debtor.

8

And so what's going to happen is it's sort of sad, but that's the system.  It's going to no doubt be the same judge.  And let's say if the judge decides to reverse me fine.  Then it's up to that judge.  And then what will happen is we'll have a -- it's going to be a jury trial but not here, then we'll have a pretrial order.  We'll go through all other things, and it'll be this -- it'll be more the same judge who would be hearing the appeal.

And so anyway, I just throw it out to you.  I can't make anybody settle anything, but I can't imagine that the amount spent on this is -- that's on the side, but it has nothing to do with on the merits of it.  The merits are clear.  There is just a clear-cut case of a preference.  There is no legitimate, legal, or factual dispute, especially with the exhibits that were presented.

Anyway, so I'm not going to waste any more time on that one.  That's what I'm going to do.  And as far as the other one, the assumption motion --

MS. SULLIVAN:  Your Honor, if I may, before you move on.

THE COURT:  Well, no, I'm not going to hear any argument.

MS. SULLIVAN:  Well, it's not an argument.  I think that that's not what the district court found.  I think the district court reversed and remanded.  But it was

9

clear, the same argument that you're articulating now and that Hologenix put into its paper is what's presented to the district court.  And as the district court had agreed that that was as a matter of law, it was a preference, and summary judgment should be granted even --

THE COURT:  Well, no, that can't possibly --

MS. SULLIVAN:  -- even considering my --

THE COURT:  Counsel, that can't possibly be true because you know why?  Then it would have just been -- I'd have been in the reverse.  I wasn't reversed.  I was remanded for finding.  So, no, I'm not going to hear any further.  You're just wrong.  If the judge found that it was clearly not a preference, then we wouldn't be here.  So I don't want to argue anymore.  I've read all your papers.

MS. SULLIVAN:  That's fine, your Honor.  But there's --

THE COURT:  So, yes.  So, no, I'm not going to hear any further.  I have read -- I've read your papers three or four times.

MS. SULLIVAN:  Okay.

THE COURT:  So that's the way I view it.  So, anyways, so as far as that one, it is -- on its face, it's a classic.  I've read it over and over.  And I understand why the district court -- am I correct as far as the district court did?

10

MR. FRITZ:  Yes, your Honor.

THE COURT:  Right.  That it was just I didn't consider Ms. Sullivan's testimony exhibits.  Isn't that right?

MR. FRITZ:  Yes, your Honor.

THE COURT:  Okay.

MS. SULLIVAN:  Well, if you had considered them the way the district court did, then you would have found that there is -- drawing inferences in favor of MET, that it didn't have control over it.

THE COURT:  No, no, no.  And by the way --

MS. SULLIVAN:  And you're not doing that.

THE COURT:  Counsel, take a deep breath.  I didn't ask you, okay?

MS. SULLIVAN:  I understand, but you're making a statement, as if you made a finding of fact that you did that, and it's not right.

THE COURT:  Well, I can -- that's one of the -- Counsel, take a deep breath.  This is one of the prerogatives of the Court.

MS. SULLIVAN:  It is.

THE COURT:  If I'm wrong, guess what?  The district court will tell me I'm wrong, or what will happen is that -- or the Circuit will tell me I'm wrong.  So, but that's --

11

MS. SULLIVAN:  Understood, your Honor.

THE COURT:  -- how I read the record.  On its face, this is just a clear -- such a clear preference and no -- at that point agree with it.  No jury could find -- this is not -- there's no need for finding of fact.  The facts are that this is clearly a -- the idea that conduit theory, it makes no sense whatsoever in this case.  But anyway, I'll leave it at that.  I read the papers.  I understand.  So that's that one.

Now, we have the next one, which is the assumption.  Why don't you come -- your motion.  The only reason was -- is the -- as I recall --

Stacey, can you hand me that one?  That's the assumption motion.  And it's here somewhere.  Okay.  Sitting in a pile of documents would be an -- by the way, both really good lawyers on both sides.  Don't misunderstand what I just said.  Just that I don't agree.  Here we go. Assumption.  Okay.

Now, the assumption, as I recall, just a standard, the remand was because I didn't (indiscernible) standards. Is that correct?  That's my understanding.

MR. FRITZ:  The inherent fairness standard, your Honor.

THE COURT:  Yes.  As opposed to what we did, which is what?  Just to make sure on the record.

12

MR. FRITZ:  The heightened scrutiny of business judgment --

THE COURT:  All right.  Here we go.  Look at my notes here.  They had to do with the -- okay, one second. Inherent fairness doctrine, right?

MR. FRITZ: Yes, your Honor.  The district court remanded to apply the inherent fairness doctrine.

THE COURT:  Okay.  And I am also -- I do want to make sure that I'm not going to hear any further argument on this.  I have read the record and the -- over and over.  And by the way, the deposing side at some points violated my direct order there not be no new evidence.  And there are a few little points, and they're not a lot, but you -- like one of them, for instance, was the judgment against Mr. Casden.  That's new things, and I told you not to do it. And I'll leave it at that.  Please don't do it again.  I made it quite clear.

My concern is this case -- again, I can't fault the -- certainly the time.  The district court takes time. the Circuit, they're busy too.  It's been quite -- how many years has it been since?  It's been, what, four years?

MR. FRITZ:  Yes, your Honor.

THE COURT:  Something like that.  So what happens is -- this thing could go on forever.  That's why I decided -- I remember at the -- went over the transcript of the

13

hearing.  We're talking about whether to allow.  And I realized this could go on forever because -- I'm not faulting either side.  Everybody's entitled to Appeal, both sides, depending on what happens.  In this case, the Creditor has appealed, and then the Debtor has appealed that to the Circuit.  So I'm not faulting anybody.  Everybody's got a right to Appeals.  By the very nature of it, this case could never end because whatever I do, I'm sure, would be appealed.  I'm not -- I don't take it personally.

There are -- certainly, as far as I said, as far as the preference, I think that's a slam dunk.  But other people can disagree.  And even as far as the motion that I am going to grant on the assumption.  But as far as the plan, that's trickier than I must admit.  There are a lot of things going on there.

So I've reviewed the record.  I've read all the briefs.  There's no need to further -- the way I view it, I think it's met -- you have met the standard as asked at district court, and I'd like you prepare a finding fact and conclusions of law as to that.

The final one is the plan itself.  That is trickier.  I think I understand at leat, and I do appreciate, Mr. Jones, your input in that regard as to what -- it seems to be the argument from your standpoint is as to the section number dealing with whether or not the --

14

whether the plan can go beyond the -- whether it's required. They have payments.  I forget the actual section number. But the section dealing with whether or not it could be a three.

In fact, that pattern after 13, although it's not a 13 case, obviously.  But it had to be beyond that five years, what do you do?  Is it -- and the argument is that the district court said it, and I'm bound by it.  It doesn't matter what I think about one way or the other, I'm bound by it.  And so as far as I'm concerned, that is the law of the case.  And so the question then becomes is -- that the district court didn't say it's required.  It says that it's possible.  And so the question -- that was what was mainly argued, was it not, as far as the plan?

MR. FRITZ:  Your Honor's synopsis is correct.

THE COURT:  Right.  And so as to that -- and so the question there is is whether or not that -- on that issue -- I am, again, satisfied if that -- as to that one issue.  Whether or not I'm sure it'll be up to the -- eventually to the Circuit to decide all this.  Personally, I don't really care.  I just follow the law whatever the law is.  If the district court is right or wrong, the Circuit will let us know as far as that particular section we're talking about.  And I don't see any other authority for that.  But if I'm bound by it, then maybe the -- you know,

15

far as I'm concerned, that's the law of the case.  And then, however, what the district court said was there could be, that it should consider it, not that it's mandatory.

MR. FRITZ:  That's correct, your Honor.

THE COURT:  Right?  Okay, well, let me hear from -- so on that particular question, let me hear whichever one of you wants to argue, not both.  It's up to you.  Usually you divide up the -- I have no idea, and I have no preference whatsoever.  You're both fine attorneys.  And that's the issue that was argued, right?

MR. ZUR:  Your Honor, if you read the -- the district court's opinion, and I think it's a little bit unfortunate because it's somewhat hard to decipher what, what Judge Holguin was trying to say.

THE COURT:  Well, I took a lot of time trying to figure out --

MR. ZUR:  As did I.

THE COURT:  But it wasn't -- they didn't mandate.  So it had to be -- it seemed to me --

MR. ZUR:  Well, here's the --

THE COURT:  Am I correct?  And that's why I came out and --

MR. ZUR:  Here's the way that I think the district court approached this whole thing.

THE COURT:  Well, let me ask you a specifically.

16

MR. ZUR:  Yes.

THE COURT:  That was the only issue that was really argued, was it not?

MR. ZUR:  No.  So the first question that the district court was trying to answer -- and in the end it says, I'm not going to answer it.  But the middle, right, between the question and the I'm not going to answer it, that's where you get the analysis.  But the real question that the Court was trying to answer, or at least to address, was whether the plan unfairly discriminates.  Okay?  That's the first question.  And then the Court goes through this analysis of fair and equitable and it addresses the Debtors --

THE COURT:  What did the Court of Appeals do on it?  Did they make any comment about that?

MR. ZUR:  No, no.  What the Court of Appeals did, your Honor --

THE COURT:  No, no, specifically about the issue you just raised.

MR. ZUR:  The Court of Appeals did nothing.  It just dismissed the appeal.

THE COURT:  Well, that's, that's not totally true.  They did -- they made some -- it was a little unusual.  I was -- you know, I was just hoping the Circuit would just rule.

17

MR. ZUR:  Are you asking procedurally what they did?  I can tell you --

THE COURT:  Yeah.  I know procedurally what they did.  I found it unusual.  But again, I'm not going to argue with them at all.

MR. ZUR:  I think what happened --

THE COURT:  I was hoping that they would just decide it, you know?

MR. ZUR:  I think -- well, we all were, but I think --

THE COURT:  Well, when they decide, I can't argue with them.  They are very bright people.

MR. ZUR:  I think what happened was, you know because it initially goes to like, a motions panel before it gets --

THE COURT:  Well, I know how it works.

MR. ZUR:  Right.  What happened was I think the three judges that were actually going to look at this had a different view of where it should go than the motions panel that asked for the briefing in the first instance.

THE COURT:  Well, I know how it -- I know it's not on the BAP for no reason.

MR. ZUR:  Yeah.

THE COURT:  I know generally how it works, and I guess they just -- again, it's a -- it's an interesting

18

opinion.  And again, I'm bound by it.  We're all bound by it.  But it did make some -- or I guess it's not what they didn't say as far as them sending it back.

MR. ZUR:  Right.

THE COURT:  It seems to me the issue was -- as it was pointed by counsel is whether or not, you know, the -- whether or not the -- the issue of whether or not it had to be -- I can understand from the district court's standpoint, you know, why not?  You know, why not make it go beyond?  I understand that.  Personally, I'm not sure if that's what the statute provides, but, again, I'm repeating , they may be correct.  I'm not arguing with that.  And just so I keep saying it, it's law of the case.  And it may be that that is the law.  No doubt, whatever I do, that issue will go to the Circuit.  And the system is great.  The Circuit will decide that.

MR. ZUR:  Your Honor, to answer your original question, the question that you have to decide, and this is the question that was left open by the district court, although the district court did say -- did opine on it, sort of preliminarily, the question is whether the plan unfairly discriminates.  The answer from the Debtor to that question was, well, no, because it's fair and equitable, and they're getting all they're entitled to get under the statute, which is three to five years, disposable income --

19

THE COURT: Right.

MR. ZUR: -- et cetera, et cetera. What the district court said in response to that is, well, no, that's not the case, right?

THE COURT: Because of what I just was talking about.

MR. ZUR: And that was the conclusion on that, okay? No, that is not all they're entitled to. And by the way, your plan actually does more than that with respect to the insider classes. And so then, the question you have to decide is, well, given that that is not true, right, that it's not all they're entitled to, right, and also, given that the plan does go beyond that three- to five-year period and gives more than merely disposable income to the insider classes, then the question is, does the plan unfairly discriminate. That, to me, is the --

THE COURT: Well, that's another thing. But I -- didn't I already deal with that in my original order confirming the plan?

MR. ZUR: And that was reversed. That was reversed.

THE COURT: Well, I'm not -- was it reversed or remanded?

MR. ZUR: It was reversed and remanded.

THE COURT: All right.

20

MR. ZUR:  Okay.  So the conclusion and the analysis underlying it were reversed.

THE COURT:  I'm trying to figure out, as you are too, what it is the district court -- it seems to me it still comes down to this, even though what you say, I think you're correct.  It still comes down to that one provision of why it was not fair.  I'm just trying to understand.  That's why we had this hearing before.  We all struggled with what to -- ultimately, whatever I do, we'll be back in district court.  And I just want clear what it is that I have to do today.

MR. ZUR:  Your Honor --

THE COURT:  We discussed that the last time we were in here.

MR. ZUR:  I understand this sort of, like, futile, well, we're going to be back in the district court, and maybe some point, we'll be back here today, back here talking about the same issue.

THE COURT:  Well, I don't mean it's futile.  It's just --

MR. ZUR:  It doesn't have to be that way.  I'm just saying --

THE COURT:  It's just expensive.  That's all.

MR. ZUR:  No, no.  I understand.  And it is unfortunate, okay.  I'm not in their pockets, and I'm not

21

telling them how to spend their money.

THE COURT:  I've never seen -- I have never seen a case -- I have told you this ad nauseam.  This would be -- of course, in hindsight, it's cheap because if they won when this all started from both sides, if they'd known the cost, you probably would have settled it.  But now, that's not -- again, that's my guess.

MR. ZUR:  The reality, your Honor, is, again, I would -- I might have approached this differently.  I'm not counsel on that side obviously.

THE COURT:  No, of course not.

MR. ZUR:  I'm not making decisions for them, but if I get a plan reversed, I might call the other side and say, hey, how can we fix this?  That's apparently not really part of the strategy, and that's okay.  But that's how you end up where we are.

THE COURT:  I would hope that would be the case. I'm not going to get into those discussion.  Of course.

MR. ZUR:  And I want to also -- and I also want to address what Mr. Jones said in his filing, which is that he's going to take the time to try to bridge the gap between the sides.  He has not done that.  That's unfortunate because I would hope that he would do that, but he didn't do that.  I think we --

THE COURT:  No, no, wait.  You were first talking

22

about -- let me ask Mr. Jones.

I'm not faulting you, but -- and again, you just -- you've been saying that -- you're saying he didn't make the efforts?

MR. ZUR:  No, he did not.

THE COURT:  Well, you're not on trial here.  So but --

MR. JONES:  No, no, no.

THE COURT:  But if you're allowed to answer, both of you --

MR. JONES:  I spent -- he -- Mr. Zur is correct. Between the time of the filing of the pleading and this hearing, the one week, I did not make the efforts to try to settle.  So now, I -- that's the -- he's correct.  Prior to this, for the past six years --

THE COURT:  Right.

MR. JONES:  Yes.  And I -- to go back, I thought we almost had something 2020, but that was a long time ago. But he's correct.  I can't blame him for that.

THE COURT:  Why don't -- Fritz?

MR. FRITZ:  Yeah, thank you.

THE COURT:  Yeah.  Why don't you come to the podium.  It's probably not going to make any difference, but still, this is from day one.  I'm not faulting either side. I'm just saying I encourage -- especially I don't have to

23

tell either of your experience (indiscernible) fine.  What about that?

MR. FRITZ:  Yeah.  Thank you, your Honor.  For the record, J.P. Fritz for Hologenix, LLC.  On occasion, I do speak with Mr. Jones regarding the status of the case and what's going on with the plan.

THE COURT:  No, I assume so.

MR. FRITZ:  And I --

THE COURT:  Well, I hear the question was more about the other side talking to them.

MR. FRITZ:  Mr. Zur and I have on occasion had brief discussions, but the truth is is that from the corporate perspective of Hologenix, LLC, there's not a lot of room for settlement talks, unfortunately, as this Court is aware --

THE COURT:  Well, I can see.  And again, good lawyers on both sides, and it hasn't been that copacetic or whatever the correct word would be, but I understand.

MR. FRITZ:  And your Honor is aware that the litigation and disputes between Hologenix and MET expanded beyond that to include Mr. Casden in a personal bankruptcy case, and it is expanded beyond the ability to precisely deal with a settlement for purposes of Hologenix, LLC.

THE COURT:  I understand.  I understand just the nature of the case and it is not that unusual.  But let me

24

ask you then on this particular one.  On the -- it seems to me, at least the question being asked for me is the good faith or what?  The good faith which is tied in to -- I guess it ends up -- I think -- my impression of what the district court said, and I may be totally wrong, is it had to do with the district court -- from the district court standpoint, it may be nice to add a little bit more.  I get it.  I understand that.

And there may be quite the opposition to that is, but that's not what the law is.  But again, I'm repeating myself ad nauseum.  That's what the district court had said, but it said I -- is that the question I have to decide to tie it in with good faith and so forth, or am I wrong?

MR. FRITZ:  Your Honor, again, for the record, J.P. Fritz for Hologenix.

THE COURT:  Yes.

MR. FRITZ:  It's not good faith.  It's whether the plan fairly or unfairly discriminates.

THE COURT:  Yes, you're right.  Which is all tied into the concepts, yes.

MR. FRITZ:  And the district court never answered that question because the district court's analysis was that the improper legal standard was applied as to fair and equitable under 1191(C).

THE COURT:  Right, right.

25

MR. FRITZ:  Fair and equitable is not limited because it begins with the word, "includes."

THE COURT:  Right.

MR. FRITZ:  And after that, the district court's interpretation of the word, "all" and "not to exceed five years" meant that it could be a -- go beyond five years.

THE COURT: No, I understand.  Those are all tied in.

MR. FRITZ:  Those are all tied in.  They're separate issues but they're related.  And the Debtor's position as explained in the briefs was that once the Court determines what is fair and equitable for the treatment of a class, that has determined the property that gets distributed to that class.  And then that question becomes unfair discrimination and fair discrimination is tied to the issue of allocation.

THE COURT:  Right.

MR. FRITZ:  And we made this point in our papers. We repeatedly saw -- went to allocation in the law that's cited and talked about allocation.  MET has never had an answer on allocation.  And the Debtor's position is that once we have to determine what is fair and equitable for the general unsecured class, the unfair discrimination question becomes what do you allocate?  How do you allocate that? And this plan allocates all of that property to the

26

non-insider general unsecured class of class three that includes MET, and the insider unsecured classes get none of that property.  And the key here is our discussion of the development of modern composition law in Subchapter V.

THE COURT:  Right.  I know it's a lengthy history.  Again, fortunately, I'm one of the few people around who's been around at the time of the -- for that long.

MR. FRITZ:  Yes, your Honor.  We are fortunate for this Court's history and background on that.  And because of that, at some point, the composition and the rehabilitation ends.  And at that point, the insiders with their debt equity structure are left to deal with their own issues.

THE COURT:  No, I understand.

MR. FRITZ:  But while that composition period was going on and that rehabilitation was going on, that is the property that 100-percent of which has been allocated to the general unsecured creditors.

THE COURT:  Right.  So we get -- okay.  So I understand.

MR. FRITZ:  Yes, your Honor.  And I would just add that unfortunately, because of the way this happened, no one had the opportunity to bring these issues to the district court because it was sort of raised sua sponte.

THE COURT:  No, I hear.

MR. FRITZ:  And so our preference --

27

THE COURT:  Let me tell you, my inclination is to -- I agree with you at least on that one I'm interpreting. They're all related.  That under these facts, as far as I'm concerned, I'm still going to confirm the plan on the issues that you've raised.  It is clear to me, however, that -- again, I'm not faulting anybody, and certainly not the district court, but it's clear that when it was reversed and remanded, that there are other things that are going on, and you didn't have a chance to -- either side to argue those before the district court.

So I'm going to make it easy for all of you.  I'm just going to -- on the issue, as I see it, they're all tied in, but the lynchpin is on good faith and unfair discrimination, and all of it has to do with whether or not -- and as I see it, under the facts as they are and were at the time -- 2022 is when I confirmed the plan.  But it seems it is clear to -- I think that it's not -- it would be not abuse or bad faith, whatever you call it, to actually to do go beyond the five years.  Period.

As I understand it, the district court said I should consider it.  I have.  I've read the briefs three or four times, and I'm trying to figure out exactly in the district court's order and the -- so that's what I'm going to do.  It is clear to me that that's not going to -- when it gets to the district court, maybe then, both sides will

28

be able to argue their point of other issues that I don't see the district court answered.

Again, I'm not faulting the district court. But again, I don't see at this point anything other than, as far as I am concerned, what I understand I have to do. I am going to confirm the plan. I would like you to prepare, you know, finding of fact, conclusions of law.

And I know what's going to happen. It's going to go back. It will go to the district court, and maybe then, now that you know the problems that I've had, that if the district court agrees, and then whatever the district court does, then there's a Circuit over the problem of the finality question, which is fascinating. I have -- I never really thought about that before, but that's strictly up to higher courts. So that's what I am going to do.

MR. ZUR:  May I, your Honor?

THE COURT:  Yes.

MR. ZUR:  So a few things. Just for the record.

THE COURT:  Yes.

MR. ZUR:  We lodged, you know, multiple arguments in opposition to confirmation --

THE COURT:  Yeah, you have.

MR. ZUR:  -- that were not addressed today.

THE COURT:  Yes.

MR. ZUR:  And I just want to note for the record

29

that it is impossible for this Court to confirm this plan.
It's based on four-year-old figures that we know were not --

THE COURT:  I hear you.  I hear you.

MR. ZUR:  Well, it's not just that it's stale.  It ended up being inaccurate, right?  So this Court is confirming a plan that is based on numbers that we know are false, right?  They're just wrong.  We know that.  So I just want to note that for the record.

THE COURT:  Okay.  Well, again, I'm not saying yes or no, but that's your argument.

MR. ZUR:  No, I understand.  But we did --

THE COURT:  And if you're right, then the district court will take care of it.  That's what higher courts are about.

MR. ZUR:  And, you know, in addition to that, your Honor, we don't have a liquidation analysis that's anywhere near to current.  We have one that's, again, over four years old.

THE COURT:  I know.  I hear you.

MR. ZUR:  And we know that that has changed as well because of the patent that the Debtor obtained in the interim.  So that's not included anywhere.  Again, we don't -- we just don't know whether this plan would meet the best interest of creditors test.

THE COURT:  Of course, the Circuit did say in

30

their commenting on the district court, said that when they're remanding it, that they could confirm the plan.

MR. ZUR:  Yeah.  I don't even know what that statement means.  To be honest with you, I don't know.  I mean, I don't -- it certainly doesn't have any legal effect.

THE COURT:  I don't totally disagree.  What I'm saying is, look, we're all tried to do the best we can.  I read what the Circuit did, and they basically -- from their standpoint, they were saying, you know, jurisdictional matter, you know, it's not final and so forth.  And they did the best they can.  So I'm not faulting the Circuit.  So I hear you.  I hear what you're saying.

But I thought -- I remember you -- I read the transcript again, thinking, gee, should I allow more stuff, or not allow more stuff, and today it was clear.  And the reason that I ultimately decided that was this could go on -- this case could never get settled, because whatever I do, you're going to appeal.  And clearly, the district court will do whatever (indiscernible), then there'll be whatever that goes and -- yeah, and assuming if it goes against the Debtor, then the Debtor is going to appeal, then another four years will go.  So we could be here a 100 years from now.

MR. ZUR:  No.  I understand the perceived utility of it all.  I still believe that you -- I mean, I obviously

31

disagree with your conclusion.  I'm happy to hear that you want to try to make the right decision.

THE COURT:  Of course.

MR. ZUR:  But basing it on, well, it doesn't matter what I do, it's going to be appealed --

THE COURT:  Let's not -- let me put it this way.  In rightness or wrongness, this is subjective.  That's my view.  There's no absolutes, clearly, in all of this.  I just made my best judgment given what I think the district court wanted me to do.  And though there are various issues, at the end of the day, it came down to this whether beyond the five-years?  That's how I interpreted, and I interpreted that the district court ruled that it was not mandatory, but it was discretionary, and I am looking at everything.  I don't exercise my discretion to require that.

Now, the district court can not only on that issue, but as you correctly point out there, at least my understanding, there have been other things the district court hasn't ruled on.  So district court -- and you have very fine lawyers on all sides, you will deal with that.

MR. ZUR:  Your Honor, just to address the substantive points on --

THE COURT:  Okay.  Sure.  Okay.

MR. ZUR:  -- does it need to go beyond the five years or not.

32

THE COURT:  (Indiscernible) make a point (indiscernible).

MR. ZUR:  The question is to me is not whether it has to go beyond the five years, it's how does it compare to what other classes are getting.  And the other classes -- the insider classes are getting a 100-percent and they're getting property beyond the five years.

THE COURT:  All right.

MR. ZUR:  And what the district court said was when you look at this, you can't just look at the three to five years.  You've got to look at what everybody else is getting under the plan.

THE COURT:  I understand.

MR. ZUR:  And this discrepancy is -- the disparity is dramatic.

THE COURT:  That was already raised in the previous confirmation, was it not?  That is nothing new.  The same argument --

MR. ZUR:  Well, the conclusion that fair and equitable discloses the book on unfair discrimination, that was reversed, right?  That conclusion that you had in your findings of fact originally, that was what the district court disagreed with.  And the argument today about composition law and about, well, this is just three to five years, this is what you pay to unsecured creditors, and then

33

you leave the rest of it, the debt equity for the insiders to worry about later, what the district court said, it was -- it addressed that. It said, no, no, no. Look at the entire duration of the plan. You're not just looking at the three to five years.

THE COURT: I understand.

MR. ZUR: You've got to look at what's everybody getting under the entire duration of the plan.

THE COURT: No, I understand.

MR. ZUR: And this disparity is dramatic, right? Didn't conclude that it unfairly discriminates. It wanted you to conclude whether or not it does.

THE COURT: All right.

MR. ZUR: And I guess you're concluding that it doesn't.

THE COURT: That's correct.

MR. ZUR: And so, okay. That's okay.

THE COURT: And obviously, we'll find out.

MR. ZUR: We'll address the issue at the right place. My question, your Honor, is would the Court entertain a stay of the confirmation so that we can get this dealt with without killing more paper?

THE COURT: Yeah. I think so. The reason I -- yes, I am going to -- as I did -- of course, that was the flip side of the coin factually, but I think that's subject

34

to whatever the district -- you know, for now, subject to the district court, yes.  And the reason I -- that I agree with you is -- even I mentioned it as far as the assumption motion, that is all tied in with the plan.  And my -- the reality is that even though I've granted the motion as far as assuming the contract, Mr. Casden, without the plan, they're not going anywhere anyway, right?  Unless you have a -- so the reality is, even though I've ruled that way, it was -- at the end, I was going to mention that, that I ruled -- this is before me.  But the fact of the matter is it makes no -- it would make no sense to have that go into effect unless the plan goes into effect.  I think everybody would agree with that.  So yes, I -- so I agree with you.

So why don't we -- again, to say that this is a case that's still up in the air will be an understatement. All I'm trying to do as the bankruptcy judge is do the best. I know you disagree, but that's what appellate courts are for.

MR. ZUR:  Okay.  So just to make clear, your Honor will stay both the assumption and the confirmation?

THE COURT:  Yes, yeah.  Yes.  I am going to.  And the reason I just stated -- especially the contract, the appointment makes no sense if there's not a plan.  It was all tied in.  So, yes.

MR. ZUR:  And the summary judgment as well, your

35

Honor?

THE COURT:  No, no, not the summary judgment.  No, no.  No, no.  That's totally separate.  I'm only talking about the two -- no, the summary judgment -- again, I know you're very creative in the (indiscernible) -- no, I'm not asking -- this is not a debate, so --

MS. SULLIVAN:  No, no, no.  We're just asking for a stay.

THE COURT:  No.  I understand that.  No.  There's not going to be any stay.  What are you -- what are -- what would you be doing to --

MR. ZUR:  I mean --

THE COURT:  Yeah.  I mean, clearly, the -- I assume you're going to appeal, okay?

MR. ZUR:  Yeah.

THE COURT:  And that's fine.  So my question is what are -- what would you be doing to go out and to collect it?  Given the fact that there is -- I would not stay it because I think that it -- that the objection has any merit to it.  But what is it you plan on actually doing to stay?  What am I actually being asked to stay?

MR. FRITZ:  Well, your -- my understanding is the Court --

THE COURT:  I understand you have a judgment.

MR. FRITZ:  Your Honor, we'll make a demand for

36

payment.  Originally --

THE COURT:  Well, no, I'm not going to stay --

MS. SULLIVAN:  Just to be clear, the payment has -- the money was deposited in the Court's register part agreement like, I don't remember --

THE COURT:  Okay.

MS. SULLIVAN:  -- two years ago, whatever.

THE COURT:  Okay.  I've actually forgotten where it was.  Thank you.

MS. SULLIVAN:  Right.  It was in the Court's register.  So all I'm asking is that it stay there until, you know, during the pendency of the appeal into the district court.  That's all we're asking.

THE COURT:  No, no.  I'm not going to do that because I think that --

MS. SULLIVAN:  That's fine.  We would just ask the district court --

THE COURT:  No, I hear you, but I think that -- I think what -- you know, what I am going to do is give you a chance to appeal at the district court to stay that.

MS. SULLIVAN:  Thank you, your Honor.

THE COURT:  Yeah.  I'm not going to.

MS. SULLIVAN:  Thank you, your Honor.

THE COURT:  Yeah, I'm not going to.  And so my question is, how do I do that?  Right.  If I'm not going to

37

stay because I think the --

MS. SULLIVAN:  Well, you can -- given what you just said, you could stay it pending a decision from the district court on our request for a stay, which we'll promptly seek.

THE COURT:  Well, maybe -- or actually, maybe you should -- yeah, because I -- if the district court can -- certainly can disagree, and then we get another battle and get in the registry here.

MS. SULLIVAN:  Right.

THE COURT:  So I'm not going to -- so what are you -- you understand where I'm at.  I think totally we're on the merits of it, I agree.  It's in the registry.  It's not going anywhere.  Maybe I should stay until the district court has a chance, because as a practical matter, that's what's going to -- then they -- I don't want them to have to run to the district court and do -- as a practical matter, I will express my views, and I'm doing a stay not because I think the defense has any merit.  I stay because it's going to be appealed, and I think the district court should decide that.  So can we -- I agree there should be some order that -- I didn't want to indicate that I felt that the defense -- I'm repeating myself ad nauseam.  But so -- because if not, then we're going to have to go to the district court, then you're going to have to spend more money objecting to it.

38

So why don't I just -- why don't I do this?  Maybe I grant the stay until the district court rules on whether or not the stay should continue.  How is something like that?  Because if not, you're going to spend a lot of money running up and back.

If I don't do that, then they're going to have an emergency motion before the district court, and you're going to have to -- so why don't I just -- I'm just going to not even ask you.  I'm just going to do that.

MS. SULLIVAN:  Thank you.

THE COURT:  I'm thinking of all sides here because I -- the district court will do that.  The district court may say fine firmly, and that's it.  So yeah, I -- why don't we just do that?  So why don't they -- they can prepare the order.  Well, but I think give them -- again, I'm thinking of what would actually happen because if the district court -- they would then have to run to the district court.  You'd have to oppose it.  And if I were the district court, I might very well, not knowing until I've looked at it closely, might say, fine, it's safe.  It's not -- the money's not going anywhere.  That's probably what I would do if I were -- you know, when I was in the Bankruptcy Appellate Panel.  Typically, that's what I would do.

So, yes, I'm going to just stay both, but make it clear in there until the -- so subject, of course, to the

39

district court.  But why don't you put that in your order as well far as the stays, if you wish or you -- and I'm asking for the stay, so why don't you prepare that?  But why don't you just say you you will prepare a finding of fact and conclusion of law on all three of the matters as far as the -- and as far as the complaint, that is the preference complaint.  I'll also stay that again, but it's clear that it's only because I want to save everybody trouble.  I have been trying to get a stay from the district court.  And that I -- there's been -- I started this out because there's enough money spent over the years.  That said -- because that money's not going anywhere.  It's not as if they're going to go spend it.  So I'll -- why don't you prepare that order?

MS. SULLIVAN:  We will, your Honor.  Thank you.

THE COURT:  Okay.

MR. FRITZ:  Thank you, your Honor.  For the record, J.P. Fritz for Hologenix, LLC.  May we have three weeks to submit the proposed findings of fact and conclusions of law?

THE COURT:  Sure.

MR. FRITZ:  And MET may have three weeks to file whatever response they --

THE COURT:  Well, the local rules provide that I hold if for -- if you want.  Maybe.  I don't care if you --

40

because there's no doubt there's going to be a lot of findings. And there may be ones and -- as in the past I disagree with. I certainly -- especially in this case. So why don't we do that? I normally wouldn't do it. I'm glad that you asked. So why don't you just set those dates at the time, and the record will have it.

You have three weeks to do it. They have three weeks to object. And but then you get to, then you can reply. And then well, if we're going to do it that way, we can do it, your ability to -- it's your findings -- well, it would be my findings. So why don't we just -- why don't we do that? Maybe the three of you or the four of you or whatever can come up with --

MR. FRITZ: Your Honor, what we did in the past in the -- in 2022, I think we did something like two and two and three or three and three. And then how about --

THE COURT: Well, why don't we have three, three and one?

MR. FRITZ: Three, three and one is fine.

THE COURT: How's that? That is the one being you reply to your objections.

MR. ZUR: The only issue from our side, your Honor, is the three weeks, three weeks puts us, like, right after July 4th, which is a little bit of a --

THE COURT: I don't care. It can be two weeks

41

into -- personally, I just really don't care.

MR. ZUR:  Normally, we should just do the normal rule, but why don't we just two -- why don't we do two weeks and two -- of course it's tougher for them because they have to prepare --

MS. SULLIVAN:  No.  If your Honor is amenable to it, I'm sure we can work out a schedule with J.P. offline and submit as well.

THE COURT:  Well, you want to do that?  Well, I tell you, I have another matter.  Why don't you step outside?  I'll do it, then come back in.

THE CLERK:  Your Honor does have another matter.

THE COURT:  Let me ask.  We have this other Huntly matters.

THE CLERK:  (Indiscernible.)

THE COURT:  Well, we do -- yeah, we do have to -- right.  My clerk reminded me.  Casden's here patiently, we have to continue that to some date.  We need a continuance date.  That's it.  So maybe four --

MS. SULLIVAN:  We agree to four weeks and four weeks for the parties to submit their --

THE COURT:  And then one -- then maybe one week to reply?

MS. SULLIVAN:  Yes, your Honor.

MR. FRITZ:  Yes, your Honor.

42

THE COURT:  Okay.  And then -- but I need a continuance -- not only for Hologenix case, but also for Mr. Casden.

THE CLERK:  So you have, Judge, this kind of protective order.

THE COURT:  Well, we have other things I didn't address.

THE CLERK:  Yeah.

THE COURT:  We have this motion for protective order to examine.  Well, that had to do with former attorney, Mr. Casden.

THE CLERK:  I think that everything has been -- everything else --

THE COURT:  I had no -- I don't think anybody, at least on that particular -- wants to spend any extra effort, either Mr. Casden or the former attorney.  It had nothing to do with you guys, but I remember that one.  So we'll continue everything over --

THE CLERK:  Should be August 25th at 10:00 a.m.?

THE COURT:  -- August 25th at 10:00?

MR. ZUR:  That's fine, your Honor.

MR. FRITZ:  Thank, your Honor.

MS. SULLIVAN:  That's fine, your Honor.

THE COURT:  All right.

MS. SULLIVAN:  Thank you very much.

43

THE CLERK:  Thank you.

(Proceedings concluded.)


I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.


/s/ Holly Steinhauer_____     6-3-26_____
Transcriber                     Date

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 2818 La Cienega Avenue, Los Angeles, CA 90034

**A true and correct** copy of the foregoing document  **Notice Of Filing Of Transcript For Hearing On May 26, 2026**  will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

**1**. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On June 23, 2026, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒  Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On June 23, 2026 I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the `document is filed.
☐  Service information continued on attached page

**Honorable Barry Russell**
United States Bankruptcy Court
Central District of California
Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Suite 1660 / Courtroom 1668
Los Angeles, CA 90012

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL**
(state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on June 23, 2026  I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| June 23, 2026 | J. Klassi | /s/ J. Klassi |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

1

- **Todd M Arnold    tma@lnbyg.com**
- **Ron Bender    rb@lnbyg.com**
- **Thomas E Butler    butlert@whiteandwilliams.com,
  sullivann@whiteandwilliams.com;millnamowm@whiteandwilliams.com;panchavatis@whiteandwilliams.com**
- **Robert Carrasco    rmc@lnbyg.com, rmc@lnbyg.com**
- **Aaron E. De Leest    adeleest@marshackhays.com,
  adeleest@marshackhays.com,alinares@ecf.courtdrive.com**
- **Oscar Estrada    oestrada@ttc.lacounty.gov**
- **Theodore W Frank    frank@psmlawyers.com,
  knarfdet@gmail.com;navarro@parkermillsllp.com**
- **John-Patrick M Fritz    jpf@lnbyg.com, JPF.LNBYB@ecf.inforuptcy.com**
- **Michael S Greger    mgreger@allenmatkins.com, kpreston@allenmatkins.com**
- **Brian T Harvey    bharvey@buchalter.com,
  docket@buchalter.com;dbodkin@buchalter.com**
- **Gregory Kent Jones (TR)    gjones@sycr.com,
  smjohnson@sycr.com;C191@ecfcbis.com;cpesis@stradlinglaw.com**
- **Alphamorlai Lamine Kebeh    MKebeh@allenmatkins.com, mdiaz@allenmatkins.com**
- **Raffi Khatchadourian    raffi@hemar-rousso.com**
- **Tinho Mang    tmang@marshackhays.com,
  tmang@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@ecf.courtdrive.com**
- **Ron Maroko    ron.maroko@usdoj.gov**
- **Juliet Y. Oh    jyo@lnbyg.com, jyo@lnbyb.com**
- **Carmela Pagay    ctp@lnbyg.com**
- **Yvonne Ramirez-Browning    yvonne@browninglawgroup.com,
  veronica@browninglawgroup.com**
- **Kurt Ramlo    RamloLegal@gmail.com, kr@ecf.courtdrive.com,ramlo@recap.email**
- **James R Selth    jselth@yahoo.com,
  jselth@yahoo.com,maraki@wztslaw.com,sfritz@wztslaw.com,admin@wztslaw.com**
- **Zev Shechtman    Zev.Shechtman@saul.com,
  zshechtman@ecf.inforuptcy.com;hannah.richmond@saul.com;LitigationDocketing@saul.com**
- **Lindsey L Smith    lls@lnbyb.com, lls@ecf.inforuptcy.com**
- **Randye B Soref    rsoref@polsinelli.com,
  ccripe@polsinelli.com;ladocketing@polsinelli.com**
- **Heidi J Sorvino    sorvinoh@whiteandwilliams.com,
  millnamowm@whiteandwilliams.com;sullivann@whiteandwilliams.com;panchavatis@whiteandwilliams.com;butlert@whiteandwilliams.com**
- **Alan Stomel    alan.stomel@gmail.com, astomel@yahoo.com**
- **Annie Y Stoops    annie.stoops@afslaw.com,
  yvonne.li@afslaw.com;mia.ferguson@afslaw.com**
- **Nicole Sullivan    sullivann@whiteandwilliams.com,
  vulpioa@whiteandwilliams.com,arthura@whiteandwilliams.com**
- **Derrick Talerico    dtalerico@wztslaw.com,
  maraki@wztslaw.com,sfritz@wztslaw.com,admin@wztslaw.com**
- **John N Tedford    JNT@LNBYG.com, jnt@ecf.courtdrive.com**
- **United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov**
- **Larry D Webb    Webblaw@gmail.com, larry@webblaw.onmicrosoft.com**
- **David Wood    dwood@marshackhays.com,
  dwood@ecf.courtdrive.com;lbuchananmh@ecf.courtdrive.com;spineda@ecf.courtdrive.com;alinares@ecf.courtdrive.com**

2