RON BENDER (SBN 143364)
JOHN-PATRICK M. FRITZ (SBN 245240)
LEVENE, NEALE, BENDER,
YOO & GOLUBCHIK L.L.P.
2818 La Cienega Avenue
Los Angeles, California 90034
Telephone: (310) 229-1234
Facsimile: (310) 229-1244
Email: RB@LNBYG.COM; JPF@LNBYG.COM

Attorneys for Chapter 11 Debtor
and Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**LOS ANGELES DIVISION**

| | |
|---|---|
| In re:<br><br>HOLOGENIX, LLC,<br><br>Debtor and Debtor in Possession. | Case No.: 2:20-bk-13849-BR<br><br>Chapter 11 Case<br>Subchapter V<br><br>**DEBTOR'S CHAPTER 11, SUBCHAPTER V PLAN, DATED OCTOBER 20, 2026**<br><br><u>Hearing on Plan Confirmation</u>:<br>Date: January 12, 2027<br>Time: 10:00 a.m.<br>Place: Courtroom 1668<br>255 East Temple Street<br>Los Angeles, CA 90012 |

# I. INTRODUCTION

Hologenix, LLC, a Delaware limited liability company (the "Debtor"), is the debtor and debtor in possession in the above-captioned chapter 11, subchapter V, bankruptcy case (the "Bankruptcy Case") bearing case number 2:20-bk-13849-BR. The Debtor filed a voluntary petition under chapter 11 of 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") and elected subchapter V on April 22, 2020 (the "Petition Date"). The Debtor is operating its business, managing its affairs, and administering its estate as a debtor in possession pursuant to sections 1182(2) and 1184 of the Bankruptcy Code. The United States Trustee (the "UST") appointed Gregory Jones as the subchapter V trustee (the "Trustee") pursuant to 11 U.S.C. § 1183(a).

Chapter 11 subchapter V allows the Debtor (and only the Debtor) to propose a plan. This Plan is a reorganization plan proposed by the Debtor. **This document is the Plan**. It includes (i) a brief history of the business operations of the Debtor; (ii) a liquidation analysis; and (iii) projections with respect to the ability of the Debtor to make payments under the Plan. This information is provided to help you understand the Plan and to decide whether to vote to accept or reject the Plan or otherwise file objections.

The effective date of the Plan (the "Effective Date") will be the first business day that is at least fifteen (15) days following the date of entry of the Court's Order confirming the Plan, provided that all of the following conditions to the effectiveness of the Plan have been satisfied: (a) there shall not be any stay in effect with respect to the Plan Confirmation Order; (b) the Plan Confirmation Order shall not be subject to any appeal or rehearing; and (c) the Plan and all documents, instruments and agreements to be executed in connection with the Plan shall have been executed and delivered by all parties to such documents, instruments and agreements. The Debtor shall have the power to waive only conditions "(b)" and "(c)", and the

Debtor shall not have the power to waive condition "(a)" of the foregoing. The Debtor, following the Effective Date, shall be referred to as the "Reorganized Debtor."

## II. STATUTORY PLAN DISCLOSURES

Bankruptcy Code Section 1190(1) requires that a subchapter (V) plan include: (i) a brief history of the business operations of the Debtor; (ii) a liquidation analysis; and (iii) projections with respect to the ability of the Debtor to make payments under the Plan. 11 U.S.C. § 1190(1).

### A. Brief History of the Business Operations of the Debtor

#### a. The Debtor's Business Prepetition

1. The Debtor was formed as a Delaware limited liability company in 2002.

2. The Debtor is a Los Angeles based company with its main office in Los Angeles, California, and has approximately twelve fulltime employees, plus its CEO, and thirteen independent contractors.

3. The Debtor's business is the scientific development and manufacture of a product for use in various consumer products, including, but not limited to, athletic wear, athleisure wear, bedding as well as residential and commercial furniture.

4. The Debtor's primary product is "CELLIANT," which is a thermo-reactive ceramic mineral compound that when applied or embedded into textiles generates Infrared radiation (IR) to improve the health and wellness of the user.

5. The Debtor holds several registered patents internationally and in the United States Patent and Trademark Office ("USPTO") for CELLIANT and the Debtor's other products.

6. The Debtor has multiple major commercial clients that purchase CELLIANT and other products to use in their athletic wear and other products, which are then sold through various regular channels of commerce to the consumer public.

7. The Debtor's contracts with these commercial manufacturers are for various lengths of time longer than a month-to-month or per-order basis.

8. The path from production to consumer and ultimate payment to the Debtor is a multistep process that takes over a year and sometimes 18+ months: (1) the Debtor signs a commercial contract with a commercial manufacturer; (2) the Debtor provides CELLIANT to the commercial manufacturer; (3) but often CELLIANT is sent to the commercial manufacturer's third-party apparel/product manufacturer, often in another country; (4) the third-party manufacturers the end product using CELLIANT and the commercial manufacturer's brand and specifications; (5) the product goes to the consumer market; (6) if consumers buy the product in which CELLIANT is used, (7) then a portion of those sale proceeds is paid to the Debtor. The portion of the sale funds allocated to the Debtor can be significantly reduced if the commercial manufacturer decides to steeply discount its products in any number of ways, such as back-to-school sales, after-Christmas sales, or clearance sales.

9. The Debtor had been in the growth phase of its business for 2017, 2018, and 2019, when a confluence of several events led to this current bankruptcy filing.

10. On February 28, 2019, one of the Debtor's competitors, Multiple Energy Technologies, LLC ("MET") filed its lawsuit titled "Multiple Energy Technologies, LLC v. Hologenix, LLC" in the United States District Court for the Central District of California, bearing case number 2:19-cv-1483-PA-RAO (the "MET Lawsuit").

11. MET alleged violations of the federal Lanham Act, including that the Debtor had made false or misleading statements about the benefits of Celliant compared to other bioceramics, such as the one produced by MET. MET also alleged that the Debtor's statements constituted intentional interference with economic advantage and/or negligent interference with prospective economic advantage.

12. On April 12, 2019, the Debtor answered and filed counterclaims in the MET Lawsuit. On March 6, 2020, the Debtor and MET voluntarily entered into a settlement (the "MET Settlement") prior to trial or adjudication of any issue of law or fact. Pursuant to the MET Settlement, MET holds a general unsecured claim in the amount of $2,400,000.

13. The MET Lawsuit and MET Settlement by themselves would not have resulted in the Debtor's bankruptcy filing, but a serious of other adverse events quickly unfolded in short

succession thereafter, and the aggregate of all of these events put serious liquidity constraints on the Debtor's business.

14. On or about March 15, 2020, the City of Los Angeles and the State of California had declared a state of emergency with shelter in place orders, business across the city, the state, and many financial and business centers across the United States came to a near total standstill as the nation was gripped by the COVID-19 crisis.

15. The Debtor was expecting a large accounts receivable payment from its largest merchant contract, Under Armour, when Under Armour informed the Debtor that it would not pay the account receivable for at least 90 days. The Debtor was relying on that accounts receivable payment to pay its cash flow needs for regular operating expenses, and without that payment, the Debtor will have to obtain new financing to keep operations running.

16. On April 16, 2020, Under Armour sent to the Debtor a letter making demand for indemnification in connection with a class action lawsuit threatened by a plaintiff and plaintiff law firm against Under Armour for public statements that Under Armour made about its products that use Celliant (though no formal complaint has been lodged against the Debtor). The plaintiff and plaintiff lawyer cited to the MET Lawsuit in its allegation letter against Under Armour.

17. The state of world health and economic affairs and the global recession had a material impact on the Debtor's accounts receivable collection and future revenue projections for many months. The Debtor is part of a global commercial manufacture and consumer sales supply chain (as demonstrated and explained above), and the closing of commercial factories at one end and consumer retail shopping stores at the other end, as well as the disrupted logistical transport system in between, would (and did) negatively impact and slow the Debtor's business for several months.

18. The Debtor determined in its reasonable business judgment that it was in the best interest of its estate to file this current bankruptcy case to preserve the going-concern value of its business and save the jobs of its employees. The Debtor has proposed this Plan to repay its creditors in accordance with the Plan's terms.

**b. The Post-Petition Plan Confirmation Proceedings**

19. At a hearing held on October 6, 2020, the Court confirmed the Debtor's first chapter 11 plan over the sole objection and objecting vote of MET. MET appealed the plan confirmation order, but the confirmed plan went effective on November 12, 2020. More than five weeks later, on December 20, 2020, the United States District Court issued an order staying the plan confirmation order pending the outcome of the appeal. On September 27, 2021, the United States District Court issued its decision vacating the plan confirmation order and remanding to the Bankruptcy Court for further proceedings. At a status conference hearing held on November 16, 2021, at the Bankruptcy Court's suggestion, the Debtor voluntarily withdrew its remanded plan, and a deadline of January 4, 2022.

20. On January 4, 2022, the Debtor filed its second plan, which was set for hearing on February 15, 2022. MET objected that it did not have adequate time for plan objection discovery, and the Court suspended the hearing on the plan indefinitely while MET conducted discovery for six months. In June 2022, the Court sua sponte set a hearing on plan confirmation and a deadline for Debtor to file modifications to its plan due to the passage of time since January. On June 21, 2022, the Debtor filed its modified plan, and, on August 9 and 10, 2022, the Court held a two-day hearing and confirmed Debtor's plan for a second time. Again, MET appealed, obtained a stay of the plan order pending appeal, and, in a four-year process, the District Court reversed and remanded plan confirmation (not on any of the seven issues MET had raised on appeal, but on a novel of issue of law that the District Court raised *sua sponte* and that neither MET nor Debtor nor the Bankruptcy Court had ever raised or discussed). The Debtor appealed to the Ninth Circuit, which accepted the appeal, the Debtor and MET fully briefed the issues on appeal, the matter was set for oral argument for February 2026, and two weeks prior to oral argument the Ninth Circuit issued a decision that it had no jurisdiction over an interlocutory appeal, thereby remanding the matter back to the bankruptcy court without any guidance on the eight issues raised in the appeals. After further briefing, on May 26, 2026, the Bankruptcy Court decided to confirm Debtor's plan on remand on the novel issue of law raised by the District Court's decision, but, later changed its position while drafting the findings of fact

and conclusions of law and on August 25, 2026, informed the Debtor that that plan would not be confirmed because the financial data underlying the plan from June 2022 was too stale for confirmation purposes and, hence, causing Debtor to file the present Plan.

**c. The Debtor's Business Post-Petition**

21. From the Petition Date to present, the Debtor's business operations have sustained the Debtor's going-concern value.

22. The Debtor now has approximately eight employees.

23. The Debtor now has approximately 51 signed customer contracts, but approximately 9 of those customers do not have product in the market and are at various stages of development. Within the 51 signed customer contracts, approximately 18 contracts are U.S. based.

24. The Debtor's accounts receivable was $853,094.56 as of August 31, 2026, and more information on updated accounts receivable is set forth in the Plan's hypothetical liquidation (*see*, **Exhibit 1**, discussed below).

25. The Debtor has one office lease location at 17383 W. Sunset Blvd, Suite A420, Pacific Palisades, California 90272.

26. One of the ongoing challenges to the Debtor's business is litigation and potential litigation. Since the Petition Date, the Debtor has incurred more than $2,000,000.00 of attorneys' fees and costs, mostly related to litigating, and defending against bankruptcy and non-bankruptcy litigation commenced by MET (these figures do not include attorneys' fees and costs for regular, non-litigation patent, trademark, and intellectual property maintenance).

**B. <u>Liquidation Analysis</u>**

One confirmation requirement is the "Best Interest Test," which requires a liquidation analysis. Under the Best Interest Test, if a claimant or interest holder is in an impaired class and that claimant or interest holder does not vote to accept the Plan, then that claimant or interest holder must receive or retain under the Plan property of a value not less than the

amount that such holder would receive or retain if the Debtor were liquidated under chapter 7 of the Bankruptcy Code.

In a chapter 7 case, the debtor's assets are usually sold by a chapter 7 trustee. Secured creditors are paid first from the sales proceeds of properties on which the secured creditor has a lien. Administrative claims are paid next. Next, unsecured creditors are paid from any remaining sales proceeds, according to their rights to priority. Unsecured creditors with the same priority share in proportion to the amount of their allowed claim in relationship to the amount of total allowed unsecured claims. Finally, interest holders receive the balance that remains after all creditors are paid, if any.

For the Court to be able to confirm the Plan, the Court must find that all creditors and interest holders who do not accept the Plan will receive at least as much under the Plan as such holders would receive under a chapter 7 liquidation of the Debtor. The Debtor maintains that this requirement is clearly met.

The impaired class under the Plan consists of classes 1, 2, and 3. The Debtor must therefore satisfy the "best interest of creditors test" with respect to members of classes 1, 2, and 3 that do not vote to accept the Plan.

Attached as **Exhibit 1** hereto, in balance sheet format, is a demonstration of the liquidation analysis in a hypothetical chapter 7 case as of March 1, 2027, which is the projected Plan Effective Date, but if the case were to be converted to chapter 7 instead of the chapter 11 plan being confirmed. As shown in **Exhibit 1**, all creditors and interest holders will receive as much or more under the Plan as they would receive under a Chapter 7 liquidation of the Debtor. *See*, **Exhibit 1**. The Debtor employed Howard B. Grobstein though his accounting firm of Grobstein Teeple LLP as an expert witness to prepare the liquidation analysis. Mr. Grobstein is a CPA and a former chapter 7 panel trustee in the Central District of California. Mr. Grobstein's analysis is set forth in **Exhibit 1**. A declaration and expert report of Mr. Grobstein is also submitted in support of the Plan. It is projected that creditors would receive less in a

hypothetical chapter 7 liquidation compared to the Plan. Therefore, the Plan meets the requirements of the Best Interest Test.

**C. Plan Payment Projections**

The Debtor's five-year plan projections are attached as **Exhibit 2** hereto.

## III. TREATMENT OF CREDITORS' CLAIMS UNDER THE PLAN

**A. What Creditors Will Receive Under the Plan**

As required by the Bankruptcy Code, the Plan classifies certain claims and interests in various "classes" according to their right to priority and leaves other types of claims unclassified. Also, as required by the Bankruptcy Code, the Plan states whether each class of claims or interests is impaired or unimpaired and describes the treatment each class will receive.

**1. Unclassified Claims**

Certain types of claims are not placed into voting classes; instead they are unclassified. The Bankruptcy Code predetermines what type of treatment these claims will receive. They are not considered impaired and they do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code. As such, the Debtor has not placed the following claims in a class.

**a. Administrative Expenses**

Administrative expenses are claims for costs or expenses of administering the Debtor's Bankruptcy Case that are allowed under Bankruptcy Code Section 507(a)(2). The Bankruptcy Code requires that all administrative claims be paid on the Plan Effective Date unless a particular claimant agrees to a different treatment.

The following chart lists all of the Debtor's § 507(a)(2) administrative claims and their treatment under the Plan.

| Name | Amount Owed | Treatment |
|---|---|---|
| Clerk's Office Fees | $0 | Paid in full on the Effective Date |
| Levene, Neale, Bender, | $1,250,000 (est.) | Paid overtime as set forth |

| | | |
|---|---|---|
| Yoo & Golubchik L.L.P. ("LNBYG"), bankruptcy counsel to the Debtor | | in Exhibit 2 out of the Debtor's cash on hand. |
| Gregory Jones, Subchapter V Trustee | $15,000 (est.) | Paid overtime as set forth in Exhibit 2 out of the Debtor's cash on hand. |
| Buchalter, Patent counsel to the Debtor | $115,487.45 (est.) | Paid overtime as set forth in Exhibit 2 out of the Debtor's cash on hand. |
| Troutman Pepper Hamilton Sanders, LLP (f/k/a Troutman Sanders), Patent counsel to the Debtor | $73,642.50 (est.) | Paid overtime as set forth in Exhibit 2 out of the Debtor's cash on hand. |
| Windes, Inc. Accountant to the Debtor | $41,600.00 (est.) | Paid overtime as set forth in Exhibit 2 out of the Debtor's cash on hand. |
| Grobstein Teeple LLP Expert Witness | $50,000 (est.) | Paid overtime as set forth in Exhibit 2 out of the Debtor's cash on hand. |
| **TOTAL** | **$1,545,729.95 (est.)** | **Paid in the manner described above** |

The Court must approve all professional fees and expenses listed in this chart before they may be paid. For all professional fees and expenses (except fees owing to the Clerk of the Bankruptcy Court), the professional in question must file and serve a properly noticed fee application and the Court must rule on the application. Only the amount of fees and expenses allowed by the Bankruptcy Court will be required to be paid under the Plan. The administrative claim amounts set forth above simply represent the Debtor’s best estimates as to the amount of allowed administrative claims in the Bankruptcy Case. The actual administrative claims may be higher or lower. Much of whether the actual administrative claims described above for professionals will be dependent upon whether the Debtor is required to engage in any substantial litigation regarding the confirmation of the Plan and/or objecting to claims. To the extent the Debtor is required to engage in any such substantial litigation, the Debtor is likely to incur professional fees and expenses in excess (and possibly substantially in excess) of the

figures set forth above. By voting to accept the Plan, creditors are not acknowledging the validity of, or consenting to the amount of, any of these administrative claims, and creditors are not waiving any of their rights to object to the allowance of any of these administrative claims. By including the figures described above, the Debtor is not acknowledging the validity of, or consenting to the amount of, any of these administrative claims, and the Debtor is not waiving any of its rights to object to the allowance of any of these administrative claims. Similarly, professionals who have been employed in the Bankruptcy Case are not being deemed to have agreed that the figures contained herein represent any ceiling on the amount of fees and expenses that they have incurred or are entitled to seek to be paid pursuant to Bankruptcy Court order as such fees and expenses are just estimates provided at the time of the preparation of the Disclosure Statement.

To the extent administrative claims are allowed prior to the Effective Date, such allowed administrative claims may be paid by the Debtor out of the Debtor's funds provided the Debtor has sufficient funds to pay them. To the extent administrative claims are allowed after the Effective Date, such allowed administrative claims will be paid by the Reorganized Debtor.

**b. Priority Tax Claims**

Prepetition priority tax claims include certain unsecured income, employment and other taxes described by Section 507(a)(8) of the Bankruptcy Code. Section 1129(a)(9)(C) of the Bankruptcy Code requires that each holder of such a Section 507(a)(8) priority tax claim receive regular installment payments of a total value, as of the Plan Effective Date, equal to the allowed amount of such allowed tax claims, over a period ending not later than five years after the Petition Date, and not less favorable than other creditors paid under the Plan. Interest rates on these claims are conclusively determined by applicable non-bankruptcy law as of the month that the Plan is confirmed. 11 U.S.C. § 511.

Under the Plan, all allowed Section 507(a)(8) priority tax claims will be paid in full on the Effective Date or as soon thereafter as is practicable.

A failure by the Debtor to make a payment on the priority tax claims pursuant to the terms of the Plan will be an event of default. If the event of default is not cured within thirty (30) days after service of written notice of default from the taxing authority, then the taxing authority may enforce its applicable remedies exclusively by application to the Bankruptcy Court and with jurisdiction maintained exclusively by the Bankruptcy Court. The chart below indicates all priority tax claims which were either scheduled by the Debtor or asserted by the taxing agencies in timely filed proofs of claim. The inclusion of the claims in the chart below is intended simply to reflect the claims that have been scheduled and/or asserted in timely filed proofs of claim as priority tax claims, and is not intended to be a concession by the Debtor regarding the validity of the amount of any such claims or the classification of such claims as priority tax claims under Section 507(a)(8) of the Bankruptcy Code.

| Claimant | Proof of Claim No. | Claim Amount | Amount Already Paid Under Original Plan | Balance Owing |
|---|---|---|---|---|
| County of Los Angeles | 4 | $577.32 | $577.32 | $0 |
| Cal. Franchise Tax Board | 3 | $800.00 | $800.00 | $0 |
| IRS | 6 | $435.00 | $435.00 | $0 |

After the original plan went effective on November 12, 2020, the Debtor paid the above listed priority tax claims in full pursuant to the plan prior to the District Court entering an order staying the plan confirmation order; accordingly, the balance owing on these prepetition priority tax claims has already been reduced to $0.

**2. Classified Claims and Interests**

**a. Non-Tax Pre-Petition Priority Claims**

Certain prepetition priority claims that are referred to in Bankruptcy Code Sections 507(a)(4), (5), (6), and (7) are required to be placed in classes. These types of claims are entitled to priority treatment under the Bankruptcy Code as each holder of such an allowed claim must receive cash on the Effective Date equal to the allowed amount of such claim. However, the holder of such an unsecured priority claim may agree to accept deferred cash

payments of a value, as of the Effective Date, equal to the allowed amount of such claim. The Debtor's schedules reflect no creditors as holding priority unsecured claims. No creditors filed proofs of claim asserting non-tax priority unsecured claims. The below chart summarizes the priority non-tax claims and whether the Debtor is considering an objection at this time:

| **Name** | **Claim No.** | **Objection** | **Claim Amount** |
|---|---|---|---|
| None | N/A | N/A | $0.00 |

**b. Class 1 – Allowed Claims of Convertible Noteholders**

Class 1 consists of: (A) Class 1A, comprised of the allowed unsecured claims of Seth Casden, The Alvaro Pascotto Revocable Trust, and Julien Born, as summarized in the table immediately below; and (B) Class 1B, comprised of the allowed secured claim Murali Sundar as summarized in the table immediately below:

| Class | Claimholder | Principal | Interest through 3/1/2027 | Total |
|---|---|---|---|---|
| 1A | Seth Casden | $1,666,333.00 | $0 | $1,666,333.00 |
| 1A | Alvaro Pascotto Revocable Trust | $100,000.00 | $0 | $100,000.00 |
| 1A | Julien Born | $150,000.00 | $0 | $150,000.00 |
| 1B | Murali Sundar | $200,000.00 | $146,753.18 | $346,753.18 |
| | Total | $2,116,333.00 | $146,753.18 | $2,263,086.18 |

| **CLASS #** | **DESCRIPTION** | **IMPAIRED VOTING** | **TREATMENT** |
|---|---|---|---|
| 1A | Claimants:<br>Seth Casden, Alvaro Pascotto Revocable Trust; Julien Born<br><br>Type of Claim:<br>Allowed unsecured claim<br><br>Claim amount:<br>$1,916,333.00<br><br>Collateral:<br>None | Impaired<br><br>Entitled to vote. | Class 1A shall have allowed unsecured claims in the amount of $1,966,333.00.<br><br>No lien<br><br>No Interest<br><br>Maturity Date of 10/31/2022 extended to 10/31/2032<br><br>Class 1A creditors will not receive any payments under the Plan. Class 1A convertible notes will convert to equity on a date at each convertible noteholder's election not sooner than the Plan Effective Date and not later than the extended maturity date of 10/31/2032.<br><br>Unless otherwise altered by the Plan, other terms in the prepetition loan and security documents remain in full force and effect between the Debtor and the Class 1A claimants, except that Class 1A shall have no lien; Class 1A retains their right to convert their convertible notes to equity |

| CLASS # | DESCRIPTION | IMPAIRED VOTING | TREATMENT |
|---|---|---|---|
| 1B | Claimant: Murali Sundar<br><br>Type of Claim: Allowed secured claim<br><br>Claim amount: $346,753.18 | Impaired<br><br>Entitled to vote. | Class 1B shall have an allowed secured claim in the amount of $200,000.00 principal, plus accrued unpaid interest projected as of March 1, 2027, to be $146,753.18.<br><br>Senior secured lien on all of the Debtor's assets<br><br>Interest rate: 8.0% per annum<br><br>Maturity Date of 10/31/2022 extended to 10/31/2032<br><br>Class 1B creditor will not receive any payments under the Plan. Class 1B convertible note will convert to equity on a date at the convertible noteholder's election not sooner than the Plan Effective Date and not later than the extended maturity date of 10/31/2032.<br><br>Unless otherwise altered by the Plan, other terms in the prepetition loan and security documents remain in full force and effect between the Debtor and the Class 1B claimant, and Class 1B retains its right to convert its convertible notes to equity. |

**c. Classes of General Unsecured Claims**

General unsecured claims are unsecured claims not entitled to priority under Bankruptcy Code Section 507(a). The following chart identifies the Plan's treatment of the class containing all of the Debtor's non-insider, non-priority general unsecured claims (see the Claims Chart for detailed information about each general unsecured claim):

| **CLASS #** | **DESCRIPTION** | **IMPAIRED (Y/N)** | **TREATMENT** |
|---|---|---|---|
| 2 | All non-insider general unsecured claims of the Debtor not included in any other class.<br><br>Total amount of class 3 claims is $4,088,217.61.<br><br>The Claims Chart attached as **Exhibit 3** to the Plan shows all claims which were scheduled by the Debtor and all proofs of claim which have been filed against the Debtor that are in Class 2. | Yes.<br><br>Entitled to vote | In full and final satisfaction of each, any, and all of their claims against the Debtor, each holder of a class 2 allowed claim will receive a cash payment equal to its prorated share of the Debtor's net disposable income over the life of the five-year Plan commencing as of the Effective Date (the "Net Disposable Income"), and upon confirmation of the Plan, the amount of $500,000 as set forth on **Exhibit 2** to the Plan, shall be and is conclusively determined to be the net disposable income pursuant to 11 U.S.C. § 1191.<br><br>Class 2 shall receive the Net Disposable Income in the total amount of $500,000.<br><br>Payment to Class 2 shall be made by the Debtor on an annual basis one the annual anniversary of the Plan Effective Date.<br><br>Class 2 will not receive interest on their claims.<br><br>The Debtor may prepay the Net Disposable Income to Class 2 at any time without prepayment penalty.<br><br>The Debtor may pay the entirety of the Net Disposable Income on or within 90 days of the Effective Date at net present value ("NPV") in the total amount of $170,884.00 in full and final satisfaction of all Class 2 claims. The NPV is based on a discounted cash flow ("DCF") method with a discount rate of 40% as shown on **Exhibit 4** |

| | | | |
|---|---|---|---|
| | | | hereto and supported by Mr. Grobstein's report.<br><br>Class 2 shall also receive an additional $47,406 on the Effective Date [ECF 465, 755].<br><br>If checks are in amounts of less than $50, such checks may be deferred until the next annual payment until the aggregate due to such creditor is in an amount of at least $50. If payments are made on NPV Net Disposable Income, then a single and final check will be distributed to the Class 2 creditor even if below the $50 threshold.<br><br>In the event of a default in payment, holders of Class 2 allowed claims may seek enforcement of Plan treatment in the Bankruptcy Court as their exclusive remedy with the Bankruptcy Court holding exclusive jurisdiction.<br><br>Attached as **Exhibit 3** to the Plan is a listing of the name and dollar amount of the class 2 allowed claims expected to be paid by the Debtor pursuant to the terms of the Plan, and the estimated prorated recovery for Class 2 with and without NPV prepayment, based on the current total allowed Class 2 claims and NPV Net Disposable Income, is set forth on **Exhibit 3**. |

The following chart identifies the Plan's treatment of the class containing all of the Debtor's insider, non-priority general unsecured claims (see the Claims Chart for detailed information about each general unsecured claim):

[remainder of page intentionally left blank]

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| 3 | Insider general unsecured claims of the Debtor not included in any other class.<br><br>Total amount of class 3 claims is $1,767,406.00<br><br>This class is comprised of insider general unsecured claims and post-petition administrative claims as set forth below. | Yes.<br><br>Entitled to vote | The Class 3 claims will be equitably subordinated and recharacterized as equity.<br><br>Class 3 claimants will not receive any payment on account of their Class 3 claims.<br><br>No interest. |

| Class 3 Creditor | Notes[1] | Claim |
|---|---|---|
| Northern Trust Company of Delaware | Scheduled | $1,000,000.00 |
| Seth Casden | Scheduled | $435,000.00 |
| Michael Haynes | Scheduled | $27,500.00 |
| Graham Casden | Scheduled | $170,000.00 |
| Leslie Margolin | 549 repayment | $17,500.00 |
| Kevin Blaney | 549 repayment | $17,500.00 |
| Scott Carlin | 549 repayment | $17,500.00 |
| Julien Born | 549 repayment | $15,000.00 |
| Michael Haynes | 549 repayment | $20,000.00 |
| Seth Casden | 547 repayment | $47,406.00 |
| **Total** | | $1,767,406.00 |

**e. Class of Interest Holders**

Interest holders are the parties who hold an ownership interest (i.e., equity interest) in the Debtor.

In compliance with 11 U.S.C. § 1123(a)(6), the Debtor's charter, bylaws, and/or operating agreement will be amended to provide for the inclusion of a provision prohibiting the issuance of nonvoting equity securities, and providing, as to the several classes of securities possessing voting power, an appropriate distribution of such power among classes.

The following chart identifies the Plan's treatment of the class of interest holders:

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| 4 | The equity interest holders are listed on **Exhibit 5** to the Plan | Unimpaired<br><br>The class 4 interest holders are conclusively presumed to have voted to accept the Plan by operation of law | The class 4 equity interests will retain their rights and interests without impairment.<br><br>Class 4 receives no payments on account of their equity interest under the Plan. |

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| 5 | The "phantom" equity interest holders are listed on **Exhibit 5** to the Plan | Unimpaired<br><br>The class 5 interest holders are conclusively presumed to have voted to accept the Plan by operation of law | The class 5 "phantom" equity interests will retain their rights and interests without impairment.<br><br>Class 5 receives no payments on account of their equity interests under the Plan. |

[1] "Scheduled" refers to a claim scheduled in the Debtor's bankruptcy schedules D or E/F. "549 Repayment" refers to each creditor's voluntary return of funds on account of the Court's

**B. Means of Effectuating and Implementing the Plan**

**1. Funding for the Plan**

The Plan will be funded with the Debtor's cash on hand on the Plan Effective Date and continued business operations. The Debtor's plan projections of future income are attached as **Exhibit 2** to the Plan. After exiting bankruptcy, the Debtor will attempt to refinance to effectuate the NPV payment to Class 2 and the estate's allowed administrative expense claims.

**2. Composition of the Debtor After the Effective Date**

After the Effective Date, the Debtor shall be known as the "Reorganized Debtor." The members of the Debtor will remain the same as the Debtor's current members.

**3. Post-Confirmation Management and Compensation**

The Reorganized Debtor will be managed by Seth Casden, the co-founder and current CEO of the Debtor. Mr. Casden will also be assisted by the Debtor's officers and board members with the following roles and compensation:

| Name | Title[2] | Annual Compensation | Performance-Based Bonus |
|---|---|---|---|
| Seth Casden | CEO | $300,000[3] | Up to 50% of salary |
| Francis Parish | CFO | $120,000 | None |
| Leslie Margolin | Board Member | $20,000 | None |
| Scott Carlin | Board Member | $20,000 | None |
| Julien Born | Board Member | $20,000 | None |
| Kevin Blaney | Board Member | $20,000 | None |
| Michael Haynes | Board Member | $20,000 | None |
| Seth Casden | Board Member | None | None |

---

instructions in relation to 11 U.S.C. § 549. *See*, ECF 635 at 8-13.

[2] Other than Seth Casden, the listing here of a person with an officer title is not an admission that such person is an officer meeting the definition of "insider" under the Bankruptcy Code; the listing of individuals here is for the purpose of disclosure compliance with 11 U.S.C. § 1129(a)(5) to demonstrate the management support Mr. Casden will have in his officer role.

[3] The $300,000 is as of 2019, with a contractual 3% annual increase on January 1 of each year.

| Bonus for: | Seth Casden |
|---|---|
| Personal Target | 30% |
| EBITDA Target | 10% |
| Revenue Target | 10% |

**4. Disbursing Agent**

If the Plan is confirmed pursuant to 11 U.S.C. § 1191(a), the Reorganized Debtor will act as the disbursing agent under the Plan. If the Plan is confirmed pursuant to 11 U.S.C. § 1191(b), notwithstanding Local Bankruptcy Rule 3020-2(c)(1), the Reorganized Debtor (and not the Trustee) will act as the disbursing agent under the Plan and submit a quarterly report to the Trustee, within 45 days after the end of each quarter, detailing the payees and amounts of payment to creditors under the Plan with bank statements as proof of payment. The Reorganized Debtor will not charge any disbursing agent fee for making the Plan distributions.

**5. Objections to Claims**

The Debtor or the Reorganized Debtor, as the case may be, will file objections to all claims that are inconsistent with the Debtor's books and records or are otherwise objectionable to the Debtor unless the Debtor deems the inconsistency to be insignificant. With respect to disputed claims that are not resolved prior to the Plan Effective Date, the Reorganized Debtor will have the authority, in its sole discretion, and in the reasonable exercise of its business judgment, to settle or compromise any disputed claim without further notice or Court approval. As provided by Section 502(c) of the Bankruptcy Code, the Bankruptcy Court may estimate any contingent or unliquidated disputed claim for purposes of confirmation of the Plan. As of the Effective Date, the Reorganized Debtor shall have the sole authority and standing to file any objections to claims following the confirmation of the Plan, and the Court shall retain jurisdiction over the Debtor, the Reorganized Debtor, and the Bankruptcy Case to resolve such

[3] With contractual 10% annual increase on June 17 of each year.

objections to claims following the confirmation of the Plan. Nothing contained in the Plan shall constitute a waiver or release by the Debtor or the Reorganized Debtor of any rights of setoff or recoupment, or of any defense, the Debtor or the Reorganized Debtor may have with respect to any claim. The deadline for filing claims objections shall be 180 days after the Plan Effective Date.

**6. Avoidance Actions, Strong Arm Powers, and Causes of Action**

All avoidance actions and strong-arm powers of a trustee under chapter 5 of the Bankruptcy Code, shall irrevocably vest in the Debtor and be transferred in total to the Reorganized Debtor upon confirmation of the Plan, with sole authority, control, and standing held by the Reorganized Debtor. To the extent that the statute of limitations has not already run, the deadline for filing avoidance actions under chapter 5 of the Bankruptcy Code shall be the Plan Effective Date. The deadline for the Debtor or Reorganized Debtor to file any non-avoidance action shall be the later of (i) the statute of limitations for such cause of action and (ii) two years after the Petition Date. Regardless of whether they are listed on the Debtor's bankruptcy schedules of assets or specified in the Plan, all causes of action owned by the Debtor shall vest in the Reorganized Debtor unless specifically settled with such settlement approved by order of the Bankruptcy Court prior to confirmation of the Plan.

**7. Employment of Professionals by the Reorganized Debtor and Payment of Professional Fees and Expenses After the Effective Date**

On and after the Effective Date, the Reorganized Debtor shall have the right to employ and compensate professionals as the Reorganized Debtor determines is appropriate and to compensate any such professionals without the need for any further order of the Bankruptcy Court.

**8. Exemption from Transfer Taxes**

Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of a security, or the making or delivery of an instrument of transfer under a plan confirmed under section 1129 or 1191 of the Bankruptcy Code, may not be taxed under any law imposing a

stamp tax or similar tax. Transfers under the Plan that are exempt from taxes under section 1146 of the Bankruptcy Code include all transfers by the Debtor after the commencement of the Bankruptcy Case in contemplation of the Plan but prior to the Effective Date. The taxes from which such transfers are exempt include stamp taxes, recording taxes, sales and use taxes, transfer taxes, and other similar taxes.

**9. Distributions to Be Made Pursuant to the Plan**

Except as otherwise agreed to by the Reorganized Debtor in writing, distributions to be made to holders of allowed claims pursuant to the Plan may be delivered by regular mail, postage prepaid, to the address shown in the Debtor's schedules, as they may from time to time be amended in accordance with Bankruptcy Rule 1009, or, if a different address is stated in a proof of claim duly filed with the Bankruptcy Court, to such address. Checks issued to pay allowed claims shall be null and void if not negotiated within sixty (60) days after the date of issuance thereof.

**10. Exculpations and Releases**

To the maximum extent permitted by law, neither the Debtor, the Reorganized Debtor, their management, nor any of their professionals employed or retained by any of them, whether or not by Bankruptcy Court order, shall have or incur any liability to any person or entity for any act taken or omission made in good faith in connection with or related to the formulation and implementation of the Plan, or a contract, instrument, release, or other agreement or document created in connection therewith, the solicitation of acceptances for or confirmation of the Plan, or the consummation and implementation of the Plan and the transactions contemplated therein, including the distribution of estate funds.

**11. Injunctions**

The Plan Confirmation Order shall enjoin the prosecution, whether directly, derivatively or otherwise, of any claim, obligation, suit, judgment, damage, demand, debt, right, cause of action, equitable remedy, liability or interest released, discharged, stayed, or terminated pursuant to the Plan. Except as provided in the Plan or the Plan Confirmation Order, as of the

Plan Effective Date, all entities that have held, currently hold or may hold a claim or other debt or liability or equitable remedy that was stayed or is discharged or an interest or other right of an equity security holder that is extinguished pursuant to the terms of the Plan are permanently enjoined from taking any of the following actions against: (I) (a) the Debtor or (b) the Reorganized Debtor, or (II) their property; on account of any such discharged claims, debts or liabilities or extinguished interests or rights: (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting or enforcing any lien or encumbrance; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtor; and (v) commencing or continuing any action in any manner, in any place, that does not comply with or is inconsistent with the provisions of the Plan. By accepting distributions pursuant to the Plan, each holder of an allowed claim receiving distributions pursuant to the Plan shall be deemed to have specifically consented to the injunctions set forth in this Section. The injunction described in this paragraph (the "Injunction") is applicable to ***all*** creditors and parties in interest with respect to claims or causes of action arising or existing prior to the Plan Effective Date.

All creditors and parties in interest who are presented with a copy of the Plan Confirmation Order are charged with actual knowledge of the Injunction and with actual knowledge that the Injunction is applicable to said creditor and/or party in interest ("Actual Knowledge"), such that it is impossible for said creditor and/or party in interest to have a good faith belief that the Injunction does not apply to said creditor's and/or party in interest's claim or cause of action. Accordingly, any creditor and/or party in interest charged with such Actual Knowledge may be held in contempt for violating the Injunction, which contempt proceeding shall include the Reorganized Debtor's reasonable attorneys' fees and costs for enforcing the Injunction.

**12. Executory Contracts and Unexpired Leases**

To the extent not already assumed or rejected, on the Effective Date, the Debtor will assume the executory contracts and unexpired leases set forth on **Exhibit 6** to the Plan with the cure amount set forth on that exhibit. On the Effective Date, all of the Debtor's remaining executory contracts and unexpired leases which have not previously been assumed or rejected by the Debtor shall be deemed to be rejected by the Debtor effective as of 11:59 PST on the Plan Effective Date. **THE BAR DATE FOR FILING A PROOF OF CLAIM BASED ON A CLAIM ARISING FROM THE REJECTION OF AN UNEXPIRED LEASE OR EXECUTORY CONTRACT WHICH IS REJECTED ON THE PLAN EFFECTIVE DATE WILL BE THIRTY DAYS AFTER THE PLAN EFFECTIVE DATE.** Any claim resulting from the Debtor's rejection of an unexpired lease or executory contract will be barred if the proof of claim is not timely filed, unless the Court orders otherwise. Any allowed claim resulting from the Debtor's rejection of an unexpired lease or executory contract will constitute a class 3 allowed claim if a non-insider, and a class 4 allowed claim if an insider. Any allowed claim resulting from the Debtor's rejection of an unexpired lease or executory contract will be subject to the limitations set forth in 11 U.S.C. § 502(b) and other applicable sections of the Bankruptcy Code.

**13. Changes in Rates Subject to Regulatory Commission Approval**

The Debtor is not subject to governmental regulatory commission approval of its rates.

**14. Retention of Jurisdiction**

After confirmation of the Plan and occurrence of the Plan Effective Date, in addition to jurisdiction which exists in any other court, the Bankruptcy Court will retain such jurisdiction as is legally permissible including for the following purposes:

i. To resolve any and all disputes regarding the operation and interpretation of the Plan and the Plan Confirmation Order;

ii. To determine the allowability, classification, or priority of claims and interests upon objection by the Debtor or the Reorganized Debtor and to consider any objection to claim or interest whether such objection is filed before or after the Effective Date;

iii. To determine the extent, validity and priority of any lien asserted against property of the Debtor and property of the Debtor's estate;

iv. To construe and take any action to enforce the Plan, the Plan Confirmation Order, and any other order of the Bankruptcy Court, issue such orders as may be necessary for the implementation, execution, performance, and consummation of the Plan, the Plan Confirmation Order, and all matters referred to in the Plan and the Plan Confirmation Order, and to determine all matters that may be pending before this Bankruptcy Court in this Bankruptcy Case on or before the Effective Date with respect to any person or entity related thereto;

v. To determine any and all applications for allowance of compensation and reimbursement of expenses of professionals for the period on or before the Effective Date;

vi. To determine any request for payment of administrative expenses;

vii. To determine motions for the rejection, assumption, or assignment of executory contracts or unexpired leases filed before the Effective Date and the allowance of any claims resulting therefrom;

viii. To determine all applications, motions, adversary proceedings, contested matters, and any other litigated matters instituted during the pendency of the Bankruptcy Case whether before, on, or after the Effective Date;

ix. To determine such other matters and for such other purposes as may be provided in the Plan Confirmation Order;

x. To modify the Plan under Section 1193 of the Bankruptcy Code in order to remedy any apparent defect or omission in the Plan or to reconcile any inconsistency in the Plan so as to carry out its intent and purpose upon motion by the Reorganized Debtor;

xi. Except as otherwise provided in the Plan and the Plan Confirmation Order, to issue injunctions, to take such other actions or make such other orders as may be necessary or appropriate to restrain interference with the Plan or the Plan Confirmation Order, or the execution or implementation by any person or entity of the Plan or the Plan Confirmation Order;

xii. To issue such orders in aid of consummation of the Plan and the Plan Confirmation Order, notwithstanding any otherwise applicable nonbankruptcy law, with respect to any person or entity, to the fullest extent authorized by the Bankruptcy Code or Bankruptcy Rules;

xiii; To enter a discharge, under 11 U.S.C. §§ 1192 and 1141(d), if applicable; and

xiv. To enter a final decree closing the Bankruptcy Case.

## IV. EFFECT OF CONFIRMATION OF THE PLAN

### A. Discharge.

If the Plan is confirmed pursuant to 11 U.S.C. § 1191(a), the Debtor shall receive a discharge of its debts pursuant to 11 U.S.C. § 1141(d) on the Effective Date. If the Plan is confirmed pursuant to 11 U.S.C. § 1191(b), the Debtor shall receive a discharge pursuant to 11 U.S.C. §§ 1192 and 1141(d), as soon as practicable after the Debtor has completed payment to the Classes for which the Plan was confirmed pursuant to 11 U.S.C. § 1191(b). If the Debtor prepays the Net Disposable Income under the Plan to Class 2, then the discharge pursuant to 11 U.S.C. §§ 1141(d)(1) and/or 1192 shall be effective upon such prepayment.

### B. Modification of the Plan.

The Debtor may modify the Plan at any time before confirmation. However, the Bankruptcy Court may require re-voting on the Plan if the Debtor modifies the Plan before confirmation in a manner that materially and adversely affects a creditor or interest holder that had voted in favor of the Plan. If the Plan is confirmed pursuant to 11 U.S.C. § 1191(a), the Reorganized Debtor may seek to modify the Plan at any time after confirmation of the Plan so long as (1) the Plan has not been substantially consummated, (2) circumstances warrant the modification, and (3) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

If the Plan is confirmed pursuant to 11 U.S.C. § 1191(b), the Reorganized Debtor may seek to modify the Plan during the life of the Plan as fixed by the Court, so long as (1) the modified plan still meets the requirements of 11 U.S.C. § 1191(b), (2) circumstances warrant the modification, and (3) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

**C. <u>Post-Confirmation Status Reports.</u>**

Until a final decree closing the Bankruptcy Case is entered, the Post-Confirmation Debtor will file post-confirmation status reports with the Bankruptcy Court on a schedule as set forth by the Bankruptcy Court explaining what progress has been made toward consummation of the confirmed Plan. Even if the Plan is confirmed pursuant to 11 U.S.C. § 1191(b), the Debtor, and not the Trustee, will file the post-confirmation reports, notwithstanding Local Bankruptcy Rule 3020-2(c)(2)

The requirement of Local Bankruptcy Rule 3020-2(b)(2) for filing a report within 14 days of entry of the Plan Confirmation Report to set forth an anticipated substantial consummation date is waived. If the Plan is confirmed pursuant to 11 U.S.C. § 1191(a), the projected substantial consummation date will be when the administrative expense claims are approved and paid. If the Plan is confirmed pursuant to 11 U.S.C. § 1191(b), the projected substantial consummation date will be when Class 2 payments are completed. Nothing in the Plan waives the requirement of Local Bankruptcy Rule 3020-2(b)(4) for filing a notice that substantial consummation of the Plan has occurred.

**D. <u>Post-Confirmation Conversion/Dismissal.</u>**

A creditor or any other party in interest may bring a motion to convert or dismiss the Bankruptcy Case under Section 1112(b) of the Bankruptcy Code after the Plan is confirmed, but before the final decree is entered, if there is a default in performing the Plan. If the Bankruptcy Court orders the Bankruptcy Case converted to chapter 7 after the Plan is confirmed, then all property that had been property of the Debtor's chapter 11 estate that has

not been disbursed pursuant to the Plan will revest in the chapter 7 estate, and the automatic stay will be reimposed upon the revested property, but only to the extent that relief from stay was not previously authorized by the Bankruptcy Court during the Bankruptcy Case. The Plan Confirmation Order may also be revoked under very limited circumstances. The Bankruptcy Court may revoke the Plan Confirmation Order if it was procured by fraud and if a party in interest brings an adversary proceeding to revoke confirmation before 180 days after the entry of the Plan Confirmation Order pursuant to 11 U.S.C. § 1144. If the Debtor and/or Reorganized Debtor successfully defends against an adversary proceeding or other lawsuit to revoke discharge, revoke the Plan Confirmation Order, or otherwise allege confirmation by fraud, then Debtor and/or Reorganized Debtor may request an award and recovery of reasonable attorneys' fees and costs against any such plaintiff.

**E. Final Decree.**

Once this estate has been fully administered as referred to in Bankruptcy Rule 3022, the Reorganized Debtor will file a motion with the Bankruptcy Court to obtain a final decree to close the Bankruptcy Case. The Reorganized Debtor will be responsible for the timely payment of all fees incurred pursuant to 28 U.S.C. § 1930(a)(6). Notwithstanding Local Bankruptcy Rule 3022-2(c), if the Plan is confirmed pursuant to 11 U.S.C. § 1191(b), the Reorganized Debtor (and not the Trustee) will file final reports, accounts, and motion for final decree.

Presented By:

LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.

By: */s/ John-Patrick M. Fritz*
RON BENDER
JOHN-PATRICK M. FRITZ
Attorneys for Chapter 11
Debtor and Plan Proponent

Hologenix, LLC

By:____________________________
Seth Casden
Chief Executive Officer

# Exhibit 1

**Debtor:** ***In re Hologenix, LLC***
**Case number: 2:20-bk-13849-BR**

**Exhibit 1: Liquidation Analysis (as of March 1, 2027)**

**Estimated Liquidation Value of Assets**

| **Non-Exempt Assets** | | **Book Value** | | **Chapter 11** | **Liquidation Discount** | **Chapter 7** | |
|---|---|---|---|---|---|---|---|
| Cash on hand | [1] | $571,666.54 | | $571,666.54 | 0% | $571,666.54 | |
| Cash Reserved for Operations | [2] | N/A | | ($269,307.39) | N/A | $0.00 | |
| Net Projected Disposable Income from Operations | [3] | N/A | | $1,617,911.21 | N/A | $0.00 | |
| Accounts Receivable | [4] | $604,332.42 | | $0.00 | 40% | $362,599.45 | |
| Investment in Agriculture Research | [5] | $87,461.43 | | $0.00 | 100% | $0.00 | |
| Inventory | [6] | $1,085,021.45 | | $0.00 | 85% | $162,753.22 | |
| Fixed Assets | [7] | $81,813.65 | | $0.00 | 90% | $8,181.36 | |
| Intellectual Property | [8] | $1,218,046.56 | | $0.00 | 90% | $121,804.66 | |
| Lease Deposits | [9] | $108,015.93 | | $0.00 | 100% | $0.00 | |
| **Total** | | $3,756,357.98 | | $1,920,270.36 | | $1,227,005.23 | |
| Less: Chapter 7 trustee fees and expenses | – | | | $0.00 | | $62,560.16 | |
| Less: Chapter 7 trustee legal and accounting fees | | | | $0.00 | | $125,000.00 | [10] |
| Less: Chapter 11 Estimated Professional Fees (legal and accounting) | – | | [11] | $1,405,270.36 | | $1,405,270.36 | |
| Less: SubChapter V trustee fees and expenses | – | | | $15,000.00 | | $15,000.00 | |
| Less: Class 1A | – | | [12] | $0.00 | | $0.00 | |
| Less: Class 1B (Murali Sundar) | | | | $0.00 | | $346,753.18 | [13] |
| Less: Priority claims (excluding administrative expense claims) | – | | [14] | $0.00 | | $0.00 | |
| **(1) Estimated amount available to pay allowed general unsecured claims** | | | | **$500,000.00** | | **($727,578.47)** | |
| **(2) Total dollar amount of non-insider unsecured claims** | | | [15] | **$4,088,217.61** | | **$4,088,217.61** | |
| **(3) Total dollar amount of insider and non-insider unsecured claims** | | | | | | **$7,637,050.61** | [16] |
| **Estimated Minimum Percentage Dividend (non-insider claims only):** | | | | 12.2% | | -17.8% | |
| **Estimated Minimum Percentage Dividend (insider and non-insider unsecured claims):** | | | | | | -9.5% | |
| **Class 2 NPV Payment** | | | [17] | $ 170,884.00 | | | |

**The Liquidation Analysis takes into account the following:**

[1] Cash on hand consists of the anticipated funds held in the Debtor-in-Possession accounts on the effective date of the Plan.

[2] The Debtor projects this amount is needed for continued operations.

[3] Per Debtor, the Debtor anticipates that the Net Projected Disposable Income from Operations will be approximately $1,617,911.21.

[4] Debtor's anticipated accounts receivable as of March 1, 2027 is estimated at $604,332.42. GT estimates that in an immediate liquidation of accounts receivable under Chapter 7, it would recover approximately 60% of the amount it would collect under its Chapter 11 plan of reorganization.

[5] Per Seth Casden, the Debtor's books and records inadvertently identified the Investment in Agriculture Research as "FDA - Patents & Other." The other three categories "FDA - Clinical Studies," "FDA - Legal & Professional," and "Patents & Trademarks" are liabilities that should have been included in the category of "Intellectual Property." Debtor has now corrected this in its books and records. GT was initally provided this information by Seth Casden on February 18, 2022 via a Zoom meeting. The amount listed is the updated Book Value provided by the Debtor as of March 1, 2027. Debtor's investment in agriculture research in not an asset that can be liquidated or used for repayment under a Chapter 11 plan, therefore, it has been adjusted to zero. Book Value used as of March 1, 2027.

[6] The current value of the inventory is $1,085,021.45. GT estimates that the liquidation value in a Chapter 7 bankruptcy it would recover approximately 15% of the book value. Book Value used as of March 1, 2027.

[7] GT estimates the Chapter 7 liquidation value of Fixed Assets is estimated to be approximately 10% of the book value. It is assumed the FF&E would not be liquidated in a Chapter 11, therefore, the value would be $0.00. Book Value used as of March 1, 2027.

[8] Per information provided by Seth Casden as described in FN 5, the liability has been increased to include the categories of "FDA - Clinical Studies," "FDA - Legal & Professional," and "Patents & Trademarks." GT estimates the Chapter 7 liquidation value of its Intellectual Property is estimated to be approximately 10% of the book value. It is assumed the Intellectual Property would not be liquidated in a Chapter 11, therefore, the value would be $0.00. Book Value used as of March 1, 2027.

[9] GT estimates the Chapter 7 liquidation value of Lease Deposits is estimated to be approximately 0% of the book value as it would very likely not be collectible. It is assumed the Lease Deposits would not be liquidated in a Chapter 11, therefore, the value would be $0.00. Book Value used as of March 1, 2027.

[10] Estimated legal and accounting fees incurred by a Chapter 7 Trustee would be reduced significantly to $125,000 from the $350,000 originally set forth in January 2022.

[11] Chapter 11 Professional Fees are estimated as follows: (1) Levene, Neale, Bender, Yoo & Golubchik, L.L.P.; (2) Gregory Jones - Subchapter V Trustee (shown on separate line); Grobstein Teeple, LLP; Buchalter; Troutman Pepper Hamilton Sanders LLP; Dermer Behrendt; Theodora Oringher PC; and M&G Partners.

[12] Per Counsel, Class 1A settled and will released its liens.

[13] Per Counsel, under a Chapter 7 liqudation Class 1B - Murali Sunder's claim for $200,000.00 principal plus interest in the amount of $346,753.18 would be allowed. Interest is calculated at 8%, compounded daily, starting April 15, 2020.

[14] Debtor paid the Priority Claims in the post-confirmation period of November 12, 2020 - December 21, 2020.

[15] Per Counsel, the amount is for non-insider unsecured claims.

[16] Per Counsel, the amount is for insider and non-insider unsecured claims.

[17] Net Present Value (NPV) reflects the estimated payments to Class 2 creditors, discounted at 40% over 5 years.

# Exhibit 2

| | 2027 | 2027 | 2027 | 2027 | 2027 | 2027 | 2027 | 2027 | 2027 | 2027 | 2028 | 2028 | Y1 | Y2 | Y3 | Y4 | Y5 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Q1 | Q2 | Q2 | Q2 | Q3 | Q3 | Q3 | Q4 | Q4 | Q4 | Q1 | Q1 | Mar'27 - Feb'28 | Mar'28 - Feb'29 | Mar'29 - Feb'30 | Mar'30 - Feb'31 | Mar'31 - Feb'32 |
| | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 1 | 2 | | | | | |
| | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | | | | | |
| **Beginning Cash Balance** | 571,666.54 | 510,675.83 | 666,344.22 | 543,877.76 | 384,692.75 | 427,871.75 | 452,115.24 | 511,070.95 | 234,811.50 | 262,392.08 | 148,826.84 | 422,859.88 | 571,666.54 | 350,676.90 | 332,194.45 | 410,310.18 | 500,327.98 |
| **Cash In from Operations** | 267,342.40 | 478,254.37 | 282,639.10 | 304,092.38 | 352,895.12 | 433,087.63 | 438,402.95 | 335,651.56 | 446,862.67 | 311,264.12 | 600,981.30 | 300,140.73 | 4,551,614.32 | 4,801,953.11 | 5,066,060.53 | 5,218,042.34 | 5,374,583.61 |
| **Cash In from Financing** | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Cash Out from Operations** | 328,333.11 | 322,585.98 | 405,105.55 | 463,277.39 | 309,716.12 | 408,844.13 | 379,447.24 | 611,911.00 | 419,282.09 | 424,829.35 | 326,948.26 | 372,323.71 | 4,772,603.97 | 4,820,435.55 | 4,987,944.81 | 5,128,024.54 | 5,605,604.20 |
| **Cash Out from Financing** | | | | | | | | | | | | | | | | | |
| **Ending Balance** | 510,675.83 | 666,344.22 | 543,877.76 | 384,692.75 | 427,871.75 | 452,115.24 | 511,070.95 | 234,811.50 | 262,392.08 | 148,826.84 | 422,859.88 | 350,676.90 | 350,676.90 | 332,194.45 | 410,310.18 | 500,327.98 | 269,307.39 |
| **Beginning Balance** | 571,666.54 | 510,675.83 | 666,344.22 | 543,877.76 | 384,692.75 | 427,871.75 | 452,115.24 | 511,070.95 | 234,811.50 | 262,392.08 | 148,826.84 | 422,859.88 | 571,666.54 | 350,676.90 | 332,194.45 | 410,310.18 | 500,327.98 |
| **Royalty Receipts** | 267,342.40 | 420,305.49 | 282,639.10 | 294,369.99 | 301,155.86 | 417,060.43 | 265,731.51 | 327,179.89 | 446,862.67 | 309,853.14 | 600,981.30 | 240,368.68 | 4,173,850.45 | 4,403,412.22 | 4,645,599.90 | 4,784,967.89 | 4,928,516.93 |
| | | | | | | | | | | | | | - | | | | |
| **Raw Material Receipts** | - | 57,948.88 | - | 9,722.39 | 51,739.26 | 16,027.20 | 172,671.44 | 8,471.67 | - | 1,410.98 | - | 59,772.05 | 377,763.87 | 398,540.88 | 420,460.63 | 433,074.45 | 446,066.68 |
| **Total Receipts** | 267,342.40 | 478,254.37 | 282,639.10 | 304,092.38 | 352,895.12 | 433,087.63 | 438,402.95 | 335,651.56 | 446,862.67 | 311,264.12 | 600,981.30 | 300,140.73 | 4,551,614.32 | 4,801,953.11 | 5,066,060.53 | 5,218,042.34 | 5,374,583.61 |
| **Other COGS** | 39,330.14 | 147.43 | 4,910.49 | 1,094.18 | 749.41 | 1,088.83 | 1,456.86 | 1,523.02 | 375.33 | 375.33 | 22,560.59 | 21,822.31 | 95,433.93 | 98,774.11 | 101,737.34 | 104,280.77 | 106,887.79 |
| **(a) Business Insurance** | - | - | 25,688.54 | - | - | - | 2,950.00 | - | 1,913.00 | 3,746.00 | - | - | 34,297.54 | 35,497.95 | 36,562.89 | 37,476.96 | 38,413.89 |
| **(b) Clinical Studies** | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **(c) Consultants** | 13,900.00 | 14,500.00 | 14,869.80 | 41,546.73 | 29,210.90 | 26,319.67 | 18,634.00 | 87,865.06 | 36,800.00 | 23,962.50 | 14,651.25 | 26,379.62 | 348,639.53 | 360,841.91 | 371,667.17 | 380,958.85 | 390,482.82 |
| **(d) DTC** | 9,314.00 | 97.77 | 16,700.00 | 40,073.04 | 7,585.92 | 29,878.03 | 19,347.82 | 145,779.06 | 72,513.96 | 60,127.33 | 9,318.34 | 4,806.72 | 415,542.00 | 428,008.26 | 440,848.50 | 451,869.72 | 463,166.46 |
| **(e) Dues & Subscriptions** | 537.84 | 537.84 | 11,364.85 | - | 537.84 | 1,075.68 | 537.84 | 14,799.06 | 537.84 | 537.84 | 537.84 | 537.84 | 31,542.31 | 32,488.58 | 33,463.24 | 34,299.82 | 35,157.31 |
| **(f) Legal & Professional Fees** | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 60,000.00 | 61,800.00 | 63,654.00 | 65,563.62 | 67,530.53 |
| **(g) Marketing & Advertising** | 2,815.26 | 40,458.84 | 18,155.00 | 5,143.02 | 14,419.50 | 39,119.50 | 36,944.56 | 19,573.00 | 18,050.00 | 21,730.00 | 13,340.00 | 3,340.00 | 233,088.68 | 245,908.56 | 259,433.53 | 267,216.53 | 275,233.03 |
| **(h) Office Expenses** | 150.00 | 578.35 | 8,330.78 | 6,855.00 | 9,685.04 | 7,991.96 | 8,141.15 | 9,679.04 | 6,650.00 | 17,050.00 | 14,863.64 | 6,457.36 | 96,432.32 | 99,325.29 | 102,305.05 | 104,862.67 | 107,484.24 |
| **(i) Office Space** | 15,607.50 | 15,823.50 | 14,323.50 | 14,323.50 | - | 14,323.50 | 14,323.50 | 14,323.50 | 14,323.50 | 14,323.50 | 14,323.50 | 14,323.50 | 160,342.50 | 165,152.78 | 170,107.36 | 174,360.04 | 178,719.04 |
| **(j) Product Development** | - | - | - | - | - | - | - | - | - | - | - | 872.65 | 872.65 | 898.83 | 925.79 | 948.94 | 972.66 |
| **(k) Quality Compliance** | - | - | - | - | - | - | - | 4,484.00 | - | 1,083.33 | - | - | 5,567.33 | 5,734.35 | 5,906.38 | 6,054.04 | 6,205.39 |
| **(l) Representative Offices** | 9,798.40 | 16,683.56 | 5,530.00 | 4,500.00 | 7,965.07 | 8,203.97 | 6,035.00 | 6,035.00 | 6,035.00 | 6,035.00 | 9,923.84 | 10,888.88 | 97,633.72 | 100,562.73 | 103,579.61 | 106,169.10 | 108,823.33 |
| **(m) Selling Expenses** | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **(n) Taxes & Licenses** | 2,800.03 | - | 64.00 | - | - | 361.19 | - | 1,318.00 | - | - | - | 459.00 | 5,002.22 | 5,177.30 | 5,332.62 | 5,465.93 | 5,602.58 |
| **(o) Travel & Entertainment** | 6,500.00 | 8,200.00 | 18,500.00 | 7,100.00 | 6,800.00 | 9,800.00 | 11,000.00 | 4,500.00 | 10,500.00 | 15,000.00 | 12,000.00 | 3,500.00 | 113,400.00 | 116,802.00 | 120,306.06 | 123,313.71 | 126,396.55 |
| **Salaries & Wages** | 176,746.61 | 174,725.36 | 166,482.86 | 162,982.86 | 166,929.11 | 219,406.47 | 193,914.78 | 195,198.87 | 195,750.12 | 210,025.18 | 160,200.00 | 178,102.50 | 2,200,464.72 | 2,315,652.55 | 2,385,122.13 | 2,444,750.18 | 2,505,868.94 |
| **CC Charges vs. Payments & Reversals** | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Operating Disbursements** | 282,499.78 | 276,752.65 | 309,919.82 | 288,618.33 | 248,882.79 | 362,568.80 | 318,285.51 | 510,077.61 | 368,448.76 | 378,996.02 | 276,719.00 | 276,490.38 | 3,898,259.45 | 4,072,625.20 | 4,200,951.67 | 4,307,590.90 | 4,416,944.58 |
| **CAPEX** | - | - | 7,000.00 | 5,076.00 | 15,000.00 | 442.00 | - | - | - | - | 4,395.93 | - | 31,913.93 | 32,871.35 | 33,857.49 | 34,703.93 | 35,571.52 |
| **Inventory** | - | - | 42,352.40 | 123,749.73 | - | - | 10,328.40 | 51,000.06 | - | - | - | - | 227,430.59 | 239,939.00 | 253,135.64 | 260,729.71 | 268,551.60 |
| **Chapter 11 Legal Rep - LNBYG** | 25,000.00 | 25,000.00 | 25,000.00 | 25,000.00 | 25,000.00 | 25,000.00 | 25,000.00 | 25,000.00 | 25,000.00 | 25,000.00 | 25,000.00 | 25,000.00 | 300,000.00 | 200,000.00 | 200,000.00 | 200,000.00 | 100,000.00 |
| **Chapter 11 sub V Trustee - Greg Jones** | - | - | - | - | - | - | 5,000.00 | 5,000.00 | 5,000.00 | - | - | - | 15,000.00 | - | - | - | - |
| **Other Legal Professionals** | 20,833.33 | 20,833.33 | 20,833.33 | 20,833.33 | 20,833.33 | 20,833.33 | 20,833.33 | 20,833.33 | 20,833.33 | 20,833.33 | 20,833.33 | 20,833.33 | 250,000.00 | 200,000.00 | 200,000.00 | 200,000.00 | 200,000.00 |
| **Casden Contract Cure** | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 434,536.50 |
| **Pre-Petition Tax Liability** | | | | | | | | | | | | | - | - | - | - | - |
| **Post Petition Tax Liability** | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Class 2 Distribution** | - | - | - | - | - | - | - | - | - | - | - | 50,000.00 | 50,000.00 | 75,000.00 | 100,000.00 | 125,000.00 | 150,000.00 |
| **Ending Cash Balance** | 510,675.83 | 666,344.22 | 543,877.76 | 384,692.75 | 427,871.75 | 452,115.24 | 511,070.95 | 234,811.50 | 262,392.08 | 148,826.84 | 422,859.88 | 350,676.90 | 350,676.90 | 332,194.45 | 410,310.18 | 500,327.98 | 269,307.39 |

# EXHIBIT "3"

| | FILED CLAIM | | | | | SCHEDULED CLAIM | | | | NOTES | Class 2 | RECOVERY | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Creditor** | **Claim No.** | **Date Claim Filed** | **Secured** | **Priority** | **General Unsecured** | **Schedule "D" Secured** | **Schedule "E" Priority** | **Schedule "F" Unsecured** | **C/U/D** | **Notes** | **Proposed Unsecured Amount** | **Over 5 Years** | **Early Payment NPV** |
| Troutman Sanders LLP | | | | | | | | $17,404.29 | | | $17,404.29 | $2,128.59 | $727.48 |
| Triclinic Labs | | | | | | | | $1,250.00 | | | $1,250.00 | $152.88 | $52.25 |
| The Weinberg Group LLC | 10 | 6/12/20 | | | $46,116.44 | | | $43,730.10 | | | $43,730.10 | $5,348.31 | $1,827.88 |
| Seth Casden | | | | | | | | $435,000.00 | | see Class 3 | $0.00 | $0.00 | $0.00 |
| Seth Casden | | | | | | | | $90,000.00 | | To Be Cured in Contract Assumption | $0.00 | $0.00 | $0.00 |
| Polsinelli LLP | 2 | 4/29/20 | | | $1,053,410.89 | | | $983,052.19 | | | $1,053,410.89 | $128,834.98 | $44,031.67 |
| Multiple Energy Technologies, LLC | 15 | 7/8/20 | | | "unknown" | | | $2,500,000.00 | | Doc. # 358 | $2,500,000.00 | $305,756.72 | $104,497.86 |
| Microtrace LLC | 9 | 6/1/20 | | | $5,000.00 | | | $5,000.00 | | | $5,000.00 | $611.51 | $209.00 |
| Michael Haynes | | | | | | | | $27,500.00 | | see Class 3 | $0.00 | $0.00 | $0.00 |
| Maelor Group, Inc. | | | | | | | | $5,300.00 | | | $5,300.00 | $648.20 | $221.54 |
| Kent Imaging | | | | | | | | $21,100.00 | | Doc. # 353 | $0.00 | $0.00 | $0.00 |
| Influence & Co. | 19 | 11/16/20 | | | $6,000.00 | | | $3,000.00 | | | $3,000.00 | $366.91 | $125.40 |
| Graham Casden | | | | | | | | $170,000.00 | | see Class 3 | $0.00 | $0.00 | $0.00 |
| Fora Financial West LLC | 12 | 6/19/20 | $206,393.64 | | | | | $213,764.86 | | Doc. # 354 | $206,393.64 | $25,242.50 | $8,627.08 |
| Fiber Innovation Technology, Inc. | | | | | | | | $40,546.10 | | paid as critical vendor | $0.00 | $0.00 | $0.00 |
| Experien Group, LLC | 13 | 6/26/20 | | | $36,299.82 | | | $30,639.74 | | | $30,639.74 | $3,747.32 | $1,280.71 |
| Cornerstone Research | | | | | | | | $118,202.50 | | | $118,202.50 | $14,456.48 | $4,940.76 |
| Cooley LLP | 11 | 6/15/20 | | | $42,702.33 | | | $38,411.08 | | | $38,411.08 | $4,697.78 | $1,605.55 |
| De Lage Landen | 1 | 4/27/20 | | | $13,954.91 | | | | | Doc. # 353 | $0.00 | $0.00 | $0.00 |
| Wells Fargo Bank, N.A. | 5 | 5/22/20 | | | $8,122.23 | | | $11,799.41 | | | $8,122.23 | $993.37 | $339.50 |
| Wells Fargo Bank, N.A. | 7 | 5/29/20 | | | $9,325.51 | | | | | Doc. # 336 | $9,325.51 | $1,140.53 | $389.80 |
| Wells Fargo Bank, N.A. | 8 | 5/29/20 | | | $2,040.52 | | | | | Doc. # 336 | $2,040.52 | $249.56 | $85.29 |
| John Hancock Life Insurance Company, et al. | 14 | 11/24/20 | $0.00 | | $37,753.70 | | | | | Doc. # 265 | $37,753.70 | $4,617.38 | $1,578.07 |
| AIG | 16 | 7/9/20 | | | $0.00 | | | | | Withdrawn | $0.00 | $0.00 | $0.00 |
| Under Armour | 17 | 11/4/20 | | | $0.00 | | | | | Amended | $0.00 | $0.00 | $0.00 |
| Prime Lending | 18 | 7/27/20 | | | $6,599.39 | | | | | Lease Rejection | $6,593.99 | $806.46 | $275.62 |
| Image Square, Inc. | 21 | 2/9/21 | | | $1,639.42 | | | | | | $1,639.42 | $200.51 | $68.53 |
| **Totals** | | | | | | | | | | | **$4,088,217.61** | $500,000.00 | $170,884.00 |
| Percentage Recovery | | | | | | | | | | | | 12.23% | 4.18% |
| | | | | | | | | | | | | | |
| Plus If Casden Sec. 547 Settlement Approved | | | | | | | | | | | Doc. Nos. 465, 755 | $47,406.00 | $47,406.00 |
| Percentage Recovery with Settlement Funds | | | | | | | | | | | | 13.39% | 5.34% |

# Exhibit 4

**Hologenix, LLC**
**DRAFT**

**Class 2 Payments and NPV**

| | 3/1/27 | 2/28/28 | 2/28/29 | 2/28/30 | 2/28/31 | 2/28/32 | Total |
|---|---|---|---|---|---|---|---|
| Dates of Payment | 3/1/27 | 2/28/28 | 2/28/29 | 2/28/30 | 2/28/31 | 2/28/32 | **Total** |
| Class 2 Payments | - | **50,000** | **75,000** | **100,000** | **125,000** | **150,000** | **500,000** |

| Rate | NPV |
|---|---|
| 40% | **170,884** |

**NPV of Payment by Year**

| As of | 2/28/28 | 2/28/29 | 2/28/30 | 2/28/31 | 2/28/32 | Total |
|---|---|---|---|---|---|---|
| 2/28/32 | | | | - | 150,000 | 150,000 |
| 2/28/31 | | | | 125,000 | 107,143 | 232,143 |
| 2/28/30 | - | - | 100,000 | 89,286 | 76,531 | 265,816 |
| 2/28/29 | - | 75,000 | 71,429 | 63,776 | 54,665 | 264,869 |
| 2/28/28 | 50,000 | 53,522 | 50,973 | 45,512 | 39,010 | 239,018 |
| 3/1/27 | 35,747 | 38,265 | 36,443 | 32,539 | 27,890 | **170,884** |

# Exhibit 5

**Capitalization Table 6.21.2022 - Pre Conversion of Class C**

| Name | Total Units (a) | Percentage Interests (b) | Percentage Interests (c) |
|---|---|---|---|
| Seth Casden | 12,617,471 | 54.15% | 46.72% |
| Graham Casden | 3,667,500 | 15.74% | 13.58% |
| Blue Wolf Holdings, LLC | 2,164,145 | 9.29% | 8.01% |
| David Horinek | 1,924,454 | 8.26% | 7.13% |
| Michael Conchuratt | 910,780 | 3.91% | 3.37% |
| Alvaro Pascotto (a) | 658,700 | 2.83% | 2.44% |
| Kevin Blaney | 649,602 | 2.79% | 2.41% |
| Alexander Foyle | 283,430 | 1.22% | 1.05% |
| William Werlin | 270,462 | 1.16% | 1.00% |
| AF Double Eagle, Inc. | 79,864 | 0.34% | 0.30% |
| Andrew Behar | 75,579 | 0.32% | 0.28% |
| **Total** | **23,301,987** | **100.00%** | **86.29%** |
| **Phantom Units (e)** | | | |
| **Allocated Phantom Units** | | | |
| Amber Bezahler | 742,656 | | 2.75% |
| Courtney O'Keefe | 540,113 | | 2.00% |
| Francis Parish | 347,168 | | 1.29% |
| Kevin Blaney | 50,000 | | 0.19% |
| Scott Carlin | 50,000 | | 0.19% |
| Leslie Margolin | 50,000 | | 0.19% |
| Michael Haynes | 50,000 | | 0.19% |
| Julien Born | 50,000 | | 0.19% |
| **Total Allocated** | 1,879,937 | | 6.96% |
| **Unallocated Phantom Units** | 1,823,746 | | 6.75% |
| **Total** | **27,005,670** | | **100.00%** |

*(a) Pre Conversion of Class C, does not include Class A Preferred Units*
*(b) As a percentage of all outstanding Pre Conversion Class C units excluding the Phantom*
*(c) As a percentage of all outstanding fully diluted Units Pre Class C Conversion*
*(d) Alvaro Pascotto Revocable Trust Dated May 17, 2012*
*(e) All Unallocated Phantom Units are class A Management Units*

# Exhibit 6

| Name | Contract Description | Cure Amount |
|---|---|---|
| Allergo System SRL | Purchase & Licence agreement in which Hologenix is the Supplier and Licensor | $0.00 |
| Allie Home, LLC | Purchase & Licence agreement in which Hologenix is the Supplier and Licensor | $0.00 |
| AQ Textiles, LLC | Purchase & Licence agreement in which Hologenix is the Supplier and Licensor | $0.00 |
| Bear Mattress, LLC | License agreement in which Hologenix is the licensor | $0.00 |
| Bio San D.O.O | Purchase & Licence agreement in which Hologenix is the Supplier and Licensor | $0.00 |
| Burleigh Point Ltd | License agreement in which Hologenix is the licensor | $0.00 |
| Celatica, LLC | License agreement in which Hologenix is the licensor | $0.00 |
| Cobe SRL | Purchase & Licence agreement in which Hologenix is the Supplier and Licensor | $0.00 |
| The Design Tex Group Inc | Purchase & Licence agreement in which Hologenix is the Supplier and Licensor | $0.00 |
| Equiribbon Creations | Purchase & Licence agreement in which Hologenix is the Supplier and Licensor | $0.00 |
| Fownes Brothers & Co | Purchase & Licence agreement in which Hologenix is the Supplier and Licensor | $0.00 |
| Gryppers incorporated | License agreement in which Hologenix is the licensor | $0.00 |
| IMM Group, Inc | License agreement in which Hologenix is the licensor | $0.00 |
| Innocor, Inc | Purchase & Licence agreement in which Hologenix is the Supplier and Licensor | $0.00 |
| Inter Textile Innovation Co., Ltd | License agreement in which Hologenix is the licensor | $0.00 |
| Iron Holdings, LTD | Purchase & Licence agreement in which Hologenix is the Supplier and Licensor | $0.00 |
| Juno Sleep Pty/ Ltd | License agreement in which Hologenix is the licensor | $0.00 |
| Levi Strauss & Co | License agreement in which Hologenix is the licensor | $0.00 |
| Nfinity Athletic, LLC | Purchase & Licence agreement in which Hologenix is the Supplier and Licensor | $0.00 |
| Fabrictech 2000, LLC dba Purecare | Purchase & Licence agreement in which Hologenix is the Supplier and Licensor | $0.00 |
| Real Innerspring Technologies Pvt., LTD | Purchase & Licence agreement in which Hologenix is the Supplier and Licensor | $0.00 |
| RV Winkle, LLC | License agreement in which Hologenix is the licensor | $0.00 |
| Socks for Horses, Inc | Purchase & Licence agreement in which Hologenix is the Supplier and Licensor | $0.00 |
| Square One Distribution | License agreement in which Hologenix is the licensor | $0.00 |
| Sunvim North America | Purchase & Licence agreement in which Hologenix is the Supplier and Licensor | $0.00 |
| Terrapromo D.O.O | License agreement in which Hologenix is the licensor | $0.00 |
| Traffi Safe, LTD | Purchase & Licence agreement in which Hologenix is the Supplier and Licensor | $0.00 |
| Under Armour, Inc | Purchase & Licence agreement in which Hologenix is the Supplier and Licensor | $0.00 |
| Yaasa Studios, Inc | License agreement in which Hologenix is the licensor | $0.00 |
| Yak Sleep GmbH | Purchase & Licence agreement in which Hologenix is the Supplier and Licensor | $0.00 |
| FENC | Non-royalty supply chain license agreement | $0.00 |
| Shinkong | Non-royalty supply chain license agreement | $0.00 |
| Eclat | Non-royalty supply chain license agreement | $0.00 |
| Toong Loung | Non-royalty supply chain license agreement | $0.00 |
| Men Chuen | Non-royalty supply chain license agreement | $0.00 |
| Chain Yarn Chainlon | Non-royalty supply chain license agreement | $0.00 |
| Labtex | Non-royalty supply chain license agreement | $0.00 |
| BeiDa/Kuseng | Non-royalty supply chain license agreement | $0.00 |
| Best Pacific | Non-royalty supply chain license agreement | $0.00 |
| Luher | Non-royalty supply chain license agreement | $0.00 |
| Hangzhou Shuangjin Textile | Non-royalty supply chain license agreement | $0.00 |
| Hangzhou Hengyi Textile | Non-royalty supply chain license agreement | $0.00 |
| Hangzhou Chuangyuan feather | Non-royalty supply chain license agreement | $0.00 |
| Wellmei | Non-royalty supply chain license agreement | $0.00 |
| Shinetex | Non-royalty supply chain license agreement | $0.00 |
| Tai Yuen Textile (Vietnam) | Non-royalty supply chain license agreement | $0.00 |
| Manifattura Crespi - Healthy Textile Innovations | Non-royalty supply chain license agreement | $0.00 |
| Imbotex | Non-royalty supply chain license agreement | $0.00 |
| Wellman | Non-royalty supply chain license agreement | $0.00 |
| AllergoSystem | Non-royalty supply chain license agreement | $0.00 |
| Hilovica | Non-royalty supply chain license agreement | $0.00 |
| Draper | Non-royalty supply chain license agreement | $0.00 |

| | | |
|---|---|---|
| Jowett | Non-royalty supply chain license agreement | $0.00 |
| Seth Casden | Employment Contract | 434,536.50 |
| Courtney Okeefe | Employment Contract | $0.00 |
| De Lage Landen (Cell Business Eq.) | Printer Equipment Lease | $0.00 |
| True Car, Inc. | Real Property Lease | $0.00 |
| Kent Imaging | Equipment Lease | $0.00 |
| | | |
| | | |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 2818 La Cienega Avenue, Los Angeles, CA 90034

**A true and correct** copy of the foregoing document **Debtor's Chapter 11, Subchapter V Plan, Dated October 20, 2026** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On October 20, 2026, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On October 20, 2026 I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the `document is filed.
☒ Service information continued on attached page

**Honorable Barry Russell**
United States Bankruptcy Court
Central District of California
Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Suite 1660 / Courtroom 1668
Los Angeles, CA 90012

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on October 20, 2026 I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| October 20, 2026 | J. Klassi | /s/ J. Klassi |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

- .
- **Todd M Arnold tma@lnbyg.com**
- **Ron Bender rb@lnbyg.com**
- **Thomas E Butler butlert@whiteandwilliams.com, sullivann@whiteandwilliams.com;millnamowm@whiteandwilliams.com;panchavatis@whiteandwilliams.com**
- **Robert Carrasco rmc@lnbyg.com, rmc@lnbyg.com**
- **Oscar Estrada oestrada@ttc.lacounty.gov**
- **Theodore W Frank frank@psmlawyers.com, knarfdet@gmail.com;navarro@parkermillsllp.com**
- **John-Patrick M Fritz jpf@lnbyg.com, JPF.LNBYB@ecf.inforuptcy.com**
- **Michael S Greger mgreger@allenmatkins.com, kpreston@allenmatkins.com**
- **Brian T Harvey bharvey@buchalter.com, docket@buchalter.com;dbodkin@buchalter.com;pjolley@buchalter.com**
- **Gregory Kent Jones (TR) gjones@sycr.com, smjohnson@sycr.com;C191@ecfcbis.com;cpesis@stradlinglaw.com**
- **Raffi Khatchadourian raffi@hemar-rousso.com**
- **Tinho Mang tmang@marshackhays.com, tmang@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@ecf.courtdrive.com;cmendoza@marshackhays.com**
- **Ron Maroko ron.maroko@usdoj.gov**
- **Juliet Y. Oh jyo@lnbyg.com, jyo@lnbyb.com**
- **Carmela Pagay ctp@lnbyg.com**
- **Yvonne Ramirez-Browning yvonne@browninglawgroup.com, veronica@browninglawgroup.com**
- **Kurt Ramlo RamloLegal@gmail.com, kr@ecf.courtdrive.com;ramlo@recap.email**
- **Gregory M Salvato gsalvato@salvatoboufadel.com, calendar@salvatolawoffices.com;jboufadel@salvatoboufadel.com;gsalvato@ecf.inforuptcy.com**
- **James R Selth jselth@yahoo.com, jselth@yahoo.com,maraki@wztslaw.com,sfritz@wztslaw.com,admin@wztslaw.com**
- **Zev Shechtman Zev.Shechtman@saul.com, Zev.Shechtman@ecf.courtdrive.com;hannah.richmond@saul.com;LitigationDocketing@saul.com;Shelly.Guise@saul.com;Isaiah.Bribiesca@saul.com**
- **Lindsey L Smith lls@lnbyb.com, lls@ecf.inforuptcy.com**
- **Randye B Soref rsoref@polsinelli.com, ccripe@polsinelli.com;ladocketing@polsinelli.com**
- **Heidi J Sorvino sorvinoh@whiteandwilliams.com, millnamowm@whiteandwilliams.com;sullivann@whiteandwilliams.com;panchavatis@whiteandwilliams.com;butlert@whiteandwilliams.com**
- **Alan Stomel alan.stomel@gmail.com, astomel@yahoo.com**
- **Annie Y Stoops annie.stoops@afslaw.com, yvonne.li@afslaw.com**
- **Nicole Sullivan sullivann@whiteandwilliams.com, vulpioa@whiteandwilliams.com,arthura@whiteandwilliams.com**
- **Derrick Talerico dtalerico@wztslaw.com, maraki@wztlfirm.com,sfritz@wztlfirm.com,admin@wztlfirm.com**
- **United States Trustee (LA) ustpregion16.la.ecf@usdoj.gov**
- **Larry D Webb Webblaw@gmail.com, larry@webblaw.onmicrosoft.com**
- **David Wood dwood@marshackhays.com, dwood@ecf.courtdrive.com;lbuchananmh@ecf.courtdrive.com;spineda@ecf.courtdrive.com;alinares@ecf.courtdrive.com**
- **Roye Zur rzur@elkinskalt.com, lwageman@elkinskalt.com;1648609420@filings.docketbird.com;rzur@ecf.courtdrive.com;lmasse@elkinskalt.com**

Hologenix
MML 10-19-2026

*Debtor*
Hologenix, LLC
17383 Sunset Blvd., Suite A420
Pacific Palisades, CA 90272

*Trustee*
Gregory Kent Jones (TR)
Stradling Yocca Carlson & Rauth
10100 N. Santa Monica Blvd., Suite 1400
Los Angeles, CA 90067

*U.S. Trustee*
United States Trustee (LA)
915 Wilshire Blvd, Suite 1850
Los Angeles, CA 90017

AIG Property Casualty, Inc.
Kevin J. Larner, Authorized Representative
80 Pine Street, 13th Floor
New York, NY 10005

Allegro Systems SRL
Via Del Garda 46/Q
Rovereto, Trento 368068
ITALY

AllergoSystem
Vi del Garda 46/Q
Rovereto, TN 38068
Italy

Allied Home LLC
6905 W Acco St Ste A
Montebello, CA 90640

Alvaro Pascotto Rev. Tr. 5/17/2012
11111 Santa Monica Blvd, Suite 2200
Los Angeles, CA 90025

Amber Bezahler
2300 Manning Ave.
Los Angeles, CA 90064

AQ Textiles LLC
214 Staunton Drive
Greensboro NC 27410

Barry W. Lee
Manatt, Phelps & Phillips, LLP
2049 Century Park East, Suite 1700
Los Angeles, CA 90067

Bear Mattress LLC
720 Monroe St Ste C508
Hoboken NJ 07030-6399

BeiDa/Kuseng
No. 3, Gong 8 Rd., LinKou Dist.
New Taipei City, 244
Taiwan

Best Pacific
Xinsha Port Industrial Zone, Machong Town
523147, Dongguan City, Guangdong Province
China

Bio San D.O.O.
J Huttlera 7a
310 Osijek
CROATIA

BRE Sunset Coast, LLC
c/o Brickman Associates
712 5th Ave., 6th Fl.
New York, NY 10019

Burleigh Point Ltd
117 Waterworks Way
Irvine, CA 92618

Celatica LLC
294 Cherry Ave
Long Beach CA 90802

Cell Business Equipment
1111 Old Eagle School Rd
Wayne, PA 19087-1453

Chin Yarn Chainlon
I9F, NO. 386, Shizheng RD.
Xitun Dist., Taichung City 407
Taiwan

Cobe SRL
Via Rafaello, snc 06081
Assisi PG
ITALY

Cooley LLP
1333 2nd St., Suite 400
Santa Monica, CA 90401

Cornerstone Research
555 W. 5th St., 38th Fl.
Los Angeles, CA 90013

Courtney O'Keefe
2620 Highland Ave.
Santa Monica, CA 90405

De Lage Landen
1111 Old Eagle School Rd
Wayne, PA 19087

Draper
28 Draper Lane
Canton, MA 02021

Eclat
No. 28, Wu Chuan Road
Wu Ku District, New Taipei City
Taiwan 24886

Employment Development Department
Bankruptcy Group MIC 92E
P.O. Box 826880
Sacramento, CA 94280-0001

Equiribbon Creations
21 Lyndon Rd
Sharon, MA 02067

Experien Group, LLC
224 Airport Parkway, Suite 250
San Jose, CA 95110

Fabrictech 2000, LLC dba Purecare
1402 S 40th Ave
Phoenix, AZ 85009

FENC
35F, No. 207, Tun Hwa South Rd
Sec 2, Taipei 10602
Taiwan

Fiber Innovation Technology, Inc.
398 Innovation Dr.
Johnson City, TN 37604

Fora Financial Advance, LLC
3050 Peachtree Road NW Suite 240
Atlanta GA 30305

Fora Financial West LLC
519 8th Ave., 11th Fl.
New York, NY 10018

Fownes Brothers & Co
1201 Broadway 8th Floor
New York, NY 10001

Franchise Tax Board
PO Box 942857
Sacramento, CA 94257

FRANCHISE TAX BOARD
BANKRUPTCY SECTION MS A340
PO BOX 2952
SACRAMENTO CA 95812-2952

Graham Casden
5097 Flagstaff
Boulder, CO 80302

Hangzhou Chuangyuan Feather
NO. 5 Xinda Road, Suoqian Town
Xiaoshan District Hangzhou Zhejiang
China

Hangzhou Hengyi Textile
Xishan Yiqiao Town Xiaoshan
Hangzhou Zhejiang Province
China

Hangzhou Shuangjin Textile
NO 302 Fuxing Village
Yiqiao Town Xiaoshan Dist. Hangzhou
China

Heidi J. Sorvino, Esq.
White and Williams LLP
7 Times Square, Suite 2900
New York, NY 10036

Hilltop Holdings
325 North St. Paul, Suite 700
Dallas, TX 75201

Hilovica
S.A. Carretera de Roda
6608500 Vic
Spain

Image Square Inc.
1627 Stanford Street
Santa Monica, CA 90404

Imbotex
Via Molini 26
I-35013 Cittadella
Italia

IMM Group Inc.
7301 Washington Ave S
Edina, MN 55410

Influence & Co.
1431 Cinnamon Hill Lane, Suite 104
Columbia, MO 65201

Innocor, Inc.
200 Schulz Drive 2nd Floor
Red Bank, NJ 07701

Inter Textile Innovation Co. Ltd
6F, Sakurahonmachibashi Bldg, 8-6
Honmachibashi Chuoku Osaka 5400029
JAPAN

Internal Revenue
P. O. Box 21126
Philadelphia, PA 19114

Iron Holdings, LTD
5123 Dunn Place
Nanaimo B.C., V9t-0J2
CANADA

John Hancock
197 Clarendon Street
Boston, MA 02116

John Hancock
Corp. Real Estate Attn: JM Laverdure
200 Berkeley St. C-01-05
Boston, MA 02110

John Hancock Life Insurance Company
c/o Peter D. Bilowz
Goulston & Storrs PC
400 Atlantic Avenue
Boston, MA 02110

Jowett
Wintan Inc. 10359 Rush Street
S. El Monte, CA 91733

Julien Born
208 N. 21st Street
Philadelphia, PA 19103

Juno Sleep Pty/LTD
313 N Road
Caufield South 3162, Victoria
AUSTRALIA

Kent Imaging
804B 16th Avenue S
Calgary, Alberta, T2R 0S9
CANADA

Labtex
14th Floor, No. 202, Sec. 2,
Yan-Ping N. Road, Taipei,
Taiwan

LOS ANGELES COUNTY TREASURER
AND TAX COLLECTOR
PO BOX 54110
LOS ANGELES CA 90054-0110

Luther
2F, 43 lane, Fu-Ying Rd,
Sinhuang District, New Taipei City, 2425
Taiwan

Maelor Group, Inc.
7 Village Woods Dr.
Amherst, NH 03031

Manifattura Crespi-Healthy Textile
Innovations
Corso Italia 11
22020 Vanzaghello Milan
Italy

Men Chuen
10F, No. 392, Sec I
Nei Hu Road, Taipei,
Taiwan

Michael Haynes
7817 Chadamy Way
San Diego, CA 92130

Microtrace LLC
790 Fletcher Dr., Suite 106
Elgin, IL 60123-4755

Multiple Energy Technologies, LLC
c/o Heidi J. Sorvino, Esq.
White and Williams LLP
7 Times Square, Suite 2900
New York, NY 10036

Multiple Energy Technologies, LLC
480 Johnson Rd., Suite 220
Washington, PA 15301

Murali Sundar
438 Richmond Street West, Suite 1508
Toronto, Ontario, M5V 3S6
CANADA

Nfinity Athletic LLC
53 Permalume Place
Atlanta, GA 30318

Northern Trust Company of Delaware
1313 N. Market St., Suite 5300
Wilmington, DE 19801

Polsinelli LLP
2049 Century Park East, Suite 2900
Los Angeles, CA 90067

PrimeLending Corp.
18111 Preston Rd. Suite 900
Dallas, TX 75252

PrimeLending, a PlainsCapital Company
18111 Preston Rd.
#900
Dallas, TX 75252

R.V. Winkle LLC
600 Franklin Ave
Garden City, NY 11530

Real Innerspring Technologies Pvt. LTD
B-7, Sector 3
Noida - 201301 U.P.
INDIA

Seth Casden
25406 1/2 Malibu Rd.
Malibu, CA 90265

Shinetex
3F, No. 276, Sec. 3, Chongqing N. Rd.
Datong Dist., Taipei City 10371, Taiwan

Shinkong
14FL., No. 123, Sec. 2
Nanking E. Rd., Taipei
Taiwan

Socks for Horses, Inc
304 W 9th Ave #15
Havana, FL 32333

Square One Distribution
35214 SE Center St
Snoqualmie, WA 98065

Sunvim North America
11 Erb St. East #200
Waterloo, Ontario, N2T IL4

Tai Yuen Textile (Vietnam)
Dong Van II Industrial Park, Back Thuong
Duy Tien Town, Ha Nam Province,
Vietnam

Terrapromo D.O.O.
J.J. Strossmayera 314.
31000 Osijek
CROATIA

The Design Tex Group Inc.
200 Varick St
8th Floor
New York NY 10014

The Weinberg Group LLC
1129 Twentieth Street NW, Suite 600
Washington, DC 20036

Thomas E. Butler
White and Williams LLP
7 Times Square, Suite 2900
New York, NY 10036-6524

Toong Loung
Toung Loong Textile, 1
19 F, No. 31 Sec 2
San Ming Rd, Panchiao Dist. New Taipei City
Taiwan 220

Triclinic Labs
2660 Schuyler Ave., Suite A
Lafayette, IN 47905

Troutman Sanders LLP
600 Peachtree Street, NE, Suite 300
Atlanta, GA 30308

Truecar
1401 Ocean Ave.
Suite 300
Santa Monica, CA 90401

Tula Consulting LLC
227 BROADWAY STE 302
SANTA MONICA CA 90401-3441

Under Armour Inc
1020 Hull Street
Baltimore, MD 21230

Under Armour, Inc.
c/o Annie Y. Stoops
Arent Fox LLP
555 West Fifth Street, 48th Floor
Los Angeles, CA 90013

Wellman
Mullagh, Kells,
Co. Meath, A82 NN93,
Republic of Ireland

Wellmei
No. 698 Chenduan Road,
Xiaoshan District Hangzhou 311201
China

Wells Fargo
5340 Kietzke Lane Ste 200
Reno, NV 89511

Wells Fargo Bank, N.A.
Small Business Lending Division
P.O. Box 29482
Phoenix, AZ 85038-8650

Yaasa Studios Inc.
511 Olive Street
Santa Barbara, CA 93101

Yak Sleep GmbH
Ottensteinstrabe 41
2344 Maria Enzersdorf
AUSTRIA