RON BENDER (State Bar No. 143364)
JOHN-PATRICK M. FRITZ (State Bar No. 245240)
LEVENE, NEALE, BENDER,
YOO & GOLUBCHIK L.L.P.
2818 La Cienega Avenue
Los Angeles, California 90034
Telephone: (310) 229-1234
Facsimile: (310) 229-1244
Email: RB@LNBYG.COM; JPF@LNBYG.COM

Attorneys for Chapter 11
Debtor and Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**LOS ANGELES DIVISION**

| | |
|---|---|
| In re:<br><br>HOLOGENIX, LLC,<br><br>Debtor and Debtor in Possession. | Case No.: 2:20-bk-13849-BR<br><br>Chapter 11 Case<br><br>Subchapter V<br><br>**DEBTOR'S MOTION TO CONFIRM DEBTOR'S CHAPTER 11, SUBCHAPTER V PLAN, DATED OCTOBER 20, 2026; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**DECLARATION OF SETH CASDEN IN SUPPORT FILED SEPARATELY AND CONCURRENTLY**<br><br><u>Hearing</u>:<br>Date: January 12, 2027<br>Time: 10:00 a.m.<br>Place: Courtroom 1668<br>255 East Temple Street<br>Los Angeles, CA 90012 |

## TABLE OF CONTENTS

I. INTRODUCTION .......... 2

II. SUMMARY OF PLAN .......... 3

A. Summary of Plan Classes and Treatment .......... 3

B. Means of Effectuating the Plan .......... 4

C. Classification and Treatment of Claims and Interests .......... 4

III. THIS COURT HAS JURISDICTION OVER THE CONFIRMATION OF THE PLAN .......... 9

IV. THE PLAN MEETS THE CONTENT REQUIREMENTS OF A SUBCHAPTER V PLAN .......... 9

V. THE ELEMENTS NECESSARY FOR PLAN CONFIRMATION ARE PRESENT .......... 9

A. Standard for Confirmation .......... 9

B. The Plan Complies with All of the Provisions of Sections 1129(a) and 1191 of the Bankruptcy Code .......... 10

C. The Provisions of Sections 1191(b)-(e) of the Bankruptcy Code .......... 29

VI. CONTRACT AND LEASE ASSUMPTION OR REJECTION .......... 29

A. Standard for Assumption or Rejection .......... 29

B. Adequate Assurance of Future Performance .......... 31

VII. RESERVATION OF RIGHTS .......... 32

VIII. CONCLUSION .......... 32

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*In re Acequia, Inc.*,
787 F.2d 1352 (9th Cir. 1986) ....................10, 25

*In re Arnold & Baker Farms*,
177 B.R. 648(9th Cir.B.A.P.1994), *aff'd,* 85 F.3d 1415, *cert. denied,* 519 U.S. 1054 (1997)....................10

*In re Art & Architecture Books of the 21st Century*,
2016 WL 118743 (Bankr.C.D.Cal. Mar.18, 2016) ....................10

*In re Athos Steel and Aluminum, Inc.*,
69 B.R. 515 ....................18

*In re Biderman Indus. U.S.A., Inc.*,
203 B.R. 547 (Bankr.S.D.N.Y.1997)....................18

*In re Central Fla. Metal Fabrication, Inc.*,
190 B.R. 119 (Bankr. N.D. Fla. 1995)....................29

*In re Chipwich, Inc.*,
54 B.R. 427 (Bankr. S.D.N.Y. 1985)....................30

*In re Claremont Acquisition Corp., Inc.*,
113 F.3d 1029 (9th Cir. 1997). Bankruptcy....................31

*Comm'l Fin. Ltd. v Hawaii Dimensions, Inc. (In re Hawaii Dimensions, Inc.)*,
47 B.R. 425 (D. Haw. 1985) ....................30

*In re Continental Country Club, Inc.*,
114 B.R. 763 (Bankr. M.D. Fla. 1990) ....................30

*In re Crouse Group, Inc.*,
75 B.R. 553 ....................18

*In re Downtown Inv. Club III*,
89 B.R. 59 (9th Cir.B.A.P.1988)....................14

*Durkin v. Benedor Corp. (In re G.I. Indus., Inc.)*,
204 F.3d 1276 (9th Cir. 2000) ....................29

*In re Embers 86th Street. Inc.*,
184 B.R. 892 (Bankr.S.D.N.Y.1995) ....................31

*In re FCX, Inc.*,
60 B.R. 405 (E.D.N.C. 1986) ....................30

*In re Genco Shipping & Trading Ltd.*,
513 B.R. 233 (Bankr.S.D.N.Y.2014) ....................26, 27

*In re Gucci*,
193 B.R. 411 (S.D.N.Y.1996) ....................29, 30

*Kane v. Johns-Manville Corp.*,
843 F.2d 636 (2d Cir.1988) ....................11

*In re Klein Sleep Products, Inc.*,
78 F.3d 18 (2d. Cir. 1996) ....................29

*In re Linda Vista Cinemas, LLC*,
442 B.R. 724 (Bankr.D.Ariz.2010) ....................16, 25

*In re M. Long Arabians*,
103 B.R. 211 (9th Cir.B.A.P.1989) ....................22

*In re M&S Assoc., Ltd.*,
138 B.R. 845 (Bankr.W.D.Tex.1992) ....................25

*P.G. & E.*,
350 F.3d at 937 ....................12, 13

*In re Parks Lumber Co., Inc.*,
19 B.R. 285 (Bankr.W.D.La.1982) ....................17

*Pepper v. Litton*,
308 U.S. 295 (1939) ....................18

*In re Pike's Peak Water Co.*,
779 F.2d 1456 (10th Cir.1985). Bankruptcy ....................25

*In re Prime Motors Inns*,
124 B.R. 378 (Bankr. S.D. Fla. 1991) ....................30

*In re Produce Hawaii, Inc.*,
41 B.R. 301 (Bankr.D.Hawaii 1984) ....................17

*In re Prudential Energy Co.*,
58 B.R. 857 (Bankr.S.D.N.Y.1986) ....................25

*Summit Land Co. v. Allen (In re Summit Land Co.)*, 13 B.R. 310 (Bankr. D.Utah 1981) ....30

*In re Sylmar Plaza, L.P.* 314 F.2d 1070 (9th Cir. 2002) ....15

*In re Texaco, Inc.*, 84 B.R. 893 (Bankr.S.D.N.Y.1988) ....14

*United States v. Energy Resources Co., Inc.*, 495 U.S. 545 (1990) ....25

*Universal Cooperatives, Inc. v. FCX Inc (In re FCS, Inc.)*, 85 F.2d 1149 (4th Cir. 1988), *cert denied,* 489 U.S. 1011 (1989) ....12

**Federal Statutes**

11 U.S.C.
§ 365 ....3, 8, 13, 29, 31
§ 503(c)(1) ....20
§ 507(a) ....24
§ 1125 ....14, 15
§ 1126 ....8, 22
§ 1129 ....2, 32
§ 1141(d) ....2, 29, 32, 33
§ 1181 ....15
§ 1189 ....15
§ 1190(1) ....15
§ 1191 ....22,23, 24, 29, 32
§ 1191(e) ....23
§ 1192 ....29
§ 1193(a) ....15, 32
§ 1194(b) ....22

28 U.S.C.
§ 157(a) ....9
§ 157(b)(2)(a) and (l) ....9
§ 1408 ....9

**Other Authorities**

5 COLLIER ON BANKRUPTCY ¶ 1129.02 ....11

7 COLLIER ON BANKRUPTCY ¶ 1129.02[16] ....28

FED.R.BANKR.P. 2002(b) ....10

Hologenix, LLC, a Delaware limited liability company (the "Debtor"), the debtor and debtor in possession in the above-captioned, chapter 11 bankruptcy case hereby respectfully submits the Debtor's Motion to Confirm Debtor's Chapter 11, Subchapter V Plan, Dated October 20, 2026 (the "Motion"). By way of the Motion, the Debtor respectfully requests that the Court confirm the Debtor's Chapter 11, Subchapter V, Plan Dated October 20, 2026 (the "Plan"). Unless otherwise indicated with specificity or implied by context, capitalized defined terms used in this Motion have the same meanings as ascribed to them in the Plan. In support of this Motion, the Debtor relies on this Motion, the Plan, the separately and concurrently filed declaration of Seth Casden (the "Casden Declaration") and declaration and report of Howard Grobstein, CPA (the "Grobstein Report"), the separately filed notice of the hearing (the "Hearing") on the Plan and any other evidence and pleadings that the Debtor may file in support of the Plan and arguments of counsel to be made at the Hearing in support of the Plan, and the entire record in the case and the entire docket in the case.

## I. INTRODUCTION

The Plan is a reorganization Plan. By way of the Plan, the Debtor proposes to restructure its debts and pay creditors as permitted by 11 U.S.C. §§ 1129 and 1191 over a period of five years with an option for prepayment without penalty.

This Motion presents a comprehensive analysis of the Plan proposed by the Debtor. This Motion also sets forth the evidentiary basis upon which the Debtor will request the Court to confirm the Plan pursuant to sections 1129(a) and 1191(a) and, where applicable, section 1191(b) of the Bankruptcy Code. Pursuant to 11 U.S.C. § 1141(d) – and, if applicable, § 1192 – by way of this Motion, the Debtor specifically seeks a discharge of its debts such that all debts are discharged except for those set forth in the Plan, and that the debts in the Plan will be treated exclusively as set forth in the Plan. By way of this Motion, the Debtor also specifically seeks an injunction that bars all parties from pursuing the collection or enforcement of any debt or claim arising before the Plan Effective Date except as allowed pursuant to the Plan.

The Debtor's bases for confirmation of the Plan include this Motion, notice of the Motion, the Plan, the Casden Declaration, the Grobstein Report, the entire record and docket in the bankruptcy case, and any arguments to be made by counsel at the hearing to confirm the Plan.

## II. SUMMARY OF PLAN

### A. Summary of Plan Classes and Treatment

The Plan is a reorganization plan proposed by the Debtor. The Plan is the Debtor's proposal to reorganize its financial affairs to repay allowed claims of creditors of this bankruptcy estate over a period of years. The post-confirmation Debtor will acquire all assets and assume all liabilities of the Debtor as restructured under the Plan, and the post-confirmation Debtor will be referred to herein as the "Reorganized Debtor." The Reorganized Debtor will sign any reasonable documentation as requested by creditors or required by law to effectuate the acquisition of assets and assumption of liabilities under the Plan. There are three classes of claim holders and two classes of equity interest holders under the Plan.

Class 1 under the Plan is comprised of the allowed claims of Seth Casden, the Alvaro Pascotto Revocable Trust, Julien Born, and Murali Sundar.

Class 2 under the Plan is comprised of all allowed non-insider prepetition general unsecured claims of the estate.

Class 3 under the Plan is comprised of all allowed insider (i) prepetition general unsecured claims of the estate and (ii) post-petition administrative claims of the estate (except for those pre- and post-petition claims that must be cured in connection with assumption of an executory contract under 11 U.S.C. § 365).

Class 4 under the Plan is comprised of the allowed equity interests in the Debtor.

Class 5 under the Plan is comprised of the allowed phantom equity interests in the Debtor.

The Plan also contains non-classified claim holders, as the Bankruptcy Code pre-determines their treatment. These non-classified claim categories include: (i) all post-petition

fees and expenses of the professionals employed in the Bankruptcy Case and (ii) all pre-petition priority tax claims.

**B. Means of Effectuating the Plan**

The Debtor will fund and effectuate the Plan with cash on hand as of the Effective Date and future cash generated by the operation of its business as a going concern. The Debtor, or Reorganized Debtor, as the case may be, will explore financing and capital investment opportunities to prepay allowed claims under the Plan where possible and reasonable.

**C. Classification and Treatment of Claims and Interests**

As required by the Bankruptcy Code, the Plan classifies claims and interests in various classes according to their right to priority. The Plan states whether each class of claims or interests is impaired or unimpaired. The Plan provides the treatment each class will receive.

**1. Unclassified Claims**

Certain types of claims are not placed into voting classes; instead they are unclassified. They are not considered impaired and they do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code. As such, the Debtor has not placed the following claims in a class.

**a. Administrative Expenses**

Administrative expenses are claims for costs or expenses of administering the Debtor's Case that are allowed under Bankruptcy Code Section 507(a)(2). The Bankruptcy Code requires that all administrative claims be paid on the Plan Effective Date unless a particular claimant agrees to a different treatment.

The following chart lists all of the Debtor's § 507(a)(2) administrative claims and their treatment under the Plan.

| **Name** | **Amount Owed** | **Treatment** |
|---|---|---|
| Clerk's Office Fees | $0 | Paid in full on the Effective Date |
| Levene, Neale, Bender, Yoo & Golubchik L.L.P. ("LNBYG"), bankruptcy counsel to the Debtor | $1,250,000 (est.) | Paid overtime as set forth in Exhibit 2 of the Plan out of the Debtor's cash on hand. |

| | | |
|---|---|---|
| Gregory Jones,<br>Subchapter V Trustee | $15,000 (est.) | Paid overtime as set forth in Exhibit 2 of the Plan out of the Debtor's cash on hand. |
| Buchalter,<br>Patent counsel to the Debtor | $115,487.45 (est.) | Paid overtime as set forth in Exhibit 2 of the Plan out of the Debtor's cash on hand. |
| Troutman Pepper Hamilton Sanders, LLP (f/k/a Troutman Sanders), Patent counsel to the Debtor | $73,642.50 (est.) | Paid overtime as set forth in Exhibit 2 of the Plan out of the Debtor's cash on hand. |
| Windes, Inc.<br>Accountant to the Debtor | $41,600.00 (est.) | Paid overtime as set forth in Exhibit 2 of the Plan out of the Debtor's cash on hand. |
| Grobstein Teeple LLP<br>Expert Witness | $50,000 (est.) | Paid overtime as set forth in Exhibit 2 of the Plan out of the Debtor's cash on hand. |
| **TOTAL** | **$1,545,729.95 (est.)** | **Paid in the manner described above** |

**b. Priority Tax Claims**

Prepetition priority tax claims include certain unsecured income, employment and other taxes described by Section 507(a)(8) of the Bankruptcy Code. Section 1129(a)(9)(C) of the Bankruptcy Code requires that each holder of such a Section 507(a)(8) priority tax claim receive regular installment payments of a total value, as of the Plan Effective Date, equal to the allowed amount of such allowed tax claims, over a period ending not later than five years after the Petition Date, and not less favorable than other creditors paid under the Plan.

Under the Plan, all allowed Section 507(a)(8) priority tax claims will be paid in full on the Effective Date or as soon thereafter as is practicable. A failure by the Debtor to make a payment on the priority tax claims pursuant to the terms of the Plan will be an event of default. If the event of default is not cured within thirty (30) days after service of written notice of default from the taxing authority, then the taxing authority may enforce its applicable remedies exclusively by application to the Bankruptcy Court and with jurisdiction maintained exclusively

by the Bankruptcy Court. The chart below indicates all priority tax claims which were either scheduled by the Debtor or asserted by the taxing agencies in timely filed proofs of claim. The inclusion of the claims in the chart below is intended simply to reflect the claims that have been scheduled and/or asserted in timely filed proofs of claim as priority tax claims, and is not intended to be a concession by the Debtor regarding the validity of the amount of any such claims or the classification of such claims as priority tax claims under Section 507(a)(8) of the Bankruptcy Code.

| **Claimant** | **Proof of Claim No.** | **Claim Amount** | **Amount Already Paid Under Original Plan** | **Balance Owing** |
|---|---|---|---|---|
| County of Los Angeles | 4 | $577.32 | $577.32 | $0 |
| Cal. Franchise Tax Board | 3 | $800.00 | $800.00 | $0 |
| IRS | 6 | $435.00 | $435.00 | $0 |

After the original plan went effective on November 12, 2020, the Debtor paid the above listed priority tax claims in full pursuant to the plan prior to the District Court entering an order staying the plan confirmation order; accordingly, the balance owing on these prepetition priority tax claims has already been reduced to $0.

**2. Classified Claims and Interests**

**a. Non-Tax Pre-Petition Priority Claims**

Certain prepetition priority claims that are referred to in Bankruptcy Code Sections 507(a)(4), (5), (6), and (7) are required to be placed in classes. The Debtor does not have any non-tax prepetition priority unsecured claims.

**b. Class 1 Claims of Convertible Noteholders**

Class 1 consists of: (A) Class 1A, comprised of the allowed unsecured claims of Seth Casden, The Alvaro Pascotto Revocable Trust, and Julien Born, as summarized in the table immediately below; and (B) Class 1B, comprised of the allowed secured claim Murali Sundar as summarized in the table immediately below:

| Class | Claimholder | Principal | Interest through 3/1/2027 | Total |
|---|---|---|---|---|

| | | | | |
|---|---|---|---|---|
| 1A | Seth Casden | $1,666,333.00 | $0 | $1,666,333.00 |
| 1A | Alvaro Pascotto Revocable Trust | $100,000.00 | $0 | $100,000.00 |
| 1A | Julien Born | $150,000.00 | $0 | $150,000.00 |
| 1B | Murali Sundar | $200,000.00 | $146,753.18 | $$146,753.18 |
| | Total | $2,116,333.00 | $146,753.18 | $2,263,086.18 |

Class 1A shall have allowed unsecured claims in the total amount of $1,916,333.00.

Class 1B shall have allowed secured claim in the amount of $200,000 principal, plus accrued unpaid interest accrued through March 1, 2027, of $146,753.18 and continuing to accrue thereafter at the rate of 8.0% per annum, and a senior blanket lien on all of the Debtor's assets.

The maturity date of the Class 1 claims shall be extended from October 31, 2022, to October 31, 2032. Class 1 creditors will not receive any payments under the Plan on account of their Class 1 claims. Class 1 convertible notes will convert to equity on a date at each convertible noteholder's election not sooner than the Plan Effective Date and not later than the extended maturity date of 10/31/2032.

Unless otherwise altered by the Plan, other terms in the prepetition loan and security documents remain in full force and effect between the Debtor and the Class 2 claimants. Class 2 is impaired and entitled to vote on the Plan.

**c. Class 2 – Prepetition Non-Insider General Unsecured Claims**

Class 2 consists of all of the non-insider prepetition general unsecured claims of the Debtor's estate. As of the date of filing the Plan, the Class 2 allowed claims total $4,088,217.61. A detailed list of the Class 2 claim holders is attached as **Exhibit 3** to the Plan. Each holder of an allowed Class 2 claim will receive its prorated share of distributions paid by the Reorganized Debtor on an annual basis on each of the annual anniversaries of the Plan Effective Date.

The Debtor may make prepayments to the Class 2 claim holders with a discounted cash flow method Net Present Value of the Class 2 allowed claim payment under the Plan. The prepayment will eliminate uncertainty and risk for the Class 2 claim holders and allow the claim

holders to immediately use or reinvest those funds rather than wait years for repayment. The Debtor has used a discount of 40% for the Net Present Value calculation, as shown on **Exhibit 4** to the Plan and supported by the Grobstein Report. If the Court confirms the Plan, an additional $47,406.00, will be added to the Class 2 recovery on account of a previously court-approved settlement [ECF 465, 755]. The recoveries for Class 3 are projected as set forth on **Exhibit 3** to the Plan. Class 3 is impaired and entitled to vote on the Plan.

**d. Class 3 – Prepetition Insider General Unsecured Creditors**

Class 3 consists of all of the insider (i) prepetition general unsecured claims of the estate and (ii) post-petition administrative claims of the estate (except for those pre- and post-petition claims that must be cured in connection with assumption of an executory contract under 11 U.S.C. § 365). The Class 3 claims will be equitably subordinated and recharacterized as equity. Class 3 claimants will not receive any payment on account of their Class 3 claims. Class 3 is impaired and entitled to vote on the Plan.

**e. Class 4 – Equity Interest Holders**

Interest holders are the parties who hold an ownership interest (i.e., equity interest) in the Debtor. Class 4 equity interest holders will maintain their prepetition equity interests under the Plan. Class 4 is not impaired and is deemed to have accepted the Plan by operation of law without voting pursuant to 11 U.S.C. §1126(f).

**f. Class 5 – Phantom Equity Interest Holders**

Interest holders are the parties who hold an ownership interest (i.e., equity interest) in the Debtor. Class 5 is comprised of persons holding “phantom” equity interests, meaning, generally, that they have equity interests that have not yet vested. Class 5 phantom equity interest holders will maintain their prepetition phantom equity interests under the Plan. Class 5 is not impaired and is deemed to have accepted the Plan by operation of law without voting pursuant to 11 U.S.C. §1126(f).

**III.**

**THIS COURT HAS JURISDICTION OVER THE CONFIRMATION OF THE PLAN**

This court has jurisdiction over the Debtor's bankruptcy case pursuant to 28 U.S.C. §157(a). Venue of the cases is appropriate in the Central District of California pursuant to 28 U.S.C. §1408. Confirmation is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(a) and (l).

**IV.**

**THE PLAN MEETS THE CONTENT REQUIREMENTS OF A SUBCHAPTER V PLAN**

Section 1190 of the Bankruptcy Code provides in pertinent part:

> A plan filed under this subchapter—
>
> (1) shall include—
>
> (A) a brief history of the business operations of the debtor;
>
> (B) a liquidation analysis; and
>
> (C) projections with respect to the ability of the debtor to make payments under the proposed plan of reorganization;
>
> (2) shall provide for the submission of all or such portion of the future earnings or other future income of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan;…
>
> ***

Here, the Plan provides a brief history of the business operations of the Debtor in section II.A of the Plan. The Plan provides a liquidation analysis in section II.B of the Plan and **Exhibit 1** thereto, which is further supported by the Grobstein Report. The Plan provides projections with respect to the ability of the Debtor to make payments under the Plan in section II.C of the Plan, and as set forth in **Exhibit 2** thereto.

**V.**

**THE ELEMENTS NECESSARY FOR PLAN CONFIRMATION ARE PRESENT**

**A. Standard for Confirmation**

Bankruptcy Code Sections 1191(a) and (b) incorporate all the plan requirements set forth

in Section 1129(a). However, if the requirements of Sections 1129(a)(8), (10), and (15) are not met, then Section 1191(b) permits the court to confirm the plan if the plan does not discriminate unfairly and is fair and equitable as to the classes of creditors and interests that did not accept the plan.

A Plan proponent must demonstrate each element of §1129 by a preponderance of evidence. *In re Arnold & Baker Farms*, 177 B.R. 648, 654(9th Cir.B.A.P.1994), *aff'd,* 85 F.3d 1415, *cert. denied,* 519 U.S. 1054 (1997). The Court may consider the cumulative record and evidence amassed throughout the case in confirming a plan. *In re Acequia, Inc*., 787 F.2d 1352, 1359 (9th Cir. 1986). "[F]or those creditors who object, it is up to that objecting party to 'produce evidence to establish the validity of the objection before the ultimate burden … is shifted to the plan proponent.'" *In re Art & Architecture Books of the 21st Century*, 2016 WL 118743 *7 (Bankr.C.D.Cal. Mar.18, 2016) (quoting *In re Future Energy Corp.*, 83 B.R. 470, 482 n.21 (Bankr.S.D. Ohio 1988) (collecting cases)). Parties in interest are permitted 28 days' notice for filing objections and the hearing to consider confirmation of a chapter 11 plan. FED.R.BANKR.P. 2002(b). Opposition must be a complete written statement of all reasons in opposition with declarations and evidence. LBR 9013-1(f)(2). Direct testimony is taken by declaration. LBR 9013-1(i)(3). The failure by a party in interest to file a written and fully supported opposition may be deemed by the Court to be waiver of objection to confirmation of the Plan. LBR 9013-1(h).

## B. **The Plan Complies with All of the Provisions of Sections 1129(a) and 1191 of the Bankruptcy Code**

### 1. Section 1129(a)(1) of the Bankruptcy Code

Section 1129(a)(1) of the Bankruptcy Code provides that a court may confirm a plan of reorganization only if "the plan complies with the applicable provisions of this title." The phrase "applicable provisions" has been interpreted to mean Section 1122 and 1123 of the Bankruptcy Code, which govern the classification of claims and interests and the contents of a

plan of reorganization. *Kane v. Johns-Manville Corp.*, 843 F.2d 636, 648-49 (2d Cir.1988); 5 COLLIER ON BANKRUPTCY ¶ 1129.02 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.).

1.1 Section 1122 of the Bankruptcy Code. Section 1122 of the Bankruptcy Code governs the classification of claims and interests. Section 1122(a) requires that a plan "place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests in such class."

The Plan designates three classes of claims and two class of interest holders. For Class 1, the claimholders in that class are substantially similar because they each hold convertible notes that will be converted to equity; and the retention of a lien by Class 1B compared to Class 1A, which does not have a lien, is irrelevant because the overriding "substantially similar" quality of the claimants is that they are all convertible noteholders. Class 2 claim holders are separately classified because they are unsecured claims, have no collateral, no liens, and no convertible note options, and are comprised of non-insiders who lack of the specialized inside-knowledge of insiders when their claims originate. Class 3 is comprised of separately classified unsecured claims of insiders, which is separately classified because their claims are being equitably subordinated and recharacterized as equity because of their specialized inside-knowledge about the Debtor when their claims originate, making them part of the insider debt-equity capital structure and unlike the arms-length claims of non-insiders. Class 4 is separately classified as equity interest holders because they do not hold creditor claims, but they are the only parties in interest holding equity. Finally, Class 5 is separately classified because they hold neither claims nor vested interests but nonetheless hold property rights in yet unvested equity interests.

Based on the foregoing classification of claims and interests, the Plan complies with the provisions of Section 1122 of the Bankruptcy Code.

1.2 Section 1123(a) of the Bankruptcy Code. The Plan complies with the seven (7) mandatory provisions of Section 1123(a) of the Bankruptcy Code.

Section 1123(a)(1) of the Bankruptcy Code requires that a plan of reorganization designate classes of claims other than claims of the kind specified in Section 507(a)(2), (3) and (8) of the Bankruptcy Code. The Plan satisfies the requirements of Section 1123(a)(1) of the Bankruptcy Code by designating all classes of claims other than claims specified in Sections 507(a)(2), (3) and (8) of the Bankruptcy Code.

Section 1123(a)(2) of the Bankruptcy Code requires that a plan of reorganization specify those classes of claims or interests that are not impaired, and Section 1123(a)(3) of the Bankruptcy Code requires that a plan specify those classes of claims or interests that are impaired. The Plan satisfies both of these requirements by indicating whether each class under the Plan is impaired and what treatment each class will receive.

Section 1123(a)(4) of the Bankruptcy Code requires that a plan provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to less favorable treatment. The Plan satisfies this requirement as no claim holder or interest holder is receiving treatment under the Plan different from any other claim holder or interest holder in the same class. Thus, the Plan satisfies the requirement of section 1123(a)(4).

Section 1123(a)(5) of the Bankruptcy Code requires that a plan provide adequate means for the Plan's implementation and sets forth non-exclusive list of methods of doing so. In general terms, §1123(a)(5) is an empowering statute meant to enhance the ability of the proponent to deal with the property of the estate by providing for preemption of conflicting state laws. *Universal Cooperatives, Inc. v. FCX Inc (In re FCS, Inc.)*, 85 F.2d 1149, 1155 (4th Cir. 1988), *cert denied,* 489 U.S. 1011 (1989). The methods of plan implementation as set forth in §1123(a)(5) are self-executing, so a plan of reorganization may propose acts to implement the plan notwithstanding contrary non-bankruptcy agreements. *Pacific Gas & Electric Co. v. Calif on behalf of the Calif. Dept. of Toxic Substances.* 350 F.3d 932, 937 (9th Cir. 2003), *cert. denied,* 543 U.S. 956 (2004). The examples of adequate means for implementation of a plan set

forth in §1123(a)(5) are illustrative and do not exclude or limit other means of implementation. *P.G. & E.,* 350 F.3d at 937.

The Plan describes the means for the Plan's implementation. Specifically, the Plan provides for its implementation by way of, *inter alia*, Sections 1123(a)(5)(A), (E), and (H). The Debtor will implement the Plan through business operations and cash flow. If the Debtor is able to refinance or recapitalize, it will prepay Class 2 plan payments. The Plan meets the requirements of Section 1123(a)(5).

Section 1123(a)(6) of the Bankruptcy Code requires that a plan provide for the inclusion in the charter of a corporate debtor a provision prohibiting the issuance of nonvoting equity securities, and providing, as to the several classes of securities possessing voting power, an appropriate distribution of such power among classes. The Plan specifically meets this requirement in the treatment of the equity interest classes.

Section 1123(a)(7) of the Bankruptcy Code requires that a plan contain only provisions that are consistent with the interests of creditors and equity security holders and with public policy with respect to the manner of selection of any officer, director, or trustee. The Plan does not contain any provisions that offend section 1123(a)(7) and, accordingly, complies with this subsection.

1.3 Section 1123(b) of the Bankruptcy Code. Section 1123(b)(1) of the Bankruptcy Code provides that a plan may impair or leave any class of claims, whether secured or unsecured, or of interests unimpaired under the plan. The Plan designates that classes 2, 3, and 4 are impaired and that classes 5 and 6 are not impaired.

Section 1123(b)(2) of the Bankruptcy Code specifies that, subject to Section 365, a plan may provide for the assumption, rejection, or assignment of any executory contract or unexpired lease not previously rejected. Section III.B.12 of the Plan and **Exhibit 6** thereto, provide the assumption and rejection of executory contracts and prepetition unexpired leases subject to this provision.

Section 1123(b)(3) of the Bankruptcy Code specifies that a plan may provide for "the settlement or adjustment of any claim or interest belonging to the debtor or to the estate," and/or "the retention and enforcement by the debtor, by the trustee, or by a representative of the estate appointed for such purpose, of any such claim or interest." As set forth in sections III.B.5 & 6 of the Plan, the Plan provides that all claims, claim objections, causes of action and avoidance actions of the Debtor and its estate are preserved by the Plan, and the Reorganized Debtor shall have sole and full power and authority to settle, adjust, retain, enforce, or abandon any claim, cause of action, or avoidance actions as the sole representative of the Debtor's estate under section 1123(b) of the Bankruptcy Code or otherwise, regardless of whether such claims, causes of action, or avoidance actions were commenced prior or subsequent to the Plan Effective Date.

Section 1123(b)(4) of the Bankruptcy Code specifies that a plan may "provide for the sale of all or substantially all of the property of the estate, and the distribution of the proceeds of such sale among holders of claims or interests." The Plan does not contemplate the specific sale of any assets.

Subsection 1123(b)(6) is a catch-all category for "any other appropriate provision not inconsistent with the applicable provisions of this title." The Debtor submits that the Plan does not contain provisions inconsistent with the applicable provisions of title 11.

Based upon the foregoing, the Plan complies with all of the provisions of Section 1122 and 1123 of the Bankruptcy Code and, therefore, complies with Section 1129(a)(1) of the Bankruptcy Code.

2. <u>Section 1129(a)(2) of the Bankruptcy Code</u>. Section 1129(a)(2) of the Bankruptcy Code provides that a court may confirm a plan only if "[t]he proponent of the plan complies with applicable provisions of the title." The "principal purpose of 11 U.S.C. § 1129(a)(2) is to ensure that the proponents have complied with the requirements of 11 U.S.C. § 1125 in the solicitation of acceptances to the plan," *In re Texaco, Inc.*, 84 B.R. 893, 906-07 (Bankr.S.D.N.Y.1988), and with the requirements of Section 1121 and 1127 of the Bankruptcy Code. *In re Downtown Inv. Club III*, 89 B.R. 59, 65 (9th Cir.B.A.P.1988).

2.1 Sections 1121 and 1189 of the Bankruptcy Code. Pursuant to § 1181(a), Section 1121 of the Bankruptcy Code does not apply in Subchapter V cases. Outside of Subchapter V, Section 1121(c) provides that "[a]ny party in interest including the debtor . . . may file a plan . . . ." Here, in Subchapter V, Section 1189(a) provides that ***only*** the debtor may file a plan, and § 1189(b) requires the plan be filed within 90 days of the petition date, unless extended by the court. 11 U.S.C. § 1189. The Debtor is the proponent of the Plan, and the Debtor timely filed its first plan within 90 days of the Petition Date. The requirements of Section 1189 have been met.

2.2 Section 1125 of the Bankruptcy Code. Section 1125 is inapplicable under Subchapter V unless the court for cause orders otherwise. 11 U.S.C. § 1181(b). In place of a disclosure statement, Subchapter V requires that the plan contain a brief history of the business operations of the debtor, a liquidation analysis, and projections with respect to the ability of the debtor to make payments under the proposed plan of reorganization. 11 U.S.C. § 1190(1). The plan complies with Bankruptcy Code Section 1190(1), as discussed in Section III of this Motion, *supra*.

2.3 Section 1127 of the Bankruptcy Code. Section 1127 of the Bankruptcy Code does not apply in Subchapter V. 11 U.S.C. § 1181(a). In Subchapter V, plan modification is controlled under Section 1193. "The debtor may modify a plan ***at any time*** before confirmation, but may not modify the plan so that the plan as modified fails to meet the requirements of sections 1122 and 1123…" 11 U.S.C. § 1193(a) (emphasis added). The Debtor reserves the right to modify the Plan as may be appropriate in conformity with Section 1193. The Plan meets all the applicable requirements of §§ 1122 and 1123.

3. Section 1129(a)(3) of the Bankruptcy Code. Section 1129(a)(3) of the Bankruptcy Code provides that a court may confirm a plan only if the plan is proposed "in good faith and not by any means forbidden by law." A plan is proposed in good faith where it achieves a result consistent with the objectives and purposes of the Bankruptcy Code. *See, e.g., In re Sylmar Plaza, L.P.* 314 F.2d 1070, 1074 (9th Cir. 2002).

The Plan has been proposed in good faith by the Debtor. The Plan is not proposed by any means forbidden by law. The Debtor has consulted with the Subchapter V Trustee throughout this bankruptcy case in an effort to administer the estate and propose this Plan in good faith.

4. Section 1129(a)(4) of the Bankruptcy Code. Section 1129(a)(4) of the Bankruptcy Code provides that a court may confirm a plan only if "[a]ny payment made or to be made by the proponent, by the debtor, or by a person issuing securities or acquiring property under the plan, for services or for costs and expenses in connection with the case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of, the Court as reasonable." Pursuant to section III.A.1.a the Plan, the Bankruptcy Court must approve all professional fees and expenses before they may be paid.

5. Section 1129(a)(5) of the Bankruptcy Code. Section 1129(a)(5)(A)(i) of the Bankruptcy Code provides that a court may confirm a plan only if the plan proponent discloses "the identity and affiliations of any individual proposed to serve, after confirmation of the plan, as a director, officer or voting trustee of the debtor . . . or a successor to the debtor under the plan." The Plan discloses such identities and affiliations in Section III.B.3 of the Plan. Seth Casden will remain and continue to manage the Reorganized Debtor's business affairs following confirmation of the Plan, assisted with the Debtor's same management team and board members as of the Petition Date, plus two additional board members (Julien Born and Michael Haynes), minus the Debtor's former COO and CSCO, who left the company during the pendency of the bankruptcy case. The Debtor's management has competently guided the Debtor through the development and growth of the Debtor's business prepetition, as well as through the trying times of this current bankruptcy case, global pandemic, and 40-year-high historic inflation, and there is no issue as to their competence or alignment of their interests with those of the Debtor. *See, e.g., In re Linda Vista Cinemas, LLC*, 442 B.R. 724, 735-36 (Bankr.D.Ariz.2010) ("continued service by prior management may be inconsistent with the interests of creditors and public policy if it directly or indirectly perpetuates incompetence, lack of discretion, inexperience or

affiliations with groups inimical to the best interests of the debtor"). Accordingly, the Plan complies with Section 1129(a)(5)(A)(i) of the Bankruptcy Code.

Section 1129(a)(5)(A)(ii) of the Bankruptcy Code requires that the appointment to, or continuance in, such office of such individual be "consistent with the best interests of creditors and equity holders and with public policy." *In re Produce Hawaii, Inc.*, 41 B.R. 301, 304 (Bankr.D.Hawaii 1984); *In re Parks Lumber Co., Inc.*, 19 B.R. 285, 291 (Bankr.W.D.La.1982). The Debtor submits that public policy favors the continuation of the Debtor's current officers, directors, and managers in managing the affairs of the Reorganized Debtor after the Plan Effective Date. The Debtor's management team under Mr. Casden and its board are qualified to act as the managers, officers, and directors of the Reorganized Debtor based upon their many years of experience, and they are capable of directing the Reorganized Debtor in calculating and making distributions to creditors with unclassified claims and in Class 2 as required under the Plan after the Effective Date.

Section 1129(a)(5)(B) of the Bankruptcy Code provides that a Court may confirm a plan only if the plan proponent discloses "the identity of any insider that will be employed or retained by the reorganized debtor, and the nature of any compensation for such insider." The Plan discloses such identities and affiliations in Section III.B.3 of the Plan. The compensation provided to the Board Members is the same compensation provided pre-petition. The five board members (other than Mr. Casden) have deep expertise in textiles, healthcare, licensing, marketing, and financing, providing the Debtor a diverse set of highly qualified advice and guidance on the maintenance, management, and growth of the Debtor and Reorganized Debtor. Prepetition, the Debtor engaged in extensive research into the market rates for board compensation, and found that $20,000 per board member per year was reasonable market compensation for a company of the Debtor's size. The Debtor was able to obtain the board's expertise with this market floor rate only by adding phantom equity shares to the compensation package. The compensation for the officers[1] is the same as the prepetition compensation, with

---

[1] Other than Seth Casden, the Plan's listing of a person with an officer title in Plan section III.B.3

contractual annual percentage increases. The Debtor submits that the officer compensation is below market rate, particularly when calculated without the bonus structure.

Insider compensation is subject to a higher level of scrutiny. *In re Biderman Indus. U.S.A., Inc.*, 203 B.R. 547, 551 (Bankr.S.D.N.Y.1997). Insider transactions are scrutinized to determine if they are inherently fair. *In Marquam Inv. Corp.*, 942 F2d 1462 (9th Cir.1991); *Pepper v. Litton*, 308 U.S. 295 (1939). "The essence of the test is whether or not under all the circumstances the transaction carries the earmarks of an arm's length bargain." *Id.* at 305-06. Market rates are an appropriate guide for evaluating insider officer compensation. *In re Athos Steel and Aluminum, Inc.*, 69 B.R. 515, 521-22 (Bankr.E.D.Penn.1987) (setting officer compensation based on market rates during chapter 11 case, but not plan confirmation); *In re Crouse Group, Inc.*, 75 B.R. 553, 559 (Bankr.E.D.Penn.1987) (chapter 11 case, but not plan confirmation). Where there is no evidence of the market rate, the court may subjectively determine the appropriate compensation. *In re Crouse Group, Inc.*, 75 B.R. 553, 559 (Bankr.E.D.Penn.1987).

The Debtor submits that the compensation for the officers and directors is appropriate market rate and necessary to incentivize and fairly compensate for their services. The Plan projections do not include bonus payments because bonus targets have not been achieved in many years.

The Debtor is not a start-up, but a 20-year-old company with a track record of hiring seasoned executives, like Jim Calhoun, the former President of Converse, Inc.

The Debtor's Board felt having an experienced supporting cast was critical to accomplishing the short and medium term goals set by the Board, as well as for attracting the critical investment needed.

---

is not an admission that such person is an officer meeting the definition of "insider" under the Bankruptcy Code; the listing of individuals in Plan section III.B.3 is for the purpose of disclosure compliance with 11 U.S.C. § 1129(a)(5) to demonstrate the management support Mr. Casden will have in his officer role.

There are numerous efficiencies achieved by small organizations hiring experienced executives who can perform multiple roles at the same time. This actually saves the company significant money by requiring fewer total full-time employees and provides much greater flexibility in changing course as market conditions demand. The executive team manages a full-time staff of 8 full-time employees overseeing approximately 200 business relationships, including approximately 51 customers and over 120 mill partners and vendors.

The Debtor believes that its officer compensation is at (and even below) market rates. The officer compensation is supported by the original Grobstein Report. *See*, ECF 455. The officer and director compensation is summarized in the tables below:

| Name | Title[2] | Annual Compensation | Performance-Based Bonus |
|---|---|---|---|
| Seth Casden | CEO | $300,000[3] | Up to 50% of salary |
| Francis Parish | CFO | $120,000 | None |
| Leslie Margolin | Board Member | $20,000 | None |
| Scott Carlin | Board Member | $20,000 | None |
| Julien Born | Board Member | $20,000 | None |
| Kevin Blaney | Board Member | $20,000 | None |
| Michael Haynes | Board Member | $20,000 | None |
| Seth Casden | Board Member | None | None |

| Bonus for: | Seth Casden |
|---|---|
| Personal Target | 30% |
| EBITDA Target | 10% |
| Revenue Target | 10% |

The Debtor contends that Mr. Casden's compensation (and the other officer and director compensation) carries the earmarks of an arm's length bargain and is reasonable from both a subjective and objective standard for several reasons. The compensation is not being increased

[2] Other than Seth Casden, the listing here of a person with an officer title is not an admission that such person is an officer meeting the definition of "insider" under the Bankruptcy Code; the listing of individuals here is for the purpose of disclosure compliance with 11 U.S.C. § 1129(a)(5) to demonstrate the management support Mr. Casden will have in his officer role.

[3] The $300,000 figure is as of 2019, with contractual 3% annual increase on January 1 of each year.

– it is merely remaining the same, with contractual annual percentage increases of 3%. Although not applicable here, it is helpful to note that 11 U.S.C. § 503(c)(1) permits increased insider compensation so long as it is not more than 25% of what was previously provided. Keeping the compensation constant is the norm. Although the officer compensation increases at a rate of 3% per year in accordance with their contractual terms, that more or less matches moderate inflation and is not an actual material increase, and far less than the 25% mark found in § 503(c)(1). The Debtor's officer compensation is market rate and, thus, should be approved as being an exercise of reasonable business judgment examined under heightened scrutiny and is inherently fair.

Based on the foregoing, the Plan satisfies the requirements of Section 1129(a)(5) of the Bankruptcy Code.

6. Section 1129(a)(6) of the Bankruptcy Code. Section 1129(a)(6) of the Bankruptcy Code requires that after confirmation of a plan, any governmental regulatory commission with jurisdiction "over the rates of the debtor has approved any rate change provided for in the plan …" This Section of the Bankruptcy Code is inapplicable to the Debtor.

7. Section 1129(a)(7) of the Bankruptcy Code. Section 1129(a)(7)(A) of the Bankruptcy Code (commonly referred to as the "best interest of creditors test" and herein the "Best Interest Test") requires that, with respect to each impaired class under the Plan, each member of the class must either accept the Plan or receive under the Plan property having a value, as of the Effective Date, that is not less than the amount that such claim holder would receive if the Debtor's chapter 11 case were converted to a chapter 7 liquidation case. Thus, for the Court to be able to confirm the Plan, the Court must find that all creditors and interest holders who do not accept the Plan will receive at least as much under the Plan as such holders would receive under a chapter 7 liquidation of the Debtor.

Here, the Plan passes the Best Interest Test, as set forth in the Plan's liquidation analysis in Plan section II.B. In a chapter 7 case, the debtor's assets are usually sold by a chapter 7 trustee. Secured creditors are paid first from the sales proceeds of properties on which the

secured creditor has a lien. Administrative claims are paid next. Next, unsecured creditors are paid from any remaining sales proceeds, according to their rights to priority. Unsecured creditors with the same priority share in proportion to the amount of their allowed claim in relationship to the amount of total allowed unsecured claims. Finally, interest holders receive the balance that remains after all creditors are paid, if any.

For the Court to be able to confirm the Plan, the Court must find that all creditors and interest holders who do not accept the Plan will receive at least as much under the Plan as such holders would receive under a chapter 7 liquidation of the Debtor. The Debtor maintains that this requirement is clearly met. The impaired classes under the Plan consist of classes 1, 2, and 3. The Debtor must therefore satisfy the "best interest of creditors test" with respect to members of classes 1, 2, and 3 to the extent that they do not vote to accept the Plan.

Attached as **Exhibit 1** to the Plan in balance sheet format, is a demonstration of the liquidation analysis in a hypothetical chapter 7 case as of March 1, 2027, which is the projected Plan Effective Date, if the case were to be converted to chapter 7 instead of the chapter 11 plan being confirmed. As shown in **Exhibit 1**, all creditors and interest holders will receive as much or more under the Plan as they would receive under a Chapter 7 liquidation of the Debtor. *See*, **Exhibit 1**. The Debtor employed Howard B. Grobstein though his accounting firm of Grobstein Teeple LLP as an expert witness to prepare the liquidation analysis. *See*, ECF 437. Mr. Grobstein is a CPA and a former chapter 7 panel trustee in the Central District of California. Mr. Grobstein's analysis is set forth in **Exhibit 1** and in the Grobstein Report. It is projected that Class 2 creditors would receive less in a hypothetical chapter 7 liquidation compared to the Plan. Therefore, the Plan meets the requirements of the Best Interest Test.

8. Section 1129(a)(8) of the Bankruptcy Code. Section 1129(a)(8) of the Bankruptcy Code provides that a court may confirm a plan only if "[w]ith respect to each class of claims or interests: (A) such class has accepted the plan; or (B) such class is not impaired under the plan." Section 1126(c) of the Bankruptcy Code provides that "[a] class of claims has

accepted a plan if such plan has been accepted by creditors . . . that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors . . . that have accepted or rejected such plan." Only votes actually cast are counted. *In re M. Long Arabians*, 103 B.R. 211, 216 (9th Cir.B.A.P.1989).

Here, Classes 4 and 5 are not impaired and are deemed to have accepted the Plan without voting pursuant to 11 U.S.C. § 1126(g), thereby meeting the requirements of 11 U.S.C. § 1129(a)(8). Classes 1, 2, and 3 are impaired, but the deadline for voting on the Plan is not until December 1, 2026, and, thus, as of the filing of the Motion, it is unknown whether the Plan meets the requirements of 11 U.S.C. § 1129(a)(8) as to these three classes. The Debtor will address the issue of § 1129(a)(8) as to Classes 1, 2, and 3, in its reply brief to be filed on August January 5, 2027, with its voting ballot tabulation summary.

Pursuant to Section 1191(a), if a class has not accepted the plan, the plan may still be confirmed if it meets the requirement of Sections 1191(b), (c), and (d) by showing that the plan does not discriminate unfairly and is fair and equitable with respect to such classes. The Debtor submits that that Plan meets all the requirements of 11 U.S.C. §§ 1191(b), (c), and (d) should application of those sections be necessary. However, because it is unknown whether subsections 1191(b), (c), and (d) are applicable until after voting on December 1, 2026, the Debtor will address these issues, if necessary, in its reply brief to be filed on January 5, 2027, with its voting ballot tabulation summary.

Whether a plan is confirmed under Section 1191(a) or under Section 1191(b) is significant because it will determine how and whether payments are distributed by the Trustee or by the Debtor. 11 U.S.C. § 1194(b). Section III.B.4 of the Plan states that if the Plan is confirmed pursuant to 11 U.S.C. § 1191(a), the Reorganized Debtor will act as the disbursing agent under the Plan. If the Plan is confirmed pursuant to 11 U.S.C. § 1191(b), the Reorganized Debtor will act as the disbursing agent under the Plan and submit a quarterly report to the Trustee, within 45 days after the end of each quarter, detailing the payees and amounts of payment to creditors under the Plan with bank statements as proof of payment. The Plan also

shifts Local Bankruptcy Rule reporting requirements from the Trustee to the Reorganized Debtor, even if the Plan is confirmed under § 1191(b).

9. Section 1129(a)(9) of the Bankruptcy Code. According to section 1129(a)(9) of the Bankruptcy Code, plan confirmation requires that each holder of a priority claim under Section 507(a)(2) or 507(a)(3) of the Bankruptcy Code must receive cash equal to the allowed amount of such claim or agree to a different treatment.

Section 1129(a)(9) of the Bankruptcy Code provides that a court may confirm a plan only if the plan complies with the following:

a. Each holder of a priority claim under Section 507(a)(2) or 507(a)(3) of the Bankruptcy Code must receive cash equal to the allowed amount of such claim or agree to a different treatment.[4]

b. Each holder of a priority claim under Sections 507(a)(1), (4), (5), (6) or (7) of the Bankruptcy Code must receive, on account of such claim:

i. deferred cash payments of a value, as of the effective date, equal to the allowed amount of such claim, if such class has accepted the plan; or

ii. cash on the effective date equal to the allowed amount of such claim, if such class has not accepted the plan.

c. Each holder of a priority claim under Section 507(a)(8) of the Bankruptcy Code must receive, on account of such claim, deferred cash payments, over a period not exceeding five years after the Petition Date, of a value, as of the effective date of the plan, equal to the allowed amount of such claim.

---

[4] Section 1191(e) states: "Notwithstanding section 1129(a)(9)(A)… a plan that provides for the payment through the plan of a claim… specified in [§§ 507(a)(2) or (3)] may be confirmed under [§1191(b)]." 11 U.S.C. § 1191(e). Therefore, treatment of claims under § 507(a)(2) and (3) may be paid over a period of three to five years with the debtor's projected disposable income, so long as the treatment does not discriminate unfairly. 11 U.S.C. §§ 1191(b) & (c). Here, the Plan pays priority claim under Section 507(a)(2) or 507(a)(3) on the Plan Effective Date, subject to court approval of professional fee applications as required by section 1129(a)(4), and subject to professionals' voluntary agreement for payment over time.

Under the Plan, each holder of an allowed administrative claim (i.e., claims arising under Section 507(a)(2) of the Bankruptcy Code) will be paid in full upon the Effective Date, except to the extent that some of those professionals have agreed to be paid over time to assist with the Reorganized Debtor's cash flow; estate professionals who were employed in the Case will not be paid until their fees and expenses are approved by the Court following the filing of final fee applications by such professionals. The Debtor is not aware of any prepetition priority claims under 11 U.S.C. § 507(a) except as set forth below. The Debtor paid all priority unsecured claims between November 12, 2020, and December 21, 2020, when the original plan went into effect and before the District Court stayed the plan confirmation order. These prepetition claims were paid, and the balance owing is $0:

| **Claimant** | **Proof of Claim No.** | **Claim Amount** | **Amount Already Paid Under Original Plan** | **Balance Owing** |
|---|---|---|---|---|
| County of Los Angeles | 4 | $577.32 | $577.32 | $0 |
| Cal. Franchise Tax Board | 3 | $800.00 | $800.00 | $0 |
| IRS | 6 | $435.00 | $435.00 | $0 |

Based upon the foregoing, the Plan satisfies the requirements of Section 1129(a)(9) of the Bankruptcy Code.

10. Section 1129(a)(10) of the Bankruptcy Code.

Section 1129(a)(10) of the Bankruptcy Code provides that a court may confirm a plan only if "at least one class of claims that is impaired under the plan has accepted the plan, determined without including any acceptance of the plan by any insider." Section 1126(c) of the Bankruptcy Code provides that "[a] class of claims has accepted a plan if such plan has been accepted by creditors . . . that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors . . . that have accepted or rejected such plan."

However, Section 1191(b) provides that if the requirement of Section 1129(a)(10) is not met, the court may nonetheless confirm the plan pursuant to Section 1191(b) and (c) if the plan

does not discriminate unfairly and is fair and equitable with respect to the classes that did not vote to accept the plan.

As of the filing of the Motion, it is unknown whether the Plan meets the requirements of 11 U.S.C. § 1129(a)(10) because the voting deadline is not until December 1, 2026. The Debtor will address the issue of § 1129(a)(10) in its reply brief to be filed on January 5, 2026, with its voting ballot tabulation summary.

11. Section 1129(a)(11) of the Bankruptcy Code. Section 1129(a)(11) of the Bankruptcy Code provides that a court may confirm a plan only if "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan." The purpose of §1129(a)(11) is to prevent confirmation of visionary schemes which promise creditors and equity security holders more under a proposed plan than the debtor can possibly obtain after confirmation. *In re Linda Vista Cinemas, L.L.C.*, 442 B.R. 724, 737 (Bankr.D.Ariz.2010), quoting *In re Pizza of Haw., Inc.,* 761 F.2d 1374, 1382 (9th Cir.1985) (quoting 5 Collier on Bankruptcy ¶ 1129.02[11], at 1129–34 (15th ed. 1984)).

In order to meet this feasibility standard, a debtor need only demonstrate that the plan has a "reasonable probability of success." *United States v. Energy Resources Co., Inc.*, 495 U.S. 545, 549 (1990); *In re Acequia, Inc.*, 787 F.2d 1352, 1364 (9th Cir.1986); *In re Pike's Peak Water Co*., 779 F.2d 1456, 1460 (10th Cir.1985). Bankruptcy courts have set forth six factors to help courts determine feasibility: (1) adequacy of the debtor's capital structure; (2) the earning power of the debtor's business; (3) economic conditions; (4) the ability of the debtor's management; (5) the probability of the continuation of the same management; and (6) any other related matter which determines the prospects of a sufficiently successful operation to enable performance of the provisions of the plan. *In re M&S Assoc., Ltd.*, 138 B.R. 845, 849 (Bankr.W.D.Tex.1992). However, in analyzing feasibility, the court need find only a reasonable assurance of commercial viability, not guaranteed success. *In re Prudential Energy Co.*, 58 B.R. 857, 862 (Bankr.S.D.N.Y.1986).

Here, the Debtor submits that the Plan is feasible and meets the requirements of 11 U.S.C. § 1129(a)(11). The Debtor has an adequate capital structure based on the claims in Class 1 being converted to equity and Class 3 being recharacterized as equity, and the earning structure reflected in the Plan projections demonstrate the earning power of the Debtor. The Plan projections are based on the Debtor's historical financial data and performance and reflect a conservative and achievable projection with sustained macro-economic inflation, rising Federal Reserve interest rates, a war in Europe, a war in the Persian Gulf, and rising energy costs. Growth in the five-year plan projections is conservative while reflecting the Debtor's modest potential for growth. The Debtor's management has guided the Debtor competently for many years, and the Debtor's management will remain with the Reorganized Debtor after Plan confirmation.

There are at least two important aspects of a feasibility analysis. The first aspect considers whether the Debtor will have enough cash on hand on the Plan Effective Date to pay all the claims and expenses which are entitled to be paid on such date. As to the first aspect of feasibility, the Debtor's Plan projections show the cash on hand as of the Effective Date to make the necessary payments. *See*, Plan Exhibit 2.

The second aspect of feasibility considers whether the Reorganized Debtor will have enough cash over the life of the Plan to make the required Plan payments. The Plan projections demonstrate sufficient cash flow to make all Class 2 payments in February of 2028, 2029, 2030, 2031, and 2032, even while keeping a cushion of cash reserves for business operations and unanticipated fluctuations in the business and market. Therefore, the Plan is feasible.

The feasibility of the Plan is also bolstered by the Debtor's efforts to obtain financing or capital for the Class 2 payments at net present value, which will eliminate any uncertainty as to feasibility for Class 2. "Fair valuation for a company that can continue day-to-day operations is based on a 'going concern' or 'market price' valuation." *In re Genco Shipping & Trading Ltd.*, 513 B.R. 233, 242 (Bankr.S.D.N.Y.2014) (collecting case law citations). The court has broad discretion to determine the extent and method of inquiry necessary for valuation depending on

the facts of each case. *Id.*; 7 Collier ¶ 1129.05[3](a). "The goal of all methods is the same: to determine the present worth of future anticipated earnings of the debtor corporation." *Id.* at 243 (internal citations and quotations omitted). Here, the Debtor has applied the discounted cash flow ("DCF") method to calculate the net present value of the Class 2 Plan payments for the purpose of paying Class 2 in advance.

"A discounted cash flow analysis entails estimating the periodic cash flow that a company will generate over a discrete time period, determining the 'terminal value' of the company at the end of the cash flows and terminal value to determine the total value as of the relevant date." *Id.* at 254 (internal citations and quotations omitted). The DCF method estimates the net present value of a company by: "(i) projecting unlevered free cash flows over a given fixed forecast period, then discounting those cash flows back to the present using an estimated discount rate based upon the company's weighted average cost of capital; and (ii) deriving the value of all unlevered free cash flows beyond the explicit forecast period – the 'terminal value' – and then discounting that terminal value back to the present by applying the estimated discount rate. The entire value is determined by adding the numbers derived from (i) and (ii)." *Id.* at 243. Here, part "ii" of the analysis is inapplicable because for Class 2, the only relevant forecast period is the three-year period under the Plan.

Some courts have recognized that the DCF is a traditional methodology but nonetheless found that it has certain limitations when the assumptions are unreliable or difficult to ascertain. *Id.* Here, there are no such limitations in the Debtor's case because the assumptions are reliable and the future cash flow is not unreasonably difficult to ascertain. The Plan projections are based on historical data, with modest but attainable annual increases and revenue targets/goals. The Plan projections then incorporate modest conservative growth of 5.5% in the first two years, 3.0% in the third, fourth, and fifth years of the Plan. The Debtor's industry is neither new nor volatile. *See*, *id.* at 255 (noting DCF is difficult to apply in difficult and volatile industries). Therefore, the net present value payment for Class 2 under the discounted cash flow method calculation by the Debtor using 40% is appropriate, and further militates in favor of plan

feasibility as to Class 2. The Debtor contends that 40% is the correct discount rate. The 40% discount rate is supported by the Grobstein Report.

12. Section 1129(a)(12) of the Bankruptcy Code. Section 1129(a)(12) of the Bankruptcy Code provides that a court may confirm a plan only if "[a]ll fees payable under section 1930 of title 28, as determined by the court at the hearing on confirmation of the plan, have been paid or the plan provides for the payment of all such fees on the effective date of the plan." The Debtor is in compliance with all of the fee requirements set forth in section 1930 of title 28. The Debtor has timely paid all fees or costs owing to the Clerk of the Court or the Office of the United States Trustee. The Plan also provides for payment of future applicable fees. Accordingly, the requirements of Section 1129(a)(12) are met.

13. Section 1129(a)(13) of the Bankruptcy Code. Section 1129(a)(13) of the Bankruptcy Code provides that a court may confirm a plan only if "[t]he plan provides for the continuation after its effective date of payment of all retiree benefits . . . for the duration of the period the debtor has obligated itself to provide such benefits." This provision is inapplicable as the Debtor has no retiree benefit obligations.

14. Section 1129(a)(14) of the Bankruptcy Code. Section 1129(a)(14) does not apply to the Debtor because it does not have any domestic support obligations.

15. Section 1129(a)(15) of the Bankruptcy Code. Section 1129(a)(15) does not apply to Subchapter V.

16. Section 1129(a)(16) of the Bankruptcy Code. Section 1129(a)(16) of the Bankruptcy Code requires that "[a]ll transfers of property of the plan shall be made in accordance with any applicable provisions of nonbankruptcy law that govern the transfer of property by a corporation or trust that is not a moneyed, business, or commercial corporation or trust." This section applies to non-profit corporations. 7 COLLIER ON BANKRUPTCY ¶ 1129.02[16] (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.). This subsection is inapplicable to the Debtor.

**C. <u>The Provisions of Sections 1191(b)-(e) of the Bankruptcy Code</u>**

If the Debtor's Plan does not meet the requirements of Sections 1129(a)(8) or 1129(a)(10) after balloting is completed, the Debtor shall provide an analysis of 11 U.S.C. §§ 1191(b)-(e) as part of their reply brief to be filed by no later than January 5, 2027.

If the Plan is confirmed pursuant to 11 U.S.C. § 1191(a), the Debtor shall receive a discharge of its debts pursuant to 11 U.S.C. § 1141(d) on the Effective Date. If the Plan is confirmed pursuant to 11 U.S.C. § 1191(b), the Debtor shall receive a discharge pursuant to 11 U.S.C. §§ 1192 and 1141(d), as soon as practicable after the Debtor has completed payment to the Classes for which the Plan was confirmed pursuant to 11 U.S.C. § 1191(b). The Debtor will address the discharge issue in its reply brief after balloting is completed on December 1, 2026.

## VI. <u>CONTRACT AND LEASE ASSUMPTION OR REJECTION</u>

**A. <u>Standard for Assumption or Rejection</u>**

Section 1123(b)(2) of the Bankruptcy Code specifies that, subject to Section 365, a plan may provide for the assumption, rejection, or assignment of any executory contract or unexpired lease not previously rejected. Section III.B.12 of the Plan and **Exhibit 6** thereto, provide the assumption and rejection of executory contracts and prepetition unexpired leases subject to this provision, to the extent not already assumed or rejected.

Barring exceptions not herein relevant, Section 365(a) of the Bankruptcy Code authorizes a debtor in possession, "subject to the Court's approval, . . . [to] assume or reject any executory contract or unexpired lease of the debtor." A debtor in possession may assume or reject executory contracts for the benefit of the estate. *In re Klein Sleep Products, Inc.*, 78 F.3d 18, 25 (2d. Cir. 1996); *In re Central Fla. Metal Fabrication, Inc.*, 190 B.R. 119, 124 (Bankr. N.D. Fla. 1995); *In re Gucci*, 193 B.R. 411, 415 (S.D.N.Y.1996). In reviewing a debtor in possession's decision to assume or reject an executory contract, a bankruptcy court should apply the "business judgment test" to determine whether it would be beneficial to the estate to assume it. *Durkin v. Benedor Corp. (In re G.I. Indus., Inc.)*, 204 F.3d 1276, 1282 (9th Cir. 2000) (bankruptcy court applies the business judgment rule to evaluate assumption or rejection

decisions); *In re Continental Country Club, Inc.*, 114 B.R. 763, 767 (Bankr. M.D. Fla. 1990); *see also In re Gucci*, 193 B.R. at 415.

A debtor in possession satisfies the "business judgment" test when it decides, in good faith, that the assumption or rejection may benefit the estate. *In re FCX, Inc.*, 60 B.R. 405, 411 (E.D.N.C. 1986); *In re Chipwich, Inc.*, 54 B.R. 427, 430-31 (Bankr. S.D.N.Y. 1985); *Comm'l Fin. Ltd. v Hawaii Dimensions, Inc. (In re Hawaii Dimensions, Inc.)*, 47 B.R. 425, 427 (D. Haw. 1985) (bankruptcy courts generally approve the debtor in possession's decision on assumption or rejection absent a showing of bad faith, abuse of discretion, or a clear demonstration that the assumption or rejection will not benefit the estate or its creditors). *In re FCX, Inc.*, 60 S.R. at 411-12; *In re Chipwich*, 54 B.R. at 430-31. The business judgment standard requires that the court follow the business judgment of the debtor unless that judgment is the product of bad faith, whim, or caprice. *In re Prime Motors Inns*, 124 B.R. 378, 381 (Bankr. S.D. Fla. 1991), *citing Lubrizol Enterprises v. Richmond Metal Finishers*, 756 F.2d 1043, 1047 (4th Cir. 1985), *cert. denied*, 475 U.S. 1057 (1986).

In *Summit Land Co. v. Allen (In re Summit Land Co.)*, 13 B.R. 310 (Bankr. D.Utah 1981), the bankruptcy court explained why deference is given to the debtor in possession's decision to assume or reject an executory contract or unexpired lease:

> "[Court approval under section 365(a),] if required, except in extraordinary situations, should be granted as a matter of course. To begin, this rule places responsibility for administering the estate with the trustee (debtor in possession), not the court, and therefore furthers the policy of judicial independence considered vital by the authors of the Code. Seconds this rule expedites the administration of estates, another goal of the Bankruptcy Reform Act. Third, the rule encourages rehabilitation by permitting the replacement of marginal with profitable business arrangements. Fourth, the rule is supported by pre-Code cases in this Circuit."

*Id*. at 315.

Additionally, the assumption of executory contracts and unexpired leases furthers the goals of Chapter 11 of promoting reorganization by balancing the debtor's interest in

maximizing the value of its estate against the contracting party's interest in receiving the benefit of its bargain and being protected against default by the debtor after assumption has occurred. *In re Embers 86th Street. Inc.*, 184 B.R. 892, 896 (Bankr.S.D.N.Y.1995).

**B. <u>Adequate Assurance of Future Performance</u>**

In general, a debtor must cure all defaults, both monetary and non-monetary, prior to the assumption of an executory contract or unexpired lease. 11 U.S.C. § 365(b); *In re Claremont Acquisition Corp., Inc.*, 113 F.3d 1029, 1033 (9th Cir. 1997). Bankruptcy Code section 365(b)(1) provides, in relevant part, that:

> if there has been a default in an executory contract or unexpired lease of the debtor, the [debtor in possession] may not assume such contract or lease unless, at the time of assumption of such contract or lease, the [debtor in possession] –
>
> (A) cures, or provides adequate assurance that the [debtor in possession] will promptly cure, such default …;
>
> (B) compensates, or provides adequate assurance that the [debtor in possession] will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and
>
> (C) provides adequate assurance of future performance under such contract or lease."

11 U.S.C. § 365(b)(1).

To the extent not already assumed or rejected, **Exhibit 6** to the Plan sets forth the executory contracts and unexpired leases that the Debtor will assume along with the cure amounts, which will conclusively be determined to be the cure amounts upon confirmation of the Plan.

The Debtor is able to provide "adequate assurance of future performance" for these contracts and leases, as demonstrated by its ability to cure the defaults and its past ability to perform the contracts and leases without material default. Moreover, the Debtor is current on all post-petition obligations under the contracts and leases, unless otherwise noted (the Debtor is not current on post-petition payments to Seth Casden on account of his employment contract

due to orders of this Court limiting post-petition insider compensation). Based on the Debtor's pre-petition and post-petition history, the revenues historically generated by the Debtor's business operations, and the Debtor's available cash, the Debtor is able to provide adequate assurance of future performance. Accordingly, as part of the Plan, the Court should approve the cure and assumption of the contracts and leases as set forth on **Exhibit 6** to the Plan.

## VII. RESERVATION OF RIGHTS

If the Debtor's Plan does not meet the requirements of Sections 1129(a)(8) or 1129(a)(10) after balloting is completed, the Debtor shall provide an analysis of 11 U.S.C. §§ 1191(b)-(e) as part of their reply brief to be filed by no later than January 5, 2027. The Debtor reserves the right to address any and all issues related to 11 U.S.C. § 1191(b)-(e). The Debtor will address the discharge issue of 11 U.S.C. § 1141(d) in connection with whether the Plan is confirmed under § 1191(a) or § 1191(b) after plan voting is completed on December 1, 2026.

The Debtor may modify the Plan at any time before confirmation pursuant to 11 U.S.C § 1193(a). However, the Bankruptcy Court may require re-voting on the Plan if the Debtor modifies the Plan before confirmation in a manner that materially and adversely affects a creditor or interest holder that had voted in favor of the Plan. The Debtor reserves the right to modify the Plan prior to or at confirmation and may file a supplement or plan modification brief prior to the hearing on confirmation of the Plan.

## VIII. CONCLUSION

**WHEREFORE,** based on the foregoing the Debtor respectfully requests that the Court enter an order:

1. Granting this Motion;
2. Affirming the Notice of this Motion, the Plan, the Hearing on this Motion and confirmation of the Plan;
3. Overruling any objections to confirmation of the Plan;
4. Confirming the Plan pursuant to 11 U.S.C. §§ 1129 and 1191;

5. Granting the Debtor a discharge pursuant to 11 U.S.C. § 1141(d) that includes an injunction to enforce such discharge;
6. Authorizing the Debtor to assume the contracts and leases set forth in the Plan with the cure amounts determined as set forth in the exhibits to the Plan;
7. Setting a post-confirmation status conference; and
8. Granting such other and further relief as may be just and appropriate under the circumstances of the case.

Dated: October 20, 2026 HOLOGENIX, LLC

By: ___*/s/ John-Patrick M. Fritz*______
RON BENDER
JOHN-PATRICK M. FRITZ
LEVENE, NEALE, BENDER,
YOO & GOLUBCHIK L.L.P.
Attorneys for Chapter 11
Debtor and Debtor in Possession

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 2818 La Cienega Avenue, Los Angeles, CA 90034

**A true and correct** copy of the foregoing document **Debtor's Motion To Confirm Debtor's Chapter 11, Subchapter V Plan, Dated October 20, 2026; Memorandum Of Points And Authorities** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On October 20, 2026, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On October 20, 2026 I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the `document is filed.

☒ Service information continued on attached page

**Honorable Barry Russell**
United States Bankruptcy Court
Central District of California
Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Suite 1660 / Courtroom 1668
Los Angeles, CA 90012

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on October 20, 2026 I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| October 20, 2026 | J. Klassi | /s/ J. Klassi |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

- .
- **Todd M Arnold tma@lnbyg.com**
- **Ron Bender rb@lnbyg.com**
- **Thomas E Butler butlert@whiteandwilliams.com, sullivann@whiteandwilliams.com;millnamowm@whiteandwilliams.com;panchavatis@whiteandwilliams.com**
- **Robert Carrasco rmc@lnbyg.com, rmc@lnbyg.com**
- **Oscar Estrada oestrada@ttc.lacounty.gov**
- **Theodore W Frank frank@psmlawyers.com, knarfdet@gmail.com;navarro@parkermillsllp.com**
- **John-Patrick M Fritz jpf@lnbyg.com, JPF.LNBYB@ecf.inforuptcy.com**
- **Michael S Greger mgreger@allenmatkins.com, kpreston@allenmatkins.com**
- **Brian T Harvey bharvey@buchalter.com, docket@buchalter.com;dbodkin@buchalter.com;pjolley@buchalter.com**
- **Gregory Kent Jones (TR) gjones@sycr.com, smjohnson@sycr.com;C191@ecfcbis.com;cpesis@stradlinglaw.com**
- **Raffi Khatchadourian raffi@hemar-rousso.com**
- **Tinho Mang tmang@marshackhays.com, tmang@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@ecf.courtdrive.com;cmendoza@marshackhays.com**
- **Ron Maroko ron.maroko@usdoj.gov**
- **Juliet Y. Oh jyo@lnbyg.com, jyo@lnbyb.com**
- **Carmela Pagay ctp@lnbyg.com**
- **Yvonne Ramirez-Browning yvonne@browninglawgroup.com, veronica@browninglawgroup.com**
- **Kurt Ramlo RamloLegal@gmail.com, kr@ecf.courtdrive.com;ramlo@recap.email**
- **Gregory M Salvato gsalvato@salvatoboufadel.com, calendar@salvatolawoffices.com;jboufadel@salvatoboufadel.com;gsalvato@ecf.inforuptcy.com**
- **James R Selth jselth@yahoo.com, jselth@yahoo.com,maraki@wztslaw.com,sfritz@wztslaw.com,admin@wztslaw.com**
- **Zev Shechtman Zev.Shechtman@saul.com, Zev.Shechtman@ecf.courtdrive.com;hannah.richmond@saul.com;LitigationDocketing@saul.com;Shelly.Guise@saul.com;Isaiah.Bribiesca@saul.com**
- **Lindsey L Smith lls@lnbyb.com, lls@ecf.inforuptcy.com**
- **Randye B Soref rsoref@polsinelli.com, ccripe@polsinelli.com;ladocketing@polsinelli.com**
- **Heidi J Sorvino sorvinoh@whiteandwilliams.com, millnamowm@whiteandwilliams.com;sullivann@whiteandwilliams.com;panchavatis@whiteandwilliams.com;butlert@whiteandwilliams.com**
- **Alan Stomel alan.stomel@gmail.com, astomel@yahoo.com**
- **Annie Y Stoops annie.stoops@afslaw.com, yvonne.li@afslaw.com**
- **Nicole Sullivan sullivann@whiteandwilliams.com, vulpioa@whiteandwilliams.com,arthura@whiteandwilliams.com**
- **Derrick Talerico dtalerico@wztslaw.com, maraki@wztlfirm.com,sfritz@wztlfirm.com,admin@wztlfirm.com**
- **United States Trustee (LA) ustpregion16.la.ecf@usdoj.gov**
- **Larry D Webb Webblaw@gmail.com, larry@webblaw.onmicrosoft.com**
- **David Wood dwood@marshackhays.com, dwood@ecf.courtdrive.com;lbuchananmh@ecf.courtdrive.com;spineda@ecf.courtdrive.com;alinares@ecf.courtdrive.com**
- **Roye Zur rzur@elkinskalt.com, lwageman@elkinskalt.com;1648609420@filings.docketbird.com;rzur@ecf.courtdrive.com;lmasse@elkinskalt.com**

Hologenix
MML 10-19-2026

*Debtor*
Hologenix, LLC
17383 Sunset Blvd., Suite A420
Pacific Palisades, CA 90272

*Trustee*
Gregory Kent Jones (TR)
Stradling Yocca Carlson & Rauth
10100 N. Santa Monica Blvd., Suite 1400
Los Angeles, CA 90067

*U.S. Trustee*
United States Trustee (LA)
915 Wilshire Blvd, Suite 1850
Los Angeles, CA 90017

AIG Property Casualty, Inc.
Kevin J. Larner, Authorized Representative
80 Pine Street, 13th Floor
New York, NY 10005

Allegro Systems SRL
Via Del Garda 46/Q
Rovereto, Trento 368068
ITALY

AllergoSystem
Vi del Garda 46/Q
Rovereto, TN 38068
Italy

Allied Home LLC
6905 W Acco St Ste A
Montebello, CA 90640

Alvaro Pascotto Rev. Tr. 5/17/2012
11111 Santa Monica Blvd, Suite 2200
Los Angeles, CA 90025

Amber Bezahler
2300 Manning Ave.
Los Angeles, CA 90064

AQ Textiles LLC
214 Staunton Drive
Greensboro NC 27410

Barry W. Lee
Manatt, Phelps & Phillips, LLP
2049 Century Park East, Suite 1700
Los Angeles, CA 90067

Bear Mattress LLC
720 Monroe St Ste C508
Hoboken NJ 07030-6399

BeiDa/Kuseng
No. 3, Gong 8 Rd., LinKou Dist.
New Taipei City, 244
Taiwan

Best Pacific
Xinsha Port Industrial Zone, Machong Town
523147, Dongguan City, Guangdong Province
China

Bio San D.O.O.
J Huttlera 7a
310 Osijek
CROATIA

BRE Sunset Coast, LLC
c/o Brickman Associates
712 5th Ave., 6th Fl.
New York, NY 10019

Burleigh Point Ltd
117 Waterworks Way
Irvine, CA 92618

Celatica LLC
294 Cherry Ave
Long Beach CA 90802

Cell Business Equipment
1111 Old Eagle School Rd
Wayne, PA 19087-1453

Chin Yarn Chainlon
I9F, NO. 386, Shizheng RD.
Xitun Dist., Taichung City 407
Taiwan

Cobe SRL
Via Rafaello, snc 06081
Assisi PG
ITALY

Cooley LLP
1333 2nd St., Suite 400
Santa Monica, CA 90401

Cornerstone Research
555 W. 5th St., 38th Fl.
Los Angeles, CA 90013

Courtney O'Keefe
2620 Highland Ave.
Santa Monica, CA 90405

De Lage Landen
1111 Old Eagle School Rd
Wayne, PA 19087

Draper
28 Draper Lane
Canton, MA 02021

Eclat
No. 28, Wu Chuan Road
Wu Ku District, New Taipei City
Taiwan 24886

Employment Development Department
Bankruptcy Group MIC 92E
P.O. Box 826880
Sacramento, CA 94280-0001

Equiribbon Creations
21 Lyndon Rd
Sharon, MA 02067

Experien Group, LLC
224 Airport Parkway, Suite 250
San Jose, CA 95110

Fabrictech 2000, LLC dba Purecare
1402 S 40th Ave
Phoenix, AZ 85009

FENC
35F, No. 207, Tun Hwa South Rd
Sec 2, Taipei 10602
Taiwan

Fiber Innovation Technology, Inc.
398 Innovation Dr.
Johnson City, TN 37604

Fora Financial Advance, LLC
3050 Peachtree Road NW Suite 240
Atlanta GA 30305

Fora Financial West LLC
519 8th Ave., 11th Fl.
New York, NY 10018

Fownes Brothers & Co
1201 Broadway 8th Floor
New York, NY 10001

Franchise Tax Board
PO Box 942857
Sacramento, CA 94257

FRANCHISE TAX BOARD
BANKRUPTCY SECTION MS A340
PO BOX 2952
SACRAMENTO CA 95812-2952

Graham Casden
5097 Flagstaff
Boulder, CO 80302

Hangzhou Chuangyuan Feather
NO. 5 Xinda Road, Suoqian Town
Xiaoshan District Hangzhou Zhejiang
China

Hangzhou Hengyi Textile
Xishan Yiqiao Town Xiaoshan
Hangzhou Zhejiang Province
China

Hangzhou Shuangjin Textile
NO 302 Fuxing Village
Yiqiao Town Xiaoshan Dist. Hangzhou
China

Heidi J. Sorvino, Esq.
White and Williams LLP
7 Times Square, Suite 2900
New York, NY 10036

Hilltop Holdings
325 North St. Paul, Suite 700
Dallas, TX 75201

Hilovica
S.A. Carretera de Roda
6608500 Vic
Spain

Image Square Inc.
1627 Stanford Street
Santa Monica, CA 90404

Imbotex
Via Molini 26
I-35013 Cittadella
Italia

IMM Group Inc.
7301 Washington Ave S
Edina, MN 55410

Influence & Co.
1431 Cinnamon Hill Lane, Suite 104
Columbia, MO 65201

Innocor, Inc.
200 Schulz Drive 2nd Floor
Red Bank, NJ 07701

Inter Textile Innovation Co. Ltd
6F, Sakurahonmachibashi Bldg, 8-6
Honmachibashi Chuoku Osaka 5400029
JAPAN

Internal Revenue
P. O. Box 21126
Philadelphia, PA 19114

Iron Holdings, LTD
5123 Dunn Place
Nanaimo B.C., V9t-0J2
CANADA

John Hancock
197 Clarendon Street
Boston, MA 02116

John Hancock
Corp. Real Estate Attn: JM Laverdure
200 Berkeley St. C-01-05
Boston, MA 02110

John Hancock Life Insurance Company
c/o Peter D. Bilowz
Goulston & Storrs PC
400 Atlantic Avenue
Boston, MA 02110

Jowett
Wintan Inc. 10359 Rush Street
S. El Monte, CA 91733

Julien Born
208 N. 21st Street
Philadelphia, PA 19103

Juno Sleep Pty/LTD
313 N Road
Caufield South 3162, Victoria
AUSTRALIA

Kent Imaging
804B 16th Avenue S
Calgary, Alberta, T2R 0S9
CANADA

Labtex
14th Floor, No. 202, Sec. 2,
Yan-Ping N. Road, Taipei,
Taiwan

LOS ANGELES COUNTY TREASURER
AND TAX COLLECTOR
PO BOX 54110
LOS ANGELES CA 90054-0110

Luther
2F, 43 lane, Fu-Ying Rd,
Sinhuang District, New Taipei City, 2425
Taiwan

Maelor Group, Inc.
7 Village Woods Dr.
Amherst, NH 03031

Manifattura Crespi-Healthy Textile
Innovations
Corso Italia 11
22020 Vanzaghello Milan
Italy

Men Chuen
10F, No. 392, Sec I
Nei Hu Road, Taipei,
Taiwan

Michael Haynes
7817 Chadamy Way
San Diego, CA 92130

Microtrace LLC
790 Fletcher Dr., Suite 106
Elgin, IL 60123-4755

Multiple Energy Technologies, LLC
c/o Heidi J. Sorvino, Esq.
White and Williams LLP
7 Times Square, Suite 2900
New York, NY 10036

Multiple Energy Technologies, LLC
480 Johnson Rd., Suite 220
Washington, PA 15301

Murali Sundar
438 Richmond Street West, Suite 1508
Toronto, Ontario, M5V 3S6
CANADA

Nfinity Athletic LLC
53 Permalume Place
Atlanta, GA 30318

Northern Trust Company of Delaware
1313 N. Market St., Suite 5300
Wilmington, DE 19801

Polsinelli LLP
2049 Century Park East, Suite 2900
Los Angeles, CA 90067

PrimeLending Corp.
18111 Preston Rd. Suite 900
Dallas, TX 75252

PrimeLending, a PlainsCapital Company
18111 Preston Rd.
#900
Dallas, TX 75252

R.V. Winkle LLC
600 Franklin Ave
Garden City, NY 11530

Real Innerspring Technologies Pvt. LTD
B-7, Sector 3
Noida - 201301 U.P.
INDIA

Seth Casden
25406 1/2 Malibu Rd.
Malibu, CA 90265

Shinetex
3F, No. 276, Sec. 3, Chongqing N. Rd.
Datong Dist., Taipei City 10371, Taiwan

Shinkong
14FL., No. 123, Sec. 2
Nanking E. Rd., Taipei
Taiwan

Socks for Horses, Inc
304 W 9th Ave #15
Havana, FL 32333

Square One Distribution
35214 SE Center St
Snoqualmie, WA 98065

Sunvim North America
11 Erb St. East #200
Waterloo, Ontario, N2T IL4

Tai Yuen Textile (Vietnam)
Dong Van II Industrial Park, Back Thuong
Duy Tien Town, Ha Nam Province,
Vietnam

Terrapromo D.O.O.
J.J. Strossmayera 314.
31000 Osijek
CROATIA

The Design Tex Group Inc.
200 Varick St
8th Floor
New York NY 10014

The Weinberg Group LLC
1129 Twentieth Street NW, Suite 600
Washington, DC 20036

Thomas E. Butler
White and Williams LLP
7 Times Square, Suite 2900
New York, NY 10036-6524

Toong Loung
Toung Loong Textile, 1
19 F, No. 31 Sec 2
San Ming Rd, Panchiao Dist. New Taipei City
Taiwan 220

Triclinic Labs
2660 Schuyler Ave., Suite A
Lafayette, IN 47905

Troutman Sanders LLP
600 Peachtree Street, NE, Suite 300
Atlanta, GA 30308

Truecar
1401 Ocean Ave.
Suite 300
Santa Monica, CA 90401

Tula Consulting LLC
227 BROADWAY STE 302
SANTA MONICA CA 90401-3441

Under Armour Inc
1020 Hull Street
Baltimore, MD 21230

Under Armour, Inc.
c/o Annie Y. Stoops
Arent Fox LLP
555 West Fifth Street, 48th Floor
Los Angeles, CA 90013

Wellman
Mullagh, Kells,
Co. Meath, A82 NN93,
Republic of Ireland

Wellmei
No. 698 Chenduan Road,
Xiaoshan District Hangzhou 311201
China

Wells Fargo
5340 Kietzke Lane Ste 200
Reno, NV 89511

Wells Fargo Bank, N.A.
Small Business Lending Division
P.O. Box 29482
Phoenix, AZ 85038-8650

Yaasa Studios Inc.
511 Olive Street
Santa Barbara, CA 93101

Yak Sleep GmbH
Ottensteinstrabe 41
2344 Maria Enzersdorf
AUSTRIA