RON BENDER (State Bar No. 143364)
JOHN-PATRICK M. FRITZ (State Bar No. 245240)
LEVENE, NEALE, BENDER,
YOO & GOLUBCHIK L.L.P.
2818 La Cienega Avenue
Los Angeles, California 90034
Telephone: (310) 229-1234
Facsimile: (310) 229-1244
Email: RB@LNBYG.COM; JPF@LNBYG.COM

Attorneys for Chapter 11
Debtor and Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**LOS ANGELES DIVISION**

| | |
|---|---|
| In re:<br><br>HOLOGENIX, LLC,<br><br>Debtor and Debtor in Possession. | Case No.: 2:20-bk-13849-BR<br><br>Chapter 11 Case<br>Subchapter V<br><br>**DECLARATION OF SETH CASDEN IN SUPPORT OF DEBTOR'S MOTION TO CONFIRM DEBTOR'S CHAPTER 11, SUBCHAPTER V PLAN, DATED OCTOBER 20, 2026**<br><br>Hearing:<br>Date: January 12, 2027<br>Time: 10:00 a.m.<br>Place: Courtroom 1668<br>255 East Temple Street<br>Los Angeles, CA 90012 |

I, Seth Casden, hereby declare as follows:

1. I have personal knowledge of the facts set forth below and, if called to testify, would and could competently testify thereto.

2. I am the Chief Executive Officer of Hologenix, LLC, a Delaware limited liability company (the "Debtor"), the debtor and debtor in possession in this chapter 11 bankruptcy case.

3. I am a co-founder of Hologenix and have served as the Debtor's CEO from 2004-2006, 2008-2017 and again since May 2019. I have a Bachelor of Science in Business Administration from Pepperdine University and previously worked as a financial analyst in private equity.

4. I have reviewed and am familiar with and am knowledgeable about the books and records of the Debtor, which books and records are made in the regular practice of business, kept in the regular course of business, made by a person with knowledge of the events and information related thereto, and made at or near the time of events and information recorded.

5. I make this declaration in support of the *Debtor's Motion to Confirm Debtor's Chapter 11 Plan, Dated October 20, 2026* (the "Motion") and the *Debtor's Chapter 11, Subchapter V Plan, Dated October 20, 2026* (the "Plan").

6. A true and correct copy of the Plan's hypothetical liquidation analysis is attached as **Exhibit 1** hereto and incorporated by reference.

7. A true and correct copy of the Plan's projections are attached as **Exhibit 2** hereto and incorporated by reference.

8. A true and correct copy of the Plan's Class 3 creditor and recovery schedule is attached as **Exhibit 3** hereto and incorporated by reference.

9. A true and correct copy of the Plan's net present value Class 2 payment analysis is attached as **Exhibit 4** hereto and incorporated by reference.

10. A true and correct copy of the Plan's Class 4 and 5 equity interest holders list is attached as **Exhibit 5** hereto and incorporated by reference.

11. A true and correct copy of the Plan's unexpired leases and executory contract assumption list with cure amounts is attached as **Exhibit 6** hereto and incorporated by reference.

12. The Debtor was formed as a Delaware limited liability company in 2002.

13. The Debtor is a Los Angeles based company with its main office in Los Angeles, California, and has approximately twelve fulltime employees, plus its CEO, and thirteen independent contractors.

14. The Debtor's business is the scientific development and manufacture of a product for use in various consumer products, including, but not limited to, athletic wear, athleisure wear, bedding as well as residential and commercial furniture.

15. The Debtor's primary product is "CELLIANT," which is a thermo-reactive ceramic mineral compound that when applied or embedded into textiles generates Infrared radiation (IR) to improve the health and wellness of the user.

16. The Debtor holds several registered patents internationally and in the United States Patent and Trademark Office ("<u>USPTO</u>") for CELLIANT and the Debtor's other products.

17. The Debtor has multiple major commercial clients that purchase CELLIANT and other products to use in their athletic wear and other products, which are then sold through various regular channels of commerce to the consumer public.

18. The Debtor's contracts with these commercial manufacturers are for various lengths of time longer than a month-to-month or per-order basis.

19. The path from production to consumer and ultimate payment to the Debtor is a multistep process that takes over a year and sometimes 18+ months: (1) the Debtor signs a commercial contract with a commercial manufacturer; (2) the Debtor provides CELLIANT to the commercial manufacturer; (3) but often CELLIANT is sent to the commercial manufacturer's third-party apparel/product manufacturer, often in another country; (4) the third-party manufacturers the end product using CELLIANT and the commercial manufacturer's brand and specifications; (5) the product goes to the consumer market; (6) if consumers buy the

product in which CELLIANT is used, (7) then a portion of those sale proceeds is paid to the Debtor. The portion of the sale funds allocated to the Debtor can be significantly reduced if the commercial manufacturer decides to steeply discount its products in any number of ways, such as back-to-school sales, after-Christmas sales, or clearance sales.

20. The Debtor had been in the growth phase of its business for 2017, 2018, and 2019, when a confluence of several events led to this current bankruptcy filing.

21. On February 28, 2019, one of the Debtor's competitors, Multiple Energy Technologies, LLC ("MET") filed its lawsuit titled "Multiple Energy Technologies, LLC v. Hologenix, LLC" in the United States District Court for the Central District of California, bearing case number 2:19-cv-1483-PA-RAO (the "MET Lawsuit").

22. MET alleged violations of the federal Lanham Act, including that the Debtor had made false or misleading statements about the benefits of Celliant compared to other bioceramics, such as the one produced by MET. MET also alleged that the Debtor's statements constituted intentional interference with economic advantage and/or negligent interference with prospective economic advantage.

23. On April 12, 2019, the Debtor answered and filed counterclaims in the MET Lawsuit. On March 6, 2020, the Debtor and MET voluntarily entered into a settlement (the "MET Settlement") prior to trial or adjudication of any issue of law or fact. Pursuant to the MET Settlement, MET holds a general unsecured claim in the amount of $2,400,000.

24. The MET Lawsuit and MET Settlement by themselves would not have resulted in the Debtor's bankruptcy filing, but a serious of other adverse events quickly unfolded in short succession thereafter, and the aggregate of all of these events put serious liquidity constraints on the Debtor's business.

25. On or about March 15, 2020, the City of Los Angeles and the State of California had declared a state of emergency with shelter in place orders, business across the city, the state, and many financial and business centers across the United States came to a near total standstill as the nation was gripped by the COVID-19 crisis.

26. The Debtor was expecting a large accounts receivable payment from its largest merchant contract, Under Armour, when Under Armour informed the Debtor that it would not pay the account receivable for at least 90 days. The Debtor was relying on that accounts receivable payment to pay its cash flow needs for regular operating expenses, and without that payment, the Debtor will have to obtain new financing to keep operations running.

27. On April 16, 2020, Under Armour sent to the Debtor a letter making demand for indemnification in connection with a class action lawsuit threatened by a plaintiff and plaintiff law firm against Under Armour for public statements that Under Armour made about its products that use Celliant (though no formal complaint has been lodged against the Debtor). The plaintiff and plaintiff lawyer cited to the MET Lawsuit in its allegation letter against Under Armour.

28. The state of world health and economic affairs and the global recession had a material impact on the Debtor's accounts receivable collection and future revenue projections for many months. The Debtor is part of a global commercial manufacture and consumer sales supply chain (as demonstrated and explained above), and the closing of commercial factories at one end and consumer retail shopping stores at the other end, as well as the disrupted logistical transport system in between, would (and did) negatively impact and slow the Debtor's business for several months.

29. The Debtor determined in its reasonable business judgment that it was in the best interest of its estate to file this current bankruptcy case to preserve the going-concern value of its business and save the jobs of its employees. The Debtor has proposed this Plan to repay its creditors in accordance with the Plan's terms.

30. At a hearing held on October 6, 2020, the Court confirmed the Debtor's first chapter 11 plan over the sole objection and objecting vote of MET. MET appealed the plan confirmation order, but the confirmed plan went effective on November 12, 2020. More than five weeks later, on December 20, 2020, the United States District Court issued an order staying the plan confirmation order pending the outcome of the appeal. On September 27, 2021, the

United States District Court issued its decision vacating the plan confirmation order and remanding to the Bankruptcy Court for further proceedings. At a status conference hearing held on November 16, 2021, at the Bankruptcy Court's suggestion, the Debtor voluntarily withdrew its remanded plan, and a deadline of January 4, 2022.

31. On January 4, 2022, the Debtor filed its second plan, which was set for hearing on February 15, 2022. MET objected that it did not have adequate time for plan objection discovery, and the Court suspended the hearing on the plan indefinitely while MET conducted discovery for six months. In June 2022, the Court sua sponte set a hearing on plan confirmation and a deadline for Debtor to file modifications to its plan due to the passage of time since January. On June 21, 2022, the Debtor filed its modified plan, and, on August 9 and 10, 2022, the Court held a two-day hearing and confirmed Debtor's plan for a second time. Again, MET appealed, obtained a stay of the plan order pending appeal, and, in a four-year process, the District Court reversed and remanded plan confirmation (not on any of the seven issues MET had raised on appeal, but on a novel of issue of law that the District Court raised *sua sponte* and that neither MET nor Debtor nor the Bankruptcy Court had ever raised or discussed). The Debtor appealed to the Ninth Circuit, which accepted the appeal, the Debtor and MET fully briefed the issues on appeal, the matter was set for oral argument for February 2026, and two weeks prior to oral argument the Ninth Circuit issued a decision that it had no jurisdiction over an interlocutory appeal, thereby remanding the matter back to the bankruptcy court without any guidance on the eight issues raised in the appeals. After further briefing, on May 26, 2026, the Bankruptcy Court decided to confirm Debtor's plan on remand on the novel issue of law raised by the District Court's decision, but, later changed its position while drafting the findings of fact and conclusions of law and on August 25, 2026, informed the Debtor that that plan would not be confirmed because the financial data underlying the plan from June 2022 was too stale for confirmation purposes and, hence, causing Debtor to file the present Plan.

32. From the Petition Date to present, Debtor's business operations have sustained the Debtor's going-concern value with capital contributions from equity holders.

33. The Debtor now has approximately eight fulltime employees.

34. The Debtor now has approximately 51 signed customer contracts, but approximately 9 of those customers do not have product in the market and are at various stages of development. Within the 51 signed customer contracts, approximately 18 contracts are U.S. based.

35. The Debtor's accounts receivable was $853,094.56 as of August 31, 2026, and more information on updated accounts receivable is set forth in the Plan's hypothetical liquidation (*see*, **Exhibit 1**, discussed below).

36. The Debtor has one office lease location at 13783 W. Sunset Blvd, Suite A420, Pacific Palisades, California 90272.

37. One of the ongoing challenges to the Debtor's business is litigation and potential litigation. Since the Petition Date, the Debtor has incurred more than $2,000,000.00 of attorneys' fees and costs, mostly related to litigating, and defending against bankruptcy and non-bankruptcy litigation commenced by MET (these figures do not include attorneys' fees and costs for regular, non-litigation patent, trademark, and intellectual property maintenance).

38. The Debtor submits that its Plan can and should be confirmed.

39. The Plan is a reorganization plan.

40. The Plan is the Debtor's proposal to reorganize its financial affairs to repay allowed claims of creditors of this bankruptcy estate over a period of years.

41. The post-confirmation Debtor will acquire all assets and assume all liabilities of the Debtor as restructured under the Plan, and the post-confirmation Debtor will referred to herein as the "Reorganized Debtor."

42. The Reorganized Debtor will sign any reasonable documentation as requested by creditors or required by law to effectuate the acquisition of assets and assumption of liabilities under the Plan.

43. The Debtor will fund and effectuate the Plan with cash on hand as of the Effective Date and future cash generated by the operation of its business as a going concern.

44. The Debtor, or Reorganized Debtor, as the case may be, will explore financing and capital investment opportunities to prepay allowed claims under the Plan where possible and reasonable.

45. The Plan designates four classes of claims and two class of interest holders.

46. For Class 1, the claimholders in that class are substantially similar because they each hold convertible notes that might one day be converted in equity, and they all remain in Class 1 for that purpose; and the retention of a lien by Class 1B compared to Class 1A, which does not have a lien, is irrelevant because the overriding "substantially similar" quality of the claimants is that they are all convertible note holders. None of the creditors of the estate hold convertible notes, except the Class 1 creditors.

47. Class 2 claim holders are separately classified because they are unsecured claims, have no collateral no liens, no convertible note options, and are comprised of non-insiders who lack of the specialized inside-knowledge of insiders when their claims originate.

48. Class 3 is comprised of separately classified unsecured claims of insiders, which are separately classified because their claims are being equitably subordinated and recharacterized as equity because of their specialized inside-knowledge about the Debtor when their claims originate, making them part of the insider debt-equity capital structure and unlike the arms-length claims of non-insiders.

49. Class 4 is separately classified as equity interest holders because they do not hold creditor claims, but they are the only parties in interest holding equity. Finally, Class 5 is separately classified because they hold neither claims nor vested interests but nonetheless hold property rights in yet unvested equity interests.

50. The Plan designates all classes of claims other than claims specified in Sections 507(a)(2), (3) and (8) of the Bankruptcy Code.

51. The Plan indicates whether each class under the Plan is impaired and what treatment each class will receive.

52. In the Plan, no claim holder or interest holder is receiving treatment under the Plan different from any other claim holder or interest holder in the same class.

53. The Plan describes the means for the Plan's implementation. The Debtor will implement the Plan through business operations and cash flow. If the Debtor is able to refinance or recapitalize, it will prepay Class 3 plan payments.

54. The Plan provides for the inclusion in the Debtor's charter of a provision prohibiting the issuance of nonvoting equity securities, and providing, as to the several classes of securities possessing voting power, an appropriate distribution of such power among classes.

55. The Plan contains only provisions that are consistent with the interests of creditors and equity security holders and with public policy with respect to the manner of selection of any officer, director, or trustee.

56. The Plan designates that classes 1, 2, and 3 are impaired and that classes 4 and 5 are not impaired.

57. Section III.B.12 of the Plan and **Exhibit 6** thereto, provide the assumption and rejection of executory contracts and prepetition unexpired leases subject to this provision, to the extent not already assumed or rejected.

58. As set forth in sections III.B.5 & 6 of the Plan, the Plan provides that all claims, claim objections, causes of action and avoidance actions of the Debtor and its estate are preserved by the Plan, and the Reorganized Debtor shall have sole standing and full power and authority to settle, adjust, retain, enforce, or abandon any claim, cause of action, or avoidance actions as the representative of the Debtor's estate under section 1123(b) of the Bankruptcy Code or otherwise, regardless of whether such claims, causes of action, or avoidance actions were commenced prior or subsequent to the Plan Effective Date.

59. The Plan does not contemplate the specific sale of any assets.

60. The Plan does not contain provisions inconsistent with the applicable provisions of the Bankruptcy Code.

61. The Debtor is the proponent of the Plan.

62. The Debtor proposed its original chapter 11 plan within the 90-day statutory deadline from the Petition Date.

63. The Plan contains a brief history of the business operations of the Debtor, a liquidation analysis, and projections with respect to the ability of the Debtor to make payments under the proposed plan of reorganization.

64. The Plan has been proposed in good faith by the Debtor.

65. The Plan is not proposed by any means forbidden by law.

66. The Debtor has consulted with the Subchapter V Trustee throughout this bankruptcy case in an effort to administer the estate and propose this Plan in good faith.

67. In accordance with the Plan, the Bankruptcy Court must approve all professional fees and expenses before they may be paid.

68. The Plan discloses the identities and affiliations of individuals proposed to serve as officers and directors or voting trustees of the Debtor and Reorganized Debtor.

69. I, Seth Casden, will remain and continue to manage the Reorganized Debtor's business affairs following confirmation of the Plan, assisted with the Debtor's same management team and board members as of the Petition Date, plus two additional board members (Julien Born and Michael Haynes), minus the Debtor's former COO and CSCO, who left the company during the pendency of the bankruptcy case.

70. The Debtor's management has competently guided the Debtor through the development and growth of the Debtor's business prepetition, as well as through the trying times of this current bankruptcy case, global pandemic, and 40-year-high historic inflation, and there is no issue as to their competence or alignment of their interests with those of the Debtor.

71. I am one of six (6) board members, and the board unanimously supports the selection of the Debtor's current and Reorganized Debtor's proposed officer and director management team.

72. The selection and appointment and continuance of the Debtor's officer and director management team is consistent with the best interests of creditors and equity holders and with public policy.

73. Public policy favors the continuation of the Debtor's current officers, directors, and managers in managing the affairs of the Reorganized Debtor after the Plan Effective Date. The Debtor's management team under me and the board are qualified to act as the managers, officers, and directors of the Reorganized Debtor based upon our many years of experience, and we are capable of directing the Reorganized Debtor in calculating and making distributions to creditors with unclassified claims and in Classes 1 and 3 as required under the Plan after the Effective Date.

74. The Plan discloses the identity of insider that will be employed or retained by the Reorganized Debtor and the nature of any compensation for such insider.

75. The compensation provided to the Board Members is the same compensation provided pre-petition. The five board members (other than myself) have deep expertise in textiles, healthcare, licensing, marketing and financing, providing the Debtor a diverse set of highly qualified advice and guidance on the maintenance, management, and growth of the Debtor and Reorganized Debtor.

76. Prepetition, the Debtor engaged in extensive research into the market rates for board compensation, and found that $20,000 per board member per year was the lowest market compensation for a company of the Debtor's size. The Debtor was able to obtain the board's expertise with this market floor rate only by offering both phantom equity shares and cash in the compensation package.

77. The compensation for the officers[1] is the same as the prepetition compensation, with contractual annual percentage increases. The compensation for the officers and directors is appropriate market rate and necessary to incentivize and fairly compensate for their services.

---

[1] Other than myself, the Plan's listing of a person with an officer title in Plan section III.B.3 is not an admission that such person is an officer meeting the definition of "insider" under the Bankruptcy Code; the listing of individuals in Plan section III.B.3 is for the purpose of disclosure

78. The Plan projections do not include officer bonus payments because the company has not met bonus targets in the past few years.

79. The Debtor's proposed management (the same as the Debtor's current management) has a good and viable business with a good faith attempt to reorganize.

80. The Debtor's management has competently guided the Debtor through the development and growth of the Debtor's business prepetition, as well as through the trying times of this current bankruptcy case and there is no issue as to their competence or alignment of their interests with those of the Debtor.

81. The Debtor is not a start-up, but a 20-year-old company with a track record of hiring seasoned executives, like Jim Calhoun, the former President of Converse, Inc.

82. The Debtor's Board felt having an experienced supporting cast was critical to accomplishing the short and medium term goals set by the Board, as well as for attracting the critical investment needed.

83. There are numerous efficiencies achieved by small organizations hiring experienced executives who can perform multiple roles at the same time. This actually saves the company significant money by requiring fewer total full-time employees and provides much greater flexibility in changing course as market conditions demand. The executive team manages a full-time staff of approximately eight employees overseeing approximately 200 business relationships, including approximately 51 customers and over 120 mill partners and vendors.

84. The Debtor believes that its officer compensation is at (and even below) market rates. The Debtor employed Howard B. Grobstein though his accounting firm of Grobstein Teeple LLP as an expert witness on various plan confirmation issues. *See*, Doc. No. 437. The officer compensation supported by Mr. Grobstein's original report. ECF 455. The officer compensation is summarized in the tables below (my compensation has a contractual 3% annual increase on January 1 of each year):

---

to demonstrate the management support I will have in my officer role.

| Name | Title | Annual Compensation | Performance-Based Bonus |
|---|---|---|---|
| Seth Casden | CEO | $300,000[2] | Up to 50% of salary |
| Francis Parish | CFO | $120,000 | None |
| Leslie Margolin | Board Member | $20,000 | None |
| Scott Carlin | Board Member | $20,000 | None |
| Julien Born | Board Member | $20,000 | None |
| Kevin Blaney | Board Member | $20,000 | None |
| Michael Haynes | Board Member | $20,000 | None |
| Seth Casden | Board Member | None | None |

85. Other than myself, the listing here of a person above with an officer title is not an admission that such person is an officer meeting the definition of "insider" under the Bankruptcy Code but is for the purpose of disclosure compliance with 11 U.S.C. § 1129(a)(5) to demonstrate the management support I will have in my officer role.

86. Regarding officer bonuses, I have a personal target bonus of 30% and a 10% EBITDA target bonus, and 10% revenue target bonus. This is disclosed as terms of the contract; however, the Plan projections do not include any bonus payments because the company has not met bonus targets for the past few years.

87. Classes 1, 2, and 3 are impaired and entitled to vote on the Plan. The deadline to cast votes is December 1, 2026.

88. Classes 4 and 5 are not impaired and are deemed to have accepted the Plan without voting.

89. The Debtor paid all priority unsecured claims between November 12, 2020, and December 21, 2020, when the original plan went into effect and before the District Court stayed the plan confirmation order. These prepetition claims were paid and the balance owing is $0:

| **Claimant** | **Proof of Claim No.** | **Claim Amount** | **Amount Already Paid Under Original Plan** | **Balance Owing** |
|---|---|---|---|---|
| County of Los Angeles | 4 | $577.32 | $577.32 | $0 |

[2] The $300,000 figure is as of 2019, with contractual 3% annual increase on January 1 of each year.

| | | | | |
|---|---|---|---|---|
| Cal. Franchise Tax Board | 3 | $800.00 | $800.00 | $0 |
| IRS | 6 | $435.00 | $435.00 | $0 |

90. Attached as **Exhibit 1** hereto and to the Plan, in balance sheet format, is a demonstration of the liquidation analysis in a hypothetical chapter 7 case as of March 1, 2027, which is the projected Plan Effective Date, if the case were to be converted to chapter 7 instead of the chapter 11 plan being confirmed. As shown in **Exhibit 1**, all creditors and interest holders will receive as much or more under the Plan as they would receive under a Chapter 7 liquidation of the Debtor. *See*, **Exhibit 1**. The Debtor employed Howard B. Grobstein though his accounting firm of Grobstein Teeple LLP as an expert witness to prepare the liquidation analysis. *See*, ECF 437. Mr. Grobstein is a chapter 7 panel trustee in the Central District of California and a CPA. Mr. Grobstein's analysis is set forth in **Exhibit 1**. It is projected that Class 2 creditors would receive less in a hypothetical chapter 7 liquidation compared to the Plan. Therefore, the Plan meets the requirements of the Best Interest Test.

91. Confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or Reorganized Debtor under the Plan.

92. The Plan has a reasonable possibility of success and the Reorganized Debtor has a reasonable assurance of commercial viability because of : (1) adequacy of the Debtor's capital structure; (2) the earning power of the Debtor's business; (3) economic conditions; (4) the ability of the Debtor's management; (5) and the probability of the continuation of the same management.

93. The Debtor has an adequate capital structure based on the claims in Class 1 being converted to equity and Class 3 being recharacterized as equity, and the earning structure reflected in the Plan projections demonstrate the earning power of the Debtor. The Plan projections are based on the Debtor's historical financial data and performance and reflect a conservative and achievable projection with sustained macro-economic inflation, rising Federal Reserve interest rates, a war in Europe, a war in the Persian Gulf, and rising energy costs. Growth in the five-year plan projections is conservative while reflecting the Debtor's modest potential for growth. The Debtor's management has guided the Debtor competently for many

years, and the Debtor's management will remain with the Reorganized Debtor after Plan confirmation.

94. The Debtor's Plan projections show the cash on hand as of the Effective Date to make the necessary payments. *See*, Exhibit 2 hereto.

95. The Plan projections demonstrate sufficient cash flow to make all Class 2 payments in February 2028, 2029, 2030, 2031, and 2032, even while keeping a cushion of cash reserves for business operations and unanticipated fluctuations in the business and market. Therefore, the Plan is feasible.

96. The feasibility of the Plan is also bolstered by the Debtor's efforts to obtain financing or capital for the Class 2 payments at net present value, which will eliminate any uncertainty as to feasibility for Class 2.

97. The Debtor has applied the discounted cash flow ("DCF") method to calculate the net present value of the Class 2 Plan payments for the purpose of paying Class 2 in advance.

98. The assumptions in the Plan projections are reliable and the future cash flow is not unreasonably difficult to ascertain.

99. The Plan projections are based on historical data, with modest but attainable annual increases and revenue targets/goals. The Plan projections then incorporate modest conservative growth of 5.5% in the first two years, 3.0% in the third, fourth, and fifth years of the Plan. The Debtor's industry is neither new nor volatile.

100. Therefore, the net present value payment for Class 2 under the discounted cash flow method calculation by the Debtor using 40% is appropriate, and further militates in favor of plan feasibility as to Class 2.

101. The Debtor contends that 40% is the correct discount rate. *See*, Grobstein Report.

102. Mr. Grobtsein's report provides substantiation for the 40% discount rate. *See*, Grobstein Report.

103. If the Court confirms the Plan, an additional $47,406.00, will be added to the Class 2 recovery, pursuant to a settlement between the estate and me that was approved by the Court in 2022 [ECF 465, 755].

104. The Debtor is in compliance with all of the fee requirements set forth in section 1930 of title 28. The Debtor has timely paid all fees or costs owing to the Clerk of the Court or the Office of the United States Trustee. The Plan also provides for payment of future applicable fees.

105. The Debtor has no retiree benefit obligations.

106. The Debtor does not have any domestic support obligations.

107. The Debtor is not a non-profit corporation.

108. To the extent not already assumed or rejected or otherwise already determined by the Court, **Exhibit 6** to the Plan and to this declaration sets forth the executory contracts and unexpired leases that the Debtor will assume along with the cure amounts, which will conclusively be determined to be the cure amounts upon confirmation of the Plan.

109. The Debtor is able to provide “adequate assurance of future performance” for these contracts and leases, as demonstrated by its ability to cure the defaults and its past ability to perform the contracts and leases without material default.

110. Moreover, the Debtor is current on all post-petition obligations under the contracts and leases, unless otherwise noted.

///

///

///

///

///

///

///

///

111. Based on the Debtor's pre-petition and post-petition history, the revenues historically generated by the Debtor's business operations, and the Debtor's available cash, the Debtor is able to provide adequate assurance of future performance.

On October 20, 2026, I declare and verify under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Executed on this 20th day of October 2026, at Los Angeles, California.

**SETH CASDEN**

Respectfully submitted by:

LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.

By: */s/ John-Patrick M. Fritz*
RON BENDER
JOHN-PATRICK M. FRITZ
Attorneys for Chapter 11
Debtor and Plan Proponent

# Exhibit 1

**Debtor:** ***In re Hologenix, LLC***
**Case number: 2:20-bk-13849-BR**

**Exhibit 1: Liquidation Analysis (as of March 1, 2027)**

**Estimated Liquidation Value of Assets**

| Non-Exempt Assets | | Book Value | Chapter 11 | Liquidation Discount | Chapter 7 | |
|---|---|---|---|---|---|---|
| Cash on hand | [1] | $571,666.54 | $571,666.54 | 0% | $571,666.54 | |
| Cash Reserved for Operations | [2] | N/A | ($269,307.39) | N/A | $0.00 | |
| Net Projected Disposable Income from Operations | [3] | N/A | $1,617,911.21 | N/A | $0.00 | |
| Accounts Receivable | [4] | $604,332.42 | $0.00 | 40% | $362,599.45 | |
| Investment in Agriculture Research | [5] | $87,461.43 | $0.00 | 100% | $0.00 | |
| Inventory | [6] | $1,085,021.45 | $0.00 | 85% | $162,753.22 | |
| Fixed Assets | [7] | $81,813.65 | $0.00 | 90% | $8,181.36 | |
| Intellectual Property | [8] | $1,218,046.56 | $0.00 | 90% | $121,804.66 | |
| Lease Deposits | [9] | $108,015.93 | $0.00 | 100% | $0.00 | |
| **Total** | | $3,756,357.98 | $1,920,270.36 | | $1,227,005.23 | |
| Less: Chapter 7 trustee fees and expenses | – | | $0.00 | | $62,560.16 | |
| Less: Chapter 7 trustee legal and accounting fees | | | $0.00 | | $125,000.00 | [10] |
| Less: Chapter 11 Estimated Professional Fees (legal and accounting) | – | [11] | $1,405,270.36 | | $1,405,270.36 | |
| Less: SubChapter V trustee fees and expenses | – | | $15,000.00 | | $15,000.00 | |
| Less: Class 1A | – | [12] | $0.00 | | $0.00 | |
| Less: Class 1B (Murali Sundar) | | | $0.00 | | $346,753.18 | [13] |
| Less: Priority claims (excluding administrative expense claims) | – | [14] | $0.00 | | $0.00 | |
| **(1) Estimated amount available to pay allowed general unsecured claims** | | | **$500,000.00** | | **($727,578.47)** | |
| **(2) Total dollar amount of non-insider unsecured claims** | | [15] | **$4,088,217.61** | | **$4,088,217.61** | |
| **(3) Total dollar amount of insider and non-insider unsecured claims** | | | | | **$7,637,050.61** | [16] |
| **Estimated Minimum Percentage Dividend (non-insider claims only):** | | | 12.2% | | -17.8% | |
| **Estimated Minimum Percentage Dividend (insider and non-insider unsecured claims):** | | | | | -9.5% | |
| **Class 2 NPV Payment** | | [17] | $ 170,884.00 | | | |

**The Liquidation Analysis takes into account the following:**

[1] Cash on hand consists of the anticipated funds held in the Debtor-in-Possession accounts on the effective date of the Plan.

[2] The Debtor projects this amount is needed for continued operations.

[3] Per Debtor, the Debtor anticipates that the Net Projected Disposable Income from Operations will be approximately $1,617,911.21.

[4] Debtor's anticipated accounts receivable as of March 1, 2027 is estimated at $604,332.42. GT estimates that in an immediate liquidation of accounts receivable under Chapter 7, it would recover approximately 60% of the amount it would collect under its Chapter 11 plan of reorganization.

[5] Per Seth Casden, the Debtor's books and records inadvertently identified the Investment in Agriculture Research as "FDA - Patents & Other." The other three categories "FDA - Clinical Studies," "FDA - Legal & Professional," and "Patents & Trademarks" are liabilities that should have been included in the category of "Intellectual Property." Debtor has now corrected this in its books and records. GT was initally provided this information by Seth Casden on February 18, 2022 via a Zoom meeting. The amount listed is the updated Book Value provided by the Debtor as of March 1, 2027. Debtor's investment in agriculture research in not an asset that can be liquidated or used for repayment under a Chapter 11 plan, therefore, it has been adjusted to zero. Book Value used as of March 1, 2027.

[6] The current value of the inventory is $1,085,021.45. GT estimates that the liquidation value in a Chapter 7 bankruptcy it would recover approximately 15% of the book value. Book Value used as of March 1, 2027.

[7] GT estimates the Chapter 7 liquidation value of Fixed Assets is estimated to be approximately 10% of the book value. It is assumed the FF&E would not be liquidated in a Chapter 11, therefore, the value would be $0.00. Book Value used as of March 1, 2027.

[8] Per information provided by Seth Casden as described in FN 5, the liability has been increased to include the categories of "FDA - Clinical Studies," "FDA - Legal & Professional," and "Patents & Trademarks." GT estimates the Chapter 7 liquidation value of its Intellectual Property is estimated to be approximately 10% of the book value. It is assumed the Intellectual Property would not be liquidated in a Chapter 11, therefore, the value would be $0.00. Book Value used as of March 1, 2027.

[9] GT estimates the Chapter 7 liquidation value of Lease Deposits is estimated to be approximately 0% of the book value as it would very likely not be collectible. It is assumed the Lease Deposits would not be liquidated in a Chapter 11, therefore, the value would be $0.00. Book Value used as of March 1, 2027.

[10] Estimated legal and accounting fees incurred by a Chapter 7 Trustee would be reduced significantly to $125,000 from the $350,000 originally set forth in January 2022.

[11] Chapter 11 Professional Fees are estimated as follows: (1) Levene, Neale, Bender, Yoo & Golubchik, L.L.P.; (2) Gregory Jones - Subchapter V Trustee (shown on separate line); Grobstein Teeple, LLP; Buchalter; Troutman Pepper Hamilton Sanders LLP; Dermer Behrendt; Theodora Oringher PC; and M&G Partners.

[12] Per Counsel, Class 1A settled and will released its liens.

[13] Per Counsel, under a Chapter 7 liqudation Class 1B - Murali Sunder's claim for $200,000.00 principal plus interest in the amount of $346,753.18 would be allowed. Interest is calculated at 8%, compounded daily, starting April 15, 2020.

[14] Debtor paid the Priority Claims in the post-confirmation period of November 12, 2020 - December 21, 2020.

[15] Per Counsel, the amount is for non-insider unsecured claims.

[16] Per Counsel, the amount is for insider and non-insider unsecured claims.

[17] Net Present Value (NPV) reflects the estimated payments to Class 2 creditors, discounted at 40% over 5 years.

# Exhibit 2

| | 2027 | 2027 | 2027 | 2027 | 2027 | 2027 | 2027 | 2027 | 2027 | 2027 | 2028 | 2028 | Y1 | Y2 | Y3 | Y4 | Y5 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Q1 | Q2 | Q2 | Q2 | Q3 | Q3 | Q3 | Q4 | Q4 | Q4 | Q1 | Q1 | Mar'27 - Feb'28 | Mar'28 - Feb'29 | Mar'29 - Feb'30 | Mar'30 - Feb'31 | Mar'31 - Feb'32 |
| | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 1 | 2 | | | | | |
| | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | | | | | |
| **Beginning Cash Balance** | 571,666.54 | 510,675.83 | 666,344.22 | 543,877.76 | 384,692.75 | 427,871.75 | 452,115.24 | 511,070.95 | 234,811.50 | 262,392.08 | 148,826.84 | 422,859.88 | 571,666.54 | 350,676.90 | 332,194.45 | 410,310.18 | 500,327.98 |
| **Cash In from Operations** | 267,342.40 | 478,254.37 | 282,639.10 | 304,092.38 | 352,895.12 | 433,087.63 | 438,402.95 | 335,651.56 | 446,862.67 | 311,264.12 | 600,981.30 | 300,140.73 | 4,551,614.32 | 4,801,953.11 | 5,066,060.53 | 5,218,042.34 | 5,374,583.61 |
| **Cash In from Financing** | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Cash Out from Operations** | 328,333.11 | 322,585.98 | 405,105.55 | 463,277.39 | 309,716.12 | 408,844.13 | 379,447.24 | 611,911.00 | 419,282.09 | 424,829.35 | 326,948.26 | 372,323.71 | 4,772,603.97 | 4,820,435.55 | 4,987,944.81 | 5,128,024.54 | 5,605,604.20 |
| **Cash Out from Financing** | | | | | | | | | | | | | | | | | |
| **Ending Balance** | 510,675.83 | 666,344.22 | 543,877.76 | 384,692.75 | 427,871.75 | 452,115.24 | 511,070.95 | 234,811.50 | 262,392.08 | 148,826.84 | 422,859.88 | 350,676.90 | 350,676.90 | 332,194.45 | 410,310.18 | 500,327.98 | 269,307.39 |
| **Beginning Balance** | 571,666.54 | 510,675.83 | 666,344.22 | 543,877.76 | 384,692.75 | 427,871.75 | 452,115.24 | 511,070.95 | 234,811.50 | 262,392.08 | 148,826.84 | 422,859.88 | 571,666.54 | 350,676.90 | 332,194.45 | 410,310.18 | 500,327.98 |
| **Royalty Receipts** | 267,342.40 | 420,305.49 | 282,639.10 | 294,369.99 | 301,155.86 | 417,060.43 | 265,731.51 | 327,179.89 | 446,862.67 | 309,853.14 | 600,981.30 | 240,368.68 | 4,173,850.45 | 4,403,412.22 | 4,645,599.90 | 4,784,967.89 | 4,928,516.93 |
| | | | | | | | | | | | | | - | | | | |
| **Raw Material Receipts** | - | 57,948.88 | - | 9,722.39 | 51,739.26 | 16,027.20 | 172,671.44 | 8,471.67 | - | 1,410.98 | - | 59,772.05 | 377,763.87 | 398,540.88 | 420,460.63 | 433,074.45 | 446,066.68 |
| **Total Receipts** | 267,342.40 | 478,254.37 | 282,639.10 | 304,092.38 | 352,895.12 | 433,087.63 | 438,402.95 | 335,651.56 | 446,862.67 | 311,264.12 | 600,981.30 | 300,140.73 | 4,551,614.32 | 4,801,953.11 | 5,066,060.53 | 5,218,042.34 | 5,374,583.61 |
| **Other COGS** | 39,330.14 | 147.43 | 4,910.49 | 1,094.18 | 749.41 | 1,088.83 | 1,456.86 | 1,523.02 | 375.33 | 375.33 | 22,560.59 | 21,822.31 | 95,433.93 | 98,774.11 | 101,737.34 | 104,280.77 | 106,887.79 |
| **(a) Business Insurance** | - | - | 25,688.54 | - | - | - | 2,950.00 | - | 1,913.00 | 3,746.00 | - | - | 34,297.54 | 35,497.95 | 36,562.89 | 37,476.96 | 38,413.89 |
| **(b) Clinical Studies** | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **(c) Consultants** | 13,900.00 | 14,500.00 | 14,869.80 | 41,546.73 | 29,210.90 | 26,319.67 | 18,634.00 | 87,865.06 | 36,800.00 | 23,962.50 | 14,651.25 | 26,379.62 | 348,639.53 | 360,841.91 | 371,667.17 | 380,958.85 | 390,482.82 |
| **(d) DTC** | 9,314.00 | 97.77 | 16,700.00 | 40,073.04 | 7,585.92 | 29,878.03 | 19,347.82 | 145,779.06 | 72,513.96 | 60,127.33 | 9,318.34 | 4,806.72 | 415,542.00 | 428,008.26 | 440,848.50 | 451,869.72 | 463,166.46 |
| **(e) Dues & Subscriptions** | 537.84 | 537.84 | 11,364.85 | - | 537.84 | 1,075.68 | 537.84 | 14,799.06 | 537.84 | 537.84 | 537.84 | 537.84 | 31,542.31 | 32,488.58 | 33,463.24 | 34,299.82 | 35,157.31 |
| **(f) Legal & Professional Fees** | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 60,000.00 | 61,800.00 | 63,654.00 | 65,563.62 | 67,530.53 |
| **(g) Marketing & Advertising** | 2,815.26 | 40,458.84 | 18,155.00 | 5,143.02 | 14,419.50 | 39,119.50 | 36,944.56 | 19,573.00 | 18,050.00 | 21,730.00 | 13,340.00 | 3,340.00 | 233,088.68 | 245,908.56 | 259,433.53 | 267,216.53 | 275,233.03 |
| **(h) Office Expenses** | 150.00 | 578.35 | 8,330.78 | 6,855.00 | 9,685.04 | 7,991.96 | 8,141.15 | 9,679.04 | 6,650.00 | 17,050.00 | 14,863.64 | 6,457.36 | 96,432.32 | 99,325.29 | 102,305.05 | 104,862.67 | 107,484.24 |
| **(i) Office Space** | 15,607.50 | 15,823.50 | 14,323.50 | 14,323.50 | - | 14,323.50 | 14,323.50 | 14,323.50 | 14,323.50 | 14,323.50 | 14,323.50 | 14,323.50 | 160,342.50 | 165,152.78 | 170,107.36 | 174,360.04 | 178,719.04 |
| **(j) Product Development** | - | - | - | - | - | - | - | - | - | - | - | 872.65 | 872.65 | 898.83 | 925.79 | 948.94 | 972.66 |
| **(k) Quality Compliance** | - | - | - | - | - | - | - | 4,484.00 | - | 1,083.33 | - | - | 5,567.33 | 5,734.35 | 5,906.38 | 6,054.04 | 6,205.39 |
| **(l) Representative Offices** | 9,798.40 | 16,683.56 | 5,530.00 | 4,500.00 | 7,965.07 | 8,203.97 | 6,035.00 | 6,035.00 | 6,035.00 | 6,035.00 | 9,923.84 | 10,888.88 | 97,633.72 | 100,562.73 | 103,579.61 | 106,169.10 | 108,823.33 |
| **(m) Selling Expenses** | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **(n) Taxes & Licenses** | 2,800.03 | - | 64.00 | - | - | 361.19 | - | 1,318.00 | - | - | - | 459.00 | 5,002.22 | 5,177.30 | 5,332.62 | 5,465.93 | 5,602.58 |
| **(o) Travel & Entertainment** | 6,500.00 | 8,200.00 | 18,500.00 | 7,100.00 | 6,800.00 | 9,800.00 | 11,000.00 | 4,500.00 | 10,500.00 | 15,000.00 | 12,000.00 | 3,500.00 | 113,400.00 | 116,802.00 | 120,306.06 | 123,313.71 | 126,396.55 |
| **Salaries & Wages** | 176,746.61 | 174,725.36 | 166,482.86 | 162,982.86 | 166,929.11 | 219,406.47 | 193,914.78 | 195,198.87 | 195,750.12 | 210,025.18 | 160,200.00 | 178,102.50 | 2,200,464.72 | 2,315,652.55 | 2,385,122.13 | 2,444,750.18 | 2,505,868.94 |
| **CC Charges vs. Payments & Reversals** | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Operating Disbursements** | 282,499.78 | 276,752.65 | 309,919.82 | 288,618.33 | 248,882.79 | 362,568.80 | 318,285.51 | 510,077.61 | 368,448.76 | 378,996.02 | 276,719.00 | 276,490.38 | 3,898,259.45 | 4,072,625.20 | 4,200,951.67 | 4,307,590.90 | 4,416,944.58 |
| **CAPEX** | - | - | 7,000.00 | 5,076.00 | 15,000.00 | 442.00 | - | - | - | - | 4,395.93 | - | 31,913.93 | 32,871.35 | 33,857.49 | 34,703.93 | 35,571.52 |
| **Inventory** | - | - | 42,352.40 | 123,749.73 | - | - | 10,328.40 | 51,000.06 | - | - | - | - | 227,430.59 | 239,939.00 | 253,135.64 | 260,729.71 | 268,551.60 |
| **Chapter 11 Legal Rep - LNBYG** | 25,000.00 | 25,000.00 | 25,000.00 | 25,000.00 | 25,000.00 | 25,000.00 | 25,000.00 | 25,000.00 | 25,000.00 | 25,000.00 | 25,000.00 | 25,000.00 | 300,000.00 | 200,000.00 | 200,000.00 | 200,000.00 | 100,000.00 |
| **Chapter 11 sub V Trustee - Greg Jones** | - | - | - | - | - | - | 5,000.00 | 5,000.00 | 5,000.00 | - | - | - | 15,000.00 | - | - | - | - |
| **Other Legal Professionals** | 20,833.33 | 20,833.33 | 20,833.33 | 20,833.33 | 20,833.33 | 20,833.33 | 20,833.33 | 20,833.33 | 20,833.33 | 20,833.33 | 20,833.33 | 20,833.33 | 250,000.00 | 200,000.00 | 200,000.00 | 200,000.00 | 200,000.00 |
| **Casden Contract Cure** | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 434,536.50 |
| **Pre-Petition Tax Liability** | | | | | | | | | | | | | - | - | - | - | - |
| **Post Petition Tax Liability** | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Class 2 Distribution** | - | - | - | - | - | - | - | - | - | - | - | 50,000.00 | 50,000.00 | 75,000.00 | 100,000.00 | 125,000.00 | 150,000.00 |
| **Ending Cash Balance** | 510,675.83 | 666,344.22 | 543,877.76 | 384,692.75 | 427,871.75 | 452,115.24 | 511,070.95 | 234,811.50 | 262,392.08 | 148,826.84 | 422,859.88 | 350,676.90 | 350,676.90 | 332,194.45 | 410,310.18 | 500,327.98 | 269,307.39 |

# EXHIBIT "3"

| | FILED CLAIM | | | | | SCHEDULED CLAIM | | | | NOTES | Class 2 | RECOVERY | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Creditor** | **Claim No.** | **Date Claim Filed** | **Secured** | **Priority** | **General Unsecured** | **Schedule "D" Secured** | **Schedule "E" Priority** | **Schedule "F" Unsecured** | **C/U/D** | **Notes** | **Proposed Unsecured Amount** | **Over 5 Years** | **Early Payment NPV** |
| Troutman Sanders LLP | | | | | | | | $17,404.29 | | | $17,404.29 | $2,128.59 | $727.48 |
| Triclinic Labs | | | | | | | | $1,250.00 | | | $1,250.00 | $152.88 | $52.25 |
| The Weinberg Group LLC | 10 | 6/12/20 | | | $46,116.44 | | | $43,730.10 | | | $43,730.10 | $5,348.31 | $1,827.88 |
| Seth Casden | | | | | | | | $435,000.00 | | see Class 3 | $0.00 | $0.00 | $0.00 |
| Seth Casden | | | | | | | | $90,000.00 | | To Be Cured in Contract Assumption | $0.00 | $0.00 | $0.00 |
| Polsinelli LLP | 2 | 4/29/20 | | | $1,053,410.89 | | | $983,052.19 | | | $1,053,410.89 | $128,834.98 | $44,031.67 |
| Multiple Energy Technologies, LLC | 15 | 7/8/20 | | | "unknown" | | | $2,500,000.00 | | Doc. # 358 | $2,500,000.00 | $305,756.72 | $104,497.86 |
| Microtrace LLC | 9 | 6/1/20 | | | $5,000.00 | | | $5,000.00 | | | $5,000.00 | $611.51 | $209.00 |
| Michael Haynes | | | | | | | | $27,500.00 | | see Class 3 | $0.00 | $0.00 | $0.00 |
| Maelor Group, Inc. | | | | | | | | $5,300.00 | | | $5,300.00 | $648.20 | $221.54 |
| Kent Imaging | | | | | | | | $21,100.00 | | Doc. # 353 | $0.00 | $0.00 | $0.00 |
| Influence & Co. | 19 | 11/16/20 | | | $6,000.00 | | | $3,000.00 | | | $3,000.00 | $366.91 | $125.40 |
| Graham Casden | | | | | | | | $170,000.00 | | see Class 3 | $0.00 | $0.00 | $0.00 |
| Fora Financial West LLC | 12 | 6/19/20 | $206,393.64 | | | | | $213,764.86 | | Doc. # 354 | $206,393.64 | $25,242.50 | $8,627.08 |
| Fiber Innovation Technology, Inc. | | | | | | | | $40,546.10 | | paid as critical vendor | $0.00 | $0.00 | $0.00 |
| Experien Group, LLC | 13 | 6/26/20 | | | $36,299.82 | | | $30,639.74 | | | $30,639.74 | $3,747.32 | $1,280.71 |
| Cornerstone Research | | | | | | | | $118,202.50 | | | $118,202.50 | $14,456.48 | $4,940.76 |
| Cooley LLP | 11 | 6/15/20 | | | $42,702.33 | | | $38,411.08 | | | $38,411.08 | $4,697.78 | $1,605.55 |
| De Lage Landen | 1 | 4/27/20 | | | $13,954.91 | | | | | Doc. # 353 | $0.00 | $0.00 | $0.00 |
| Wells Fargo Bank, N.A. | 5 | 5/22/20 | | | $8,122.23 | | | $11,799.41 | | | $8,122.23 | $993.37 | $339.50 |
| Wells Fargo Bank, N.A. | 7 | 5/29/20 | | | $9,325.51 | | | | | Doc. # 336 | $9,325.51 | $1,140.53 | $389.80 |
| Wells Fargo Bank, N.A. | 8 | 5/29/20 | | | $2,040.52 | | | | | Doc. # 336 | $2,040.52 | $249.56 | $85.29 |
| John Hancock Life Insurance Company, et al. | 14 | 11/24/20 | $0.00 | | $37,753.70 | | | | | Doc. # 265 | $37,753.70 | $4,617.38 | $1,578.07 |
| AIG | 16 | 7/9/20 | | | $0.00 | | | | | Withdrawn | $0.00 | $0.00 | $0.00 |
| Under Armour | 17 | 11/4/20 | | | $0.00 | | | | | Amended | $0.00 | $0.00 | $0.00 |
| Prime Lending | 18 | 7/27/20 | | | $6,599.39 | | | | | Lease Rejection | $6,593.99 | $806.46 | $275.62 |
| Image Square, Inc. | 21 | 2/9/21 | | | $1,639.42 | | | | | | $1,639.42 | $200.51 | $68.53 |
| **Totals** | | | | | | | | | | | **$4,088,217.61** | $500,000.00 | $170,884.00 |
| Percentage Recovery | | | | | | | | | | | | 12.23% | 4.18% |
| | | | | | | | | | | | | | |
| Plus If Casden Sec. 547 Settlement Approved | | | | | | | | | | | Doc. Nos. 465, 755 | $47,406.00 | $47,406.00 |
| Percentage Recovery with Settlement Funds | | | | | | | | | | | | 13.39% | 5.34% |

# Exhibit 4

**Hologenix, LLC**
**DRAFT**

**Class 2 Payments and NPV**

| | 3/1/27 | 2/28/28 | 2/28/29 | 2/28/30 | 2/28/31 | 2/28/32 | Total |
|---|---|---|---|---|---|---|---|
| Dates of Payment | 3/1/27 | 2/28/28 | 2/28/29 | 2/28/30 | 2/28/31 | 2/28/32 | **Total** |
| Class 2 Payments | - | **50,000** | **75,000** | **100,000** | **125,000** | **150,000** | **500,000** |

| Rate | NPV |
|---|---|
| 40% | **170,884** |

**NPV of Payment by Year**

| As of | 2/28/28 | 2/28/29 | 2/28/30 | 2/28/31 | 2/28/32 | Total |
|---|---|---|---|---|---|---|
| 2/28/32 | | | | - | 150,000 | 150,000 |
| 2/28/31 | | | | 125,000 | 107,143 | 232,143 |
| 2/28/30 | - | - | 100,000 | 89,286 | 76,531 | 265,816 |
| 2/28/29 | - | 75,000 | 71,429 | 63,776 | 54,665 | 264,869 |
| 2/28/28 | 50,000 | 53,522 | 50,973 | 45,512 | 39,010 | 239,018 |
| 3/1/27 | 35,747 | 38,265 | 36,443 | 32,539 | 27,890 | **170,884** |

# Exhibit 5

| Capitalization Table 6.21.2022 - Pre Conversion of Class C | | | |
|---|---|---|---|
| **Name** | **Total Units (a)** | **Percentage Interests (b)** | **Percentage Interests (c)** |
| Seth Casden | 12,617,471 | 54.15% | 46.72% |
| Graham Casden | 3,667,500 | 15.74% | 13.58% |
| Blue Wolf Holdings, LLC | 2,164,145 | 9.29% | 8.01% |
| David Horinek | 1,924,454 | 8.26% | 7.13% |
| Michael Conchuratt | 910,780 | 3.91% | 3.37% |
| Alvaro Pascotto (a) | 658,700 | 2.83% | 2.44% |
| Kevin Blaney | 649,602 | 2.79% | 2.41% |
| Alexander Foyle | 283,430 | 1.22% | 1.05% |
| William Werlin | 270,462 | 1.16% | 1.00% |
| AF Double Eagle, Inc. | 79,864 | 0.34% | 0.30% |
| Andrew Behar | 75,579 | 0.32% | 0.28% |
| **Total** | **23,301,987** | **100.00%** | **86.29%** |
| **Phantom Units (e)** | | | |
| **Allocated Phantom Units** | | | |
| Amber Bezahler | 742,656 | | 2.75% |
| Courtney O'Keefe | 540,113 | | 2.00% |
| Francis Parish | 347,168 | | 1.29% |
| Kevin Blaney | 50,000 | | 0.19% |
| Scott Carlin | 50,000 | | 0.19% |
| Leslie Margolin | 50,000 | | 0.19% |
| Michael Haynes | 50,000 | | 0.19% |
| Julien Born | 50,000 | | 0.19% |
| **Total Allocated** | 1,879,937 | | 6.96% |
| **Unallocated Phantom Units** | 1,823,746 | | 6.75% |
| **Total** | **27,005,670** | | **100.00%** |

*(a) Pre Conversion of Class C, does not include Class A Preferred Units*
*(b) As a percentage of all outstanding Pre Conversion Class C units excluding the Phantom*
*(c) As a percentage of all outstanding fully diluted Units Pre Class C Conversion*
*(d) Alvaro Pascotto Revocable Trust Dated May 17, 2012*
*(e) All Unallocated Phantom Units are class A Management Units*

# Exhibit 6

| Name | Contract Description | Cure Amount |
|---|---|---|
| Allergo System SRL | Purchase & Licence agreement in which Hologenix is the Supplier and Licensor | $0.00 |
| Allie Home, LLC | Purchase & Licence agreement in which Hologenix is the Supplier and Licensor | $0.00 |
| AQ Textiles, LLC | Purchase & Licence agreement in which Hologenix is the Supplier and Licensor | $0.00 |
| Bear Mattress, LLC | License agreement in which Hologenix is the licensor | $0.00 |
| Bio San D.O.O | Purchase & Licence agreement in which Hologenix is the Supplier and Licensor | $0.00 |
| Burleigh Point Ltd | License agreement in which Hologenix is the licensor | $0.00 |
| Celatica, LLC | License agreement in which Hologenix is the licensor | $0.00 |
| Cobe SRL | Purchase & Licence agreement in which Hologenix is the Supplier and Licensor | $0.00 |
| The Design Tex Group Inc | Purchase & Licence agreement in which Hologenix is the Supplier and Licensor | $0.00 |
| Equiribbon Creations | Purchase & Licence agreement in which Hologenix is the Supplier and Licensor | $0.00 |
| Fownes Brothers & Co | Purchase & Licence agreement in which Hologenix is the Supplier and Licensor | $0.00 |
| Gryppers incorporated | License agreement in which Hologenix is the licensor | $0.00 |
| IMM Group, Inc | License agreement in which Hologenix is the licensor | $0.00 |
| Innocor, Inc | Purchase & Licence agreement in which Hologenix is the Supplier and Licensor | $0.00 |
| Inter Textile Innovation Co., Ltd | License agreement in which Hologenix is the licensor | $0.00 |
| Iron Holdings, LTD | Purchase & Licence agreement in which Hologenix is the Supplier and Licensor | $0.00 |
| Juno Sleep Pty/ Ltd | License agreement in which Hologenix is the licensor | $0.00 |
| Levi Strauss & Co | License agreement in which Hologenix is the licensor | $0.00 |
| Nfinity Athletic, LLC | Purchase & Licence agreement in which Hologenix is the Supplier and Licensor | $0.00 |
| Fabrictech 2000, LLC dba Purecare | Purchase & Licence agreement in which Hologenix is the Supplier and Licensor | $0.00 |
| Real Innerspring Technologies Pvt., LTD | Purchase & Licence agreement in which Hologenix is the Supplier and Licensor | $0.00 |
| RV Winkle, LLC | License agreement in which Hologenix is the licensor | $0.00 |
| Socks for Horses, Inc | Purchase & Licence agreement in which Hologenix is the Supplier and Licensor | $0.00 |
| Square One Distribution | License agreement in which Hologenix is the licensor | $0.00 |
| Sunvim North America | Purchase & Licence agreement in which Hologenix is the Supplier and Licensor | $0.00 |
| Terrapromo D.O.O | License agreement in which Hologenix is the licensor | $0.00 |
| Traffi Safe, LTD | Purchase & Licence agreement in which Hologenix is the Supplier and Licensor | $0.00 |
| Under Armour, Inc | Purchase & Licence agreement in which Hologenix is the Supplier and Licensor | $0.00 |
| Yaasa Studios, Inc | License agreement in which Hologenix is the licensor | $0.00 |
| Yak Sleep GmbH | Purchase & Licence agreement in which Hologenix is the Supplier and Licensor | $0.00 |
| FENC | Non-royalty supply chain license agreement | $0.00 |
| Shinkong | Non-royalty supply chain license agreement | $0.00 |
| Eclat | Non-royalty supply chain license agreement | $0.00 |
| Toong Loung | Non-royalty supply chain license agreement | $0.00 |
| Men Chuen | Non-royalty supply chain license agreement | $0.00 |
| Chain Yarn Chainlon | Non-royalty supply chain license agreement | $0.00 |
| Labtex | Non-royalty supply chain license agreement | $0.00 |
| BeiDa/Kuseng | Non-royalty supply chain license agreement | $0.00 |
| Best Pacific | Non-royalty supply chain license agreement | $0.00 |
| Luher | Non-royalty supply chain license agreement | $0.00 |
| Hangzhou Shuangjin Textile | Non-royalty supply chain license agreement | $0.00 |
| Hangzhou Hengyi Textile | Non-royalty supply chain license agreement | $0.00 |
| Hangzhou Chuangyuan feather | Non-royalty supply chain license agreement | $0.00 |
| Wellmei | Non-royalty supply chain license agreement | $0.00 |
| Shinetex | Non-royalty supply chain license agreement | $0.00 |
| Tai Yuen Textile (Vietnam) | Non-royalty supply chain license agreement | $0.00 |
| Manifattura Crespi - Healthy Textile Innovations | Non-royalty supply chain license agreement | $0.00 |
| Imbotex | Non-royalty supply chain license agreement | $0.00 |
| Wellman | Non-royalty supply chain license agreement | $0.00 |
| AllergoSystem | Non-royalty supply chain license agreement | $0.00 |
| Hilovica | Non-royalty supply chain license agreement | $0.00 |
| Draper | Non-royalty supply chain license agreement | $0.00 |

| | | |
|---|---|---|
| Jowett | Non-royalty supply chain license agreement | $0.00 |
| Seth Casden | Employment Contract | 434,536.50 |
| Courtney Okeefe | Employment Contract | $0.00 |
| De Lage Landen (Cell Business Eq.) | Printer Equipment Lease | $0.00 |
| True Car, Inc. | Real Property Lease | $0.00 |
| Kent Imaging | Equipment Lease | $0.00 |
| | | |
| | | |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 2818 La Cienega Avenue, Los Angeles, CA 90034

**A true and correct** copy of the foregoing document **Declaration Of Seth Casden In Support Of Debtor's Motion To Confirm Debtor's Chapter 11, Subchapter V Plan, Dated October 20, 2026** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On October 20, 2026, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On October 20, 2026 I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the `document is filed.
☒ Service information continued on attached page

**Honorable Barry Russell**
United States Bankruptcy Court
Central District of California
Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Suite 1660 / Courtroom 1668
Los Angeles, CA 90012

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on October 20, 2026 I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| October 20, 2026 | J. Klassi | /s/ J. Klassi |
| *Date* | *Printed Name* | *Signature* |

- .
- **Todd M Arnold tma@lnbyg.com**
- **Ron Bender rb@lnbyg.com**
- **Thomas E Butler butlert@whiteandwilliams.com, sullivann@whiteandwilliams.com;millnamowm@whiteandwilliams.com;panchavatis@whiteandwilliams.com**
- **Robert Carrasco rmc@lnbyg.com, rmc@lnbyg.com**
- **Oscar Estrada oestrada@ttc.lacounty.gov**
- **Theodore W Frank frank@psmlawyers.com, knarfdet@gmail.com;navarro@parkermillsllp.com**
- **John-Patrick M Fritz jpf@lnbyg.com, JPF.LNBYB@ecf.inforuptcy.com**
- **Michael S Greger mgreger@allenmatkins.com, kpreston@allenmatkins.com**
- **Brian T Harvey bharvey@buchalter.com, docket@buchalter.com;dbodkin@buchalter.com;pjolley@buchalter.com**
- **Gregory Kent Jones (TR) gjones@sycr.com, smjohnson@sycr.com;C191@ecfcbis.com;cpesis@stradlinglaw.com**
- **Raffi Khatchadourian raffi@hemar-rousso.com**
- **Tinho Mang tmang@marshackhays.com, tmang@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@ecf.courtdrive.com;cmendoza@marshackhays.com**
- **Ron Maroko ron.maroko@usdoj.gov**
- **Juliet Y. Oh jyo@lnbyg.com, jyo@lnbyb.com**
- **Carmela Pagay ctp@lnbyg.com**
- **Yvonne Ramirez-Browning yvonne@browninglawgroup.com, veronica@browninglawgroup.com**
- **Kurt Ramlo RamloLegal@gmail.com, kr@ecf.courtdrive.com;ramlo@recap.email**
- **Gregory M Salvato gsalvato@salvatoboufadel.com, calendar@salvatolawoffices.com;jboufadel@salvatoboufadel.com;gsalvato@ecf.inforuptcy.com**
- **James R Selth jselth@yahoo.com, jselth@yahoo.com,maraki@wztslaw.com,sfritz@wztslaw.com,admin@wztslaw.com**
- **Zev Shechtman Zev.Shechtman@saul.com, Zev.Shechtman@ecf.courtdrive.com;hannah.richmond@saul.com;LitigationDocketing@saul.com;Shelly.Guise@saul.com;Isaiah.Bribiesca@saul.com**
- **Lindsey L Smith lls@lnbyb.com, lls@ecf.inforuptcy.com**
- **Randye B Soref rsoref@polsinelli.com, ccripe@polsinelli.com;ladocketing@polsinelli.com**
- **Heidi J Sorvino sorvinoh@whiteandwilliams.com, millnamowm@whiteandwilliams.com;sullivann@whiteandwilliams.com;panchavatis@whiteandwilliams.com;butlert@whiteandwilliams.com**
- **Alan Stomel alan.stomel@gmail.com, astomel@yahoo.com**
- **Annie Y Stoops annie.stoops@afslaw.com, yvonne.li@afslaw.com**
- **Nicole Sullivan sullivann@whiteandwilliams.com, vulpioa@whiteandwilliams.com,arthura@whiteandwilliams.com**
- **Derrick Talerico dtalerico@wztslaw.com, maraki@wztlfirm.com,sfritz@wztlfirm.com,admin@wztlfirm.com**
- **United States Trustee (LA) ustpregion16.la.ecf@usdoj.gov**
- **Larry D Webb Webblaw@gmail.com, larry@webblaw.onmicrosoft.com**
- **David Wood dwood@marshackhays.com, dwood@ecf.courtdrive.com;lbuchananmh@ecf.courtdrive.com;spineda@ecf.courtdrive.com;alinares@ecf.courtdrive.com**
- **Roye Zur rzur@elkinskalt.com, lwageman@elkinskalt.com;1648609420@filings.docketbird.com;rzur@ecf.courtdrive.com;lmasse@elkinskalt.com**

Hologenix
MML 10-19-2026

*Debtor*
Hologenix, LLC
17383 Sunset Blvd., Suite A420
Pacific Palisades, CA 90272

*Trustee*
Gregory Kent Jones (TR)
Stradling Yocca Carlson & Rauth
10100 N. Santa Monica Blvd., Suite 1400
Los Angeles, CA 90067

*U.S. Trustee*
United States Trustee (LA)
915 Wilshire Blvd, Suite 1850
Los Angeles, CA 90017

AIG Property Casualty, Inc.
Kevin J. Larner, Authorized Representative
80 Pine Street, 13th Floor
New York, NY 10005

Allegro Systems SRL
Via Del Garda 46/Q
Rovereto, Trento 368068
ITALY

AllergoSystem
Vi del Garda 46/Q
Rovereto, TN 38068
Italy

Allied Home LLC
6905 W Acco St Ste A
Montebello, CA 90640

Alvaro Pascotto Rev. Tr. 5/17/2012
11111 Santa Monica Blvd, Suite 2200
Los Angeles, CA 90025

Amber Bezahler
2300 Manning Ave.
Los Angeles, CA 90064

AQ Textiles LLC
214 Staunton Drive
Greensboro NC 27410

Barry W. Lee
Manatt, Phelps & Phillips, LLP
2049 Century Park East, Suite 1700
Los Angeles, CA 90067

Bear Mattress LLC
720 Monroe St Ste C508
Hoboken NJ 07030-6399

BeiDa/Kuseng
No. 3, Gong 8 Rd., LinKou Dist.
New Taipei City, 244
Taiwan

Best Pacific
Xinsha Port Industrial Zone, Machong Town
523147, Dongguan City, Guangdong Province
China

Bio San D.O.O.
J Huttlera 7a
310 Osijek
CROATIA

BRE Sunset Coast, LLC
c/o Brickman Associates
712 5th Ave., 6th Fl.
New York, NY 10019

Burleigh Point Ltd
117 Waterworks Way
Irvine, CA 92618

Celatica LLC
294 Cherry Ave
Long Beach CA 90802

Cell Business Equipment
1111 Old Eagle School Rd
Wayne, PA 19087-1453

Chin Yarn Chainlon
I9F, NO. 386, Shizheng RD.
Xitun Dist., Taichung City 407
Taiwan

Cobe SRL
Via Rafaello, snc 06081
Assisi PG
ITALY

Cooley LLP
1333 2nd St., Suite 400
Santa Monica, CA 90401

Cornerstone Research
555 W. 5th St., 38th Fl.
Los Angeles, CA 90013

Courtney O'Keefe
2620 Highland Ave.
Santa Monica, CA 90405

De Lage Landen
1111 Old Eagle School Rd
Wayne, PA 19087

Draper
28 Draper Lane
Canton, MA 02021

Eclat
No. 28, Wu Chuan Road
Wu Ku District, New Taipei City
Taiwan 24886

Employment Development Department
Bankruptcy Group MIC 92E
P.O. Box 826880
Sacramento, CA 94280-0001

Equiribbon Creations
21 Lyndon Rd
Sharon, MA 02067

Experien Group, LLC
224 Airport Parkway, Suite 250
San Jose, CA 95110

Fabrictech 2000, LLC dba Purecare
1402 S 40th Ave
Phoenix, AZ 85009

FENC
35F, No. 207, Tun Hwa South Rd
Sec 2, Taipei 10602
Taiwan

Fiber Innovation Technology, Inc.
398 Innovation Dr.
Johnson City, TN 37604

Fora Financial Advance, LLC
3050 Peachtree Road NW Suite 240
Atlanta GA 30305

Fora Financial West LLC
519 8th Ave., 11th Fl.
New York, NY 10018

Fownes Brothers & Co
1201 Broadway 8th Floor
New York, NY 10001

Franchise Tax Board
PO Box 942857
Sacramento, CA 94257

FRANCHISE TAX BOARD
BANKRUPTCY SECTION MS A340
PO BOX 2952
SACRAMENTO CA 95812-2952

Graham Casden
5097 Flagstaff
Boulder, CO 80302

Hangzhou Chuangyuan Feather
NO. 5 Xinda Road, Suoqian Town
Xiaoshan District Hangzhou Zhejiang
China

Hangzhou Hengyi Textile
Xishan Yiqiao Town Xiaoshan
Hangzhou Zhejiang Province
China

Hangzhou Shuangjin Textile
NO 302 Fuxing Village
Yiqiao Town Xiaoshan Dist. Hangzhou
China

Heidi J. Sorvino, Esq.
White and Williams LLP
7 Times Square, Suite 2900
New York, NY 10036

Hilltop Holdings
325 North St. Paul, Suite 700
Dallas, TX 75201

Hilovica
S.A. Carretera de Roda
6608500 Vic
Spain

Image Square Inc.
1627 Stanford Street
Santa Monica, CA 90404

Imbotex
Via Molini 26
I-35013 Cittadella
Italia

IMM Group Inc.
7301 Washington Ave S
Edina, MN 55410

Influence & Co.
1431 Cinnamon Hill Lane, Suite 104
Columbia, MO 65201

Innocor, Inc.
200 Schulz Drive 2nd Floor
Red Bank, NJ 07701

Inter Textile Innovation Co. Ltd
6F, Sakurahonmachibashi Bldg, 8-6
Honmachibashi Chuoku Osaka 5400029
JAPAN

Internal Revenue
P. O. Box 21126
Philadelphia, PA 19114

Iron Holdings, LTD
5123 Dunn Place
Nanaimo B.C., V9t-0J2
CANADA

John Hancock
197 Clarendon Street
Boston, MA 02116

John Hancock
Corp. Real Estate Attn: JM Laverdure
200 Berkeley St. C-01-05
Boston, MA 02110

John Hancock Life Insurance Company
c/o Peter D. Bilowz
Goulston & Storrs PC
400 Atlantic Avenue
Boston, MA 02110

Jowett
Wintan Inc. 10359 Rush Street
S. El Monte, CA 91733

Julien Born
208 N. 21st Street
Philadelphia, PA 19103

Juno Sleep Pty/LTD
313 N Road
Caufield South 3162, Victoria
AUSTRALIA

Kent Imaging
804B 16th Avenue S
Calgary, Alberta, T2R 0S9
CANADA

Labtex
14th Floor, No. 202, Sec. 2,
Yan-Ping N. Road, Taipei,
Taiwan

LOS ANGELES COUNTY TREASURER
AND TAX COLLECTOR
PO BOX 54110
LOS ANGELES CA 90054-0110

Luther
2F, 43 lane, Fu-Ying Rd,
Sinhuang District, New Taipei City, 2425
Taiwan

Maelor Group, Inc.
7 Village Woods Dr.
Amherst, NH 03031

Manifattura Crespi-Healthy Textile
Innovations
Corso Italia 11
22020 Vanzaghello Milan
Italy

Men Chuen
10F, No. 392, Sec I
Nei Hu Road, Taipei,
Taiwan

Michael Haynes
7817 Chadamy Way
San Diego, CA 92130

Microtrace LLC
790 Fletcher Dr., Suite 106
Elgin, IL 60123-4755

Multiple Energy Technologies, LLC
c/o Heidi J. Sorvino, Esq.
White and Williams LLP
7 Times Square, Suite 2900
New York, NY 10036

Multiple Energy Technologies, LLC
480 Johnson Rd., Suite 220
Washington, PA 15301

Murali Sundar
438 Richmond Street West, Suite 1508
Toronto, Ontario, M5V 3S6
CANADA

Nfinity Athletic LLC
53 Permalume Place
Atlanta, GA 30318

Northern Trust Company of Delaware
1313 N. Market St., Suite 5300
Wilmington, DE 19801

Polsinelli LLP
2049 Century Park East, Suite 2900
Los Angeles, CA 90067

PrimeLending Corp.
18111 Preston Rd. Suite 900
Dallas, TX 75252

PrimeLending, a PlainsCapital Company
18111 Preston Rd.
#900
Dallas, TX 75252

R.V. Winkle LLC
600 Franklin Ave
Garden City, NY 11530

Real Innerspring Technologies Pvt. LTD
B-7, Sector 3
Noida - 201301 U.P.
INDIA

Seth Casden
25406 1/2 Malibu Rd.
Malibu, CA 90265

Shinetex
3F, No. 276, Sec. 3, Chongqing N. Rd.
Datong Dist., Taipei City 10371, Taiwan

Shinkong
14FL., No. 123, Sec. 2
Nanking E. Rd., Taipei
Taiwan

Socks for Horses, Inc
304 W 9th Ave #15
Havana, FL 32333

Square One Distribution
35214 SE Center St
Snoqualmie, WA 98065

Sunvim North America
11 Erb St. East #200
Waterloo, Ontario, N2T IL4

Tai Yuen Textile (Vietnam)
Dong Van II Industrial Park, Back Thuong
Duy Tien Town, Ha Nam Province,
Vietnam

Terrapromo D.O.O.
J.J. Strossmayera 314.
31000 Osijek
CROATIA

The Design Tex Group Inc.
200 Varick St
8th Floor
New York NY 10014

The Weinberg Group LLC
1129 Twentieth Street NW, Suite 600
Washington, DC 20036

Thomas E. Butler
White and Williams LLP
7 Times Square, Suite 2900
New York, NY 10036-6524

Toong Loung
Toung Loong Textile, 1
19 F, No. 31 Sec 2
San Ming Rd, Panchiao Dist. New Taipei City
Taiwan 220

Triclinic Labs
2660 Schuyler Ave., Suite A
Lafayette, IN 47905

Troutman Sanders LLP
600 Peachtree Street, NE, Suite 300
Atlanta, GA 30308

Truecar
1401 Ocean Ave.
Suite 300
Santa Monica, CA 90401

Tula Consulting LLC
227 BROADWAY STE 302
SANTA MONICA CA 90401-3441

Under Armour Inc
1020 Hull Street
Baltimore, MD 21230

Under Armour, Inc.
c/o Annie Y. Stoops
Arent Fox LLP
555 West Fifth Street, 48th Floor
Los Angeles, CA 90013

Wellman
Mullagh, Kells,
Co. Meath, A82 NN93,
Republic of Ireland

Wellmei
No. 698 Chenduan Road,
Xiaoshan District Hangzhou 311201
China

Wells Fargo
5340 Kietzke Lane Ste 200
Reno, NV 89511

Wells Fargo Bank, N.A.
Small Business Lending Division
P.O. Box 29482
Phoenix, AZ 85038-8650

Yaasa Studios Inc.
511 Olive Street
Santa Barbara, CA 93101

Yak Sleep GmbH
Ottensteinstrabe 41
2344 Maria Enzersdorf
AUSTRIA